WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Matthew P. Goren

*Proposed Attorneys for the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                           :
**In re**                                                  :        **Chapter 11**
                                                           :
**EVERGREEN GARDENS MEZZ LLC,**                            :        **Case No. 21-10335**
                                                           :
            **Debtor.**                                    :
                                                           :
**Fed. Tax Id. No. 83-3200416**                            :
-----------------------------------------------------------x

**DECLARATION OF JOEL BIRAN**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

I, Joel Biran, pursuant to section 1746 of title 28 of the United States Code, hereby

declare that the following is true and correct to the best of my knowledge, information, and

belief:

1.        I am the founder and managing member of Gabouloz LLC, a restructuring and

professional services firm founded in 2010.  In this capacity, I provide restructuring and

turnaround services to distressed companies.  I have also served as the Managing Director and

Co-Head of Middle Market Special Situations at DW Partners, LP since 2014.  DW Partners, LP

is a multi-strategy, special situations credit investment firm with core expertise in corporate debt

that manages over approximately $1 billion in capital.  Prior to assuming this position, I served

as Managing Director of Versa Capital Management from 2008 to 2014, Vice President of

American Capital Strategies from 2005 to 2008, Chief Financial Officer of CSS-Steller North

America, Inc. from 2002 to 2005, and Senior Director of Corporate Development in Mergers and

Acquisitions from 2000 to 2002.  I have over 25 years of management experience with expertise

in turnarounds, general management, operations, company restructurings, corporate finance, and

distressed and other M&A transactions.

2.       On December 30, 2020, I was retained as the Chief Restructuring Officer

("**CRO**") of All Year Holdings Limited ("**All Year Holdings**" and, together with its direct and

indirect subsidiaries, collectively "**All Year**"), a company organized as a BVI Business

Company under the laws of the British Virgin Islands.[1]  Among All Year Holdings' direct and

indirect subsidiaries is Evergreen Gardens Mezz LLC, a limited liability company organized

under the laws of the State of New York (the "**Debtor**").  On the date hereof (the "**Petition**

**Date**"), the Debtor commenced a case (the "**Chapter 11 Case**") under chapter 11 of title 11 of

the United States Code (the "**Bankruptcy Code**").

3.       I am knowledgeable and familiar with the Debtor's business and financial affairs.

The facts set forth in this Declaration are based upon my personal knowledge, my review of

relevant documents, information provided to me by employees of All Year working under my

supervision, or my opinion based upon experience, knowledge, and information concerning the

Debtor and All Year.  If called upon to testify, I would testify competently to the facts set forth

in this Declaration.

4.       This Declaration is submitted pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York (the "**Local Bankruptcy Rules**") to apprise the

---

[1] On February 19, 2021, I provided notice to All Year Holdings that I would be resigning my
position as CRO, effective as of February 28, 2021; provided, however, that I will continue to be
engaged by, and provide services to, All Year Holdings going forward as a consultant.

Court and other parties in interest of the circumstances that compelled the commencement of the Chapter 11 Case and in support of the Debtor's chapter 11 petition.  I am authorized to submit this Declaration as an authorized signatory and representative of the Debtor.

5.      This Declaration is intended to provide a summary overview of All Year, the Debtor, and the Chapter 11 Case, and is organized as follows: **Section I** describes the business and operations of the Debtor and All Year; **Section II** describes the prepetition capital structure of the Debtor and All Year; **Section III** describes the key events that led to the commencement of the Chapter 11 Case; and **Section IV** attaches and identifies the schedules of information required by Local Bankruptcy Rule 1007-2.

## Preliminary Statement

6.      Founded in 2014, All Year Holdings operates as a holding company that, through the Debtor and All Year Holdings' other non-debtor subsidiaries, focuses on the development, construction, acquisition, leasing and management of residential and commercial income producing properties in Brooklyn, New York.  All Year's portfolio includes approximately 2,652 residential units, 94 commercial units, and 183 hotel rooms in Bushwick, Williamsburg, and Bedford-Stuyvesant, with an aggregate net book value in excess of $2.4 billion.  As of the Petition Date, All Year has approximately $1.6 billion of outstanding funded debt obligations comprised of (i) secured and unsecured bonds, (ii) mezzanine debt, and (iii) property level mortgage debt.

7.      Like many real estate businesses, All Year and the Debtor have been hurt by the ongoing COVID-19 pandemic because their revenues are primarily derived from residential and commercial rental income streams.  In particular, the Debtor's current and projected revenues are suffering.  Current tenants have struggled to timely pay rents and prospective tenants are demanding significant rent decreases and other lease concessions.  All Year engaged with

3

various stakeholders throughout All Year's capital structure on a path or paths forward to maximize the value of All Year and its various subsidiaries and assets.

8.          While these discussions were ongoing, the Debtor received notice that its Mezzanine Lender (as defined below) intended to take action to force a sale under the Uniform Commercial Code ("**UCC**") of the Debtor's interest in its wholly-owned subsidiary, Evergreen Gardens I LLC ("**EG I**").  As discussed below, EG I and another All Year Holdings subsidiary, Evergreen Gardens II LLC ("**EG II**"), own two adjacent properties at 123 Melrose Street ("**Denizen X**") and 54 Noll Street ("**Denizen Y**") that together comprise the Denizen – a luxury apartment rental complex that spans two city blocks and is located on the site of the former Rheingold Brewery.  The Denizen constitutes one of All Year's most valuable assets and is central to All Year's ongoing restructuring discussions.

9.          The Debtor engaged with the Mezzanine Lender's advisors regarding a potential postponement of the pending foreclosure to afford All Year time to discuss with its other stakeholders a path forward regarding the Denizen and to present the Mezzanine Lender with a comprehensive restructuring proposal.  Although the parties were able to negotiate a brief two-week adjournment of the scheduled UCC sale, they failed to agree during that time period on a transaction or path forward with respect to the Denizen. The Mezzanine Lender determined not to further extend or postpone the UCC sale.  This refusal precipitated commencement of the Chapter 11 Case on an emergency basis to safeguard the value of the Debtor's interest in the valuable Denizen properties and allow All Year to continue its negotiations.

10.         The Debtor is not seeking any first day relief at this time.  Rather, the Debtor intends to use the period immediately following the commencement of this case to continue

engaging with its various stakeholders, including the Mezzanine Lender, and to promptly

propose to the Court a path forward to maximize the Debtor's value.

## I.

### The Debtor's and All Year's Business

11.      All Year Holdings was established and incorporated on September 17, 2014, as a

BVI Business Company under the laws of the British Virgin Islands.  All Year, itself and

together with partners, owns approximately 150 properties (including properties under

development), consisting of approximately 2,700 residential units, 94 commercial units and 183

hotel rooms in Brooklyn, New York.  All Year was founded by Mr. Yoel Goldman ("**Mr.**

**Goldman**"), who is All Year Holdings' president and sole economic and voting shareholder.[2]

All Year's most valuable assets include, without limitation, the Denizen and the William Vale

Hotel.

12.      The Denizen is comprised of two adjacent units (Denizen X and Denizen Y).

As set forth above, the Debtor owns 100% of the equity interests in EG I, which owns

Denizen X, while EG II is the owner of Denizen Y.  EG I and EG II are not currently

debtors before the Court.  The Debtor does not hold the limited liability interests of EG II;

rather, those interests are held by Evergreen Gardens Holdings II LLC, which is also not

---

[2] During All Year Holding's prepetition negotiations with its secured and unsecured
bondholders, it issued a Class A voting share to myself and the ARO (as defined below).  This
share entitles the ARO and me to vote on appointment or removal of the directors of All Year
Holdings, as the owner of each of its direct and indirect subsidiaries – including the Debtor – but
confers no other voting rights.  The voting rights are set to expire at 11:59 pm (Eastern Time) on
September 20, 2021.  The Class A share is entitled to $1.00 upon the liquidation of All Year
Holdings but confers no right to participate in any dividend or other distribution of All Year
Holdings at any time.

currently a debtor before the Court.  An organizational chart of the Debtor and its direct and indirect parents and subsidiaries, as of the Petition Date, is annexed hereto as **Exhibit A**.

13.      The Denizen offers approximately 900 modern studio, one and two bedroom apartments and is situated around an approximately 17,850 square foot courtyard.  The Denizen affords its residents abundant greenspace, a public park and promenade, an on-site beer brewery, a community chef's kitchen, rooftop gardens, a dog park and spa, a cafe with co-working space, a curated art gallery, game room, and fitness centers.  Denizen X and Denizen Y share facilities and sit adjacent to each other.  The mutual access to shared facilities provides for a wider range of residential amenities thereby making the Denizen a more desirable property and enhancing its value.

14.      Revenues generated at the Denizen X are used, in part, to service the property level mortgage debt for EG I.  The Debtor uses excess cash, if any, from EG I to service its debt payments on the Mezzanine Loan (as defined below).  The Debtor does not have any employees or operating expenses other than the payment of annual independent director fees and certain *de minimis* bank account fees and administrative expenses.

## II.

## The Debtor's and All Year's Capital Structure

A.      **The Debtor's Capital Structure**.

15.      The Debtor's sole outstanding funded debt obligations consist of a $65 million loan, pursuant to that certain Mezzanine Loan and Security Agreement, dated as of February 12, 2019 (as amended, modified, or supplemented, including pursuant to that certain First Amendment dated as of June 6, 2019) (the "**Mezzanine Loan**"), by and between the Debtor and MREF REIT Lender 9 LLC (the "**Mezzanine Lender**").  The Debtor's obligations under the Mezzanine Loan are secured by, among other things, a pledge of the Debtor's interest in EG I,

6

pursuant to that certain Amended and Restated Mezzanine Pledge and Security Agreement, dated as of June 10, 2019. As of the Petition Date, the Debtor owed approximately $73 million – including principal, accrued interest, default interest and a forbearance fee – in outstanding obligations under the Mezzanine Loan. In addition, Mr. Goldman also issued a guaranty in favor of the Mezzanine Lender, pursuant to that certain Mezzanine Guaranty of Recourse Carveouts, dated as of February 12, 2019, which includes full recourse in the event of a voluntary bankruptcy filing by the Debtor.

16.      Relatedly, EG I – the Debtor's direct subsidiary and owner of the Denizen X property – has outstanding funded obligations consisting of a $170 million property level loan under that certain Loan and Security Agreement between EG I and JP Morgan Chase Bank, N.A., dated as of June 7, 2019. EG I's obligations under this property level loan are secured by its interest in the Denizen X pursuant to that certain Amended, Restated and Consolidated, Mortgage, Security Agreement, Assignment of Leases and Fixture Filing, dated as of June 7, 2019.

**B.      All Year's Capital Structure.**

17.      With respect to All Year's capital structure, as of the Petition Date, All Year had outstanding funded debt obligations in the aggregate amount of approximately $1.6 billion comprised of (i) secured bonds; (ii) unsecured bonds; (iii) mezzanine debt; and (iv) property level mortgage debt.[3] All Year Holdings' secured bonds are secured by mortgages issued by various All Year entities, which hold properties located in Brooklyn, New York, including

---

[3] The bonds were issued on the Tel Aviv Stock Exchange ("**TASE**") in New Israel Shekel. All Year Holdings temporarily suspended interest payments on its unsecured bonds and secured bonds in November, 2020 and January, 2021, respectively. On January 3, 2021, the four series of bonds were de-listed and suspended from trading by TASE.

Denizen Y.  Mishmeret Trust Services Company Ltd. serves as trustee with respect to each of the aforementioned series of bonds (in such capacity, the "**Trustee**").

**III.**

**The Need for Chapter 11 Relief and
<u>the Events Leading to the Debtor's Chapter 11 Filing</u>**

18.      On December 2, 2020, the Debtor received notice that the Mezzanine Lender intended to commence a UCC sale of the Debtor's interests in EG I on February 5, 2021.  At this time All Year was engaged in discussions with various stakeholders throughout the corporate structure regarding a restructuring of All Year and its various assets and operations, including the Debtor's interests in EG I and the Denizen.

19.      As set forth above, the need for these restructuring negotiations stemmed from the severe negative economic impact suffered by All Year, including the Debtor, arising out of the COVID-19 pandemic.  In particular, because the Denizen's value is derived from its rich amenities, the Debtor was disproportionately impacted when New York State and New York City required the shutdown of amenities and shared spaces.

20.      Following All Year Holdings' suspension of interest payments on its unsecured bonds in November, 2020, All Year entered into an agreement with the Trustee, dated December 10, 2020, pursuant to which All Year agreed to, among other things, my appointment as CRO and the appointment of Mr. Ephraim Diamond, as Associate Restructuring Officer (the "**ARO**"). Those retentions were approved by the Board of Directors of All Year Holdings (the "**Board**") on December 30, 2020.  Upon my appointment as CRO, All Year, with the assistance of its advisors, quickly moved to engage the bondholders and other stakeholders of All Year in a collaborative and cooperative process to explore potential restructuring alternatives for All Year.

As noted above, the Denizen X and Y are important to All Year and its efforts to restructure its debt.

21.        Upon receiving the UCC sale notice, the Debtor immediately commenced discussions with the Mezzanine Lender's representatives regarding a potential extension of the sale to provide All Year with the time necessary to continue discussions with its various stakeholders about a path forward.  The Debtor proposed to present the Mezzanine Lender with a value maximizing restructuring proposal, and, in the interim, the Debtor agreed to provide the Mezzanine Lender's advisors with certain financial information.[4]  The Debtor and Mezzanine Lender agreed to a two-week adjournment of the UCC sale to February 23, 2020.  The parties continued to engage during this time on a proposed transaction and potential sale structures with respect to the Denizen but did not agree on a path forward.   The Mezzanine Lender declined to further extend or postpone the scheduled UCC sale.  Accordingly, the Debtor had no choice but to commence the Chapter 11 Case on an emergency basis to protect the value of its property.

22.        As set forth above, the Debtor has no operations and is not seeking any first day relief.  The Debtor is focused on continuing its discussions with All Year's bondholders and other stakeholders, including the Mezzanine Lender, to develop a path forward with respect to the Denizen and promptly present to the Court a restructuring solution that maximizes value for all parties in interest.

---

[4] The Debtor also engaged with the property level mortgage lender for EG I regarding the commencement of the Chapter 11 Case and the Denizen X property and will endeavor to continue those productive discussions going forward.

**IV.**

**Information Required by Local Bankruptcy Rule 1007-2**

23.        In accordance with Local Bankruptcy Rule 1007-2, the schedules attached hereto provide certain information related to the Debtor.

24.        Pursuant to Local Bankruptcy Rule 1007-2(a)(3), **Schedule 1** hereto lists the names and addresses of the members of, and attorneys for, any committee organized prior to the Petition Date and a brief description of the circumstances surrounding the formation of the committee and the date of its formation.

25.        Pursuant to Local Bankruptcy Rule 1007-2(a)(4), **Schedule 2** hereto lists the following information with respect to each of the holders of the Debtor's twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), and telephone number; the name(s) of persons(s) familiar with the Debtor's accounts, the approximate amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured.

26.        Pursuant to Local Bankruptcy Rule 1007-2(a)(5), **Schedule 3** hereto provides the following information with respect to each of the holders of the five (5) largest secured claims against the Debtor: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), and telephone number; the approximate amount of the claim; a brief description of the collateral securing the claim; an estimate of the value of the collateral, and whether the claim or lien is disputed.

27.        Pursuant to Local Bankruptcy Rule 1007-2(a)(6), **Schedule 4** hereto provides a summary of the (unaudited) assets and liabilities for the Debtor.

10

28.       Pursuant to Local Bankruptcy Rule 1007-2(a)(7), **Schedule 5** hereto provides the

following information: the number and classes of shares of stock, debentures, and other

securities of the Debtor that are publicly held and the number of record holders thereof; and the

number and classes of shares of stock, debentures, and other securities of the Debtor that are held

by the Debtor's directors and officers, and the amounts so held.

29.       Pursuant to Local Bankruptcy Rule 1007-2(a)(8), **Schedule 6** hereto provides a

list of all of the Debtor's property in the possession or custody of any custodian, public officer,

mortgagee, pledgee, assignee of rents, secured creditor, or agent for any such entity, giving the

name, address, and telephone number of each such entity and the location of the court in which

any proceeding relating thereto is pending.

30.       Pursuant to Local Bankruptcy Rule 1007-2(a)(9), **Schedule 7** hereto provides a

list of the premises owned, leased, or held under other arrangement from which the Debtor

operates its business.

31.       Pursuant to Local Bankruptcy Rule 1007-2(a)(10), **Schedule 8** hereto provides the

location of the Debtor's substantial assets, the location of its books and records, and the nature,

location, and value of any assets held by the Debtor outside the territorial limits of the United

States.

32.       Pursuant to Local Bankruptcy Rule 1007-2(a)(11), **Schedule 9** hereto provides a

list of the nature and present status of each action or proceeding, pending or threatened, against

the Debtor or its property where a judgment against the Debtor or a seizure of its property may

be imminent.

33.        Pursuant to Local Bankruptcy Rule 1007-2(a)(12), **Schedule 10** hereto provides a list of the names of the individuals who comprise All Year's existing senior management, their tenure with All Year, and a brief summary of their relevant responsibilities and experience.

34.        Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A), **Schedule 11** hereto provides the estimated amount of weekly payroll to the Debtor's employees (not including officers, directors, stockholders, and partners) and the estimated amount to be paid to officers, stockholders, directors, members of any partnerships, and financial and business consultants retained by the Debtor for the thirty (30) day period following the filing of the Debtor's chapter 11 petition as the Debtor intends to continue to operate its business.

35.        Pursuant to Local Bankruptcy Rule 1007-2(b)(3), **Schedule 12** hereto provides, for the thirty (30) day period following the filing of the chapter 11 petition, a list of estimated cash receipts and disbursements, net cash gain or loss, obligations, and receivables expected to accrue that remain unpaid, other than professional fees.

## VI.

## <u>Conclusion</u>

36.        The above illustrates the factors that have precipitated the commencement of the Chapter 11 Case and the critical need for the Debtor to restructure its financial affairs.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable

inquiry, the foregoing is true and correct.

_____
Joel Biran

Authorized Signatory for the Debtor

**Exhibit A**

**Organizational Chart**

# Organizational Chart

The following organizational chart sets forth the corporate structure of Evergreen Gardens Mezz LLC (the "**Debtor**") and the Debtor's direct and indirect parents and subsidiaries as of the Petition Date.



## Schedule 1

**Committees**

In response to the information requested in Local Bankruptcy Rule 1007-2(a)(3), to the best of the Debtor's knowledge, belief, and understanding, no committee has been organized prior to the Petition Date with respect to the Debtor.

## Schedule 2

### Consolidated List of 20 Largest Unsecured Claims (Excluding Insiders)

Pursuant to Local Bankruptcy Rule 1007-2(a)(4), to the best of the Debtor's knowledge, belief, and understanding, as of the Petition Date, the Debtor has no unsecured creditors.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| None. | | | | | | |

2

**Schedule 3**

**List of Holders of Five Largest Secured Claims**

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), to the best of the Debtor's knowledge, belief, and understanding, the following chart lists the creditors holding, as of the Petition Date, the five (5) largest secured, non-contingent claims against the Debtor, excluding claims of insiders as defined in section 101 of the Bankruptcy Code.

| No. | Creditor | Contact Mailing Address, Telephone Number/Fax Number, Email | Approximate Amount of Claim | Type of Collateral |
|-----|----------|------------------------------------------------------------|-----------------------------|--------------------|
| 1. | MREF REIT Lender 9 LLC | MREF REIT Lender 9 LLC<br>c/o Mack Real Estate Group<br>60 Columbus Circle, 20th Floor<br>New York, New York 10023<br>Attention: Kevin Cullinan<br><br>with a copies to:<br><br>Shapiro & Gellert, PLLC<br>651 Briarwood Court<br>Oradell, New Jersey 07649<br>Attention: Robert A. Riva<br><br>Goodwin Procter LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>Attention: Diana Brummer and William Weintraub | $73,231,148.60 | Pledge of 100% of equity interests of Evergreen Gardens I LLC. |

## Schedule 4

### All Year Holdings Limited Unaudited Consolidated Balance Sheet

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following provides a summary of the (unaudited) consolidated assets and liabilities for the Debtor.

### Evergreen Gardens Mezz LLC
### Data on the financial position

|  | As of September 30, 2020<br>USD thousands<br>(Unaudited) |
|---|---|
| **Assets** | |
| Investment in subsidiary | 90,552 |
| **Total assets** | 90,552 |
| | |
| **Current liabilities** | |
| Loan from financial institution | 65,000 |
| Other payables (Unpaid interest) | 2,456 |
| | 67,456 |
| **Equity** | 23,096 |
| **Total liabilities and equity** | 90,552 |

4

## <u>Schedule 5</u>

### Publicly Held Securities

Pursuant to Local Bankruptcy Rule 1007-2(a)(7), to the best of the Debtor's knowledge, belief, and understanding, as of the Petition Date, the Debtor does not have any publicly traded stock, debentures, or other securities.

## **Schedule 6**

**Debtor's Property Not in the Debtor's Possession**

In response to the information requested in Local Bankruptcy Rule 1007-2(a)(8), to the best of the Debtor's knowledge, belief, and understanding, as of the Petition Date, the Debtor does not have any property that is in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditor, or agent for any such entity.

## **Schedule 7**

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), All Year, through the Debtor and All Year Holdings' other non-debtor subsidiaries holds, owns, and/or leases residential real estate properties in Brooklyn, New York.  None of these properties are held, owned, and/or leased directly by the Debtor and the entities that hold, own, and/or lease such properties are not currently debtors in the Chapter 11 Case.

## Schedule 8

### Location of Debtor's Assets, Books, and Records

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the following lists the locations of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States.

### Location of Debtor's Substantial Assets

The Debtor's sole assets are the 100% limited liability interests it holds in Evergreen Gardens I LLC ("**EG I**").  EG I owns real property located at 123 Melrose Street in Bushwick, New York.

### Books and Records

The Debtor's books and records are located at 12 Spencer Street, 3rd Floor Brooklyn, NY 11205.

### Debtor's Assets Outside the United States

None.

**Schedule 9**

**Litigation**

Pursuant to Local Bankruptcy Rule 1007-2(a)(11), to the best of the Debtor's knowledge, belief, and understanding, as of the Petition Date, the following is a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtor or its properties where a judgment against the Debtor or a seizure of its property may be imminent.

| Action or Proceeding | Nature of Proceeding | Status of Proceeding |
|---|---|---|
| Foreclosure action initiated by MREF REIT Lender 9 LLC. | Public disposition of the Debtor's 100% interest in Evergreen Gardens I LLC, which is the property owner of 123 Melrose Street, in accordance with the applicable provisions of the Uniform Commercial Code. | UCC Foreclosure sale scheduled for February 23, 2021, at noon (ET). |

**Schedule 10**

**Senior Management**

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following provides the names of the individuals who comprise All Year Holdings' existing senior management as of the Petition Date, a description of their tenure with All Year Holdings, and a brief summary of their relevant responsibilities and experience.

| Name & Position | Responsibilities & Experience |
|---|---|
| **Joel Biran**<br><br>*Chief Restructuring Officer and Chief Executive Officer* | In January 2021, Mr. Biran was appointed as Chief Restructuring Officer and Chief Executive Officer of All Year Holdings. Mr. Biran's responsibilities include managing the day-to-day operations of All Year Holdings and its subsidiaries and assist the board of directors with the restructuring of All Year.[1]<br><br>Mr. Biran has over 25 years of management experience with expertise in turnarounds, general management, operations, company restructuring, corporate finance, distressed deals and M&A, with a proven leadership in operational efficiencies, achieving financial profitability and stability, as well as in managing workflow processes. Mr. Biran has executed deals for and served on boards of numerous distressed companies.<br><br>Mr. Biran has an MBA from Harvard Business School and is a Certified Public Accountant. |
| **Ephraim Diamond**<br><br>*Associate Restructuring Officer* | In January 2021, Mr. Diamond was appointed as Associate Restructuring Officer of All Year Holdings. Mr. Diamond's responsibilities include assisting Mr. Biran and the board of directors with the restructuring of All Year.<br><br>Mr. Diamond is the founder and managing member of Arbel Capital Advisors LLC, an advisory firm providing restructuring and bankruptcy advisory and fiduciary services for the real estate, investable litigation and litigation funding industries. Mr. Diamond has approximately 20 years of experience in bankruptcy and restructuring. |

---

[1] On February 19, 2021, Mr. Biran provided notice to All Year Holdings that he would be resigning his position as Chief Restructuring Officer, effective as of February 28, 2021. Mr. Biran will continue to be engaged by, and provide services to, All Year Holdings going forward as a consultant.

| Name & Position | Responsibilities & Experience |
|---|---|
| **Yoel Goldman**<br><br>*President* | Yoel Goldman is the President and founder of All Year.<br><br>Yoel Goldman has been active over the last 15 years and is one of the largest residential owners in Brooklyn. Yoel Goldman's properties are concentrated in growing neighborhoods like Williamsburg, Bushwick, Bedford Stuyvesant, and Crown Heights. Yoel Goldman owns and manages a portfolio valued at approximately $2.2 billion that includes both walk-up rental buildings and ground-up high-rise development. Yoel Goldman was one of the first NYC real estate owners to become publicly listed in Israel, giving it access to the Israeli bond market. |
| **Yizhar Shimoni**<br><br>*Chief Financial Officer* | Yizhar Shimoni has served as Chief Financial Officer of All Year Holdings since 2016.<br><br>Prior to joining All Year, Mr. Shimoni served as Secretary and Director at U.S. Real Estate Representation Ltd., representing various United States real estate companies in Israel.  Prior to that, Mr. Shimoni was a Certified Public Accountant with Amit Halfon, a leading accounting firm in Israel. |

11

## Schedule 11

**Payroll**

Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll to the Debtor's employees (not including officers, directors, and stockholders) and the estimated amount to be paid to officers, stockholders, directors, and financial and business consultants retained by the Debtor for the 30-day period following the filing of the chapter 11 petition.

| | |
|---|---|
| **Payments to Employees (Not Including Officers, Directors, and Stockholders)** | $0 |
| **Payments to Officers, Stockholders, and Directors** | $0 |
| **Payments to Financial and Business Consultants** | $0[2] |

---

[2] Pursuant to the retention applications to be filed by these professionals, and the applicable Bankruptcy Rules and Local Bankruptcy Rules, the Debtor will not make any payments in the 30-day period following the filing of the chapter 11 petition.

## Schedule 12

### Cash Receipts and Disbursements,
### Net Cash Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the 30-day period following the filing of the chapter 11 petition, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| | |
|---|---|
| **Cash Receipts** | $0 |
| **Cash Disbursements** | $0 |
| **Net Cash Loss** | $0 |
| **Unpaid Obligations** | $959,883.89 |
| **Uncollected Receivables** | $0 |

13