WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Initial Debtor and*
*Proposed Attorneys for the Subsidiary Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                              :
**In re**                                     :        **Chapter 11**
                                              :
**EVERGREEN GARDENS MEZZ LLC,** *et al.*,     :        **Case No. 21-10335 (MG)**
                                              :
          **Debtors.**[1]                     :        **(Joint Administration Pending)**
                                              :
------------------------------------------------------------X

**APPLICATION OF DEBTORS PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C §§
503(b)(1)(A) AND 105(a), AND L.B.R 5075-1 FOR AUTHORITY TO RETAIN AND
EMPLOY DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING
AGENT *NUNC PRO TUNC* TO THE SUBSIDIARY DEBTOR PETITION DATE**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

          Evergreen Gardens Mezz LLC ("**EGM**" or the "**Initial Debtor**"), together with

Evergreen Gardens I LLC ("**EG I**") and Evergreen Gardens II LLC ("**EG II**" and, together with

EG I, the "**Subsidiary Debtors**" and, together with the Initial Debtor, the "**Debtors**"), as debtors

and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"),

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
      identification number, as applicable, are Evergreen Gardens Mezz LLC (0416); Evergreen Gardens I LLC
      (2211); and Evergreen Gardens II LLC (6782).  The Debtors' principal offices are located at 199 Lee Avenue,
      Suite 693, Brooklyn, New York 11211.

respectfully represent as follows in support of this application (the "**Section 156(c)**

**Application**"):

**<u>Relief Requested</u>**

1.      By this Section 156(c) application,   pursuant to 28 U.S.C. § 156(c),

sections 503(b)(1)(A) and 105(a) of the United States Code (the "**Bankruptcy Code**"), and Rule

5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

**Bankruptcy Rules**"), the Debtors request entry of an order authorizing, but not directing, the

appointment of Donlin Recano Company ("**DRC**") as claims and noticing agent in these Chapter

11 Cases ("**Claims and Noticing Agent**"), *nunc pro tunc* to the Subsidiary Debtor Petition Date

(as defined below), in accordance with the terms and conditions of that certain standard Claims

Administration and Noticing Agreement annexed hereto as **<u>Exhibit A</u>** (the "**<u>Section 156(c)</u>**

**<u>Agreement</u>**").

2.      The Debtors anticipate that a significant number of parties and entities will

need to be notified in these Chapter 11 Cases, including, without limitation, suppliers, vendors,

lenders, bondholders, and tenants.  Local Bankruptcy Rule 5075-1(b) provides that "[i]n a case in

which the number of creditors and equity security holders, in the aggregate is 250 or more, the

estate shall retain, subject to approval of the Court, a claims and noticing agent in accordance

with the [Claims Agent Protocol]." In view of the number of anticipated claimants and the

complexity of the Debtors' business, the Debtors submit that the appointment of a claims and

noticing agent is required by Local Bankruptcy Rule 5075-1(b) and is otherwise in the best

interests of the Debtors' estates and their creditors.

3.      In support of the relief requested herein, the Debtors submit the

declaration of Nellwyn Voorhies, the President of DRC, annexed hereto as **<u>Exhibit B</u>** (the

"**Voorhies Declaration**").   A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit C** (the "**Proposed Order**").

4.       In addition to this Section 156(c) Application, the Debtors have filed or will soon file an application for authority to retain DRC to serve as the administrative agent for the Debtors under section 327(a) of the Bankruptcy Code (the "**Section 327(a) Application**"). Given that the administration of these cases will require DRC to perform duties outside the scope of 28 U.S.C. § 156(c), the Debtors intend to supplement the Section 156(c) Application with the Section 327(a) Application.

## Jurisdiction

5.       The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6.       On February 22, 2021 (the "**Initial Debtor Petition Date**"), the Initial Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. On the date hereof (the "**Subsidiary Debtor Petition Date**" and, together with the Initial Debtor Petition Date, the "**Petition Dates**"), the Subsidiary Debtors commenced their own voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.  Contemporaneously herewith, the

Debtors have filed a motion requesting joint administration of their Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**").

7.      Following a robust and comprehensive marketing process, the Debtors have secured the support and commitment, pursuant to an executed restructuring support agreement, dated August 31, 2021 (the "**RSA**"), of their senior, secured noteholders and mezzanine lender.  These two key creditor constituencies support, pursuant to the RSA, a value-maximizing chapter 11 plan that implements a sale of substantially all of the Subsidiary Debtors' assets to an affiliate of Atlas Capital Group, LLC for approximately $506 million pursuant to the terms of a signed purchase and sale agreement (the "**Purchase Agreement**").  Prior to the date hereof, in accordance with applicable securities laws, the Subsidiary Debtors commenced the process of soliciting votes from creditors in each of their impaired voting classes under the proposed joint chapter 11 plan, which has already been overwhelmingly approved by the holders of the Subsidiary Debtors' senior secured notes.  Subject to completion of the ongoing voting process, the Debtors expect the chapter 11 plan to be accepted by all classes of impaired voting creditors.  Consistent with their obligations under the RSA and the Purchase Agreement, the Debtors intend to promptly seek a joint hearing from the Court to consider the adequacy of their disclosure statement and confirmation of their proposed chapter 11 plan and to proceed promptly to closing on the proposed sale transaction.

8.      Information regarding the Subsidiary Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Asaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of Subsidiary Debtors' Chapter 11 Petitions and Related Relief*, sworn to on the date hereof (the "**Ravid**

Declaration"), which has been filed with the Court contemporaneously herewith and is incorporated herein by reference.[2]

### DRC's Qualifications

9.    DRC is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. DRC's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. DRC's professionals have acted as official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide. DRC's active and former cases include: *In re Adara Enterprises Corp.*, Case No. 21-10736 (JKS) (Bankr. D. Del. 2021); *In re Castex Energy 2005 Holdco LLC*, et al., Case No. 21-30710 (Bankr. S.D. Tex. 2021); *In re Lutheran Social Service Housing, Inc.*, et al. (Receivership), Case No. 09-2021-CV-200 (Bankr. D.N.D. 2021); *In re EHT US1, Inc.*, et al., Case No. 21-10036 (CSS) (Bankr. D. Del. 2021); *In re Tea Olive I, LLC d/b/a Stock+Field*, Case No. 21-30037 (WJF) (Bankr. D. Minn. 2021); *In re Elevate Investments, LLC*, (Receivership), Case No. 20-02398 (JVS) (Bankr. C.D. Cal. 2020); In re Girardi Keese, Case No. 20-21022 (BR) (Bankr. C.D. Cal. 2020); *In re Asaig, LLC*, et al., Case No. 20-35600 (MI) (Bankr. S.D. Tex. 2020); *In re YouFit Health Clubs, LLC*, et. al., Case No. 20-12841 (MFW) (Bankr. D. Del. 2020); In re Cred Inc., et. al., Case No. 20-12836 (JTD) (Bankr. D. Del. 2020); I*n re Gorham Paper and Tissue, LLC*, et. al., Case No. 20-12814 (KBO) (Bankr. D. Del. 2020); *In re FIC Restaurants, Inc.*, et. al., Case No. 20-12807 (CSS) (Bankr. D. Del. 2020); *In re Studio Movie Grill Holdings, LLC*, et al., Case No. 20-32633-11 (SGJ) (Bankr. N.D. Tex. 2020); *In re*

---

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Ravid Declaration.

*PizzaExpress Financing 2 PLC*, Case No. 20-34868 (MI) (Bankr. S.D. Tex. 2020); *In re Cosmoledo, LLC*, et al., Case No. 20-12117 (MEW) (Bankr. S.D.N.Y. 2020); *In re Xinergy of Alabama, Inc.*, et al., Case No. 20-02791 (TOM) (Bankr. S.D. Ala. 2020); *In re TPS Oldco, LLC*, et al., Case No. 20-40743 (CJP) (Bankr. D. Mass. 2020).

10.    By appointing DRC as the Claims and Noticing Agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") will be relieved of the administrative burden of processing claims.

### Scope of Services

11.    The Debtors seek to retain DRC to provide, as requested, among other things, the following services in its role as Claims and Noticing Agent:

a.    prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan(s) of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

b.    maintain an official copy of the Subsidiary Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Subsidiary Debtors' known creditors and any amounts owed thereto;

c.    maintain (i) a list of potential creditors, equity holders and other parties-in-interest, and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

d. furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e. maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f. for all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g. process all proofs of claim received, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h. provide an electronic interface for filing proof of claim;

i. maintain the official claims register for the Debtors (the "**Claims Register**") on behalf of the Clerk on a case specific website; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtor against whom the claim is filed, and (vii) any disposition of the claim;

j. provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k. implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

l. record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m. relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of DRC, not less than weekly;

n.    upon completion of the docketing process for all claims received to date for the case, turn over to the Clerk (upon the Clerk's request) copies of the Claims Register for the Clerk's review;

o.    monitor the Court's docket for all notices of appearance, address changes, and claims related pleadings and orders filed, and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

p.    identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q.    assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

r.    if these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice of entry of the order converting these Chapter 11 Cases;

s.    thirty (30) days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing DRC as the Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

t.    within seven (7) days of notice to DRC of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of these Chapter 11 Cases; and

u.    at the close of these Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064, or (ii) any other location requested by the Clerk's office.

12.    The Claims Register shall be opened to the public for examination without charge and on a case-specific website maintained by DRC, as Claims and Noticing Agent.

## Professional Compensation

13.    DRC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors,

counsel for the Debtors, the Office of the United States Trustee for Region 2, counsel for any official committee, if any, monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Section 156(c) Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

14.     As part of the overall compensation payable to DRC under the terms of the Section 156(c) Agreement, the Debtors have agreed to certain indemnification obligations. The Section 156(c) Agreement provides that the Debtors will indemnify, defend, and hold DRC, its officers, members, directors, agents, representatives, managers, consultants, and employees harmless under certain circumstances specified in the Section 156(c) Agreement, except in circumstances resulting solely from DRC's gross negligence or willful misconduct or as otherwise provided in the Section 156(c) Agreement.  Both the Debtors and DRC believe that such provisions are customary and reasonable for administrative agents in chapter 11 cases and for the services provided by this Section 156(c) Application.

15.     Prior to the filing of these Chapter 11 Cases, the Subsidiary Debtors paid  DRC a retainer in the amount of $25,000 in connection with pre-petition fees and expenses.

### No Duplicate Services

16.     The Debtors intend that DRC's services will complement, and not duplicate, the services being rendered by other professionals retained in these Chapter 11 Cases. DRC understands that the Debtors have retained and may continue to retain professionals during the term of its engagement and will work cooperatively with such professionals to integrate the work conducted by the professionals on the Debtors' behalf.

## Disinterestedness

17.     DRC has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information and belief, DRC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

18.     In connection with its retention as Claims and Noticing Agent, DRC represents, as set forth in the Voorhies Declaration, that:

a.     DRC is not a creditor of the Debtors;

b.     DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

c.     by accepting employment in these Chapter 11 Cases, DRC waives any rights to receive compensation from the United States government in connection with the Debtors' cases;

d.     DRC shall not employ any past or present employees of the Subsidiary Debtors for work that involves the Debtors' Chapter 11 Cases;

e.     in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, DRC will not be an agent of the United States and will not act on behalf of the United States;

f.     DRC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

g.     in its capacity as Claims and Noticing Agent in these Chapter 11 Cases, DRC will not intentionally misrepresent any fact to any person; and

h.     DRC shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers.

**Basis for Relief**

19.     Section 156(c) provides, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

20.     In addition, Local Bankruptcy Rule 5075-1 provides, in pertinent part, as follows:

> The Court may direct, subject to the supervision of the Clerk, the use of agents to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

L.B.R. 5075-1.

21.     The Court may also rely on its general equitable powers to grant the relief requested in this Section 156(c) Application.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

22.     This Section 156(c) Application further complies with the S.D.N.Y. Claims Agent Protocol. Specifically, the Debtors have solicited and reviewed engagement proposals from at least three (3) other Court-approved claims and noticing agents to ensure selection through a competitive process.  The Debtors submit that DRC's rates are competitive and reasonable given DRC's quality of services and expertise.  The terms of DRC's retention are set forth in the Section 156(c) Agreement; provided, however, that to the extent there is any

inconsistency between this Section 156(c) Application, the Proposed Order, and the Section 156(c) Agreement, the Proposed Order shall govern.

23.    The Debtors anticipate that there will be hundreds of entities to be noticed. Without the assistance of a claims and noticing agent, the Debtors are not equipped to efficiently and effectively distribute all notices that are likely to be required in these Chapter 11 Cases. In view of the number of anticipated claimants and the complexity of the Subsidiary Debtors' business, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of the Debtors' estates and their creditors.

## Notice

24.    Notice of this Motion will be provided to (i) William K. Harrington, the U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.); (ii) the Debtors' top twenty (20) unsecured creditors; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the Southern District of New York; (v) counsel to Mishmeret Trust Company Ltd., as Trustee for the Bondholders, Chapman & Cutler LLP, 1270  Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.); (vi) counsel to MREF REIT Lender 9 LLC, as Mezzanine Lender, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018 (Attn: Michael H. Goldstein, Esq., and Kizzy L. Jarashow, Esq.); (vii)  counsel to JPMorgan Chase Bank, N.A., as Mortgage Lender to EG I, Fried, Frank, Harris, Shriver & Jacobson LLP, 1 New York Plaza, New York, NY 10004 (Attn: Gary Kaplan, Esq. and Michael Barker, Esq.); and (viii) counsel to Atlas Capital Group, LLC, as Purchaser, Thompson Hine LLP, 335 Madison Avenue, 12th Floor, New York, New York 10017 (Attn: John Bae, Esq. and

Jonathan Hawkins, Esq.) (collectively, the "**Notice Parties**").  The Debtors respectfully submit that no further notice is required.

25.    No previous request for the relief sought herein has been made by the Subsidiary Debtors to this or any other Court.

WHEREFORE the Debtors respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  September 14, 2021
        New York, New York

/s/  Matthew P. Goren
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Initial Debtor and*
*Proposed Attorneys for the Subsidiary Debtors*

## Exhibit A

**Section 156(c) Agreement**



**DONLIN RECANO**
An AST Company

# STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

## <u>TERMS AND CONDITIONS</u>

**Donlin, Recano & Company, Inc**. (hereinafter called "DRC") agrees to provide **Evergreen Gardens I LLC and Evergreen Gardens II LLC** (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. <u>SERVICES</u>**: DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. <u>CHARGES</u>**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment, provided DRC shall provide thirty (30) days' notice to Client. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for reasonable and documented charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. <u>TRANSPORTATION OF DATA</u>**: Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the



Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**4. RETAINER & INVOICES**:  At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $25,000. DRC may apply the Retainer to any invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer. Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client. DRC, in its discretion, upon five (5) business days notice to the Client, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer. Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay of more than 60 days, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

**5. STORAGE**:  Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to



assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC. DRC shall return or dispose of any Client data, programs, storage media or other materials furnished by Client to DRC in connection with this Agreement (collectively, the "Client Materials") in the manner requested by the Client.

**6. E-MAIL COMMUNICATIONS**: DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. SUPPLIES**: All supplies shall be furnished at Client's expense.

**8. WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. DRC warrants that Services will be performed timely in a professional and workmanlike manner, in accordance with applicable industry standards. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for reasonable and documented charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer.



Client agrees to pay the reasonable and documented costs for such services in accordance with DRC's then existing fees for such services.  If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. TERMS OF AGREEMENT**:  The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. INDEMNIFICATION**:   The Client shall indemnify and hold DRC and its officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or  misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties.  The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**12. CONFIDENTIALITY**:  Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information. A breach by DRC of any promises or agreement contained herein may result in irreparable and continuing damage to Client for which there will be no adequate remedy at law, and Client shall be entitled to seek injunctive relief or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate), without having to post any bond in support thereof.

**13. OWNERSHIP OF PROGRAMS**:  Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC.  All programs and/or systems documentation in the possession



of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**14. <u>SYSTEMS IMPROVEMENTS</u>**:  DRC's policy is to provide continuous improvements in the quality of service to its clients.  DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**15. <u>UNUSUAL MEASURES</u>**:  Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the reasonable and documented cost of such measures, if provided by DRC, shall be charged to the Client.  Said charges may be required in advance if DRC deems it appropriate.

**16. <u>JURISDICTION</u>**:  In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**17. <u>FORCE MAJEURE</u>**: Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**18. <u>NOTICE</u>**:  Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier.  Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows:

if to DRC, to:                      Donlin, Recano & Company, Inc.,
                                    6201 15th Avenue,
                                    Brooklyn, NY 11219,
                                    Attention:  Nellwyn Voorhies, Esq.;

if to the Client, to:               Evergreen Gardens I LLC
                                    Evergreen Gardens II LLC
                                    c/o All Year Holdings Limited
                                    199 Lee Avenue, #693
                                    Brooklyn, New York 11233



Attention:  Ephraim Diamond and Asaf Ravid
Email: ephraim@arbelcapital.com
Email: ravidasaf@gmail.com

with a copy to:                    Weil, Gotshal & Manges LLP
                                   767 Fifth Avenue
                                   New York, NY 10153
                                   Attention:  Matthew P. Goren, Esq. and
                                   Elizabeth Ruocco, Esq.

**19.  GOVERNING LAW**: This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**20.  SEVERABILITY**: All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**21.  ASSIGNMENT**: This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

**22.  GENERAL**:  The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client.  Client will not employ any DRC employee within two (2) years from the termination of this Agreement.  The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy.  The Client shall file an application with the Bankruptcy Court under 28 U.S.C. § 156(c) seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC.  If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

**23. BANK ACCOUNTS**: At the request of the Client or the Client parties, DRC shall be authorized to establish accounts with financial institutions in the name of DRC as agent for the Client to facilitate distributions pursuant to a chapter 11 plan or other transaction.



[Remainder of Page Intentionally Blank]



Accepted and Approved:

**Donlin, Recano & Company, Inc.**
6201 15th Avenue
Brooklyn, New York 11219

By:            Nellwyn Voorhies

Signature:
Title:              President

Date:              8/19/2021


Accepted and Approved:

Evergreen Gardens I LLC
Evergreen Gardens II LLC
c/o All Year Holdings Limited
199 Lee Avenue, #693
Brooklyn, New York 11233

By:          Assaf Ravid

Signature:

Title:          CRO

Date:          8/24/2021


This Agreement is subject to the terms and conditions set forth herein.  Client acknowledges
reading and understanding it and agrees to be bound by its terms and conditions and further
agrees that it is the complete and exclusive statement of the Agreement between the parties,
which supersedes all proposals oral or written and other prior communications between the
parties relating to the subject matter of this Agreement.



## SCHEDULE A
## [Client Name]
## Fee Schedule

| Professional Service | Hourly Rates |
|---|---|
| Executive Management | No charge |
| Senior Bankruptcy Consultant | $140 - $164 |
| Case Manager | $128 - $140 |
| Consultant/Analyst | $104- $124 |
| Technology/Programming Consultant | $76 - $96 |
| Clerical | $35 - $45 |

| Noticing Service | |
|---|---|
| Laser Printing/ Photocopies | $.10 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |

| Solicitation, Balloting, Schedule/SOFA | |
|---|---|
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $72 - $156 as needed |
| Public Securities Solicitation | $72 - $180 per Hour |
| Schedule/SOFA preparation | $72 - $180 per Hour |

| Claims Docketing and Management | |
|---|---|
| Website Development | WAIVED |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.08 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |

| Data Room Services | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $72 per Hour |

| Miscellaneous | |
|---|---|
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $52 per hour |

**<u>Exhibit B</u>**

**Voorhies Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                       :

In re                                      :          **Chapter 11**

                                       :

**EVERGREEN GARDENS MEZZ LLC,** *et al.,*      :          **Case No. 21-10335 (MG)**

                                       :

                 **Debtors.**[1]            :          **(Joint Administration Pending)**

                                       :

------------------------------------------------------------X

### DECLARATION OF NELLWYN VOORHIES IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C §§ 503(b)(1)(A) AND 105(a), AND L.B.R 5075-1 FOR AUTHORITY TO RETAIN AND EMPLOY DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT *NUNC PRO TUNC* TO THE SUBSIDIARY DEBTOR PETITION DATE

     I, Nellwyn Voorhies, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

     1.      I am the President of Donlin, Recano & Company, Inc. ("**DRC**")[2] a chapter 11 administrative services firm whose headquarters are located at 6201 15th Avenue, Brooklyn, New York 11219. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

     2.      This Declaration is made in support of the application (the "**156(c) Application**") of Evergreen Gardens Mezz LLC ("**EGM**" or the "**Initial Debtor**"), together with Evergreen Gardens I LLC ("**EG I**") and Evergreen Gardens II LLC ("**EG II**" and, together with EG I, the "**Subsidiary Debtors**" and, together with the Initial Debtor, the "**Debtors**") for an order,

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Evergreen Gardens Mezz LLC (0416); Evergreen Gardens I LLC (2211); and Evergreen Gardens II LLC (6782). The Debtors' principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Section 156(c) Application.

pursuant to section 156(c) of title 28 of the United States Code, sections 503(b)(1)(A) and 105(a)

of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 5075-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"),

authorizing, but not directing, the appointment of DRC as claims and noticing agent in these

Chapter 11 Cases ("**Claims and Noticing Agent**"), *nunc pro tunc* to the Subsidiary Debtor

Petition Date,[3] in accordance with the terms and conditions of that certain standard Claims

Administration and Noticing Agreement (the "**Section 156(c) Agreement**"). The Section 156(c)

Agreement is annexed to the 156(c) Application as **Exhibit A**.

3.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), DRC

will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "**Clerk**" and

the "**Clerk's Office**"), the noticing- and claims-related services specified in the 156 (c)

Application and the Section 156(c) Agreement. In addition, at the Debtors' request, DRC will

perform such other noticing, claims, administrative, technical, and support services specified in

the Application and the Section 156(c) Agreement.

4.      DRC is comprised of leading industry professionals with significant experience in

both the legal and administrative aspects of large, complex chapter 11 cases. DRC's

professionals have experience in noticing, claims administration, solicitation, balloting and

facilitating other administrative aspects of chapter 11 cases and experience in matters of this size

and complexity. DRC's professionals have acted as official claims and noticing agent and/or

administrative advisor in many large bankruptcy cases in this District and in other districts

nationwide. DRC's active and former cases include: *In re Adara Enterprises Corp*., Case No. 21-

10736 (JKS) (Bankr. D. Del. 2021); *In re Castex Energy 2005 Holdco LLC*, et al., Case No. 21-

---

[3]      Capitalized terms used but not herein defined have the meanings ascribed to them in the Section 156(c)
Application.

30710 (Bankr. S.D. Tex. 2021); *In re Lutheran Social Service Housing, Inc.*, et al. (Receivership), Case No. 09-2021-CV-200 (Bankr. D.N.D. 2021); *In re EHT US1, Inc.*, et al., Case No. 21-10036 (CSS) (Bankr. D. Del. 2021); *In re Tea Olive I, LLC d/b/a Stock+Field*, Case No. 21-30037 (WJF) (Bankr. D. Minn. 2021); *In re Elevate Investments, LLC*, (Receivership), Case No. 20-02398 (JVS) (Bankr. C.D. Cal. 2020); In re Girardi Keese, Case No. 20-21022 (BR) (Bankr. C.D. Cal. 2020); *In re Asaig, LLC*, et al., Case No. 20-35600 (MI) (Bankr. S.D. Tex. 2020); *In re YouFit Health Clubs, LLC*, et. al., Case No. 20-12841 (MFW) (Bankr. D. Del. 2020); In re Cred Inc., et. al., Case No. 20-12836 (JTD) (Bankr. D. Del. 2020); I*n re Gorham Paper and Tissue, LLC*, et. al., Case No. 20-12814 (KBO) (Bankr. D. Del. 2020); *In re FIC Restaurants, Inc.*, et. al., Case No. 20-12807 (CSS) (Bankr. D. Del. 2020); *In re Studio Movie Grill Holdings, LLC*, et al., Case No. 20-32633-11 (SGJ) (Bankr. N.D. Tex. 2020); *In re PizzaExpress Financing 2 PLC*, Case No. 20-34868 (MI) (Bankr. S.D. Tex. 2020); *In re Cosmoledo, LLC*, et al., Case No. 20-12117 (MEW) (Bankr. S.D.N.Y. 2020); *In re Xinergy of Alabama, Inc.*, et al., Case No. 20-02791 (TOM) (Bankr. S.D. Ala. 2020); *In re TPS Oldco, LLC*, et al., Case No. 20-40743 (CJP) (Bankr. D. Mass. 2020).

5.      DRC represents, among other things, the following:

a.      DRC is not a creditor of the Debtors;

b.      DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

c.      by accepting employment in these Chapter 11 Cases, DRC waives any rights to receive compensation from the United States government in connection with the Debtors' cases;

d.      DRC shall not employ any past or present employees of the Debtors for work that involves the Debtors' Chapter 11 Cases;

4

e.     in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, DRC will not be an agent of the United States and will not act on behalf of the United States;

f.     DRC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

g.     in its capacity as Claims and Noticing Agent in these Chapter 11 Cases, DRC will not intentionally misrepresent any fact to any person; and

h.     DRC shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers.

6.     DRC has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors. DRC is currently an affiliate of American Stock Transfer & Trust Company, LLC ("**AST**"). AST is a global financial communications and stakeholder management company. Within the AST corporate structure, DRC operates as a separate and independent legal entity. Given the legal and operational separateness of DRC from AST, DRC does not believe that any relationship it or its affiliates maintains with AST would create a materially adverse interest to the Debtors' estates or any class of creditors or equity security holders.

7.     Additionally, DRC may have served or currently serves in a neutral capacity as the claims and noticing agent for certain parties in interest. However, given DRC's neutral position as the claims and noticing agent in those cases, the Debtors' cases, or any other cases, DRC does not view such relationships as potential conflicts. In addition, DRC and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals and other parties in interest that may be involved in these Chapter 11 Cases in matters unrelated to these cases.

8.      Based on the foregoing, I believe that DRC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that DRC and its personnel: (a) are not creditors, equity security holders, or insiders of the Debtor; (b) are not and were not, within two years before the date of the filing of this Chapter 11 Case, a director, officer, or employee of the Debtor; and (c) do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

9.      To the extent I become aware of DRC having worked with any other creditors of the Debtors, or discovers any facts bearing on matters described herein, I will file a supplemental declaration advising the Court of the same.

10.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated: September 14, 2021

                                    Respectfully submitted,

                                    Donlin, Recano & Company, Inc.

                                    _____
                                    Nellwyn Voorhies
                                    President




                    [*Signature Page to Voorhies Declaration*]

6

**<u>Exhibit C</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                            :

In re                          :         **Chapter 11**
                            :

**EVERGREEN GARDENS MEZZ LLC,** *et al.,*   :        **Case No. 21-10335 (MG)**
                            :

            Debtors.[1]         :         **(Joint Administration Pending)**
                            :

---------------------------------------------------------------X

**ORDER PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. §§ 503(b)(1) AND 105(a),**
**AND L.B.R. 5075-1 AUTHORIZING DEBTORS TO RETAIN AND EMPLOY**
**DONLIN, RECANO & COMPANY, INC., LLC AS CLAIMS AND NOTICING**
**AGENT *NUNC PRO TUNC* TO THE SUBSIDIARY DEBTOR PETITION DATE**

Upon the application (the "**Section 156(c) Application**"),[2] dated September 14,

2021 [ECF No. [__]], of Evergreen Gardens Mezz LLC ("**EGM**" or the "**Initial Debtor**"),

together with Evergreen Gardens I LLC ("**EG I**") and Evergreen Gardens II LLC ("**EG II**" and,

together with EG I, the "**Subsidiary Debtors**" and, together with the Initial Debtor, the

"**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases

(the "**Chapter 11 Cases**"), pursuant to 28 U.S.C. § 156(c), sections 503(b)(1) and 105(a) of title

11 of the United States Code (the "**Bankruptcy Code**"), and Rule 5075-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"),

authorizing, but not directing, the Debtors to retain and employ Donlin, Recano & Company,

Inc. ("**DRC**") as claims and noticing agent ("**Claims and Noticing Agent**") for the Debtors *nunc*

*pro tunc* to the Subsidiary Debtor Petition Date in accordance with the terms and conditions of

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, as applicable, are Evergreen Gardens Mezz LLC (0416); Evergreen Gardens I LLC
(2211); and Evergreen Gardens II LLC (6782). The Debtors' principal offices are located at 199 Lee
Avenue, Suite 693, Brooklyn, New York 11211.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such
terms in the Section 156(c) Application.

that certain standard Claims Administration and Noticing Agreement annexed hereto as **Exhibit A** to the Section 156(c) Application (the "**Section 156(c) Agreement**"), all as more fully set forth in the Section 156(c) Application; and upon the Declaration of Nellwyn Voorhies, the President of DRC, which was annexed to the Section 156(c) Application as Exhibit C (the "**Voorhies Declaration**"); and the Court having jurisdiction to consider the Section 156(c) Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Section 156(c) Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the relief requested in the Section 156(c) Application having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Section 156(c) Application; and the Court having held a hearing to consider the relief requested in the Section 156(c) Application (the "**Hearing**"); and upon the Ravid Declaration, filed contemporaneously with the Section 156(c) Application, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Section 156(c) Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Section 156(c) Application is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.    The Section 156(c) Application is granted to the extent set forth herein.

2.    The Debtors are authorized, but not directed, to retain and employ DRC as Claims and Noticing Agent in these Chapter 11 Cases, pursuant to section 156(c) of the United

states Code, section 503(b)(1)(A) and 105(a) of the Bankruptcy Code, and Local Bankruptcy

Rule 5075-1, *nunc pro tunc* to the Subsidiary Debtor Petition Date, and DRC is authorized and

directed to, as requested by the Debtors, perform the claim and noticing services and related

tasks, in accordance with the terms and conditions set forth in the Section 156(c) Application and

Section 156(c) Agreement.

3.      This Order shall not apply to any services DRC has sought authorization

to render pursuant to the Section 327(a) Application.

4.      DRC shall maintain records of all services showing dates, categories of

services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors,

counsel for the Debtors, the office of the United States Trustee, counsel for any official

committee, if any, monitoring the expenses of the Debtors, and any party in interest who

specifically requests service of the monthly invoices.

5.      The Debtors shall indemnify DRC under the terms of the Section 156(c)

Agreement, as modified pursuant to this Order.

6.      All requests by DRC for the payment of indemnification as set forth in the

Section 156(c) Agreement shall be made by means of an application to the Court and shall be

subject to review by the Court to ensure that payment of such indemnity conforms to the terms of

the Section 156(c) Agreement and is reasonable under the circumstances of the litigation or

settlement in respect of which indemnity is sought; provided, however, that in no event shall

DRC be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if

any), gross negligence, or willful misconduct.

7.      In the event that DRC seeks reimbursement from the Debtors for

attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to

the Section 156(c) Agreement, the invoices and supporting time records for the attorneys' fees

and expenses shall be included in DRC's own applications, both interim and final, but shall be

determined by this Court after notice and a hearing.

8.    Nothing herein shall create, nor is intended to create, any rights in favor of

or enhance the status of any claim held by any party.

9.    DRC shall not cease providing claims processing services during these

chapter 11 cases for any reason, including nonpayment, without an order of the Court.

10.    The Debtors are authorized to take all action necessary to effectuate the

relief granted in this Order.

11.    In the event of any inconsistency between the Section 156(c) Agreement,

the Section 156(c) Application, and this Order, this Order shall govern.

12.    The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2021
        New York, New York

        _____
        HONORABLE MARTIN GLENN
        UNITED STATES BANKRUPTCY JUDGE