WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Initial Debtor and*
*Proposed Attorneys for the Subsidiary Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re                                                       :    Chapter 11
                                                            :
**EVERGREEN GARDENS MEZZ LLC**, *et al.*,                   :    Case No. 21-10335 (MG)
                                                            :
                    Debtors.[1]                             :    (Jointly Administered)
                                                            :    Related Docket No. 78
                                                            :
------------------------------------------------------------X

**SUPPLEMENT TO MOTION OF**
**DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND**
**503(b) AND FED. R. BANKR. P. 2002, 6003, 6004, AND 9014**
**FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**AND APPROVING BID PROTECTIONS AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

     Evergreen Gardens Mezz LLC ("**EGM**" or the "**Initial Debtor**"), together with

Evergreen Gardens I LLC ("**EG I**") and Evergreen Gardens II LLC ("**EG II**" and, together with

EG I, the "**Subsidiary Debtors**" and, together with the Initial Debtor, the "**Debtors**"), as debtors

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Evergreen Gardens Mezz LLC (0416); Evergreen Gardens I LLC (2211); and Evergreen Gardens II LLC (6782). The Debtors' principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully submit the following supplement (the "**Supplement**") to the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(b) and Fed. R. Bankr. P. 2002, 6003, 6004, and 9014 for Entry of Interim and Final Orders (i) Authorizing and Approving Bid Protections and (ii) Granting Related Relief*, dated September 14, 2021 [ECF No. 78] (the "**Bid Protections Motion**"):[2]

1.  On September 14, 2021, the Debtors filed the Bid Protections Motion, in which they request entry of interim and final orders (i) authorizing and approving the Bid Protections, including a Break-Up Fee and Expense Reimbursement, in accordance with the terms and conditions set forth in the Purchase Agreement, and (ii) granting related relief. A hearing on the interim relief sought in the Bid Protections Motion is scheduled for **September 27, 2021 at 11:00 a.m.** (**Prevailing Eastern Time**).[3]

2.  In connection with the execution of the Purchase Agreement, the Series E Notes Trustee, the Mezzanine Lender, and the Purchaser entered into that certain Assignment Agreement, dated August 31, 2021 (the "**Assignment Agreement**"), which is annexed hereto as **Exhibit A**.[4] Significantly, neither the Debtors nor any other All Year entities are parties to the Assignment Agreement. Although a copy of the Assignment Agreement was previously annexed as Exhibit W to the Purchase Agreement, which was filed as an exhibit to the *Declaration of Asaf*

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bid Protections Motion.

[3] *See Order Shortening Notice With Respect to Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(b) and Fed. R. Bankr. P. 2002, 6003, 6004, and 9014 for Entry of Interim and Final Orders (I) Authorizing and Approving Bid Protections and (II) Granting Related Relief*, dated September 15, 2021 [ECF No. 93].

[4] In the event of any inconsistencies between the Assignment Agreement and the general description of such agreement set forth in this Supplement, the Assignment Agreement shall control.

2

*Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of Subsidiary Debtors' Chapter 11 Petitions and Related Relief*, dated September 14, 2021 [ECF No. 3 on the Dockets for EG I and EG II] (the "**Ravid Declaration**"), the Debtors have re-attached a copy of the Assignment Agreement hereto to aid the Court in its consideration of the relief requested in the Bid Protections Motion.

3.  As explained in the *Disclosure Statement for Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated September 13, 2021 [ECF No. 71], at 21, pursuant to the Assignment Agreement, the Series E Notes Trustee and the Mezzanine Lender agreed, during the period between the effective date of the Assignment Agreement and the date of the first Termination Event[5] (the "**Gap Period**"), not to market, solicit or respond to offers for or provide due diligence information with respect to the Denizen or negotiate with any party other than the Purchaser with respect to the possible sale of all or any part of the properties. This commitment was made subject to each party's applicable fiduciary duties with respect to unsolicited expressions of interest, offers or bids and any Bankruptcy Court order that might be entered providing for or requiring a marketing and auction process.

4.  In the event of a Sellers-Prohibited Act[6] during the Gap Period, the sale proceeds in excess of what the Series E Notes Trustee or the Mezzanine Lender (or any of its

---

[5] "Termination Event" means the earliest of (i) termination of the Purchase Agreement, (ii) entry of the Interim Bid Protections Order, (iii) entry of the Interim Bid Protections Order being denied with prejudice, (iv) entry of the Bid Protections Order, (v) entry of a modified Bid Protections Order, (vi) entry of an order by the Bankruptcy Court denying the Subsidiary Debtors' motion for entry of the Bid Protections Order, and (vii) thirty-five (35) days from the Effective Date.

[6] As set forth in Section 35.2 of the Purchase Agreement, the term "Sellers-Prohibited Act" is defined as each of the following actions occurring (a) between the issuance of the Final Bid Protections Order and (b) the earlier of the Closing Date and the termination of the Purchase Agreement:

3

affiliated entities and persons) would have received upon consummation of the transactions contemplated under the Purchase Agreement up to the amount of the Break-Up Fee (the "**Excess Proceeds**") will be irrevocably assigned to the Purchaser, and such assigned proceeds will be the sole, absolute and permanent property of the Purchaser. The several (but not joint) respective obligations of the Series E Notes Trustee and the Mezzanine Lender for payment to the Purchaser of its share of the assigned proceeds will be proportionate to such party's Agreed Proportion (as defined in the RSA) of the total amount of the sale proceeds in excess of what the Series E Notes Trustee and the Mezzanine Lender would have received upon consummation of the transactions contemplated under the Purchase Agreement.

5.    The Assignment Agreement further evidences the support of the Series E Notes Trustee and the Mezzanine Lender of the sale to Purchaser. Because the Series E Notes Trustee and the Mezzanine Lender will each benefit either directly or as a fiduciary if the sale is consummated, they had a financial interest in providing an incentive to the Purchaser to consummate the transactions contemplated in the Purchase Agreement.

[*Remainder of Page Intentionally Left Blank*]

---

Sellers (i) sell the Properties or any part thereof to a third-party other than Purchaser or a permitted assignee thereof, or (ii) lease substantially all of either Property to a third-party other than Purchaser or a permitted assignee thereof, or (iii) refinance any mortgage encumbering any portion of the Properties, which prevents Sellers from being able to complete their performance in accordance with the terms of this Agreement or renders Sellers unable to deliver title to Purchaser as required under this Agreement, Purchaser's ability to purchase the Property in accordance with terms hereof, or (iv) willfully take any act intended to cause a termination (other than as expressly permitted under the terms hereof) or rejection of this Agreement, in each case which prevents Sellers from being able to complete their performance in accordance with the terms of this Agreement or renders Sellers unable to deliver title to Purchaser as required under this Agreement.

Dated: September 22, 2021
New York, New York

      /s/  Matthew P. Goren
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Initial Debtor and*
*Proposed Attorneys for the Subsidiary Debtors*

## Exhibit A

**Assignment Agreement**

## ASSIGNMENT AGREEMENT BY AND AMONG ACI VI DENIZEN LLC, MREF REIT LENDER 9 LLC AND MISHMERET TRUST SERVICES LIMITED, SOLELY IN ITS CAPACITY AS TRUSTEE FOR THOSE CERTAIN HOLDERS OF SERIES E BONDS

This Assignment Agreement is entered into by and among ACI VI Denizen LLC ("ACI"), MREF REIT Lender 9 LLC ("Mezz Lender") Mishmeret Trust Services Limited, solely in its capacity as Trustee for those certain and Holders of Series E Bonds (the "Series E Trustee", hereinafter collectively referred to as the "Parties") on August 31, 2021 ("Assignment Agreement"), and shall be effective upon the Series E Trustee and Mezz Lender executing a restructuring support agreement (the "RSA") supporting the transactions contemplated under the Purchase Agreement (defined below).[1]  This Assignment Agreement supersedes all prior agreements relating to the subject matter of this Assignment Agreement, and any such prior agreement shall be deemed null and void and unenforceable.

WHEREAS, prior to the execution of this Assignment Agreement, ACI has executed the Agreement of Purchase and Sale (the "Purchase Agreement") with Evergreen Gardens I LLC ("Seller I") and Evergreen Gardens II LLC ("Seller II", together with Seller I, the "Sellers") for the purchase of the land and building located at 123 Melrose Street, in the Borough of Brooklyn, Count of Kings, City and State of New York, and for the purchase of the land and building located at 54 Noll Street, in the Borough of Brooklyn, County of Kings, City and State of New York (together, the "Properties") for the purchase price of $506 million (the "Purchase Price");

WHEREAS, pursuant to the Purchase Agreement, ACI's obligations to perform are conditioned upon the Effective Date (defined below) occurring;

WHEREAS, pursuant to the Purchase Agreement, the Sellers are required to commence cases under chapter 11, title 11, of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") to consummate the sale of the Properties to ACI through one or more confirmed chapter 11 plan(s) under the Bankruptcy Code;

WHEREAS, each of the Mezz Lender and Series E Trustee (each, an "Assignor" and together, the "Assignors") will benefit financially either directly or as a fiduciary if the sale of the Properties to ACI is consummated and have a financial interest in providing an incentive to ACI to consummate the transactions contemplated in the Purchase Agreement;

WHEREAS, as an incentive for ACI to enter into the Purchase Agreement, the Mezz Lender and Series E Trustee agreed to support a motion to be filed in the Bankruptcy Court to provide the Purchaser the right to receive the Break-Up Fee, Expense Reimbursement and other protections (the "Bid Protections Order") should the Sellers engage in a Sellers-Prohibited Act;

WHEREAS, during the Gap Period (as defined below), ACI will not have the protections offered under the Bid Protections Order in the event of a Sellers-Prohibited Act;

---

[1] Defined terms herein not otherwise defined shall have the same meanings ascribed to them in the Purchase Agreement.

1

WHEREAS, the protections provided by this Assignment Agreement are intended to reduce the risks to ACI of Sellers-Prohibited Acts occurring during the Gap Period;

NOW, THEREFORE, in consideration of the foregoing, the Parties hereby agree as follows:

1. <u>Effective Date</u>. This Assignment Agreement shall become effective upon the Series E Trustee and Mezz Lender executing the RSA (the "Effective Date"). For purposes hereof, the "Gap Period" shall be the period between the Effective Date and the date of the first Termination Event (defined below).

2. <u>Non-Solicitation</u>. During the Gap Period, each Assignor agrees that it shall not market, solicit or respond to offers for or provide due diligence information with respect to the Properties, or negotiate with any party other than ACI with respect to the possible sale of all or any part of the Properties (subject in each case to applicable fiduciary duties of Mezz Lender and the Series E Trustee with respect to unsolicited expressions of interest, offers or bids and any Bankruptcy Court order that might be entered providing for or requiring a marketing and auction process). Assignors' duties under this Section 2 shall expire upon the earlier to occur of the termination of the Purchase Agreement in accordance with its terms and the termination of the Executed RSA in accordance with its terms.

3. <u>Assignment of Assigned Proceeds</u>. In the event of a Sellers-Prohibited Act during the Gap Period, the sale proceeds, up to the amount of the Break-up Fee, in excess of what the Assignors (or any of their respective heirs, assignees, designees, creditors, or affiliates) would have received upon consummation of the transactions contemplated under the Purchase Agreement, are hereby irrevocably assigned to ACI, and such assigned proceeds shall be the sole, absolute and permanent property of ACI (such amount, in the aggregate, is the "Assigned Proceeds"). Each Assignor's several (but not joint) obligation for payment to ACI of its share of the Assigned Proceeds shall be proportionate to such Assignor's Agreed Proportion (as defined in the RSA) of the total amount of the sale proceeds in excess of what the Assignors (or any of their respective heirs, assignees, designees, creditors, or affiliates) would have received upon consummation of the transactions contemplated under the Purchase Agreement.

4. <u>Obligation Absolute</u>. The obligation of each Assignor to pay its Agreed Portion of the Assigned Proceeds to ACI shall be unconditional and absolute and shall be paid to ACI upon the receipt of proceeds from closing of any transaction(s) associated with a Sellers-Prohibited Act during the Gap Period.

5. <u>Termination</u>. Provided the obligation to pay ACI the Assigned Proceeds has not already accrued, the obligation herein to pay the Assigned Proceeds to ACI shall expire and terminate upon the earliest of (i) termination of the Purchase Agreement; (ii) entry of the Interim Bid Protections Order; (iii) entry of the Interim Bid Protections Order is denied with prejudice; (iv) entry of Bid Protections Order; (v) entry of a modified Bid Protections Order; (vi) entry of an

order by the Bankruptcy Court denying Sellers' motion for entry of the Bid Protections Order; and (vii) thirty-five (35) days from the Effective Date (each, a "Termination Event").

6. <u>Severability</u>. The provisions of this Assignment Agreement are severable, and, if any clause or provision shall be held invalid and unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction, and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision of this Assignment Agreement in any jurisdiction.

7. <u>Amendments</u>. This Assignment Agreement may only be modified, supplemented or amended by written agreement signed by all the Parties.

8. <u>Entire Agreement</u>. This Assignment Agreement integrates all of the terms and conditions with respect to the Properties and supersedes all oral representations and negotiations and prior writings, if any, with respect to the subject matter hereof.

9. <u>Headings; Execution</u>. The headings and subheadings used herein are for convenience of reference only and shall be ignored in interpreting the provisions of this Assignment Agreement. This Assignment Agreement may be executed in counterparts by facsimile or other electronic signature, which, when so executed and delivered, shall be deemed to be an original.

10. <u>Governing Law and Jurisdiction</u>. This Assignment Agreement will be governed by and construed in accordance with New York law, without regard to conflict-of-laws principles, and each Party submits to the personal jurisdiction of the Courts of the State of New York.

11. <u>Waiver of Jury Trial</u>. PARTIES HERETO WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR RELATING TO OR ARISING FROM THE RELATIONSHIP WHICH IS THE SUBJECT OF THIS ASSIGNMENT AGREEMENT AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

12. <u>Legal Counsel; Negotiated Documents</u>. Each Party hereby represents and warrants to the others Party that they have had the opportunity to consult with, and receive advice from, legal counsel of their choice with respect to this Assignment Agreement (and all documents related hereto), or they have had an opportunity to consult with legal counsel of their choice and have made the decision not to consult with legal counsel. Without limiting the forgoing, each of the Parties hereby acknowledges and agrees that: (a) the terms of this Assignment Agreement (and all documents related hereto, if any) were negotiated by and among the Parties at arm's-length; and (b) such Party has legal and business options available to it other than the execution and delivery

3

of this Assignment Agreement but has nonetheless decided to execute this Assignment Agreement and has done so voluntarily and without duress.

       13.     <u>Time of Essence</u>. Time is of the essence with respect to this Assignment Agreement.

[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE TO FOLLOW]

In witness whereof, this Assignment Agreement has been executed by the Parties hereof.

MREF REIT Lender 9 LLC

By: _____
Kevin Culliinan
Authorized Representative

MISHMERET TRUST SERVICES LIMITED,

In its capacity as Trustee for the Series E Bondholders

By:_____

By:_____

In witness whereof, this Assignment Agreement has been executed by the Parties hereof.

MREF REIT Lender 9 LLC

By:_____

MISHMERET TRUST SERVICES LIMITED,

In its capacity as Trustee for the Series E Bondholders

By: _Ram Sebty-partner_ *[stamp: Mishmeret Trust Company LTD]*

By: _Romy Kotzer - partner_

5

ACI VI DENIZEN LLC

By: _____
Name: Jeffrey A. Goldberger
Title:  Authorized Signatory


By: _____
Name: Andrew B. Cohen
Title:  Authorized Signatory