Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case Nos. 21-10335-mg; 21-11609-mg; 21-11610-mg

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matters of:

7   EVERGREEN GARDENS MEZZ LLC,

8                Debtor.

9   - - - - - - - - - - - - - - - - - - - - -x

10  Evergreen Gardens I LLC,

11               Debtor.

12  - - - - - - - - - - - - - - - - - - - - -x

13  Evergreen Gardens II LLC,

14               Debtor.

15  - - - - - - - - - - - - - - - - - - - - -x

16               United States Bankruptcy Court

17               One Bowling Green

18               New York, New York 10004

19

20               September 15, 2021

21               10:07 AM

22

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

Page 2

1    10:00 AM

2    21-10335-mg Evergreen Gardens Mezz LLC

3    Ch. 11

4

5    HEARING Using Zoom for Government RE: Motion of Debtors for

6    Entry of an Order (A) Scheduling Combined Hearing on Adequacy

7    of Disclosure Statement and Confirmation of Debtors' Joint

8    Chapter 11 Plan; (B) Establishing Procedures for Objecting to

9    Disclosure Statement, Solicitation Procedures, and Chapter 11

10   Plan; (C) Approving Form, Manner, and Sufficiency of Notice of

11   Combined Hearing, Commencement of Chapter 11 Cases, and Section

12   341(a) Meeting of Creditors; (D) Conditionally Approving the

13   Disclosure Statement for Purposes of Soliciting the Mezzanine

14   Lender; and (E) Granting Related Relief [ECF No. 76]

15

16   HEARING Using Zoom for Government RE: Application of Debtors

17   Pursuant to 28 U.S.C. § 156(c), 11 U.S.C §§ 503(b)(1)(A) and

18   105(a), and L.B.R 5075-1 for Authority to Retain and Employ

19   Donlin, Recano & Company, Inc. as Claims and Noticing Agent

20   Nunc Pro Tunc to the Subsidiary Debtor Petition Date filed by

21   Matthew Paul Goren on behalf of Evergreen Gardens Mezz LLC [ECF

22   No. 68]

23

24

25

Page 3

1   HEARING Using Zoom for Government RE: Motion of Debtors

2   Pursuant to 11 U.S.C. §§ 105(a), 342(a), and 521 and Fed. R.

3   Bankr. P. 1007 and 2002(a)(1) for Entry of an Order (I)

4   Extending Time to File Schedules of Assets and Liabilities,

5   Schedules of Executory Contracts and Unexpired Leases, and

6   Statements of Financial Affairs; and (II) Authorizing Debtors

7   to (A) File a Consolidated List of Creditors and (B) Redact

8   Certain Personal Identification Information for Tenants filed

9   by Matthew Paul Goren on behalf of Evergreen Gardens Mezz LLC

10  (Doc # 66)

11

12  HEARING Using Zoom for Government RE: Motion of Subsidiary

13  Debtors for (I) Authority to (A) Obtain Post-Petition

14  Financing, (B) Use Cash Collateral, (C) Grant Liens and Provide

15  Superpriority Administrative Expense Status, (D) Grant Adequate

16  Protection, (E) Modify the Automatic Stay, and (F) Schedule a

17  Final Hearing and (II) Related Relief filed by Matthew Paul

18  Goren on behalf of Evergreen Gardens Mezz LLC. (Doc. ## 85, 86)

19

20

21

22

23

24

25

Page 4

1    HEARING Using Zoom for Government RE: Motion of Debtors for

2    Entry of Interim and Final Orders (I) Authorizing Subsidiary

3    Debtors to (A) Continue Using Existing Cash Management System,

4    Bank Accounts, and Business Forms, (B) Implement Changes to

5    Cash Management System in the Ordinary Course of Business; and

6    (II) Granting Related Relief filed by Matthew Paul Goren on

7    behalf of Evergreen Gardens Mezz LLC. (Doc #69)

8

9    HEARING Using Zoom for Government RE: Motion of Debtors

10   Pursuant to Fed. R. Bankr. P. 1015(b) for Entry of Order

11   Directing Joint Administration of Related Chapter 11 Cases

12   filed by Matthew Paul Goren on behalf of Evergreen Gardens Mezz

13   LLC. (Doc # 63)

14

15   HEARING Using Zoom for Government RE: Motion of Debtors for

16   Entry of Interim and Final Orders (I) Authorizing Subsidiary

17   Debtors to (A) Pay Certain Critical Operating Expense Claims,

18   and (B) Honor Tenant Obligations; and (II) Granting Related

19   Relief filed by Matthew Paul Goren on behalf of Evergreen

20   Gardens Mezz LLC. (Doc # 67)

21

22

23

24

25

Page 5

1   21-11609-mg Evergreen Gardens I LLC

2   Ch 11

3

4   HEARING Using Zoom for Government RE: Motion of Debtors for

5   Entry of an Order (I) Extending Time to File Schedules of

6   Assets and Liabilities, Schedules of Executory Contracts and

7   Unexpired Leases, and Statements of Financial Affairs; and (II)

8   Authorizing Debtors to (A) File a Consolidated List of

9   Creditors and (B) Redact Certain Personal Identification

10  Information for Tenants filed by Matthew Paul Goren on behalf

11  of Evergreen Gardens I LLC. (Doc #5)

12

13  HEARING Using Zoom for Government RE: Motion of Debtors

14  Pursuant to Fed. R. Bankr. P. 1015(b) for Entry of Order

15  Directing Joint Administration of Related Chapter 11 Cases

16  filed by Matthew Paul Goren on behalf of Evergreen Gardens I

17  LLC. (Doc # 4)

18

19

20

21

22

23

24

25

Page 6

1    21-11610-mg Evergreen Gardens II LLC

2    Ch 11

3

4    HEARING Using Zoom for Government RE: Motion of Debtors for

5    Entry of an Order (I) Extending Time to File Schedules of

6    Assets and Liabilities, Schedules of Executory Contracts and

7    Unexpired Leases, and Statements of Financial Affairs; and (II)

8    Authorizing Debtors to (A) File a Consolidated List of

9    Creditors and (B) Redact Certain Personal Identification

10   Information for Tenants filed by Matthew Paul Goren on behalf

11   of Evergreen Gardens II LLC. (Doc #5)

12

13   HEARING Using Zoom for Government RE: Motion of Debtors

14   Pursuant to Fed. R. Bankr. P. 1015(b) for Entry of Order

15   Directing Joint Administration of Related Chapter 11 Cases

16   filed by Matthew Paul Goren on behalf of Evergreen Gardens I

17   LLC. (Doc # 4)

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Beck

Page 7

```
 1    A P P E A R A N C E S :

 2    WEIL, GOTSHAL & MANGES LLP

 3         Attorneys for the Initial Debtor and Proposed Attorneys

 4          for the Subsidiary Debtors

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY:  MATTHEW P. GOREN, ESQ.

 9         GARY HOLTZER, ESQ.

10         JACQUELINE MARCUS, ESQ.

11         ROBERT BEREZIN, ESQ.

12         ELIZABETH RUOCCO, ESQ.

13         THEODORE HECKEL, ESQ.

14         (VIA ZOOM)

15

16    U.S. DEPARTMENT OF JUSTICE

17         Office of the United States Trustee

18         U.S. Federal Office Building

19         201 Varick Street

20         Suite 1006

21         New York, NY 10014

22

23    BY:  ANDREA B. SCHWARTZ, ESQ. (VIA ZOOM)

24

25
```

1    CHAPMAN & CUTLER LLP

2         Attorneys for Mishmeret Trust Company, Ltd., as Series

3          E Notes Trustee

4         1270 Avenue of the Americas

5         New York, NY 10020

6

7    BY:  MICHAEL FRIEDMAN, ESQ.

8         HELENA HONIG, ESQ.

9         (VIA ZOOM)

10

11   CHAPMAN & CUTLER LLP

12        Attorneys for Mishmeret Trust Company, Ltd., as Series

13         E Notes Trustee

14        111 West Monroe Street

15        Chicago, IL 60603

16

17   BY   STEPHEN R. TETRO, II, ESQ.

18        CARSON KLARCK, ESQ.

19        AARON M. KRIEGER, ESQ.

20        (VIA ZOOM)

21

22

23

24

25

1   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON

2        Attorneys for JPMorgan Chase Bank, N.A.

3        One New York Plaza

4        New York, NY 10004

5

6   BY:  GARY KAPLAN, ESQ. (VIA ZOOM)

7

8   GOODWIN PROCTER LLP

9        Attorneys for MREF REIT Lender 9, LLC and MREF REIT

10        Lender 15, LLC

11        The New York Times Building

12        620 Eighth Avenue

13        New York, NY 10018

14

15   BY:  KIZZY L. JASHAROW, ESQ.

16        MICHAEL GOLDSTEIN, ESQ.

17        ARTEM SKOROSTENSKY, ESQ.

18        (VIA ZOOM)

19

20

21

22

23

24

25

1   THOMPSON HINE LLP

2         Attorneys for Atlas Capital

3         335 Madison Avenue

4         12th Floor

5         New York, NY 10017

6

7   BY:  JOHN H. BAE, ESQ. (VIA ZOOM)

8

9   THOMPSON HINE LLP

10        Attorneys for Atlas Capital

11        10050 Innovation Drive

12        Suite 400

13        Miamisburg, OH 45342

14

15   BY:  JONATHAN S. HAWKINS, ESQ. (VIA ZOOM)

16

17

18

19

20

21

22

23

24

25

1                P R O C E E D I N G S

2              THE COURT:  Good morning, everybody.  This is Judge

3      Glenn.  We're here on Evergreen Gardens Mezz, LLC, 21-10335 and

4      the additional cases that have been filed, 21-11609 and

5      21-11610.  This is the first -- hearing on the first day

6      motions.  Who's going to begin with the background of the case

7      on behalf of the debtors?

8              MR. HOLTZER:  Good morning, Your Honor.  Gary

9      Holtzer, Weil, Gotshal & Manges, for the debtors.  If I may

10     begin.

11             THE COURT:  All right.  Good morning, Mr. Holtzer.

12             MR. HOLTZER:  Thank you, Your Honor.  First, just for

13     ease of reference, as Your Honor just mentioned, we have three

14     debtors, not one anymore.  There are two debtors that have been

15     filed.  They are the subsidiary debtors, Evergreen Gardens I,

16     LLC and Evergreen Gardens II, LLC.  We tend to refer to them as

17     EG I and EG II, Your Honor, just for reference point.

18             From Weil, appearing today with me Jacqueline Marcus,

19     Matt Goren and Robert Berezin, my partners, and Elizabeth

20     Ruocco and Theodore Heckel will also handle some of the first

21     days, Your Honor, as they worked on them.

22             We've had all the appearances made but it may be

23     helpful to Your Honor just because the fields of

24     (indiscernible) has now expanded for me to just make a few

25     brief introductions, so you know who all the players are, if

Page 12

1    that's okay.

2              THE COURT:  Please go ahead.

3              MR. HOLTZER:  Yeah.  So we have Gary Kaplan.  He may

4    have others from his firm but Gary Kaplan from Fried Frank

5    representing JPMorgan.  They are counsel to the EG I property

6    level lender.  Right?  And that's JPMorgan.  We'll come back to

7    them.

8              We have Michael Friedman at the Chapman Cutler firm.

9    He represents the trustee for the noteholders who are the

10   lenders at the EG II property level entity.

11             We have Michael Goldstein and Kizzy Jarashow from

12   Goodwin Procter.  And they represent the mezz lender in the

13   original file deal as well as the DIP lender in the EG I debtor

14   deal.

15             We have John Bae from Thompson Hine.  He is counsel

16   to the purchaser, which is an affiliate of Atlas.

17             And, of course, we have Andrea Schwartz from the U.S.

18   trustee.  And I'd like to start, first of all, by thanking

19   Andrea for all of her help.  We know she's not feeling well,

20   and she has been tremendous assistance over the last few weeks

21   and, particularly, over the course of last night and into the

22   early morning reviewing pleadings as we finished them up.  So

23   we really want to thank her for all of her work.  And we'll

24   come back to some U.S. trustee comments that we're

25   incorporating into our documents as we move through today, Your

Page 13

1    Honor.

2              So as Your Honor mentioned, this is the first day

3    hearing for EG I and EG II.  We have a couple of matters that

4    we'd like to address for Evergreen Gardens Mezz entity, the

5    pre-existing debtor that we'll go through during this hearing.

6              First and foremost, Your Honor, we want to thank you

7    for making your time today.  We know this is a hard day for

8    some and a holiday coming up and we're going to brief as we can

9    today in order to get the relief that we need to move forward.

10   Your chambers have been extraordinary and coordinating over the

11   last few days and providing lots of assistance.  And so we very

12   much appreciate that and wanted to just thank you again for

13   also the patience over the last couple of months after we filed

14   the first case allowing the parties to negotiate now what is

15   the finalized and documented transaction with a process that is

16   now embodied in the documents we have filed with the court.

17             And so, what I'd like to do, Your Honor, is make a

18   couple of other introductions.  We have Mr. Asaf Ravid, the

19   CEO, the chief executive officer and chief restructuring

20   officer of the debtors' ultimate corporate parent, All Year

21   Holdings Ltd. and, importantly, he is one of the authorized

22   representatives of the debtors and our first day declarant.  So

23   he is here today.

24             And we also have Mr. Ephraim Diamond who is an

25   associate restructuring officer of All Year Holdings and an

Page 14

1   authorized representative of the debtors as well.

2           We also have with us today, Your Honor, Cynthia

3   Romano from the CohnReznick firm.  And they are the financial

4   advisors to EG I and EG II and the affiant on our DIP motion.

5           We also have the Donlin Recano firm, representatives

6   from that firm, who are the official -- proposed official

7   claims agent, Your Honor.

8           So they are all here in court.

9           Now we decided that we're not going to -- we didn't

10  think it was appropriate to make a fancy PowerPoint

11  presentation.  If it's acceptable to the Court, I would like to

12  give the Court an overview of how we propose to move the

13  Chapter 11 cases forward and how we propose to run today's

14  hearing with a little background as well if that's acceptable

15  to the Court.

16          THE COURT:  Please go ahead.

17          MR. HOLTZER:  All right.  So, Your Honor, the

18  transaction, right, as set forth in Mr. Ravid's declaration,

19  the centerpiece of the company's exit transaction, is a Chapter

20  11 plan, right, with a sale of two adjacent residential

21  apartment properties in Brooklyn.  And those properties are

22  known as the Denizen X and the Denizen Y.  And they are owned

23  by EG I and EG II, respectively.  And the sale, as we outlined

24  in our submission, is for $506 million.  And the purchaser, as

25  I mentioned a moment ago, is an affiliate of Atlas Capital

Page 15

1    Group.  And the purchase agreement, Your Honor, was signed

2    prior to the filing and underwent a few amendments but it has

3    been signed before the filing.

4              Now in each of the three debtors, Your Honor, before

5    this Court, we have the key constituent support for the plan

6    and the process that we outline in the file.  And I just want

7    to give you a quick summary of the capital structure of the

8    three debtors and then mention how we have that support

9    documented so Your Honor can see the outline of how this has

10   come together.

11             So, as I think Your Honor may be aware from our

12   submission, EG I and EG II have separate capital structures

13   with different lenders.  The EG I entity, which again is a

14   property level entity that owns the Denizen X, right, JPMorgan

15   has approximately $185 million of secured debt at that level.

16   They're secured by the Denizen X.

17             At the EG II level, right, you have about $252

18   million of mortgage debt held by the noteholders, right, and

19   they are secured by the Denizen Y.  Right?

20             And then just above EG I, you have the preexisting

21   debtor that we had filed previously, Evergreen Mezz, LLC, and

22   that entity has approximately $65 million owed to the mezz

23   lender.  And that entity owns EG I.

24             So the documents, Your Honor, that reflect the

25   support of these key constituents that are now embodied in our

1    filing include a restructuring support agreement, which was

2    dated August 31st, 2021, and that's among, on the debtors'

3    side, the debtor entities along with the mezz lender and the

4    secured noteholders at EG II.

5         You also have consensual use of cash collateral by

6    JPMorgan at EG I.  You have consensual use of cash collateral

7    by the noteholders at EG II.  There is no DIP necessary, Your

8    Honor, at EG II for the Denizen Y during the case based upon

9    our estimate.  And you have a $7 million DIP loan at EG I

10   provided by the mezz lender.

11        Okay.  So the next thing we'd like to mention, Your

12   Honor, is that a key feature of the transaction, as Your Honor

13   knows from some prior status reports we have filed and

14   conferences, a key feature involves the allocation of the sale

15   proceeds.  The allocation is agreed to between EG I and EG II

16   so that 50.75 percent of the sale proceeds go to EG I and 49.25

17   percent go to EG II.

18        Now with the sale price of $506 million, Your Honor,

19   and the debt that I just outlined and the allocation

20   percentages, a couple of things become clear for the Court and

21   hopefully are helpful in today's hearing.

22        First, the EG I Chapter 11 plan, which is on file,

23   provides for full payment of its creditors and a recovery to

24   the mezz lender based upon the debtors' books and records of EG

25   I's creditors.

1           On the EG II side, right, in that Chapter 11 case,

2    the allocation won't satisfy the amounts owed to the secured

3    creditors, the noteholders who have a mortgage on the Denizen

4    Y.  And that leaves them with a deficiency claim in the general

5    unsecured claim class.

6           Ms. Marcus, later on in the hearing, Your Honor, will

7    go into some more detail, and I don't want to steal her

8    thunder, but we're well positioned in EG II to confirm the plan

9    based upon the votes that we know of so far.  And we'll talk a

10   little bit about that when we get to the item on the agenda

11   regarding our solicitation motion and our request to schedule

12   some hearings.  So I'll leave that for later in the agenda,

13   Your Honor.  I just wanted to put a bookmark in it for now.

14          But now when you turn to the Chapter 11 case process

15   itself, what formats the case, Your Honor, is the RSA

16   milestones that were negotiated and signed up before the filing

17   which is typical.  The restructuring support agreement lays out

18   some milestones as does the purchase agreement with Atlas that

19   cause us to choreograph, if you will, the Chapter 11 case.

20          So the first one, which we've met, is that we needed

21   to file by September 14th.  The second one was we needed to

22   file the plan of reorganization and the disclosure statement

23   and the solicitation motion also by September 14th and we have

24   done that.

25          The next item of relevance -- and I'm going to skip

Page 18

1    over one for a moment.  The next item is that we have to get

2    confirmed, by January 28, 2022, and we have to go effective by

3    February 11, 2022.

4            Those are the key milestones.  Now those milestones

5    are a little bit out in the future and what the parties have

6    done is designed a case where we pre-solicited before we filed

7    so that while we have a longer period of time on the milestones

8    for confirmation and the effective date, everyone in the

9    transaction recognizes that the more quickly we can get this

10   done the less the expense of the Chapter 11 process will be and

11   the recoveries will therefore increase to the parties who have

12   an economic interest in the allocation of the sale proceeds.

13   So our design of the process is meant to try to go as quickly

14   as possible through them.

15           The one item I skipped over, Your Honor, which we

16   will take up at the end of the hearing, is a requirement in the

17   purchase agreement that we provide bid protections to Atlas.

18   And those bid protections are required to be in an order in a

19   final form by October 5th.  And the one unusual piece of this

20   deal, although we think it's very measured and we can talk

21   about it later in the hearing, is that the Atlas purchase

22   agreement requires that we provide them with interim bid

23   protections.  And we'll talk a little bit about that.  We

24   recognize that -- and we've spoken with chambers about this and

25   we've informed Atlas about this and we'll, again, talk about it

1    later in the hearing, but we recognize that Your Honor is going

2    to be away when we were hoping, under the purchase agreement,

3    to have a hearing on this.  So we'll need to work through a

4    solution that's acceptable to the parties regarding the interim

5    bid protections that we will request.

6              So that's how we intend to run the case, Your Honor,

7    in terms of the milestones.  Separately, for today's hearing,

8    Your Honor -- and then I'll turn the virtual podium over to my

9    colleague.  For today's hearing, if it's acceptable to the

10   Court, I would propose to start with the joint admin motion and

11   then to handle the DIP and cash collateral motions.  Then we

12   would turn to the balance of the first days.  And again, we

13   have a couple of our folks who worked on those motions ready to

14   present them.  And we have discussed those motions with all the

15   parties on the phone, including, in particular, with Ms.

16   Schwartz from the U.S. trustee and so we'll be able to address

17   all of her comments and the other comments as we move through

18   them.  And then Ms. Marcus will handle, for scheduling

19   purposes, the request that we get a hearing date for the

20   disclosure statement and plan confirmation in a combined way.

21   And then we will take up at the end, Your Honor, the scheduling

22   of the bid protections relief that we have also sought, if

23   that's acceptable for today, Your Honor, in terms of running

24   the hearing.

25             THE COURT:  That's fine.  Have you completed your

Page 20

1    introductory remarks, Mr. Holtzer?

2           MR. HOLTZER:  Yes, Your Honor.

3           THE COURT:  All right.  I would like to ask Ms.

4    Schwartz to address the Court.  Obviously, the U.S. trustee is

5    always faced with the task before the Court is of reviewing the

6    first day motions and, obviously, you acknowledged her

7    assistance.  I've always found her to be of great assistance to

8    the Court as well.

9           So, Ms. Schwartz, may I ask you to -- if you'd

10   address the Court?

11          MS. SCHWARTZ:  Sure.  Good morning, Your Honor.

12   Andrea Schwartz for the U.S. trustee for the record.

13          Judge, prior to the filing of the two additional

14   cases yesterday, debtors' counsel has scheduled and had with us

15   several update calls to keep us in the loop as their

16   negotiations have been going on.  As the Court knows, when they

17   filed the first case, there was concerns about why that case

18   was here and what was happening as far as the sale process and

19   so forth.  And I think they've done a very good job of keeping

20   us updated and updating the Court as well on the progress of

21   the sale negotiations and so forth.

22          So with respect to doing the best that they could in

23   terms of the timing, I think that they really have met that

24   obligation, certainly as far as the U.S. trustee is concerned.

25          With respect to the papers, we, like the Court, have

1    gotten a lot of those papers very recently and we've provided

2    comments to a lot of the ordinary first day motions and so

3    forth and we've worked through our comments.  I think that

4    there'll be some revised proposed orders that the debtors will

5    be submitting to chambers.  We went through them morning on a

6    conference call the DIP motion and cash collateral.  So the

7    debtors and all of the parties relating to that agreement --

8    I'm going to hopefully get this right -- under the EG I --

9              THE COURT:  EG I, yes.  Right.

10             MS. SCHWARTZ:  Okay.  EG I order -- they have all our

11   comments and we also so advised and so forth.  So I think

12   they'll probably walk the Court through that.

13             We haven't had a chance to yet read the RSA and the

14   plan and so forth although we've discussed that in general

15   terms with the debtors.

16             So I think, Your Honor, as far as we're concerned --

17   and there are some things -- like, we haven't yet spoken with

18   Ms. Marcus with respect to that end of the case.  But we

19   understand that the debtor is going to seek a combined

20   disclosure statement hearing.  That's really going to be up to

21   the Court as to whether or not the Court is going to approve

22   that in terms of this case and the facts of this case.  But as

23   far as those documents are concerned, unfortunately, we haven't

24   read those yet so we're trying to just make our way through

25   these documents.  And based on the exchanges that we've had

Page 22

1    with debtors' counsel up until this point, we have no reason to

2    think that things won't get resolved or if we have an issue and

3    we bring it to their attention, we won't be able to have good

4    communication and hopefully be able to resolve anything that

5    might not have been picked up to that point.

6              THE COURT:  Thank you, Ms. Schwartz.  And I have to

7    say because of the late filing -- and yesterday Mr. Goren

8    provided my chambers with what were then drafts of first day

9    motions that had not been finalized and then with the final

10   versions which have now been filed.  I have not read the

11   disclosure statement or quite a few of the other documents.  I

12   read as much as I could possibly read in the time available.

13   This morning was the only time that I could have the hearing on

14   first day motions, so we'll go forward.

15              Thank you very much, Ms. Schwartz.

16              MS. SCHWARTZ:  One thing, Your Honor.  Mr. --

17   although he's coming up as Matthew Goren, Mr. Holtzer mentioned

18   that I've been under the weather.  And unfortunately, the only

19   -- I've got to go to see the doctor today and I will have to

20   cut off this call by probably 11:20.  So if --

21              THE COURT:  I hope we're done by then, Ms. Schwartz.

22              MS. SCHWARTZ:  Okay.  Thank you.

23              THE COURT:  Is Ms. Cornell on the line?

24              MS. SCHWARTZ:  No.  Actually, we had two hearings.

25   Unfortunately, we had two hearings at the same time so she's on

Page 23

1    another hearing.

2            THE COURT:  Okay.  All right.  Thank you very much.

3            MS. SCHWARTZ:  Thank you.

4            THE COURT:  All right.  Mr. Holtzer, this may come up

5    a little bit later but let me ask you this question now.  So in

6    a couple of places, but in the Ravid declaration in the chart

7    which is at -- starts at page 7 and goes through page 11, which

8    shows the claims and interest and basically outlines the plan.

9    For EG II, for the Class V general unsecured creditors,

10   approximate percentage recovery uncertain depending upon the

11   results of litigation, can you tell me what that litigation is

12   about?

13           MR. HOLTZER:  Sure.  I think the litigation would be

14   avoidance action recoveries to the extent they exist.  And we

15   don't know of any other litigation at that point but it's only

16   avoidance action litigation.  The liens of the mortgage lenders

17   based upon the work done by the real estate lawyers is covered

18   by all of the assets of EG II.  So the mortgage lenders, when

19   the allocation of sale proceeds happens, take the value from

20   the sale and the only thing that's left are avoidance action

21   proceeds.  And the way that the cash collateral order works on

22   EG II -- and Mr. Friedman from the Chapman Cutler representing

23   the secured lender at EG II can comment on this, if need be, at

24   the appropriate time.  They have taken, as part of the adequate

25   protection, subject, of course, to your Court's review, the

Page 24

1    avoidance action proceeds.  So to the extent that there is any

2    avoidance action proceeds and any left after the adequate

3    protection lien of the mortgage lender in EG II, that would be

4    the sole source of recovery to unsecured creditors in the

5    general unsecured class.

6          MR. FRIEDMAN:  Your Honor, Michael Friedman for

7    Mishmeret Trust Company Ltd.

8          Just one small correction on that.  The avoidance

9    action is not part of the interim order.  It is noted in the

10   order that we would be requesting that as part of the final

11   order, but it is not one of the requirements to be entered into

12   today.

13         MR. HOLTZER:  Yes.  I didn't mean to suggest it was

14   for today.  It comes in the final order.  Thank you for the

15   correction, Mr. Friedman.

16         MR. FRIEDMAN:  Yeah.  Just a clarification.

17         THE COURT:  Thank you, Mr. Friedman.  I have some

18   other questions, but I'll wait for the specific motions to

19   raise those.

20         All right.  Mr. Holtzer, we can -- unless -- does

21   anybody have any other preliminary comments they want to make

22   before we get into the motions?

23         All  right.  Mr. Holtzer, let's proceed.

24         MR. HOLTZER:  Thank you, Your Honor.  I'm going to

25   cede the virtual podium to Mr. Goren who's much smarter about

Page 25

1  this than me.

2          THE COURT:  I'll leave that to the two of you to

3  figure out.  Go ahead, Mr. Goren.

4          MR. GOREN:  Good morning, Your Honor.  Matthew Goren

5  from Weil, Gotshal & Manges on behalf of the debtors.

6          Your Honor, before we begin, does the Court have a

7  preference about whether we move Mr. Ravid's first day

8  declaration into evidence now or before each motion?

9  Obviously, the first --

10         THE COURT:  No.  I think you should move -- I guess

11  we have two declarations in total.  We have the Ravid

12  declaration and -- I apologize.  I forget her name from

13  CohnReznick.  Why don't you move them both into evidence now?

14         MR. GOREN:  Absolutely.  So thank you, Your Honor.

15  Mr. Asaf Ravid is the CEO and CRO of the debtors' indirect

16  parent, All Year Holdings, and is an authorized representative

17  of the debtors, and he's present with us on the line, Your

18  Honor.  And if called upon, he would testify that the matters

19  set forth in his declaration, at ECF number 3, and the debtors

20  offer his declaration as evidence in support of their first day

21  motions.

22         THE COURT:  Are there any objections to the Court

23  admitting in evidence the Ravid declaration which is ECF number

24  3?

25         All right.  It's in evidence.  Thank you very much.

1        (Declaration of Asaf Ravid in support of first day motions

2    received in evidence)

3            MR. GOREN:  Thank you, Your Honor.  And the debtors

4    would also like to move and admit into evidence the declaration

5    of Ms. Cynthia Romano, principal and global director in the

6    restructuring dispute resolution practice at CohnReznick, the

7    debtors' proposed financial advisor.  Ms. Romano is on the line

8    with us and if called upon, she would testify that the matters

9    set forth in her declaration at ECF number 86 -- and the

10    debtors offer her declaration as evidence as well.

11            THE COURT:  All right.  Are there any objections to

12    the Court admitting in evidence the Romano declaration, ECF

13    docket number 86?

14            Hearing no objection, it's in evidence as well.

15        (Declaration of Cynthia Romano, in support of debtors'

16    motion for post-petition DIP financing, received in evidence)

17            THE COURT:  Go ahead, Mr. Goren.

18            MR. GOREN:  Thank you, Your Honor.

19            The first item on the agenda is the debtors' joint

20    administration motion at ECF number 4 whereby the debtors are

21    seeking to jointly administer the subsidiary debtors' Chapter

22    11 cases with the existing mezzanine debtors' case for

23    procedural and efficiency purposes only.  Your Honor, I'm happy

24    to answer any questions.  Otherwise, the debtors would

25    respectfully request the Court enter the order.

Page 27

1           THE COURT:  Are there any -- anybody else want to be

2  heard with respect to the joint administration motion.

3           MS. SCHWARTZ:  Your Honor, we have no objection, but

4  I just want to make sure the Court has the latest orders.

5  That's all I -- I know that there were different versions and

6  so forth.  So assuming --

7           THE COURT:  (Indiscernible), Ms. Schwartz, I don't

8  know whether I got the latest versions.

9           MS. SCHWARTZ:  Okay.

10           MR. GOREN:  Ms. Schwartz, I think the comments that

11  you gave us a few days ago with respect to that motion have

12  been incorporated into what was uploaded and filed on the

13  docket.

14           MS. SCHWARTZ:  All right.  Okay.

15           THE COURT:  Mr. Goren, just give me the ECF docket

16  number of the motion.

17           MR. GOREN:  That was ECF number 4.

18           THE COURT:  All right.  Does anybody else wish to be

19  heard with respect to the joint administration motion, ECF

20  number 4?

21           The motion is granted.

22           MR. GOREN:  Thank you, Your Honor.

23           Your Honor, the next item on the agenda is the

24  subsidiary debtors' financing and cash collateral motion.  That

25  is ECF number 85.

Page 28

1          Your Honor, by this motion, each of the subsidiary

2    debtors today is seeking approval of its own financing package

3    to be used upon its operations and manage the respective

4    Denizen properties that it owns and holds to cover the cost of

5    administering the Chapter 11 cases and, of course, most

6    importantly, to bridge the hopefully short gap to a value

7    maximizing transaction to the purchaser.  And, Your Honor --

8          THE COURT:  What's the ECF number because your agenda

9    doesn't have the ECF number.

10          MR. GOREN:  I'm sorry.  ECF number 85.

11          THE COURT:  All right.  Go ahead, Mr. Goren.

12          MR. GOREN:  And as Mr. Holtzer alluded, the parties

13    were working (indiscernible) into the night on this document,

14    and we appreciate you and chambers' help.  We circulated, too,

15    a draft of the proposed orders to chambers.  There was a

16    redline that was sent out to chambers earlier this morning.

17    That redline was also circulated to the other parties.  I think

18    most of the principal parties are on this call and, as Ms.

19    Schwartz alluded to, we can walk through that later on just to

20    walk through the changes, Your Honor, specifically if you have

21    any questions.

22          THE COURT:  So the DIP is $7 million is for EG I.

23    But the order you're seeking and the relief, $5 million in the

24    interim period.  That's highly unusual for almost the whole DIP

25    to go out before I have a final hearing.  What's the reason for

Page 29

1    that?

2              MR. GOREN:  Well, I think, in part, Your Honor -- and

3    it's something we would have gotten to.  There are a number of

4    agreements that the parties have made with respect to certain

5    financing and funding that happened pre-filing to give the

6    parties sufficient time to bridge the gap and finalize their

7    negotiations.  Specifically, there was financing done from EG

8    II to EG I.  And --

9              THE COURT:  That's going to be repaid from the draw

10   on the DIP?

11             MR. GOREN:  Exactly, Your Honor.  And also --

12             THE COURT:  How much is that payment to EG II?

13             MR. GOREN:  I have the number, Your Honor.  I'm

14   sorry.

15             MS. SCHWARTZ:  It's just over 1.2 million.

16             MR. GOREN:  1.2 million.  And then the other

17   (indiscernible) with Your Honor would have been -- it's  1.1

18   million to JPM who, in the days leading up to filing, also

19   released funds that it allowed the parties to continue the

20   negotiations and prepare this for an orderly and expedited

21   process.

22             So, Your Honor, specifically, with respect to debtor

23   Evergreen Gardens I, you hit on it.  We're looking to have an

24   interim order today approving the $7 million secured

25   superpriority debtor-in-possession credit agreement with an

Page 30

1    affiliate of the mezzanine lender to be used to satisfy fee,

2    costs and expenses and other working capital purposes as

3    provided in the budget, authorizing EG I to pay certain

4    associated fees, costs and expenses as agreed to pursuant to

5    that agreement, and granting the DIP lender certain protections

6    subject to the professional fee carve-out including

7    superpriority claims, junior liens on any encumbered assets,

8    senior liens on any unencumbered assets to secure the repayment

9    of all of the DIP obligations.  And as part of that financing

10   package as well, as Mr. Holtzer informed the Court, we're also

11   seeking approval of the debtors' consensual agreement with its

12   pre-petition first lien mortgage lender, JPMorgan, to use as

13   cash collateral in accordance with the budget during the

14   pendency of the cases.

15          With respect to Evergreen Gardens II, which

16   anticipates being able to fund its operations under the

17   existing cash collateral, the debtor is seeking interim

18   approval today of their consensual agreement with their first

19   lien Series E bondholders to use that cash collateral in

20   accordance with the budget as well.

21          Now, Your Honor, as set forth in Ms. Romano's

22   declaration, EG I has immediate and critical need for funding

23   for sometime prior to the petition date because EG I has been

24   cash flow negative and has only been able to operate from

25   advances as we were just discussing from EG II and other

1    sources.  Accordingly, EG I has an immediate need for access to

2    financing and cash collateral to enable an orderly continuation

3    of its operations to administer these cases and to consummate

4    the sale and restructuring transactions contemplated by the

5    RSA.  As mentioned, the DIP is $7 million.  It has an initial

6    advance during the interim period of approximately $5 million.

7    And if it was not abundantly clear from the pleadings, Your

8    Honor, this is an EG I only DIP.  And except as expressly

9    approved under the budget, the proceeds are not to be used for

10   EG II.  And the same is true with respect to the EG II and its

11   cash collateral.

12          As I mentioned before, Your Honor, the mezzanine

13   lender is providing this DIP on a junior basis.  And the

14   adequate protection lien is granted to JPM and the Series E

15   trustee on behalf of the noteholders are junior to any valid

16   and perfected existing permitted liens as well.  This is

17   obviously a huge feature for this financing package.  As set

18   forth in her declaration, Ms. Romano and her colleagues at

19   CohnReznick actively marketed this DIP, contacting

20   approximately 33 parties with 11 parties executing

21   nondisclosure agreements and seven term sheets being submitted.

22   But not one of the lenders, Your Honor, was willing to advance

23   funds to EG I on a junior basis as is the case with the DIP

24   loan before the Court.  So the DIP presented by the mezzanine

25   lender represented the only party willing to lend to EG I on a

Page 32

1    junior basis which would avoid a cost lien on certain priming

2    (indiscernible) during a time when the parties are all

3    committed to a process that is designed to maximize certainty

4    and expedite the distributions to allowed claims and interest.

5            THE COURT:  Let me ask.  I'm looking here.  I'm

6    looking at the term sheet.  Bear with me.  I do have some

7    questions.

8            MR. GOREN:  Okay.  Well, obviously, jump in any time.

9    And I'm happy, Your Honor, if you'd like just --

10           THE COURT:  Go ahead.

11           MR. GOREN:  -- (indiscernible) which to the redline

12   as well.  As Ms. Schwartz did say, she did provide extensive

13   comments and we went through all of those with her and we have

14   walked through the redline that was circulated to chambers and

15   subject to some language which we'll be sending down to her.

16   And hopefully everything is aligned.  We believe we've worked

17   out -- resolved all the issues with the U.S. trustee's office.

18           THE COURT:  I guess I should have asked Ms. Schwartz

19   this question.  Ms. Schwartz, have you yet -- I know it's

20   really new.  Have you solicited for a committee yet?

21           MS. SCHWARTZ:  Actually, Your Honor, yes, we did.  We

22   solicited yesterday and the responses for the committee are to

23   be in by September 23rd.

24           THE COURT:  Okay.

25           MS. SCHWARTZ:  I just want one question.  And that

Page 33

```
 1    is, Mr. Goren, did the Court receive our comments, our

 2    blackline of the comments?

 3                MR. GOREN:  No.  No.  But I'm happy as I walk through

 4    the redline, I think I've highlighted every place in my notes

 5    where you had a comment, and I can hopefully point it out and

 6    generally again the resolution.

 7                THE COURT:  Ms. Schwartz, have you discussed with Mr.

 8    Goren or his colleagues the carve-out for a Chapter 7 trustee?

 9    It's shown as $25,000.

10                MS. SCHWARTZ:  They increased, Your Honor, to 75,000.

11    And, yes, I have looked at that.  And -- yes, I have.

12                THE COURT:  Okay.  And, Mr. Goren, when I looked at

13    this late last night -- and I'm not finding it now -- the

14    challenge period is 60 days for a committee and 75 days if

15    there is no committee?  Is that --

16                MS. SCHWARTZ:  Your Honor, I'm sorry.  I'll just jump

17    in on this.  I've suggested comments to the proposed order to

18    be consistent with the Court's local rule and to track the

19    language of the local rule.  I think it's 5,075 -- oh.  Oh no,

20    I'm sorry.  4,002.  But it now provides the exact language on

21    the challenge period that's in the Court's local rule.

22                THE COURT:  Thank you.  That was a concern of mine.

23    Let me -- I'm still looking through here.  Hang on.

24        (Pause)

25                THE COURT:  Mr. Goren, I may be a lone wolf on this
```

Page 34

1    issue among my colleagues but the 552(b)(1) waiver of the

2    equities of the case doctrine, I have consistently -- the way

3    that clause of the statute reads is -- the last clause is

4    "except to any extent that the Court, after notice and the

5    hearing and based on the equities of the case, orders

6    otherwise".  I don't permit the debtor and the DIP lender to

7    limit my rights.  So the way 552 -- the equities of the case

8    doctrine works under 552(b)(1) is that the Court can do that.

9    I permit the debtor to agree that it won't assert the equities

10   of the case doctrine, but I do not permit the debtor and the

11   DIP lender to foreclose the Court if requested, for example, by

12   a committee or, if there is no committee, by creditors to deal

13   with it.  So I won't approve the waiver of the equities of the

14   case doctrine the way it's written now.  I've been consistent

15   for the whole time I've been on the bench about that.  I will

16   say, I have never had a situation arise where anyone -- where

17   I've been asked to apply the equities of the case doctrine to

18   deviate.  But I just -- I won't do it.  That's because the way

19   the statute is written, it's the Court that has that power and

20   the parties can't limit my power.

21          MR. GOREN:  I hear you loud and clear, Your Honor.  I

22   just put -- ask Ms. Jarashow or Mr. Goldstein (indiscernible)

23   for those DIP lenders to respond.

24          MS. JARASHOW:  Yeah.  This is Kizzy Jarashow on

25   behalf of the proposed DIP lender.  I am certainly amenable to

1   changing that language as you stated, Judge.

2          THE COURT:  Thank you very much, Ms. Kizzow (sic).

3   Look, as I've said, it's never come back to bite anybody

4   because no one has ever come and asked me to apply it and I

5   never have.  But I, just as a matter of course, I won't agree

6   that the debtor and the DIP lender can agree to that.

7          Let me see whether I have other questions.

8          MS. SCHWARTZ:  Judge, this is Andrea Schwartz again.

9   There's also a provision in the DIP order regarding the

10  marshaling of assets.  And I know, sitting in Your Honor's

11  court, that that's been an issue as well.  And I raised that

12  with the parties earlier today.

13         THE COURT:  Well, I won't -- I definitely won't do it

14  as -- I have to look.  It shouldn't be in the interim order.

15  You can come back at a final hearing and ask, and I'll deal

16  with it at the time.  Okay?

17         MR. GOREN:  Your Honor, it is subject to a final

18  order is the language with respect to that.

19         THE COURT:  That's fine.

20         MR. GOREN:  Okay.  Your Honor, I'm happy to go

21  through the --

22         THE COURT:  Just give me a second.

23         MR. GOREN:  Take your time.  Thank you.

24         THE COURT:  Yeah.  I'm leafing through the term sheet

25  and see whether I flagged anything else.  I've got some notes

1   here.

2        (Pause)

3            THE COURT:  Mr. Goren, I take it that the parties

4   have agreed to use the challenge period language that's in the

5   local rule.

6            MR. GOREN:  That is correct.

7            THE COURT:  I just wanted to be sure of that because

8   I had questions about the challenge periods.

9            MR. GOREN:  And, Your Honor, Ms. Schwartz walked

10  through -- primarily, her comments with respect to EG I.  But

11  to the extent they're applicable to the EG II cash collateral

12  order, we'll work with Mr. Friedman to get those incorporated

13  as well.

14           THE COURT:  Okay.  Let me just -- I'm looking at my

15  notes.  I think I covered what's in my notes.  Go ahead, Mr.

16  Goren.

17           MR. GOREN:  Okay.  Well, Your Honor, I guess, if it

18  makes sense, we can do a quick page turn through the markup if

19  that works.  And if you have any questions, Your Honor, about

20  any of the provisions that have been added to the draft that

21  you had yesterday evening.

22           THE COURT:  Let me hear -- we'll come back in a

23  second.  Let me just see whether other counsel want to be heard

24  with respect to the DIP and cash collateral.  Anybody else want

25  to address anybody for mezz lender?

Page 37

1          MS. JARASHOW:  Kizzy Jarashow from Goodwin Procter on

2    behalf of mezz lender and proposed DIP lender here.

3          We certainly echo everything that Mr. Goren said

4    today.  We have, since the inception of the EGM case back in

5    February, been kind of singularly focused in moving towards a

6    sale closing as quickly as possible in a value maximizing

7    transaction.  We think we have that here.  We are willing as

8    DIP lender to provide the necessary funding to get the debtor

9    through that sale process as quickly and expeditiously as

10   possible.  And if you have any questions, we are certainly

11   willing and able to answer them for you today.

12         THE COURT:  Thank you very much.  And you and your

13   colleagues have been sort of the driving force to make sure

14   that the case move forward from the start.  So I appreciate

15   that.

16         MR. GOLDSTEIN:  Your Honor --

17         THE COURT:  (Indiscernible) Weintraub originally --

18   yes, Mr. Goldstein.  Good morning.

19         MR. GOLDSTEIN:  Yes.  Good morning, Your Honor.

20   Michael Goldstein, Goodwin Procter.

21         You mentioned Mr. Weintraub and I just did want to

22   say that I parachuted in for Mr. Weintraub in this case, so I

23   am the new kid on the block.  Mr. Weintraub is actually

24   retiring the end of September, so I am actually -- very sad,

25   yes, so replacing him for very good reasons.  But I did want to

Page 38

1   let the Court know that Mr. Weintraub was not here for a good

2   reason, and I was here for that reason and so just wanted to

3   make sure that the Court was aware of that.  But Ms. Jarashow,

4   as demonstrated in the case from the very beginning, and is

5   ably taking lead for us.  So I'm going to go back to being

6   silent.

7           THE COURT:  I'm happy to have you in the case, Mr.

8   Goldstein.  But please express to Mr. Weintraub that I have

9   great admiration for him, and I hope he enjoys his retirement.

10          MR. GOLDSTEIN:  I will.  Thank you very much, Your

11  Honor.  I will pass those comments along.

12          THE COURT:  Okay.  All right.  Does anybody else want

13  to be heard with respect to the DIP or cash collateral motion?

14          MR. FRIEDMAN:  Your Honor, I'll be very brief.

15  Michael Friedman for Mishmeret Trust Company Ltd., the Series E

16  Notes trustee.

17          I'll echo Kizzy's and Matt's earlier comments.  I

18  think the parties have worked through very challenging

19  situations especially funding and pre-petition funding which is

20  reflected in the somewhat unusual provisions of the DIP.  The

21  parties have worked together to try to get to maximize value

22  and on behalf of the trustee, we support the DIP and the cash

23  collateral motion as well.  Thank you.

24          THE COURT:  Thank you.  All right.  Mr. Goren, why

25  don't you walk through the changes so that we have a clear

Page 39

1   record, okay?

2              MR. GOREN:  Oh, of course.  Thank you, Your Honor.

3              So turning to the redline, on page 3, just filling in

4   to the numbers for the draws and changing a reference to

5   intercreditor agreement to standstill agreement.  That is just

6   for clarification because there's more than one intercreditor

7   agreement.

8              Moving on to page 5, adding in a reference to

9   financial advisor with respect to the DIP lenders'

10  professionals.

11             The first comment from the U.S. trustee was on page

12  7.  She's provided some revised language with respect to the

13  committee formation paragraph in paragraph (e) which we are

14  going to incorporate.

15             Page 7 again, just filling in numbers for claim

16  amounts, Your Honor, that have been fixed as of the petition

17  date.

18             The next comment, I believe, from Ms. Schwartz was

19  with respect to paragraph 5 on page 11, the release that is

20  subject to entry of a final order.  The parties have agreed to

21  add a carve-out to that for gross negligence and willful

22  misconduct.

23             Page 14 of the redline, there are a number of defined

24  terms in here for (indiscernible) advance and approved budget.

25  The idea, after speaking with Ms. Schwartz, would be to add

1   some clarifying language to the definitions wholesale, if we

2   can, in footnotes just to make sure everybody has it in front

3   of them and they don't have to go to different documents.

4          There is also some language that was added or some

5   language that the U.S. trustee had a question about with

6   respect to the debtors' and DIP lenders' professional fees and

7   how they are not necessarily capped by the budget.  And we've

8   agreed to add some clarifying language there as well which is

9   just that it is not an absolute cap but obviously, they are

10  still subject to all of the regular rules (indiscernible) come

11  to reasonableness and review and allowance by the bankruptcy

12  court.

13         MS. SCHWARTZ:  Can I just say one thing here, Judge,

14  about that?  When I read that paragraph -- and again, we know

15  people that have been working on this deal and this loan

16  agreement and credit agreement are intimately familiar with all

17  the defined terms and so forth.  And because there are a host

18  of them, it was unclear to me from reading the provision as it

19  was why the professional fees were somehow singled out as to be

20  unrestricted by the budget.  So the counsel -- Ms. Jarashow

21  explained that there are various defined terms in there, just

22  going to put some definitions there to make that more clear.

23  So that's why I had raised that issue.

24         THE COURT:  Thank you.  Go ahead, Mr. Goren.

25         MR. GOREN:  The next change, Your Honor, is at the

Page 41

1    bottom of page 19 of the redline.  And there's been language

2    added clarifying that in the event of a termination or an event

3    of default rather that the DIP lender has authority to send a

4    notice to the EG I depository bank and requesting that

5    (indiscernible) processing checks.

6            I think there's another provision, similar language,

7    later on in the order as well that we've discussed with the

8    U.S. trustee, and she had no issue with that language.

9            THE COURT:  Okay.

10           MR. GOREN:  At the bottom of page 25, there is

11   language about the DIP lenders' ability to call an event of

12   default relating to a budget event.  That is, again, similar to

13   what Ms. Schwartz said, I think, just looking for some

14   clarifying language thereabout what a budget (sic) event is and

15   what that means.

16           Ms. Schwartz' next comment, on page 26, regarding the

17   replenishment of accounts which we've discussed on the record

18   here.  Andrea, is there anything else that we need to do with

19   respect to that?  Thank you.

20           THE COURT:  She was shaking her head no just so we

21   have a clear record.

22           MR. GOREN:  Yep.

23           MS. SCHWARTZ:  No.

24           THE COURT:  Thank you.

25           MR. GOREN:  Okay.  Then at the top of page 30 of the

1    redline, we have added a footnote at the request of the U.S.

2    trustee regarding lender invoices and how they would be

3    submitted.  Ms. Schwartz has provided some additional language

4    regarding the fact that this protocol would apply to any

5    pre-petition fees that are unbilled with respect to the lenders

6    as well as later on, I believe, there's a similar provision

7    with respect to the professionals of the pre-petition first

8    lien lender.  And this would all be applicable to them as well.

9         With respect to notices, at the bottom of page 31, I

10   believe the U.S. trustee asked that we add language that

11   notices be delivered overnight mail, I believe that was.  But

12   I'd have to go back and check.

13        MS. SCHWARTZ:  Just that we get a hard copy as well

14   as electronic.

15        MR. GOREN:  On page 36, there's some clarifying

16   language regarding the DIP lender's right to examine the

17   debtors' books and records on reasonable notice.  There was no

18   issue there.  I don't believe the (indiscernible) U.S.

19   trustee's office (indiscernible) those revisions.

20        In paragraph 27 on page 27 of the order, there's a

21   new paragraph about cash collection.  This is two-fold.  It

22   requires the debtor to maintain a cash management system --

23   just maintain the cash management system described in the cash

24   management motion.  Again, critical to maintaining separateness

25   from EG II between that and EG I.  And then it has the same

Page 43

1   language in there about in the event of a default that the DIP

2   lender is authorized to send a notice to those banks and

3   request that they cease honoring checks.

4           THE COURT:  Mr. Gordon, may I ask you, because I

5   looked at the redline online this morning.  Are your

6   addition -- I don't know whether you're just giving me the

7   changes that were already -- that I've already seen or whether

8   there are additional changes that you've agreed to make.

9           MR. GOREN:  The only -- the additional changes that

10  we've agreed to make, Your Honor, are what Ms. Schwartz

11  referred to before.  So that would be in response to direct

12  comments from the U.S. trustee.

13          THE COURT:  Okay.  So, Andrea -- Ms. Schwartz, is

14  there anything else that you want to raise that isn't reflected

15  in the redline that I saw online this morning?

16          MS. SCHWARTZ:  Yeah.  Your Honor, the redline that

17  you saw online this morning only reflected lenders' comments.

18  So all of the things pretty much that Mr. Gordon is reciting to

19  the Court are comments that we had.  However, they're all

20  relatively standard, if you will, Your Honor.  I mean, it's

21  nothing that's going to shock the conscience here.

22          THE COURT:  No.  I'm just wondering -- it's fine to

23  go through --

24          MS. SCHWARTZ:  No.  You didn't get our comments.  In

25  fact, the redline that was filed, I saw that this morning.

1          THE COURT:  Okay.  All right.  So, Mr. Goren, go

2     ahead then.

3          MR. GOREN:  All right.  I'll continue.

4          I think the next comment, Andrea, was about the

5     indemnification provision in paragraph 38.  And the DIP lender,

6     I think, again has agreed -- I believe the resolution there was

7     the DIP lender would agree again to add language about gross

8     negligence and willful misconduct but also, they were going to

9     offline send you the documents to confirm that there were no

10    limitation of liability provisions.

11         In the carve-out provision, we discussed, Your Honor,

12    that the Chapter 7 trustee fees have been increased from 25 to

13    75,000.  The U.S. trustee has the minor language tweaks in

14    there as well to refer to the proper statute.  And the

15    carve-out trigger notice would be delivered by overnight and

16    hard copy -- or hard copy to the U.S. trustee.

17         Also, the carve-out account, I think we have agreed

18    to add a footnote to ensure language to make sure that the

19    segregated account is opened in accordance with the cash

20    management order.

21         We've spoken already about the language regarding the

22    challenge period, and it will be revised through the track --

23    the statutory language as Ms. Schwartz spoke about.

24         THE COURT:  Rule language.

25         MR. GOREN:  Yes, exactly.  Rule language.  Thank you,

Page 45

1    Your Honor.

2            And, Ms. Schwartz, please jump in but I think that

3    covers all of them.

4            MS. SCHWARTZ:  Yes --

5            THE COURT:  May I ask this?  When do you expect that

6    you will have the final version that will include -- because

7    some of the language you seem to be -- you're still working out

8    the fine points of it.  When do you anticipate there will

9    actually be the form of order that you've all agreed to?

10           MR. GOREN:  Well, I think it won't take too long to

11   implement the changes.  We, of course, want to circulate to all

12   these parties and Ms. Schwartz in particular to make sure that

13   she signed off.  I mean, we'll do everything we can to get this

14   wrapped up today, Your Honor.

15           THE COURT:  Okay.  Well, we're up against the clock

16   for me at least.  I'll tell -- you know, there may be --

17           MS. SCHWARTZ:  Me, too.

18           THE COURT:  Okay.  All right.  Anybody else wish to

19   be heard with respect to the debtor-in-possession financing and

20   cash collateral motion?

21           MS. JARASHOW:  Kizzy Jarashow, Your Honor, from

22   Goodwin Procter on behalf of the post DIP lender to EG I.

23           I just wanted to state on the record that we are in

24   agreement with all of the changes requested by Andrea -- from

25   Ms. Schwartz -- sorry -- and as described by Mr. Goren today.

1          THE COURT:  Thank you very much.  All right.  Does

2    anybody else wish to be heard?

3          All right.  Obviously, I don't have the very final

4    language, but I understand the changes that are being made to

5    reflect the U.S. trustee's comments.  With that, the motion is

6    granted.  And we can talk about the date for final hearings.

7    We'll get to dates later.  Okay?  All right.

8          MR. GOREN:  Thank you, Your Honor.

9          Your Honor, at this time, I'd again cede the virtual

10   podium over to my colleague, Ms. Ruocco.

11         THE COURT:  Okay.  Thank you.

12         MS. RUOCCO:  Thank you, Your Honor.  Elizabeth

13   Ruocco, Weil, Gotshal & Manges, proposed attorneys for

14   Evergreen Gardens I, LLC and Evergreen Gardens II, LLC.

15         I'm going to present to you the cash management

16   (indiscernible) before you as well as the motion seeking an

17   extension for the debtors to file schedules and statements of

18   financial affairs.  And I will start with cash management

19   motion which is docket number 69.

20         This motion seeks authority from the Court for the

21   debtors to continue using their existing cash management motion

22   -- system as described in the motion and implement a

23   (indiscernible) to provide for a smooth transition into and

24   throughout the Chapter 11 cases and provide any disruption to

25   the debtors' management of the business.

1          The specific relief sought in this motion would

2    consist of allowing the debtors to open and close bank accounts

3    in the ordinary course with proper notice being given to

4    parties set forth in the order and, of course, that those

5    accounts deemed designated as authorized depository.

6          It also would grant debtors authority to continue

7    using these six bank accounts which are listed on Exhibit B,

8    maintain the cash management system as described in the motion,

9    allow the banks to service and administer the accounts and

10   permit the debtors to continue using their existing business

11   form.

12         We did receive comments from Ms. Schwartz early this

13   morning or late last night that I'm happy to tick through with

14   you in the proposed order.  And we would submit a revised

15   proposed order to the Court for entry incorporating those

16   changes.

17         If I can just bring it up.

18         In the paragraph 4 of the proposed order, Ms.

19   Schwartz has requested a wording change to paragraph 4(a) so

20   that that language would now read "any such new account is

21   opened at a financial institution that U.S. Trustee has" --

22              THE COURT:  Can you just hold on for one second?

23              MS. RUOCCO:  Sure.  Sure.

24        (Pause)

25              THE COURT:  All right.  Please go ahead.  Sorry for

Page 48

1    the interruption.

2            MS. RUOCCO:   In paragraph 4(a) of the proposed

3    interim order, Your Honor, Ms. Schwartz has requested that we

4    modify that language so that it would now read that "any such

5    new account is opened at a financial institution that the U.S.

6    Trustee has designated as an authorized depository for cases

7    filed in the Southern District of New York".   And we will

8    implement that change and it will be in the revised proposed

9    order we submit to chambers.

10           Additionally, in paragraph 5, I can read Your Honor

11   the paragraph that Ms. Schwartz has requested it be revised.

12   It would now read "The relief, rights, and responsibilities

13   provided for in this Interim Order shall be deemed to apply to

14   any and all bank accounts maintained in the Subsidiary Debtors'

15   names...including any new bank accounts opened in accordance

16   with this Order and after the date hereof that are not

17   identified on Exhibit B."   We will also add language that the

18   debtors are obligated to supplement Exhibit B to the extent we

19   open new accounts or determine that addition bank accounts were

20   excluded from that exhibit.

21           Further, in paragraph 6, we will add, at the end of

22   paragraph (b), a clause that states "provided, however, that

23   the Debtors provide written notice not later than five days of

24   the date of this Order to the bank where the Bank Accounts are

25   located at each of the Debtors' bankruptcy filing that each

Page 49

1    account be designated as a DIP account".

2              Those are the proposed changes we received from Ms.

3    Schwartz.  We'll implement and submit a revised proposed order

4    to the Court today.

5              With that, I'm happy to answer any questions the

6    Court may have.

7              THE COURT:  Thank you very much.

8              Ms. Schwartz, do you want to address anything?

9              MS. SCHWARTZ:  Ms. Ruocco's recitation of our

10   comments is accurate, and we have no objection with those

11   changes to the proposed form of order.

12             THE COURT:  Thank you.  Does anybody else wish to be

13   heard?

14             With those changes that'll be made in the order, the

15   motion is granted.  Thank you very much.

16             MS. RUOCCO:  Thank you, Your Honor.  Now I will

17   present the debtors' motion seeking an extension to file

18   schedules of assets and liabilities, executory contracts and

19   unexpired leases, statement of financial affairs, and

20   authorizing the debtors to file a consolidated list of

21   creditors as well as redact certain personal information.

22             THE COURT:  All right.  Let me cut you short on that.

23             Does anybody have any objections to the motion to

24   extend the time to file schedules, et cetera?

25             The motion is granted.

Page 50

1                MS. RUOCCO:  Thank you, Your Honor.

2                THE COURT:  What's next?

3                MS. RUOCCO:  Oh.  I --

4                MR. HECKEL:  Hi, Your Honor.  This is Theodore Heckel

5        of Weil, Gotshal & Manges, proposed counsel to the subsidiary

6        debtors.

7                THE COURT:  Yes.

8                MR. HECKEL:  I'm here today to talk about -- or to

9        address, with your permission, the critical vendor motion filed

10       at ECF number 67 as well as the claims and noticing agent

11       retention application pursuant to Section 156(c) filed at ECF

12       number 68.

13               THE COURT:  All right.  Let's just deal with the

14       claims agent first, 68.

15               MR. HECKEL:  Okay.  Great, Your Honor.

16               So as Your Honor is aware by this application, the

17       subsidiary debtors requesting entry of an order authorizing but

18       not directing the appointment of Donlin Recano Company as

19       claims and noticing agent in these Chapter 11 cases nunc pro

20       tunc to September 14, 2021, the petition date.

21               In support of the application, the debtors submit the

22       declaration of Nellwyn Voorhies, the president of Donlin, which

23       is annexed as Exhibit B to the application.  The debtors would

24       like to move to submit the Voorhies declaration into evidence

25       at this time.

Page 51

1              THE COURT:  All right.  Is there any -- and what's

2      the ECF docket number of the declaration?

3              MR. HECKEL:  It's ECF number 68.

4              THE COURT:  All right.  Are there any objections to

5      the Court admitting in evidence the declaration which is ECF

6      68?

7              Hearing none, it's in evidence.

8          (Declaration of Nellwyn Voorhies in support of Debtors'

9      application to retain Donlin Recano nunc pro tunc to petition

10     date received in evidence)*

11             MR. HECKEL:  Great.  Thank you, Your Honor.

12             So during the course of these Chapter 11 cases, the

13     subsidiary debtors anticipate that a significant number of

14     parties will need to be notified, specifically the subsidiary

15     debtors anticipate that approximately 1319 parties, including

16     approximately 141 creditors at EG I and 104 creditors at EG II,

17     will need to be notified, receive various notices throughout

18     the course of these cases.  And in view of the number of

19     claimants and the complexity of the debtors' business, the

20     debtors submit that the appointment of the claims and noticing

21     agent is required and appropriate under the local Bankruptcy

22     Rule 5075-1(b) and is otherwise in the best interest of the

23     debtors' estate.

24             THE COURT:  All right.  Ms. Schwartz, what is the

25     position of the U.S. trustee?

Page 52

1          MS. SCHWARTZ:  Your Honor, we have no objection to

2     the appointment of Donlin Recano as the claims and noticing

3     agent under Section -- under Title 28, Section 156(c).  We did

4     have concerns regarding the proposed form of order that was

5     sent over because the order did not track the Court's order

6     according to the Court's protocol.  We received immediate

7     response from Ms. Voorhies who's on the call here indicating

8     that although she had had a similar order entered in some other

9     case, they're going to revise the order to track our court's

10    proposed order.  And with that revised order, we'll have no

11    objection to the retention of Donlin Recano as claims agent in

12    this case.

13          THE COURT:  Thank you.  Does anybody else wish to be

14    heard with respect to the claims agent motion?

15          Mr. Heckel, is it correct that you're revising the

16    order consistent with the U.S. trustee's comments?

17          MR. HECKEL:  That is correct, Your Honor.

18          THE COURT:  All right.  The motion is granted.

19          MR. HECKEL:  Thank you.

20          THE COURT:  All right.  Now let's deal with the

21    critical vendor.

22          MR. HECKEL:  Okay.  Thank you, Your Honor.

23          So the critical vendor motion is filed at ECF number

24    67.  And by this motion, the debtors respectfully request entry

25    of interim and final orders authorizing the subsidiary debtors

Page 53

1    to first pay certain pre-petition critical operating expense

2    claims of certain vendors, suppliers, service providers and

3    other entities that the subsidiary debtors have deemed critical

4    and essential to the ongoing day-to-day operations of the

5    Denizen.  And then second, to continue to honor and perform

6    their obligations under the leases with tenants of the Denizen

7    including, without limitation, the -- honoring the obligations

8    with respect to tenant security deposits.

9              So as described in the motion, Your Honor --

10             THE COURT:  Excuse me --

11             MR. HECKEL:  -- the debtors (indiscernible) --

12             THE COURT:  Let me ask you --

13             MR. HECKEL:  I'm sorry.

14             THE COURT:  -- a question.  And I'm going to actually

15    refer first to the Ravid declaration but what I'm asking you

16    about is also in a footnote in the critical vendor motion.

17             In footnote 7 on page 13 of the Ravid declaration,

18    "The Subsidiary Debtors' day to day operations were previously

19    overseen by All Year Management, Inc., which was an affiliate

20    of All Year Holdings and partially owned by Mr. Yoel Goldman,

21    the sole economic shareholder of All Year Holdings Limited, and

22    a third party.  Since that time, the day-to-day operations have

23    been transitioned to the Management Company (Smart Management

24    NY, Inc.), which" -- and this is really where I'm getting to --

25    "to the best of the Debtors' knowledge and belief, has no

1    affiliation with Mr. Goldman. Although the applicable contracts

2    have not been updated to reflect the change in management, the

3    Subsidiary Debtors pay a monthly fee to the unaffiliated

4    Management Company. Mr. Goldman is not involved in the

5    management of the Denizen, and, to the best of their knowledge

6    and belief, the Subsidiary Debtors do not pay funds to any

7    entitled affiliated" -- and should be "entity affiliated" --

8    "with Mr. Goldman in connection with the operations of the

9    Subsidiary Debtors."

10           That's about as wishy washy a statement about Mr.

11   Goldman whether he's affiliated, whether he's not affiliated.

12   Tell me about Mr. Goldman.

13           MR. HECKEL:  Well, Your Honor --

14           MS. SCHWARTZ:  Your Honor, if --

15           MR. HECKEL:  -- the --

16           THE COURT:  No.  Don't interrupt yet, Ms. Schwartz.

17   Go ahead.

18           MS. SCHWARTZ:  Okay.

19           MR. HECKEL:  Your Honor, the debtors are not -- do

20   not believe that Mr. Goldman is affiliated at all with Smart

21   Management NY, Inc., the current management company.  And he is

22   not involved -- and the debtors do not believe he's involved --

23   or he is not involved whatsoever with the day-to-day operations

24   of the Denizen.

25           The debtors -- so the debtors want -- you know, the

Page 55

1   reason why it's to the best of the debtors' belief and, you

2   know, that language is included in there is because the debtors

3   to their knowledge are not paying any money to Mr. Yoel Goldman

4   through the management company.  That's what they believe.  But

5   I think that's like their understanding with respect to those

6   statements.

7           MR. GOREN:  Your Honor, this is Matthew Goren.  I'm

8   sorry to interrupt but I just wanted to jump in and help out

9   with some additional information I think is (indiscernible).

10  And we did have a long conversation with Ms. Schwartz about

11  this this morning including with Mr. Asaf Ravid as well.

12          Once upon a time, there was the relationship with All

13  Year Management.  Yoel Goldman, the sole economic shareholder

14  of All Year, was affiliated with that company.  It was run with

15  a gentleman named David Friedman.  Since that time, Mr.

16  Friedman is no longer affiliated with any All Year entity

17  whatsoever and he is the one who runs the Smart Management,

18  Inc. company, Your Honor.  We do not -- the company, the

19  debtors do not do business with Mr. Goldman anymore.  We have

20  the CEO and CRO here who was installed by the bondholders, and

21  he is adamant that they do not do business with Mr. Goldman.

22  And this entity does not have any affiliation with Mr. Goldman.

23          MS. SCHWARTZ:  Your Honor?

24          THE COURT:  Go ahead, Ms. Schwartz.

25          MS. SCHWARTZ:  I'm sorry.  I didn't mean to interrupt

Page 56

1   Mr. Heckel.

2          THE COURT:  No.  It's okay.  Go ahead.

3          MS. SCHWARTZ:  We had the exact same concerns as the

4   Court.  And we even got a chance to take a look at the actual

5   documents that I'm not sure if the Court was provided with

6   copies of the contract between All Year Management, Inc. and

7   Smart Management or whatever the exact name is.  But the bottom

8   line is we also had a call this morning with Mr. Ravid.  And I

9   suggested to Debtors' counsel that they put in a proffer of

10  evidence of Mr. Ravid or have Mr. Ravid testify with respect to

11  the relationships or lack thereof of All Year Management, the

12  change to Smart Management, that the documents hadn't been

13  updated.  I understood from our call earlier a little

14  differently than from what Mr. Goren said because one of the

15  documents is signed by an Israel Friedman who is also known as

16  David Friedman, goes by the same name.  And Mr. Ravid informed

17  me on the telephone call that Mr. Friedman is, in fact, an

18  owner or a partner in some of the All Year affiliates and so

19  forth.

20          That being said, Your Honor -- and I think the

21  debtors can proffer this to the Court -- Mr. Ravid provided an

22  explanation as to why and how important it was that the payment

23  to the management company be made in the amount of $100,000 as

24  of today with respect to the continuing management of the

25  debtor.  And with that proffer of testimony to the Court, it

Page 57

1    appears that that would -- we would not have an objection as

2    far as today is concerned to that amount of money.  But as I

3    said, Your Honor, it was our understanding that Mr. Friedman

4    is, in fact, an owner or a partner in one of the other All Year

5    affiliates.  Perhaps since the call we had with counsel for the

6    debtor and the time we got on this call, they got new

7    information but that's what I was provided with up until 10

8    minutes before the hearing.

9            MR. GOREN:  (Indiscernible) Ms. Schwartz --

10           THE COURT:  Let me -- I'm going to make a general

11   statement.  I have never approved critical vendor payments that

12   are made to an insider.  And so when I read these footnotes,

13   the one in Mr. Ravid's first day declaration and then the

14   critical vendor motion, it was like red flags flying all over

15   the place.  I want -- well, at a minimum -- and I do want to

16   hear, under oath, what the facts are, okay, because the

17   footnotes are pretty wishy washy.  I want the order revised to

18   provide that -- I don't have the exact language but I want

19   language that in the event of any critical vendor payments to

20   people later determined to be insiders, the payments may be

21   clawed back.  I'm absolutely adamant about this.  I do not

22   approve critical vendor payments that go to insiders.

23           MR. GOREN:  We understand the concern, Your Honor.

24   And, of course, that language can be incorporated into the

25   order.

1              THE COURT:  Let me hear from Mr. Ravid then as to --

2    we won't put him under oath right now.  He's going to be making

3    representations as to which the Court will be relying upon.  I

4    do want -- I want a fuller explanation of this.

5              MR. GOREN:  Your Honor, just before you jump in, I'd

6    just like to turn over to my partner, Robert Berezin, who will

7    be here to assist.

8              THE COURT:  Okay.  Thank you.

9              MR. RAVID:  Good morning, Your Honor.  To the best of

10   my knowledge, Smart Management is not affiliated to any of the

11   debtors and is not affiliated to Mr. Goldman.  They've been

12   providing management services for the last two months and

13   they've been working towards and managing the property in the

14   day-to-day operations.

15             I have no reason to believe that they are affiliated

16   to Mr. Goldman and they're insider or related to Mr. Goldman.

17   And we can discuss with them and if the case turns out that

18   they are, I'm okay with clawing back any amounts paid to them.

19             MS. SCHWARTZ:  Your Honor, I just want to mention one

20   thing for the Court because I think this is important.  I

21   understand that the bondholders are concerned about -- and

22   other parties in interest are concerned about affiliations to

23   Mr. Goldman -- I mean -- yes, to Mr. Goldman.  But there were

24   also a number of entities that are part of the All Year

25   enterprise that would constitute affiliates.  And one of the --

1   the actual latest management agreement, which has not been

2   updated, Mr. Friedman signed on behalf of the prior name, All

3   Year Management, Inc. and now he is the person to whom the

4   debtors are paying for Smart Management.  So there's clearly a

5   connection there.  As to what Mr. Friedman's relationship is in

6   the whole All Year enterprise, it's just simply not clear from

7   the documents that have been submitted.

8          MR. RAVID:  We have discussed this, Your Honor, with

9   Ms. Schwartz this morning.  And we were to provide proper

10  documents with Smart Management.

11         MS. SCHWARTZ:  I had suggested, Your Honor, that they

12  wait until the second day for this -- to be able to put more

13  information before the Court although Mr. Ravid had explained

14  that they had not made the payment for the management fees for

15  the month of August which was due on September 1st.  And, you

16  know, we were concerned, of course, that the company can

17  operate properly and so forth.  And I will say this.  In Mr.

18  Ravid's -- in support of what Mr. Ravid -- he has been the

19  spokesperson and the debtors' representative in this case since

20  the first case was filed.  And I spent a great deal of time

21  during the 341 meeting in which he testified under oath

22  regarding that case and what the future cases would be.  And I

23  have no reason to doubt the voracity of what he says here today

24  based on that prior experience with him.

25         THE COURT:  Okay.  I don't mean to suggest -- Mr.

Page 60

1   Ravid, I don't mean to suggest that there's anything in your

2   declaration or in the motion that isn't true.  I hope you

3   understand why when I read it, it was like red flags flying.

4         And, Ms. Schwartz -- and I realize you have to leave

5   soon.  That's fine.  But I would like some language which I

6   didn't draft that -- I will approve the critical vendor motion.

7   But I want some language that reserves the right to claw back

8   in the event of any of the critical vendor payments are being

9   paid to affiliates.  And we'll take it up further at the final

10  hearing on this.  I take this seri -- and I expect to hear some

11  testimony not simply -- and the testimony can be put -- direct

12  testimony can be put in in declarations in advance.

13        MS. SCHWARTZ:  Right.

14        THE COURT:  But I want some clarity about this point.

15  It's -- this came up in a case of mine a number of years ago.

16  And frankly, I thought people were hiding the ball and it

17  indeed turned out there were critical vendor payments being

18  paid to an affiliate.  And, of course, critical vendor payments

19  are inconsistent with the absolute priority rule, and I don't

20  want money going into insiders' pockets that should be going to

21  unsecured creditors.  Simply as that.

22        MS. SCHWARTZ:  Right.  And, Your Honor, we share that

23  same concern.

24        THE COURT:  Okay.

25        MR. RAVID:  Your Honor, absolutely understood and we

Page 61

1   share the same concern all across the operations of All Year

2   and -- understood.

3            THE COURT:  Thank you very much, Mr. Ravid.

4            MR. RAVID:  (Indiscernible).

5            MR. GOREN:  Thank you, Your Honor.

6            THE COURT:  Mr. Berezin --

7            MS. SCHWARTZ:  Your Honor, at this point, I'm going

8   to ask if I can just be excused.  I'm going to --

9            THE COURT:  Yep.

10           MS. SCHWARTZ:  -- put my faith in debtors' counsel to

11  update me on everything that happens afterward and work it out

12  so that --

13           THE COURT:  I'll just ask you, Andrea.  Are there any

14  of the other motions that you particularly want to raise any

15  issues about?

16           MS. SCHWARTZ:  Your Honor --

17           THE COURT:  I'll (indiscernible) them but --

18           MS. SCHWARTZ:  Your Honor, I think they have a few

19  motions on -- I didn't see the agenda but to the extent that

20  the Court is -- you know, they're all typical first day

21  motions.  There's an insurance motion.  There's a utilities --

22  I'm not sure whether or not they're putting them on for the

23  first day.  I asked.  To the extent that they had to make

24  payments between now and the second day that we didn't have an

25  objection to that.

                                                          Page 62

1                MR. GOREN:  And, Ms. Schwartz, sorry to interrupt.  I

2      think that is the last motion before the solicitation

3      procedures.

4                THE COURT:  Insurance --

5                MS. SCHWARTZ:  Yeah.

6                THE COURT:   -- is on the second day.  Do you have

7      anything on joint hearing and solicitation procedures?

8                MS. SCHWARTZ:  Your Honor, I think that that issue is

9      really up to the Court.  The only thing -- and I've had verbal

10     confirmation from the debtors, but I haven't been able to read

11     it.  I just wanted to make sure that as part of the

12     solicitation and the voting that releases were going to be only

13     applicable to those parties that vote in favor of the plan and

14     that creditors that don't vote or vote no, they're not

15     applicable to them and that the people that vote in favor have

16     an opportunity to opt out of the releases if they want to.  But

17     I haven't been able to see that.  The reason why I raise it

18     always at the disclosure stage -- phase is because we don't

19     want to get into a situation where the solicitation is done in

20     a manner that ultimately is deemed not to be allowed and then

21     there has to be a re-solicitation.  So that's the only issue

22     that I raised with respect to that.

23                And in terms of -- you know, I have to say, Your

24     Honor, it is unusual in a case like this to have a combined

25     disclosure statement and confirmation hearing.  And I think

Page 63

1    I've sat in some hearings with Your Honor where Your Honor is

2    cautious about allowing that type of a procedure to go forward.

3    But I think there has been a lot of work that's been done

4    behind the scenes and there is an RSA which I haven't read yet

5    -- I'm sorry -- but I think that they believe that they have

6    the votes that are necessary to confirm the plan.  So that's

7    going to be in your bailiwick, of course, as is everything,

8    Your Honor, but that was our issue on the voting for the

9    solicitation.

10           THE COURT:  Thank you very much, Ms. Schwartz.

11           MR. GOREN:  And --

12           THE COURT:  You're excused if you need to be.

13           MS. SCHWARTZ:  Thank you, Your Honor.  Thank you,

14   Your Honor.

15           MR. GOREN:  Andrea, just before you --

16           THE COURT:  Have a happy holiday.

17           MR. GOREN:  Before you leave -- I'm sorry.  We

18   obviously have had that discussion.  And I just think you went

19   a little bit further there and I just want to make sure it

20   doesn't (indiscernible) the plan currently as contemplated.  If

21   you don't, you don't give a release.  So that is clear.  None

22   of the -- you know, abstain from voting, none of the submitted

23   -- incorrect ballot.  And if you're unimpaired, you don't grant

24   -- you're not granting a release.

25           MS. SCHWARTZ:  And if you vote no?

Page 64

1           MR. GOREN:  If you vote no, you do not give a

2     release.  If you vote yes --

3           MS. SCHWARTZ:  So in other words --

4           MR. GOREN:  -- you give a release.

5           MS. SCHWARTZ:  -- you don't have an opt out.  You

6     don't have an opt out for a vote yes.

7           MR. GOREN:  Correct.

8           MS. SCHWARTZ:  Well, you know, that might be an issue

9     at the time of confirmation or approval of the disclosure

10    statement.  I'm just bringing it to the Court's attention at

11    this point.

12          And, Your Honor, I wish you a happy holiday.  Also to

13    anyone else that is observing.  And I appreciate, Your Honor,

14    permitting me to be excused at this time.

15          THE COURT:  Of course.  Have a good holiday, Ms.

16    Schwartz.

17          MS. SCHWARTZ:  Thank you.

18          THE COURT:  All right.  On the issue of releases, it

19    obviously is a sensitive issue.  I'm not -- no one should take

20    -- if I approve the schedule and combined hearing that I've

21    ruled on the releases that are proposed to be given.

22          Okay.  But let's -- let's just come back for a moment

23    to critical vendors.  So I'm granting the motion.  I do want

24    language added to the order that I've already described in

25    general terms.  I think you all have the basic point of what

Page 65

1    I'm -- what my concern is there.

2           Okay.

3           MR. HECKEL:  Understood, Your Honor.

4           THE COURT:  Which leaves -- Mr. Heckel, thank you

5    very much.  Which leaves --

6           MR. HECKEL:  Thank you, Your Honor.

7           THE COURT:  -- the scheduling and the combined

8    hearing.  So -- and Ms. Schwartz alluded -- I'm general --

9    particularly in a pre-pack, I'm generally fine with scheduling

10   a combined hearing.  I've been doing it in non-prepacks as well

11   but they've mostly been smaller cases where -- but here, most

12   things seem to be pre-baked as to what is happening.  Now

13   whether there's a committee that shows up in the case and

14   whether they have a different view, I will enter the order.  I

15   believe I would have the authority to modify it if

16   circumstances dictate it.

17          But let me -- who wants to handle the motion -- the

18   scheduling combined hearing, et cetera?

19          MS. MARCUS:  Good morning, Your Honor.  Jacqueline

20   Marcus, Weil Gotshal & Manges, on behalf of the debtors.

21          With respect to -- I won't even say the name of the

22   motion because it has a very long title.  So in the interest of

23   time --

24          THE COURT:  ECF 76.

25          MS. MARCUS:  -- we'll just say that, ECF number 76.

Page 66

1           THE COURT:  Go ahead.

2           MS. MARCUS:  As described in the motion, Your Honor,

3    this motion seeks an order scheduling a combined hearing for

4    approval of the disclosure statement, approval of the

5    solicitation procedures and confirmation of a plan.  We have

6    proposed that take place on or about October 29th.

7           We've also asked for the order to establish

8    procedures for objecting to the adequacy of the disclosure

9    statement, the solicitation procedures, confirmation of the

10   plan, and we have proposed that objection deadline be October

11   18th.

12          And finally, approving the form of the notice of the

13   commencement of the Chapter 11 cases, the combined hearing and

14   the Section 341 meeting and the notice of non-voting status

15   which will be sent to the non-voting classes of the debtor.

16          And finally -- I spoke too soon -- conditionally

17   approving the disclosure statement as to Evergreen Gardens

18   Mezz, LLC.

19          Your Honor, I'd like to start in reverse order with

20   the conditional approval of the disclosure statement.  Although

21   we have a joint plan for the three debtors as reflected in Mr.

22   Ravid's declaration and as you've heard at length today

23   already, the situation for each debtor, particularly with

24   respect to this motion, is different.

25          With respect to EG I, as you've heard, the plan

1    provides for the payment in full of all allowed claims against

2    EG I and a distribution of all remaining assets to its only

3    stockholder, EG Mezz.  As a result, no votes are being

4    solicited with respect to the EG I case.

5            In the EG II case, as Mr. Holtzer indicated, that

6    debtor's share of the proceeds of the sale transaction will not

7    be sufficient to pay in full the claims of its senior secured

8    creditor, the Series E noteholders.  As a result, in this EG II

9    case, solicitation of votes will be required from the holder of

10   the Series E secured claim, which is class II, and the class of

11   general unsecured claims, which is class V.  In accordance with

12   Section 1126(b) and 1125(g) of the Bankruptcy Code,

13   solicitation of these votes commenced in the early morning

14   hours of September 14th prior to the commencement of the

15   subsidiary debtors' Chapter 11 cases.  And we've submitted,

16   Your Honor, the declaration of John Burlacu from Donlin Recano

17   which sets forth the solicitation efforts that occurred prior

18   to commencement of the cases.

19           As indicated in the motion, the debtors have already

20   received a master ballot accepting the plan submitted by the

21   Series E trustee on behalf of the Series E noteholders.  The

22   master ballot applies to their claims in class II, which are

23   the secured claims, as well as the Series E note deficiency

24   claims which are in class V.

25           With respect to EGM, and this is really the relevant

1    one for conditional approval, the debtors believe that the only

2    creditor, EGM, is the mezzanine lender which holds the claim

3    secured by EGM's equity interest in EG I.  Because EGM

4    commenced its Chapter 11 case on February 22nd, 2021, the

5    debtors have not yet solicited an acceptance of the plan from

6    the mezzanine lender.

7             The motion requests that the Court conditionally

8    approve the disclosure statement so that the debtors can

9    solicit the vote of the mezzanine lender immediately and have

10   the mezzanine lender's vote in hand well in advance of the

11   proposed combined disclosure statement and confirmation

12   hearing.  We believe that this relief is warranted because,

13   among other things, the mezzanine lender is the only party

14   entitled to vote, is a party to the RSA, is the DIP lender, has

15   played a critical role in negotiations regarding the plan and

16   is a sophisticated financial institution.  Moreover, the

17   mezzanine lender consents to the conditional approval of the

18   disclosure statement as the debtors have proposed.

19            Consequently, the debtors believe that conditional

20   approval of the disclosure statement as to EGM is appropriate

21   so that we may solicit that vote.

22            I don't know if Your Honor wants to ask any questions

23   about that before I go on to the scheduling and notice matters.

24            THE COURT:  Maybe I shouldn't have to admit this but

25   you're asking me to conditionally approve a disclosure

1    statement that I've only glanced at.

2              MS. MARCUS:  Umm --

3              THE COURT:  Uhh -- but it's unusual, I agree.

4              MS. MARCUS:  It is unusual.  And it's also unusual in

5    that the party that's going to be solicited has made extensive

6    comments about the disclosure statement already.

7              THE COURT:  Well, at some time, I'm going to ask Mr.

8    Goldstein or one of his colleagues to address that.  But it's

9    those circumstances which give me some comfort.  Conditional

10   approval, of course, can be reversed at some later point in any

11   event.

12             MS. MARCUS:  Yes.

13             THE COURT:  But, you know, I saw the disclosure

14   statement for the first time at about 6:30 this morning.  Okay.

15   And so I skimmed parts of it, not all of it.  But anything else

16   you want to add, Ms. Marcus before I ask Mr. Goldstein or one

17   of his colleagues to address it?

18             MS. MARCUS:  Not with respect to this issue, Your

19   Honor.

20             THE COURT:  Thank you very much, Ms. Marcus.

21             All right.  Does someone on behalf of mezz lender

22   wish to address this issue of conditional approval of the

23   disclosure statement?

24             MS. JARASHOW:  Yes, Your Honor.  Kizzy Jarashow of

25   Goodwin Procter on behalf of mezzanine lender.

1          We agree with everything Ms. Marcus said.  We support

2     and consent to the conditional approval of disclosure

3     statement.  We've been, like Ms. Marcus said, heavily involved

4     in the process and are fully supportive.

5          THE COURT:  All right.

6          MR. GOLDSTEIN:  Your Honor, I can't help myself.

7     Michael Goldstein from Goodwin Procter.

8          Just to give Your Honor comfort, I think in addition

9     to the disclosure statement, I think the Court can take notice

10    that as a sophisticated creditor, we can have the information

11    outside of the disclosure statement that can inform our

12    decision with respect to voting.  As you know, we've been --

13    the mezz lender's been active in these cases starting with the

14    filing of EGM and throughout the matters leading up to today as

15    represented by the debtors' counsel.  So there is that

16    information as well, some of which -- which is in the record

17    made aware to the Court beyond just the four corners of the

18    disclosure statement.  So hopefully, that gives the Court some

19    additional comfort having not had a chance to read the four

20    corners of the disclosure statement which, as Ms. Jarashow

21    indicated, we have in detail and commented upon.

22          THE COURT:  Yes.  I was just going to say, I assume

23    that you've given comments that the -- what was filed as the

24    disclosure statement reflects comments that you and your

25    colleagues provided -- Ms. Jarashow and you provided.  And that

1      does give me some comfort about it, and it is conditional, too.

2              Let me ask, does anybody wish to be heard with

3      respect to this last motion?

4              All right.  Let me just talk about dates.  And I know

5      you wanted October 29th.  I have the confirmation hearing in

6      Avianca scheduled for October 26th.  That case seems to be

7      going smoothly but, nevertheless, I would like to, if the date

8      works for you -- and, of course, it may be subject to change,

9      but Monday, November 1, the following Monday.  The 29th that

10     you wanted was a Friday.  I'd like to move -- and I don't have

11     anything on the calendar for November 1.

12             MS. MARCUS:  That's fine, Your Honor.  And we

13     anticipated that you might have an issue with the date,

14     obviously.  We were a little presumptuous there.  We would

15     propose, just to make life easier for everyone, to leave all

16     the other dates as they were in terms of the voting deadline,

17     the objection deadline, the reply deadline.  And we'll just

18     have the hearing on November 1st.

19             THE COURT:  I agree with that.  Does anybody else

20     want to be heard about the issue of a confirmation hearing on

21     November 1?

22             All right.  In terms of other dates, so I think

23     somebody commented earlier -- I'm away all next week.  So we're

24     not having a bid protection hearing --

25             MS. MARCUS:  Your Honor, if -- I'm sorry to

Page 72

1    interrupt.  But the last item that's the subject of the motion

2    that I was addressing are the actual forms of the notice which

3    are fairly standard and very routine.  I just wanted to note

4    that there was one sentence in each notice that we will delete.

5    It references a summary of the terms of the plan which we

6    haven't really included due to its length.  So when we submit

7    the order, we'd like to submit a revised form of the two

8    notices that just eliminate that line.

9              THE COURT:  Thank you, Ms. Marcus.  That's fine with

10   me.

11             All right.  So with the change that Ms. Marcus just

12   described, that motion is granted.

13             All right.  And --

14             MS. MARCUS:  Thank you, Your Honor.

15             THE COURT:  -- we're using -- we'll keep all the

16   other dates the same.  We'll change the confirmation date to

17   November 1st and hopefully things will go smoothly, and that

18   date will actually go forward.

19             You had asked for a hearing on the bid protections

20   for next week.  I am not here next week.  And so I would --

21   someone in your office, Ms. Marcus, communicated to me that

22   some of your -- I don't know, maybe the lawyers' and the client

23   representatives are observant of the holidays which are next

24   week.  The dates and times when I -- the following week rather

25   -- when I could hear the matter without interfering with either

Page 73

1   my or someone else's holiday observance would be Monday,

2   September 27th at 11 a.m., which is actually my first day back,

3   or Thursday, September 30th at 11:30 a.m.  Those times are

4   selected because I have hearings both of those days, morning

5   and afternoon.  I'm sort of -- would be fitting this in.

6            MS. MARCUS:  Your Honor, just as a technical matter,

7   and Mr. Bae is on the line somewhere, there is a milestone in

8   the --

9            THE COURT:  (Indiscernible) get to that.

10           MS. MARCUS:  -- purchase agreement.  Were you just

11   about to get to that?  So we would need them to consent to that

12   date.

13           THE COURT:  And that's why I tried to find some dates

14   because I understood that it is a milestone, and you need

15   consent to move it.  But I'm just not here next week.  So --

16   and I don't know whether I will be in a place that has decent

17   internet connection, and I don't really want -- it's the first

18   vacation in more than a year and a half and I don't want to

19   interrupt it.

20           MS. MARCUS:  And we don't want to impose on Your

21   Honor either.

22           THE COURT:  Mr. Bae, are you able to -- are you

23   willing to extend the milestone?  I mean, I've given you two

24   dates for a hearing, either Monday, September 27th at 11 or

25   Thursday, September 30th at 11:30.

1              MR. BAE:  Yes, Your Honor.  We would request -- we

2      would be okay with extending the date of the hearing.  We would

3      prefer Monday, September 27th at 11 a.m. just because it's

4      sooner than the Thursday date.

5              THE COURT:  Ms. Marcus?

6              MS. MARCUS:  That's fine with us, Your Honor.  If

7      there's anybody on the debtors' side that has a problem with

8      that date, please speak up.

9              MR. HOLTZER:  No.  It's Gary Holtzer.  I've

10     reappeared, Your Honor.  Apparently, I'm half under the name

11     Matt Goren and half under my own name.  Steve Martin will be

12     the man with two brains.  I'm not sure why Goren's name is

13     first, but I'll address that separately with him.

14             THE COURT:  Is that your partnership agreement or

15     something --

16             MR. HOLTZER:  Apparently --

17             THE COURT:  -- (indiscernible) have you first --

18             MR. HOLTZER:  It's some document I haven't read yet,

19     so I need to focus on that.

20             But the 27th at 11 a.m. works for us.  And that'll be

21     what we'll call the hearing on interim bid protections which I

22     know, Your Honor, is a little unusual but we'll explain it at

23     the hearing.  And but we need a date for a final hearing on

24     that.  And the milestone for that is October 5.  So we can

25     either set that hearing now or set it when we're before you on

Page 75

1   the 27th.  I just want to make sure we don't have a calendar

2   issue because we laid all that time and time then fills up.

3        THE COURT:  Let me -- I got to check two calendars to

4   be able to do this.

5      (Pause)

6        THE COURT:  October 5 works for me.

7        MR. HOLTZER:  Okay.  What time would that be, Your

8   Honor?

9        THE COURT:  10 a.m.

10       MR. HOLTZER:  All right.  And one last thing, Your

11  Honor.  We need a second day hearing.  We could -- we need a

12  second day hearing.  So -- yeah.  I'm looking at Mr. Goren and

13  wondering whether either the 27th or October 5th -- can we use

14  one of those dates, Mr. Goren, or do we need a totally separate

15  date?

16       THE COURT:  I would prefer the 5th because I'm

17  squeezing you in on the 27th.

18       MR. HOLTZER:  All right.

19       THE COURT:  It's a whole bunch of other hearings.

20       MR. HOLTZER:  Yes, Your Honor.  October 5th for the

21  second day hearing works fine, I'm told.  Unless somebody on

22  the Weil team or somebody else on this call has an issue with

23  it, we'll use that day as the second day hearing.

24       THE COURT:  I want to make sure I -- I'm sure my

25  courtroom deputy is writing it down but I'm writing it down as

1    well.

2        (Pause)

3            THE COURT:  Why is it that the bid protections are

4    being done in two lumps?

5            MR. HOLTZER:  The answer to that question, Your

6    Honor, is while there have been a great number of folks in this

7    deal who have exhibited tremendous patience, the patience

8    exhibited by the purchaser in moving milestones and continuing

9    to be bound to the agreement has been extraordinary.  And part

10   of the patience by the purchaser, and Mr. Bae can testify to

11   this firsthand, I know, is that the exposure of their deal to

12   the market without protections was not originally

13   (indiscernible).  And so causing them to sit still, if you

14   will, for the entire period of the normal motion cycle was

15   exacerbating the problem and so we agreed to an interim relief

16   without permanence, if you will.  So all they would be asking

17   for on an interim basis -- and this is why under these facts,

18   we thought it was measured that they would get bid protections

19   from the date you grant them until the final hearing.  It's to

20   accommodate the patience that occurred previously.

21           THE COURT:  Okay.  Let me ask a question.  And I

22   looked very quickly at the bid protections.  And I understand

23   they wanted no shop but there's a fiduciary out.  Since the

24   agreement with the buyer has been signed, has there been

25   additional interest expressed?  Have there been any additional

Page 77

1    -- have the debtors engaged with any additional parties after

2    the contracts have been signed?

3          MR. HOLTZER:  I'll ask either -- I'll ask Mr. Ravid

4    to correct me if I'm wrong but I believe the answer to that

5    question is there has not been any material engagement since

6    that time.

7          MR. RAVID:  Right.  No engagement.

8          THE COURT:  I assume by no engagement -- have any

9    parties reached out attempting to negotiate?  By engagement,

10   I'm not sure what that means.  But I do know whether you've

11   gotten calls or letters or other -- anything else across the

12   transom where people have expressed an interest?

13         MR. RAVID:  No.

14         THE COURT:  Okay.  All right.  And I clearly haven't

15   -- well, I have not -- other than glancing at the proposed bid

16   protections, I didn't study it carefully.  I didn't look and

17   see what percentage the breakup fee is and all of that.  I did

18   look at the no shop because I've always been very reluctant to

19   approve no shop.  But it's got the fiduciary out.  All right.

20   We'll deal with those at the dates that we've talked about.

21         MR. HOLTZER:  All right.  One thing, Your Honor, just

22   to alert you to it.  And she has been tremendously cooperative,

23   and we promise that if she -- when she exited today's hearing

24   to go to her doctor's appointment, we had mentioned anything

25   that came in our discussions that would be relevant.  And since

Page 78

1   we've now gotten into a little bit of a discussion because you

2   referenced it about the breakup fee, Ms. Schwartz has indicated

3   to us she has an issue with the breakup fee which is set at

4   four percent.  So I don't want anybody to be surprised when we

5   get to that interim hearing if her voice is heard on that point

6   if not other points.  But we've had that discussion and she

7   understands that we'll have to put on our proof, and we'll do

8   it at that hearing, Your Honor, just so the record is clear.

9              THE COURT:  Okay.  We'll deal with it then.

10             Is there anything else that we need to deal with

11  today?

12             MR. HOLTZER:  No, Your Honor.  I think we want,

13  again, to thank you.  We hope you have a wonderful trip and

14  vacation, and you stay safe as everybody else.  And we wish

15  everybody a good set of holidays for those who are observing.

16  And thank you very, very much.

17             THE COURT:  Okay.  Let me ask you one more question,

18  Mr. Holtzer.  When am I likely to get these orders that we're

19  going to be entering?

20             MR. GOREN:  Some are a work in progress.

21             MR. HOLTZER:  Yeah.  We're going to try to send as

22  many, if not all, of them today.  It'll assume everybody on the

23  phone gets a chance to review, particularly the finance orders.

24  So here's what I propose.  After this call, we'll sit down with

25  the team and talk with folks.  And perhaps we can send your

Page 79

1   chambers a very quick e-mail apprising you of timing so that we

2   can manage this rather than have me do it live and try to

3   process it with a bunch of people.

4           THE COURT:  Very good.

5           MR. HOLTZER:  Okay.

6           THE COURT:  All right.  And for those who do observe

7   the holiday, a sweet and happy New Year.  And we'll be together

8   again soon.

9           MR. HOLTZER:  Thank you very much.

10          MR. GOLDSTEIN:  Thank you, Your Honor.

11          MS. MARCUS:  Thank you, Your Honor.

12          MR. RAVID:  Thank you, Your Honor.

13          THE COURT:  All right.  We're adjourned.

14          MS. MARCUS:  Thank you.

15          THE CLERK:  All right.  Deirdre, you can stop the

16  recording or Kanisha (ph).

17      (Whereupon, these proceedings were adjourned at 11:48

18  a.m.)

19

20

21

22

23

24

25

Page 80

```
 1

 2                        I N D E X

 3

 4                     E X H I B I T S

 5    NO.        DESCRIPTION                    ID      EVID.

 6    ---        Declaration of Asaf Ravid in        ---      37

 7                  support of first day hearing motions

 8    ---        Declarations of Cynthia Romano in   ---      38

 9                  support of Debtors' motion to approve

10                  motion for DIP financing

11    ---        Declaration of Nellwyn Voorhies in  ---      63

12                  support of Debtors' application to

13                  retain Donlin Recano nunc pro tunc

14                  to petition date

15

16                     R U L I N G S

17    DESCRIPTION                          PAGE      LINE

18    Debtors' motion for entry of order directing   39       15

19      joint administration of related Chapter

20      11 cases granted

21    Debtors' motion for approval of DIP financing  57       24

22      and continued use of cash collateral granted

23

24

25
```

Page 81

```
 1                    I N D E X, cont'd

 2

 3                      R U L I N G S

 4    DESCRIPTION                          PAGE    LINE

 5    Debtors' motion for order authorizing     61       8

 6      continued use of their cash management

 7      system and procedures, maintenance and

 8      continued use of existing bank accounts

 9      and business forms granted

10    Debtors' motion seeking entry of order    61      18

11      extending time to file schedules of assets

12      and liabilities, schedules of executory

13      contracts and unexpired leases and

14      statements of financial affairs granted

15    Application of Debtors for authority to    64      11

16      retain and employ Donlin, Recano & Company,

17      Inc. as claims and noticing agent nunc

18      pro tunc to the subsidiary debtor petition

19      date granted

20    Debtors' motion for entry of order        76      16

21      authorizing subsidiary Debtors to pay

22      certain critical operating expense claims,

23      and honor tenant obligations granted

24      subject to revisions to final order

25      for interim relief
```

Page 82

1                    I N D E X, cont'd

2

3                     R U L I N G S

4     DESCRIPTION                              PAGE      LINE

5     Debtors' motion for entry of an order      84        5

6     (a) scheduling combined hearing on adequacy

7      of disclosure statement and confirmation

8      of debtors' joint Chapter 11 plan;

9      (b) establishing procedures for objecting

10     to disclosure statement, solicitation

11     procedures, and Chapter 11 plan;

12     (c) approving form, manner, and

13     sufficiency of notice of combined

14     hearing, commencement of Chapter 11 cases,

15     and Section 341(a) meeting of creditors;

16     (d) conditionally approving the disclosure

17     statement for purposes of soliciting

18     mezzanine lender granted subject to

19     incorporating discussions on the record

20     into order seeking interim relief

21

22

23

24

25

Page 83

1                      C E R T I F I C A T I O N

2

3    I, Lisa Beck, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5    **Lisa Beck**   Digitally signed by Lisa Beck
                      DN: cn=Lisa Beck, o, ou,
6    _____  email=bankruptcy@veritext.com, c=US
                      Date: 2021.09.27 15:04:25 -04'00'

7    Lisa Beck

8

9

10   Veritext Legal Solutions

11   330 Old Country Road

12   Suite 300

13   Mineola, NY 11501

14

15

16   Date:  September 17, 2021

17

18

19

20

21

22

23

24

25

**[& - a.m.]**                                                                 Page 1

| & |
| --- |
| **&**  2:19 7:2 8:1,11 9:1 11:9 25:5 46:13 50:5 65:20 81:16 |

| 1 |
| --- |
| **1**  2:17 3:3 34:1,8 71:9,11,21 |
| **1.1**  29:17 |
| **1.2**  29:15,16 |
| **10**  57:7 75:9 |
| **100,000**  56:23 |
| **10004**  1:18 9:4 |
| **10014**  7:21 |
| **10017**  10:5 |
| **10018**  9:13 |
| **10020**  8:5 |
| **10050**  10:11 |
| **1006**  7:20 |
| **1007**  3:3 |
| **1015**  4:10 5:14 6:14 |
| **10153**  7:6 |
| **104**  51:16 |
| **105**  2:18 3:2 |
| **10:00**  2:1 |
| **10:07**  1:21 |
| **11**  2:3,8,9,11,17 3:2 4:11 5:2,15 6:2,15 14:13,20 16:22 17:1,14,19 18:3,10 23:7 26:22 28:5 31:20 39:19 46:24 50:19 51:12 66:13 67:15 68:4 73:2,24 74:3 74:20 80:20 81:15 82:8,11,14 |
| **111**  8:14 |
| **1125**  67:12 |
| **1126**  67:12 |
| **11501**  83:13 |

| | (col 2) |
| --- |
| **11:20**  22:20 |
| **11:30**  73:3,25 |
| **1270**  8:4 |
| **12th**  10:4 |
| **13**  53:17 |
| **1319**  51:15 |
| **14**  39:23 50:20 |
| **141**  51:16 |
| **14th**  17:21,23 67:14 |
| **15**  1:20 9:10 80:18 |
| **156**  2:17 50:11 52:3 |
| **16**  81:20 |
| **17**  83:16 |
| **18**  81:10 |
| **185**  15:15 |
| **18th**  66:11 |
| **19**  41:1 |
| **1st**  59:15 71:18 72:17 |

| 2 |
| --- |
| **2002**  3:3 |
| **201**  7:19 |
| **2021**  1:20 16:2 50:20 68:4 83:16 |
| **2022**  18:2,3 |
| **21-10335**  1:4 2:2 11:3 |
| **21-11609**  1:4 5:1 11:4 |
| **21-11610**  1:4 6:1 11:5 |
| **22nd**  68:4 |
| **23rd**  32:23 |
| **24**  80:21 |
| **25**  41:10 44:12 |
| **25,000**  33:9 |
| **252**  15:17 |
| **26**  41:16 |
| **26th**  71:6 |
| **27**  42:20,20 |

| | (col 3) |
| --- |
| **27th**  73:2,24 74:3 74:20 75:1,13,17 |
| **28**  2:17 18:2 52:3 |
| **29th**  66:6 71:5,9 |

| 3 |
| --- |
| **3**  25:19,24 39:3 |
| **30**  41:25 |
| **300**  83:12 |
| **30th**  73:3,25 |
| **31**  42:9 |
| **31st**  16:2 |
| **33**  31:20 |
| **330**  83:11 |
| **335**  10:3 |
| **341**  2:12 59:21 66:14 82:15 |
| **342**  3:2 |
| **36**  42:15 |
| **37**  80:6 |
| **38**  44:5 80:8 |
| **39**  80:18 |

| 4 |
| --- |
| **4**  5:17 6:17 26:20 27:17,20 47:18,19 48:2 |
| **4,002**  33:20 |
| **400**  10:12 |
| **45342**  10:13 |
| **49.25**  16:16 |

| 5 |
| --- |
| **5**  5:11 6:11 28:23 31:6 39:8,19 48:10 74:24 75:6 82:5 |
| **5,075**  33:19 |
| **50.75**  16:16 |
| **503**  2:17 |
| **506**  14:24 16:18 |
| **5075-1**  2:18 51:22 |
| **521**  3:2 |
| **552**  34:1,7,8 |

| | (col 4) |
| --- |
| **57**  80:21 |
| **5th**  18:19 75:13 75:16,20 |

| 6 |
| --- |
| **6**  48:21 |
| **60**  33:14 |
| **60603**  8:15 |
| **61**  81:5,10 |
| **620**  9:12 |
| **63**  4:13 80:11 |
| **64**  81:15 |
| **65**  15:22 |
| **66**  3:10 |
| **67**  4:20 50:10 52:24 |
| **68**  2:22 50:12,14 51:3,6 |
| **69**  4:7 46:19 |
| **6:30**  69:14 |

| 7 |
| --- |
| **7**  16:9 23:7 28:22 29:24 31:5 33:8 39:12,15 44:12 53:17 |
| **75**  33:14 |
| **75,000**  33:10 44:13 |
| **76**  2:14 65:24,25 81:20 |
| **767**  7:5 |

| 8 |
| --- |
| **8**  81:5 |
| **84**  82:5 |
| **85**  3:18 27:25 28:10 |
| **86**  3:18 26:9,13 |

| 9 |
| --- |
| **9**  9:9 |

| a |
| --- |
| **a.m.**  73:2,3 74:3 74:20 75:9 79:18 |

**aaron** 8:19
**ability** 41:11
**able** 19:16 22:3,4
  30:16,24 37:11
  59:12 62:10,17
  73:22 75:4
**ably** 38:5
**absolute** 40:9
  60:19
**absolutely** 25:14
  57:21 60:25
**abstain** 63:22
**abundantly** 31:7
**acceptable** 14:11
  14:14 19:4,9,23
**acceptance** 68:5
**accepting** 67:20
**access** 31:1
**accommodate**
  76:20
**account** 44:17,19
  47:20 48:5 49:1,1
**accounts** 4:4
  41:17 47:2,5,7,9
  48:14,15,19,19,24
  81:8
**accurate** 49:10
  83:4
**acknowledged**
  20:6
**action** 23:14,16
  23:20 24:1,2,9
**active** 70:13
**actively** 31:19
**actual** 56:4 59:1
  72:2
**adamant** 55:21
  57:21
**add** 39:21,25 40:8
  42:10 44:7,18
  48:17,21 69:16
**added** 36:20 40:4
  41:2 42:1 64:24

**adding** 39:8
**addition** 43:6
  48:19 70:8
**additional** 11:4
  20:13 42:3 43:8,9
  55:9 70:19 76:25
  76:25 77:1
**additionally**
  48:10
**address** 13:4
  19:16 20:4,10
  36:25 49:8 50:9
  69:8,17,22 74:13
**addressing** 72:2
**adequacy** 2:6 66:8
  82:6
**adequate** 3:15
  23:24 24:2 31:14
**adjacent** 14:20
**adjourned** 79:13
  79:17
**admin** 19:10
**administer** 26:21
  31:3 47:9
**administering**
  28:5
**administration**
  4:11 5:15 6:15
  26:20 27:2,19
  80:19
**administrative**
  3:15
**admiration** 38:9
**admit** 26:4 68:24
**admitting** 25:23
  26:12 51:5
**advance** 31:6,22
  39:24 60:12 68:10
**advances** 30:25
**advised** 21:11
**advisor** 26:7 39:9
**advisors** 14:4

**affairs** 3:6 5:7 6:7
  46:18 49:19 81:14
**affiant** 14:4
**affiliate** 12:16
  14:25 30:1 53:19
  60:18
**affiliated** 54:7,7
  54:11,11,20 55:14
  55:16 58:10,11,15
**affiliates** 56:18
  57:5 58:25 60:9
**affiliation** 54:1
  55:22
**affiliations** 58:22
**afternoon** 73:5
**afterward** 61:11
**agenda** 17:10,12
  26:19 27:23 28:8
  61:19
**agent** 2:19 14:7
  50:10,14,19 51:21
  52:3,11,14 81:17
**ago** 14:25 27:11
  60:15
**agree** 34:9 35:5,6
  44:7 69:3 70:1
  71:19
**agreed** 16:15 30:4
  36:4 39:20 40:8
  43:8,10 44:6,17
  45:9 76:15
**agreement** 15:1
  16:1 17:17,18
  18:17,22 19:2
  21:7 29:25 30:5
  30:11,18 55:5,7
  40:16,16 45:24
  59:1 73:10 74:14
  76:9,24
**agreements** 29:4
  31:21
**ahead** 12:2 14:16
  25:3 26:17 28:11

32:10 36:15 40:24
  44:2 47:25 54:17
  55:24 56:2 66:1
**alert** 77:22
**aligned** 32:16
**allocation** 16:14
  16:15,19 17:2
  18:12 23:19
**allow** 47:9
**allowance** 40:11
**allowed** 29:19
  32:4 62:20 67:1
**allowing** 13:14
  47:2 63:2
**alluded** 28:12,19
  65:8
**amenable** 34:25
**amendments** 15:2
**americas** 8:4
**amount** 56:23
  57:2
**amounts** 17:2
  39:16 58:18
**andrea** 7:23 12:17
  12:19 20:12 35:8
  41:18 43:13 44:4
  45:24 61:13 63:15
**annexed** 50:23
**answer** 26:24
  37:11 49:5 76:5
  77:4
**anticipate** 45:8
  51:13,15
**anticipated** 71:13
**anticipates** 30:16
**anybody** 24:21
  27:1,18 35:3
  36:24,25 38:12
  45:18 46:2 49:12
  49:23 52:13 71:2
  71:19 74:7 78:4
**anymore** 11:14
  55:19

apartment 14:21
apologize 25:12
apparently 74:10
  74:16
appearances
  11:22
appearing 11:18
appears 57:1
applicable 36:11
  42:8 54:1 62:13
  62:15
application 2:16
  50:11,16,21,23
  51:9 80:12 81:15
applies 67:22
apply 34:17 35:4
  42:4 48:13
appointment
  50:18 51:20 52:2
  77:24
appreciate 13:12
  28:14 37:14 64:13
apprising 79:1
appropriate
  14:10 23:24 51:21
  68:20
approval 28:2
  30:11,18 64:9
  66:4,4,20 68:1,17
  68:20 69:10,22
  70:2 80:21
approve 21:21
  34:13 57:22 60:6
  64:20 68:8,25
  77:19 80:9
approved 31:9
  39:24 57:11
approving 2:10
  2:12 29:24 66:12
  66:17 82:12,16
approximate
  23:10

approximately
  15:15,22 31:6,20
  51:15,16
artem 9:17
asaf 13:18 25:15
  26:1 55:11 80:6
asked 32:18 34:17
  35:4 42:10 61:23
  66:7 72:19
asking 53:15
  68:25 76:16
assert 34:9
assets 3:4 5:6 6:6
  23:18 30:7,8
  35:10 49:18 67:2
  81:11
assist 58:7
assistance 12:20
  13:11 20:7,7
associate 13:25
associated 30:4
assume 70:22
  77:8 78:22
assuming 27:6
atlas 10:2,10
  12:16 14:25 17:18
  18:17,21,25
attempting 77:9
attention 22:3
  64:10
attorneys 7:3,3
  8:2,12 9:2,9 10:2
  10:10 46:13
august 16:2 59:15
authority 2:18
  3:13 41:3 46:20
  47:6 65:15 81:15
authorized 13:21
  14:1 25:16 43:2
  47:5 48:6
authorizing 3:6
  4:2,16 5:8 6:8
  30:3 49:20 50:17

52:25 81:5,21
automatic 3:16
available 22:12
avenue 7:5 8:4
  9:12 10:3
avianca 71:6
avoid 32:1
avoidance 23:14
  23:16,20 24:1,2,8
aware 15:11 38:3
  50:16 70:17

                b

b 1:23 2:8,17 3:7
  3:14 4:4,10,18 5:9
  5:14 6:9,14 7:23
  34:1,8 47:7 48:17
  48:18,22 50:23
  51:22 67:12 80:4
  82:9
back 12:6,24 35:3
  35:15 36:22 37:4
  38:5 42:12 57:21
  58:18 60:7 64:22
  73:2
background 11:6
  14:14
bae 10:7 12:15
  73:7,22 74:1
  76:10
bailiwick 63:7
baked 65:12
balance 19:12
ball 60:16
ballot 63:23 67:20
  67:22
bank 4:4 9:2 41:4
  47:2,7 48:14,15
  48:19,24,24 81:8
bankr 3:3 4:10
  5:14 6:14
bankruptcy 1:2
  1:16,25 40:11
  48:25 51:21 67:12

banks 43:2 47:9
based 16:8,24
  17:9 21:25 23:17
  34:5 59:24
basic 64:25
basically 23:8
basis 31:13,23
  32:1 76:17
bear 32:6
beck 6:25 83:3,7
beginning 38:4
behalf 2:21 3:9,18
  4:7,12,19 5:10,16
  6:10,16 11:7 25:5
  31:15 34:25 37:2
  38:22 45:22 59:2
  65:20 67:21 69:21
  69:25
belief 53:25 54:6
  55:1
believe 32:16
  39:18 42:6,10,11
  42:18 44:6 54:20
  54:22 55:4 58:15
  63:5 65:15 68:1
  68:12,19 77:4
bench 34:15
berezin 7:11
  11:19 58:6 61:6
best 20:22 51:22
  53:25 54:5 55:1
  58:9
beyond 70:17
bid 18:17,18,22
  19:5,22 71:24
  72:19 74:21 76:3
  76:18,22 77:15
bit 17:10 18:5,23
  23:5 63:19 78:1
bite 35:3
blackline 33:2
block 37:23

**bondholders**
  30:19 55:20 58:21
**bookmark** 17:13
**books** 16:24 42:17
**bottom** 41:1,10
  42:9 56:7
**bound** 76:9
**bowling** 1:17
**brains** 74:12
**breakup** 77:17
  78:2,3
**bridge** 28:6 29:6
**brief** 11:25 13:8
  38:14
**bring** 22:3 47:17
**bringing** 64:10
**brooklyn** 14:21
**budget** 30:3,13,20
  31:9 39:24 40:7
  40:20 41:12,14
**building** 7:18 9:11
**bunch** 75:19 79:3
**burlacu** 67:16
**business** 4:4,5
  46:25 47:10 51:19
  55:19,21 81:9
**buyer** 76:24

**c**

**c** 2:10,17 3:14 7:1
  11:1 50:11 52:3
  82:12 83:1,1
**calendar** 71:11
  75:1
**calendars** 75:3
**call** 21:6 22:20
  28:18 41:11 52:7
  56:8,13,17 57:5,6
  74:21 75:22 78:24
**called** 25:18 26:8
**calls** 20:15 77:11
**cap** 40:9
**capital** 10:2,10
  14:25 15:7,12

30:2
**capped** 40:7
**carefully** 77:16
**carson** 8:18
**carve** 30:6 33:8
  39:21 44:11,15,17
**case** 1:4 11:6
  13:14 16:8 17:1
  17:14,15,19 18:6
  19:6 20:17,17
  21:18,22,22 26:22
  31:23 34:2,5,7,10
  34:14,17 37:4,14
  37:22 38:4,7 52:9
  52:12 58:17 59:19
  59:20,22 60:15
  62:24 65:13 67:4
  67:5,9 68:4 71:6
**cases** 2:11 4:11
  5:15 6:15 11:4
  14:13 20:14 26:22
  28:5 30:14 31:3
  46:24 48:6 50:19
  51:12,18 59:22
  65:11 66:13 67:15
  67:18 70:13 80:20
  82:14
**cash** 3:14 4:3,5
  16:5,6 19:11 21:6
  23:21 27:24 30:13
  30:17,19,24 31:2
  31:11 36:11,24
  38:13,22 42:21,22
  42:23,23 44:19
  45:20 46:15,18,21
  47:8 80:22 81:6
**cause** 17:19
**causing** 76:13
**cautious** 63:2
**cease** 43:3
**cede** 24:25 46:9
**centerpiece** 14:19

**ceo** 13:19 25:15
  55:20
**certain** 3:8 4:17
  5:9 6:9 29:4 30:3
  30:5 32:1 49:21
  53:1,2 81:22
**certainly** 20:24
  34:25 37:3,10
**certainty** 32:3
**certify** 83:3
**cetera** 49:24
  65:18
**ch** 2:3 5:2 6:2
**challenge** 33:14
  33:21 36:4,8
  44:22
**challenging** 38:18
**chambers** 13:10
  18:24 21:5 22:8
  28:14,15,16 32:14
  48:9 79:1
**chance** 21:13 56:4
  70:19 78:23
**change** 40:25
  47:19 48:8 54:2
  56:12 71:8 72:11
  72:16
**changes** 4:4 28:20
  38:25 43:7,8,9
  45:11,24 46:4
  47:16 49:2,11,14
**changing** 35:1
  39:4
**chapman** 8:1,11
  12:8 23:22
**chapter** 2:8,9,11
  4:11 5:15 6:15
  14:13,19 16:22
  17:1,14,19 18:10
  26:21 28:5 33:8
  44:12 46:24 50:19
  51:12 66:13 67:15
  68:4 80:19 82:8

82:11,14
**chart** 23:6
**chase** 9:2
**check** 42:12 75:3
**checks** 41:5 43:3
**chicago** 8:15
**chief** 13:19,19
**choreograph**
  17:19
**circulate** 45:11
**circulated** 28:14
  28:17 32:14
**circumstances**
  65:16 69:9
**claim** 17:4,5 39:15
  67:10 68:2
**claimants** 51:19
**claims** 2:19 4:17
  14:7 23:8 30:7
  32:4 50:10,14,19
  51:20 52:2,11,14
  53:2 67:1,7,11,22
  67:23,24 81:17,22
**clarification**
  24:16 39:6
**clarifying** 40:1,8
  41:2,14 42:15
**clarity** 60:14
**class** 17:5 23:9
  24:5 67:10,10,11
  67:22,24
**classes** 66:15
**clause** 34:3,3
  48:22
**claw** 60:7
**clawed** 57:21
**clawing** 58:18
**clear** 16:20 31:7
  34:21 38:25 40:22
  41:21 59:6 63:21
  78:8
**clearly** 59:4 77:14

[clerk - court]                                                                    Page 5

clerk  79:15
client  72:22
clock  45:15
close  47:2
closing  37:6
code  67:12
cohnreznick  14:3
  25:13 26:6 31:19
collateral  3:14
  16:5,6 19:11 21:6
  23:21 27:24 30:13
  30:17,19 31:2,11
  36:11,24 38:13,23
  45:20 80:22
colleague  19:9
  46:10
colleagues  31:18
  33:8 34:1 37:13
  69:8,17 70:25
collection  42:21
combined  2:6,11
  19:20 21:19 62:24
  64:20 65:7,10,18
  66:3,13 68:11
  82:6,13
come  12:6,24
  15:10 23:4 35:3,4
  35:15 36:22 40:10
  64:22
comes  24:14
comfort  69:9 70:8
  70:19 71:1
coming  13:8
  22:17
commenced  67:13
  68:4
commencement
  2:11 66:13 67:14
  67:18 82:14
comment  23:23
  33:5 39:11,18
  41:16 44:4

commented  70:21
  71:23
comments  12:24
  19:17,17 21:2,3
  21:11 24:21 27:10
  32:13 33:1,2,17
  36:10 38:11,17
  43:12,17,19,24
  46:5 47:12 49:10
  52:16 69:6 70:23
  70:24
committed  32:3
committee  32:20
  32:22 33:14,15
  34:12,12 39:13
  65:13
communicated
  72:21
communication
  22:4
company  2:19 8:2
  8:12 24:7 38:15
  50:18 53:23 54:4
  54:21 55:4,14,18
  55:18 56:23 59:16
  81:16
company's  14:19
completed  19:25
complexity  51:19
concern  33:22
  57:23 60:23 61:1
  65:1
concerned  20:24
  21:16,23 57:2
  58:21,22 59:16
concerns  20:17
  52:4 56:3
conditional  66:20
  68:1,17,19 69:9
  69:22 70:2 71:1
conditionally  2:12
  66:16 68:7,25
  82:16

conference  21:6
conferences  16:14
confirm  17:8 44:9
  63:6
confirmation  2:7
  18:8 19:20 62:10
  62:25 64:9 66:5,9
  68:11 71:5,20
  72:16 82:7
confirmed  18:2
connection  54:8
  59:5 73:17
conscience  43:21
consensual  16:5,6
  30:11,18
consent  70:2
  73:11,15
consents  68:17
consequently
  68:19
consist  47:2
consistent  33:18
  34:14 52:16
consistently  34:2
consolidated  3:7
  5:8 6:8 49:20
constituent  15:5
constituents
  15:25
constitute  58:25
consummate  31:3
cont'd  81:1 82:1
contacting  31:19
contemplated
  31:4 63:20
continuation  31:2
continue  4:3
  29:19 44:3 46:21
  47:6,10 53:5
continued  80:22
  81:6,8
continuing  56:24
  76:8

contract  56:6
contracts  3:5 5:6
  6:6 49:18 54:1
  77:2 81:13
conversation
  55:10
cooperative  77:22
coordinating
  13:10
copies  56:6
copy  42:13 44:16
  44:16
cornell  22:23
corners  70:17,20
corporate  13:20
correct  36:6 52:15
  52:17 64:7 77:4
correction  24:8
  24:15
cost  28:4 32:1
costs  30:2,4
counsel  12:5,15
  20:14 22:1 36:23
  40:20 50:5 56:9
  57:5 61:10 70:15
country  83:11
couple  13:3,13,18
  16:20 19:13 23:6
course  4:5 12:17
  12:21 23:25 28:5
  35:5 39:2 45:11
  47:3,4 51:12,18
  57:24 59:16 60:18
  63:7 64:15 69:10
  71:8
court  1:2,16 11:2
  11:11 12:2 13:16
  14:8,11,12,15,16
  15:5 16:20 19:10
  19:25 20:3,4,5,8
  20:10,16,20,25
  21:9,12,21,21
  22:6,21,23 23:2,4

[court - deficiency]                                                                 Page 6

24:17 25:2,6,10
25:22,22 26:11,12
26:17,25 27:1,4,7
27:15,18 28:8,11
28:22 29:9,12
30:10 31:24 32:5
32:10,18,24 33:1
33:7,12,22,25
34:4,8,11,19 35:2
35:11,13,19,22,24
36:3,7,14,22
37:12,17 38:1,3,7
38:12,24 40:12,24
41:9,20,24 43:4
43:13,19,22 44:1
44:24 45:5,15,18
46:1,11,20 47:15
47:22,25 49:4,6,7
49:12,22 50:2,7
50:13 51:1,4,5,24
52:13,18,20 53:10
53:12,14 54:16
55:24 56:2,4,5,21
56:25 57:10 58:1
58:3,8,20 59:13
59:25 60:14,24
61:3,6,9,13,17,20
62:4,6,9 63:10,12
63:16 64:15,18
65:4,7,24 66:1
68:7,24 69:3,7,13
69:20 70:5,9,17
70:18,22 71:19
72:9,15 73:9,13
73:22 74:5,14,17
75:3,6,9,16,19,24
76:3,21 77:8,14
78:9,17 79:4,6,13
**court's**   23:25
33:18,21 52:5,6,9
64:10
**courtroom**   75:25

**cover**   28:4
**covered**   23:17
36:15
**covers**   45:3
**credit**   29:25 40:16
**creditor**   67:8 68:2
70:10
**creditors**   2:12 3:7
5:9 6:9 16:23,25
17:3 23:9 24:4
34:12 49:21 51:16
51:16 60:21 62:14
82:15
**critical**   4:17 30:22
42:24 50:9 52:21
52:23 53:1,3,16
57:11,14,19,22
60:6,8,17,18
64:23 68:15 81:22
**cro**   25:15 55:20
**current**   54:21
**currently**   63:20
**cut**   22:20 49:22
**cutler**   8:1,11 12:8
23:22
**cycle**   76:14
**cynthia**   14:2 26:5
26:15 80:8

**d**

**d**   2:12 3:15 11:1
80:2 81:1 82:1,16
**date**   2:20 18:8
19:19 30:23 39:17
46:6 48:16,24
50:20 51:10 71:7
71:13 72:16,18
73:12 74:2,4,8,23
75:15 76:19 80:14
81:19 83:16
**dated**   16:2
**dates**   46:7 71:4,16
71:22 72:16,24
73:13,24 75:14

77:20
**david**   55:15 56:16
**day**   11:5 13:2,7,22
20:6 21:2 22:8,14
25:7,20 26:1 53:4
53:4,18,18,22,22
54:23,23 57:13
58:14,14 59:12
61:20,23,24 62:6
73:2 75:11,12,21
75:23,23 80:7
**days**   11:21 13:11
19:12 27:11 29:18
33:14,14 48:23
73:4
**deadline**   66:10
71:16,17,17
**deal**   12:13,14
18:20 34:12 35:15
40:15 50:13 52:20
59:20 76:7,11
77:20 78:9,10
**debt**   15:15,18
16:19
**debtor**   1:8,11,14
2:20 7:3 12:13
13:5 15:21 16:3
21:19 29:22,25
30:17 34:6,9,10
35:6 37:8 42:22
45:19 56:25 57:6
66:15,23 81:18
**debtor's**   67:6
**debtors**   2:5,7,16
3:1,6,13 4:1,3,9
4:15,17 5:4,8,13
6:4,8,13 7:4 11:7
11:9,14,14,15
13:20,22 14:1
15:4,8 16:2,24
20:14 21:4,7,15
22:1 25:5,15,17
25:19 26:3,7,10

26:15,19,20,21,22
26:24 27:24 28:2
30:11 40:6 42:17
46:17,21,25 47:2
47:6,10 48:18,23
48:25 49:17,20
50:6,17,21,23
51:8,13,15,19,20
51:23 52:24,25
53:3,11 54:3,6,9
54:19,22,25,25
55:1,2,19 56:9,21
58:11 59:4,19
61:10 62:10 65:20
66:21 67:15,19
68:1,5,8,18,19
70:15 74:7 77:1
80:9,12,18,21
81:10,15,20,21
82:5,8
**debtors'**   48:14
53:18,25 81:5
**decent**   73:16
**decided**   14:9
**decision**   70:12
**declarant**   13:22
**declaration**   14:18
23:6 25:8,12,19
25:20,23 26:1,4,9
26:10,12,15 30:22
31:18 50:22,24
51:2,5,8 53:15,17
57:13 60:2 66:22
67:16 80:6,11
**declarations**
25:11 60:12 80:8
**deemed**   47:5
48:13 53:3 62:20
**default**   41:3,12
43:1
**deficiency**   17:4
67:23

[defined - enterprise]                                                        Page 7

**defined**  39:23
    40:17,21
**definitely**  35:13
**definitions**  40:1
    40:22
**deirdre**  79:15
**delete**  72:4
**delivered**  42:11
    44:15
**demonstrated**
    38:4
**denizen**  14:22,22
    15:14,16,19 16:8
    17:3 28:4 53:5,6
    54:5,24
**department**  7:16
**depending**  23:10
**depository**  41:4
    47:5 48:6
**deposits**  53:8
**deputy**  75:25
**described**  42:23
    45:25 46:22 47:8
    53:9 64:24 66:2
    72:12
**description**  80:5
    80:17 81:4 82:4
**design**  18:13
**designated**  47:5
    48:6 49:1
**designed**  18:6
    32:3
**detail**  17:7 70:21
**determine**  48:19
**determined**  57:20
**deviate**  34:18
**diamond**  13:24
**dictate**  65:16
**different**  15:13
    27:5 40:3 65:14
    66:24
**differently**  56:14

**dip**  12:13 14:4
    16:7,9 19:11 21:6
    26:16 28:22,24
    29:10 30:5,9 31:5
    31:8,13,19,23,24
    34:6,11,23,25
    35:6,9 36:24 37:2
    37:8 38:13,20,22
    39:9 40:6 41:3,11
    42:16 43:1 44:5,7
    45:22 49:1 68:14
    80:10,21
**direct**  43:11 60:11
**directing**  4:11
    5:15 6:15 50:18
    80:18
**director**  26:5
**disclosure**  2:7,9
    2:13 17:22 19:20
    21:20 22:11 62:18
    62:25 64:9 66:4,8
    66:17,20 68:8,11
    68:18,20,25 69:6
    69:13,23 70:2,9
    70:11,18,20,24
    82:7,10,16
**discuss**  58:17
**discussed**  19:14
    21:14 33:7 41:7
    41:17 44:11 59:8
**discussing**  30:25
**discussion**  63:18
    78:1,6
**discussions**  77:25
    82:19
**dispute**  26:6
**disruption**  46:24
**distribution**  67:2
**distributions**  32:4
**district**  1:3 48:7
**doc**  3:10,18 4:7,13
    4:20 5:11,17 6:11
    6:17

**docket**  26:13
    27:13,15 46:19
    51:2
**doctor**  22:19
**doctor's**  77:24
**doctrine**  34:2,8,10
    34:14,17
**document**  28:13
    74:18
**documented**
    13:15 15:9
**documents**  12:25
    13:16 15:24 21:23
    21:25 22:11 40:3
    44:9 56:5,12,15
    59:7,10
**doing**  20:22 65:10
**donlin**  2:19 14:5
    50:18,22 51:9
    52:2,11 67:16
    80:13 81:16
**doubt**  59:23
**draft**  28:15 36:20
    60:6
**drafts**  22:8
**draw**  29:9
**draws**  39:4
**drive**  10:11
**driving**  37:13
**due**  59:15 72:6

**e**

**e**  1:23,23 2:14
    3:16 7:1,1 8:3,13
    11:1,1 30:19
    31:14 38:15 39:13
    67:8,10,21,21,23
    79:1 80:2,4 81:1
    82:1 83:1
**earlier**  28:16
    35:12 38:17 56:13
    71:23
**early**  12:22 47:12
    67:13

**ease**  11:13
**easier**  71:15
**ecf**  2:14,21 25:19
    25:23 26:9,12,20
    27:15,17,19,25
    28:8,9,10 50:10
    50:11 51:2,3,5
    52:23 65:24,25
**echo**  37:3 38:17
**economic**  18:12
    53:21 55:13
**effective**  18:2,8
**efficiency**  26:23
**efforts**  67:17
**egm**  37:4 67:25
    68:2,3,20 70:14
**egm's**  68:3
**eighth**  9:12
**either**  72:25 73:21
    73:24 74:25 75:13
    77:3
**electronic**  42:14
**eliminate**  72:8
**elizabeth**  7:12
    11:19 46:12
**else's**  73:1
**embodied**  13:16
    15:25
**employ**  2:18
    81:16
**enable**  31:2
**encumbered**  30:7
**engaged**  77:1
**engagement**  77:5
    77:7,8,9
**enjoys**  38:9
**ensure**  44:18
**enter**  26:25 65:14
**entered**  24:11
    52:8
**entering**  78:19
**enterprise**  58:25
    59:6

[entire - financial]                                                                   Page 8

entire  76:14
entities  16:3 53:3
  58:24
entitled  54:7
  68:14
entity  12:10 13:4
  15:13,14,22,23
  54:7 55:16,22
entry  2:6 3:3 4:2
  4:10,16 5:5,14 6:5
  6:14 39:20 47:15
  50:17 52:24 80:18
  81:10,20 82:5
ephraim  13:24
equities  34:2,5,7,9
  34:13,17
equity  68:3
especially  38:19
esq  7:8,9,10,11,12
  7:13,23 8:7,8,17
  8:18,19 9:6,15,16
  9:17 10:7,15
essential  53:4
establish  66:7
establishing  2:8
  82:9
estate  23:17 51:23
estimate  16:9
et  49:24 65:18
evening  36:21
event  41:2,2,11,12
  41:14 43:1 57:19
  60:8 69:11
evergreen  1:7,10
  1:13 2:2,21 3:9,18
  4:7,12,19 5:1,11
  5:16 6:1,11,16
  11:3,15,16 13:4
  15:21 29:23 30:15
  46:14,14 66:17
everybody  11:2
  40:2 78:14,15,22

evid  80:5
evidence  25:8,13
  25:20,23,25 26:2
  26:4,10,12,14,16
  50:24 51:5,7,10
  56:10
exacerbating
  76:15
exact  33:20 56:3,7
  57:18
exactly  29:11
  44:25
examine  42:16
example  34:11
exchanges  21:25
excluded  48:20
excuse  53:10
excused  61:8
  63:12 64:14
executing  31:20
executive  13:19
executory  3:5 5:6
  6:6 49:18 81:12
exhibit  47:7 48:17
  48:18,20 50:23
exhibited  76:7,8
exist  23:14
existing  4:3 13:5
  26:22 30:17 31:16
  46:21 47:10 81:8
exit  14:19
exited  77:23
expanded  11:24
expect  45:5 60:10
expedite  32:4
expedited  29:20
expeditiously
  37:9
expense  3:15 4:17
  18:10 53:1 81:22
expenses  30:2,4
experience  59:24

explain  74:22
explained  40:21
  59:13
explanation  56:22
  58:4
exposure  76:11
express  38:8
expressed  76:25
  77:12
expressly  31:8
extend  49:24
  73:23
extending  3:4 5:5
  6:5 74:2 81:11
extension  46:17
  49:17
extensive  32:12
  69:5
extent  23:14 24:1
  34:4 36:11 48:18
  61:19,23
extraordinary
  13:10 76:9

f

f  1:23 3:16 83:1
faced  20:5
fact  42:4 43:25
  56:17 57:4
facts  21:22 57:16
  76:17
fairly  72:3
faith  61:10
familiar  40:16
fancy  14:10
far  17:9 20:18,24
  21:16,23 57:2
favor  62:13,15
feature  16:12,14
  31:17
february  18:3
  37:5 68:4
fed  3:2 4:10 5:14
  6:14

federal  7:18
fee  30:1,6 54:3
  77:17 78:2,3
feeling  12:19
fees  30:4 40:6,19
  42:5 44:12 59:14
fiduciary  76:23
  77:19
fields  11:23
fifth  7:5
figure  25:3
file  3:4,7 5:5,8 6:5
  6:8 12:13 15:6
  16:22 17:21,22
  46:17 49:17,20,24
  81:11
filed  2:20 3:8,17
  4:6,12,19 5:10,16
  6:10,16 11:4,15
  13:13,16 15:21
  16:13 18:6 20:17
  22:10 27:12 43:25
  48:7 50:9,11
  52:23 59:20 70:23
filing  15:2,3 16:1
  17:16 20:13 22:7
  29:5,18 48:25
  70:14
filling  39:3,15
fills  75:2
final  3:17 4:2,16
  18:19 22:9 24:10
  24:14 28:25 35:15
  35:17 39:20 45:6
  46:3,6 52:25 60:9
  74:23 76:19 81:24
finalize  29:6
finalized  13:15
  22:9
finally  66:12,16
finance  78:23
financial  3:6 5:7
  6:7 14:3 26:7 39:9

[financial - goodwin]                                                                    Page 9

46:18 47:21 48:5
49:19 68:16 81:14
**financing** 3:14
26:16 27:24 28:2
29:5,7 30:9 31:2
31:17 45:19 80:10
80:21
**find** 73:13
**finding** 33:13
**fine** 19:25 35:19
43:22 45:8 60:5
65:9 71:12 72:9
74:6 75:21
**finished** 12:22
**firm** 12:4,8 14:3,5
14:6
**first** 11:5,5,12,20
12:18 13:2,6,14
13:22 16:22 17:20
19:12 20:6,17
21:2 22:8,14 25:7
25:9,20 26:1,19
30:12,18 39:11
42:7 50:14 53:1
53:15 57:13 59:20
61:20,23 69:14
73:2,17 74:13,17
80:7
**firsthand** 76:11
**fitting** 73:5
**five** 48:23
**fixed** 39:16
**flagged** 35:25
**flags** 57:14 60:3
**floor** 10:4
**flow** 30:24
**flying** 57:14 60:3
**focus** 74:19
**focused** 37:5
**fold** 42:21
**folks** 19:13 76:6
78:25

**following** 71:9
72:24
**footnote** 42:1
44:18 53:16,17
**footnotes** 40:2
57:12,17
**force** 37:13
**foreclose** 34:11
**foregoing** 83:3
**foremost** 13:6
**forget** 25:12
**form** 2:10 18:19
45:9 47:11 49:11
52:4 66:12 72:7
82:12
**formation** 39:13
**formats** 17:15
**forms** 4:4 72:2
81:9
**forth** 14:18 20:19
20:21 21:3,11,14
25:19 26:9 27:6
30:21 31:18 40:17
47:4 56:19 59:17
67:17
**forward** 13:9
14:13 22:14 37:14
63:2 72:18
**found** 20:7
**four** 70:17,19
78:4
**frank** 9:1 12:4
**frankly** 60:16
**friday** 71:10
**fried** 9:1 12:4
**friedman** 8:7 12:8
23:22 24:6,6,15
24:16,17 36:12
38:14,15 55:15,16
56:15,16,17 57:3
59:2
**friedman's** 59:5

**front** 40:2
**full** 16:23 67:1,7
**fuller** 58:4
**fully** 70:4
**fund** 30:16
**funding** 29:5
30:22 37:8 38:19
38:19
**funds** 29:19 31:23
54:6
**further** 48:21
60:9 63:19
**future** 18:5 59:22

**g**

**g** 11:1 67:12 80:16
81:3 82:3
**gap** 28:6 29:6
**gardens** 1:7,10,13
2:2,21 3:9,18 4:7
4:12,20 5:1,11,16
6:1,11,16 11:3,15
11:16 13:4 29:23
30:15 46:14,14
66:17
**gary** 7:9 9:6 11:8
12:3,4 74:9
**general** 17:4
21:14 23:9 24:5
57:10 64:25 65:8
67:11
**generally** 33:6
65:9
**gentleman** 55:15
**getting** 53:24
**give** 14:12 15:7
27:15 29:5 35:22
63:21 64:1,4 69:9
70:8 71:1
**given** 47:3 64:21
70:23 73:23
**gives** 70:18
**giving** 43:6

**glanced** 69:1
**glancing** 77:15
**glenn** 1:24 11:3
**global** 26:5
**go** 12:2 13:5 14:16
16:16,17 17:7
18:2,13 22:14,19
25:3 26:17 28:11
28:25 32:10 35:20
36:15 38:5 40:3
40:24 42:12 43:23
44:1 47:25 54:17
55:24 56:2 57:22
63:2 66:1 68:23
72:17,18 77:24
**goes** 23:7 56:16
**going** 11:6 13:8
14:9 17:25 19:1
20:16 21:8,19,20
21:21 24:24 29:9
38:5 39:14 40:22
43:21 44:8 46:15
52:9 53:14 57:10
58:2 60:20,20
61:7,8 62:12 63:7
69:5,7 70:22 71:7
78:19,21
**goldman** 53:20
54:1,4,8,11,12,20
55:3,13,19,21,22
58:11,16,16,23,23
**goldstein** 9:16
12:11 34:22 37:16
37:18,19,20 38:8
38:10 69:8,16
70:6,7 79:10
**good** 11:2,8,11
20:11,19 22:3
25:4 37:18,19,25
38:1 58:9 64:15
65:19 78:15 79:4
**goodwin** 9:8
12:12 37:1,20

45:22 69:25 70:7
**gordon** 43:4,18
**goren** 2:21 3:9,18
4:6,12,19 5:10,16
6:10,16 7:8 11:19
22:7,17 24:25
25:3,4,4,14 26:3
26:17,18 27:10,15
27:17,22 28:10,11
28:12 29:2,11,13
29:16 32:8,11
33:1,3,8,12,25
34:21 35:17,20,23
36:3,6,9,16,17
37:3 38:24 39:2
40:24,25 41:10,22
41:25 42:15 43:9
44:1,3,25 45:10
45:25 46:8 55:7,7
56:14 57:9,23
58:5 61:5 62:1
63:11,15,17 64:1
64:4,7 74:11
75:12,14 78:20
**goren's** 74:12
**gotshal** 7:2 11:9
25:5 46:13 50:5
65:20
**gotten** 21:1 29:3
77:11 78:1
**government** 2:5
2:16 3:1,12 4:1,9
4:15 5:4,13 6:4,13
**grant** 3:14,15
47:6 63:23 76:19
**granted** 27:21
31:14 46:6 49:15
49:25 52:18 72:12
80:20,22 81:9,14
81:19,23 82:18
**granting** 2:14 4:6
4:18 30:5 63:24
64:23

**great** 20:7 38:9
50:15 51:11 59:20
76:6
**green** 1:17
**gross** 39:21 44:7
**group** 15:1
**guess** 25:10 32:18
36:17

## h

**h** 10:7 80:4
**half** 73:18 74:10
74:11
**hand** 68:10
**handle** 11:20
19:11,18 65:17
**hang** 33:23
**happened** 29:5
**happening** 20:18
65:12
**happens** 23:19
61:11
**happy** 26:23 32:9
33:3 35:20 38:7
47:13 49:5 63:16
64:12 79:7
**hard** 13:7 42:13
44:16,16
**harris** 9:1
**hawkins** 10:15
**head** 41:20
**hear** 34:21 36:22
57:16 58:1 60:10
72:25
**heard** 27:2,19
36:23 38:13 45:19
46:2 49:13 52:14
66:22,25 71:2,20
78:5
**hearing** 2:5,6,11
2:16 3:1,12,17 4:1
4:9,15 5:4,13 6:4
6:13 11:5 13:3,5
14:14 16:21 17:6

18:16,21 19:1,3,7
19:9,19,24 21:20
22:13 23:1 26:14
28:25 34:5 35:15
51:7 57:8 60:10
62:7,25 64:20
65:8,10,18 66:3
66:13 68:12 71:5
71:18,20,24 72:19
73:24 74:2,21,23
74:23,25 75:11,12
75:21,23 76:19
77:23 78:5,8 80:7
82:6,14
**hearings** 17:12
22:24,25 46:6
63:1 73:4 75:19
**heavily** 70:3
**heckel** 7:13 11:20
50:4,4,8,15 51:3
51:11 52:15,17,19
52:22 53:11,13
54:13,15,19 56:1
65:3,4,6
**held** 15:18
**helena** 8:8
**help** 12:19 28:14
55:8 70:6
**helpful** 11:23
16:21
**hereof** 48:16
**hi** 50:4
**hiding** 60:16
**highlighted** 33:4
**highly** 28:24
**hine** 10:1,9 12:15
**hit** 29:23
**hold** 47:22
**holder** 67:9
**holdings** 13:21,25
25:16 53:20,21
**holds** 28:4 68:2

**holiday** 13:8
63:16 64:12,15
73:1 79:7
**holidays** 72:23
78:15
**holtzer** 7:9 11:8,9
11:11,12 12:3
14:17 20:1,2
22:17 23:4,13
24:13,20,23,24
28:12 30:10 67:5
74:9,9,16,18 75:7
75:10,18,20 76:5
77:3,21 78:12,18
78:21 79:5,9
**hon** 1:24
**honig** 8:8
**honor** 4:18 11:8
11:12,13,17,21,23
13:1,2,6,17 14:2,7
14:17 15:1,4,9,11
15:24 16:8,12,12
16:18 17:6,13,15
18:15 19:1,6,8,21
19:23 20:2,11
21:16 22:16 24:6
24:24 25:4,6,14
25:18 26:3,18,23
27:3,22,23 28:1,7
28:20 29:2,11,13
29:17,22 30:21
31:8,12,22 32:9
32:21 33:10,16
34:21 35:17,20
36:9,17,19 37:16
37:19 38:11,14
39:2,16 40:25
43:10,16,20 44:11
45:1,14,21 46:8,9
46:12 48:3,10
49:16 50:1,4,15
50:16 51:11 52:1
52:17,22 53:5,9

54:13,14,19 55:7
55:18,23 56:20
57:3,23 58:5,9,19
59:8,11 60:22,25
61:5,7,16,18 62:8
62:24 63:1,1,8,13
63:14 64:12,13
65:3,6,19 66:2,19
67:16 68:22 69:19
69:24 70:6,8
71:12,25 72:14
73:6,21 74:1,6,10
74:22 75:8,11,20
76:6 77:21 78:8
78:12 79:10,11,12
81:23
**honor's** 35:10
**honoring** 43:3
53:7
**hope** 22:21 38:9
60:2 78:13
**hopefully** 16:21
21:8 22:4 28:6
32:16 33:5 70:18
72:17
**hoping** 19:2
**host** 40:17
**hours** 67:14
**huge** 31:17

### i

**idea** 39:25
**identification** 3:8
5:9 6:9
**identified** 48:17
**ii** 1:13 3:6,17 4:6
4:18 5:7 6:1,7,11
8:17 11:16,17
12:10 13:3 14:4
14:23 15:12,17
16:4,7,8,15,17
17:1,8 23:9,18,22
23:23 24:3 29:8
29:12 30:15,25

31:10,10 36:11
42:25 46:14 51:16
67:5,8,10,22
**il** 8:15
**immediate** 30:22
31:1 52:6
**immediately** 68:9
**implement** 4:4
45:11 46:22 48:8
49:3
**important** 56:22
58:20
**importantly**
13:21 28:6
**impose** 73:20
**inception** 37:4
**include** 16:1 45:6
**included** 55:2
72:6
**including** 19:15
30:6 48:15 51:15
53:7 55:11
**inconsistent** 60:19
**incorporate** 39:14
**incorporated**
27:12 36:12 57:24
**incorporating**
12:25 47:15 82:19
**incorrect** 63:23
**increase** 18:11
**increased** 33:10
44:12
**indemnification**
44:5
**indicated** 67:5,19
70:21 78:2
**indicating** 52:7
**indirect** 25:15
**indiscernible**
11:24 27:7 28:13
29:17 32:2,11
34:22 37:17 39:24
40:10 41:5 42:18

42:19 46:16,23
53:11 55:9 57:9
61:4,17 63:20
73:9 74:17 76:13
**inform** 70:11
**information** 3:8
5:10 6:10 49:21
55:9 57:7 59:13
70:10,16
**informed** 18:25
30:10 56:16
**initial** 7:3 31:5
**innovation** 10:11
**insider** 57:12
58:16
**insiders** 57:20,22
60:20
**installed** 55:20
**institution** 47:21
48:5 68:16
**insurance** 61:21
62:4
**intend** 19:6
**intercreditor** 39:5
39:6
**interest** 18:12
23:8 32:4 51:22
58:22 65:22 68:3
76:25 77:12
**interfering** 72:25
**interim** 4:2,16
18:22 19:4 24:9
28:24 29:24 30:17
31:6 35:14 48:3
48:13 52:25 74:21
76:15,17 78:5
81:25 82:20
**internet** 73:17
**interrupt** 54:16
55:8,25 62:1 72:1
73:19
**interruption** 48:1

**intimately** 40:16
**introductions**
11:25 13:18
**introductory** 20:1
**invoices** 42:2
**involved** 54:4,22
54:22,23 70:3
**involves** 16:14
**israel** 56:15
**issue** 22:2 34:1
35:11 40:23 41:8
42:18 62:8,21
63:8 64:8,18,19
69:18,22 71:13,20
75:2,22 78:3
**issues** 32:17 61:15
**it'll** 78:22
**item** 17:10,25
18:1,15 26:19
27:23 72:1

### j

**jacobson** 9:1
**jacqueline** 7:10
11:18 65:19
**january** 18:2
**jarashow** 12:11
34:22,24,24 37:1
37:1 38:3 40:20
45:21,21 69:24,24
70:20,25
**jasharow** 9:15
**job** 20:19
**john** 10:7 12:15
67:16
**joint** 2:7 4:11 5:15
6:15 19:10 26:19
27:2,19 62:7
66:21 80:19 82:8
**jointly** 26:21
**jonathan** 10:15
**jpm** 29:18 31:14
**jpmorgan** 9:2
12:5,6 15:14 16:6

30:12

**judge**  1:25 11:2
20:13 35:1,8
40:13

**jump**  32:8 33:16
45:2 55:8 58:5

**junior**  30:7 31:13
31:15,23 32:1

**justice**  7:16

**k**

**kanisha**  79:16

**kaplan**  9:6 12:3,4

**keep**  20:15 72:15

**keeping**  20:19

**key**  15:5,25 16:12
16:14 18:4

**kid**  37:23

**kind**  37:5

**kizzow**  35:2

**kizzy**  9:15 12:11
34:24 37:1 45:21
69:24

**kizzy's**  38:17

**klarck**  8:18

**know**  11:25 12:19
13:7 17:9 23:15
27:5,8 32:19
35:10 38:1 40:14
43:6 45:16 54:25
55:2 59:16 61:20
62:23 63:22 64:8
68:22 69:13 70:12
71:4 72:22 73:16
74:22 76:11 77:10

**knowledge**  53:25
54:5 55:3 58:10

**known**  14:22
56:15

**knows**  16:13
20:16

**krieger**  8:19

**l**

**l**  9:15 80:16 81:3
82:3

**l.b.r**  2:18

**lack**  56:11

**laid**  75:2

**language**  32:15
33:19,20 35:1,18
36:4 39:12 40:1,4
40:5,8 41:1,6,8,11
41:14 42:3,10,16
43:1 44:7,13,18
44:21,23,24,25
45:7 46:4 47:20
48:4,17 55:2
57:18,19,24 60:5
60:7 64:24

**late**  22:7 33:13
47:13

**latest**  27:4,8 59:1

**lawyers**  23:17
72:22

**lays**  17:17

**lead**  38:5

**leading**  29:18
70:14

**leafing**  35:24

**leases**  3:5 5:7 6:7
49:19 53:6 81:13

**leave**  17:12 25:2
60:4 63:17 71:15

**leaves**  17:4 65:4,5

**left**  23:20 24:2

**legal**  83:10

**lend**  31:25

**lender**  2:14 9:9,10
12:6,12,13 15:23
16:3,10,24 23:23
24:3 30:1,5,12
31:13,25 34:6,11
34:25 35:6 36:25
37:2,2,8 41:3 42:2
42:8 43:2 44:5,7

45:22 68:2,6,9,13
68:14,17 69:21,25
82:18

**lender's**  42:16
68:10 70:13

**lenders**  12:10
15:13 23:16,18
31:22 34:23 39:9
40:6 41:11 42:5
43:17

**length**  66:22 72:6

**letters**  77:11

**level**  12:6,10
15:14,15,17

**liabilities**  3:4 5:6
6:6 49:18 81:12

**liability**  44:10

**lien**  24:3 30:12,19
31:14 32:1 42:8

**liens**  3:14 23:16
30:7,8 31:16

**life**  71:15

**limit**  34:7,20

**limitation**  44:10
53:7

**limited**  53:21

**line**  22:23 25:17
26:7 56:8 72:8
73:7 80:17 81:4
82:4

**lisa**  6:25 83:3,7

**list**  3:7 5:8 6:8
49:20

**listed**  47:7

**litigation**  23:11,11
23:13,15,16

**little**  14:14 17:10
18:5,23 23:5
56:13 63:19 71:14
74:22 78:1

**live**  79:2

**llc**  1:7,10,13 2:2
2:21 3:9,18 4:7,13

4:20 5:1,11,17 6:1
6:11,17 9:9,10
11:3,16,16 15:21
46:14,14 66:18

**llp**  7:2 8:1,11 9:8
10:1,9

**loan**  16:9 31:24
40:15

**local**  33:18,19,21
36:5 51:21

**located**  48:25

**lone**  33:25

**long**  45:10 55:10
65:22

**longer**  18:7 55:16

**look**  35:3,14 56:1
77:16,18

**looked**  33:11,12
43:5 76:22

**looking**  29:23
32:5,6 33:23
36:14 41:13 75:12

**loop**  20:15

**lot**  21:1,2 63:3

**lots**  13:11

**loud**  34:21

**lumps**  76:4

**m**

**m**  8:19

**madison**  10:3

**mail**  42:11 79:1

**maintain**  42:22,23
47:8

**maintained**  48:14

**maintaining**
42:24

**maintenance**  81:7

**making**  13:7 58:2

**man**  74:12

**manage**  28:3 79:2

**management**  4:3
4:5 42:22,23,24
44:20 46:15,18,21

46:25 47:8 53:19
53:23,23 54:2,4,5
54:21,21 55:4,13
55:17 56:6,7,11
56:12,23,24 58:10
58:12 59:1,3,4,10
59:14 81:6
**managing**  58:13
**manges**  7:2 11:9
25:5 46:13 50:5
65:20
**manner**  2:10
62:20 82:12
**marcus**  7:10
11:18 17:6 19:18
21:18 65:19,20,25
66:2 69:2,4,12,16
69:18,20 70:1,3
71:12,25 72:9,11
72:14,21 73:6,10
73:20 74:5,6
79:11,14
**market**  76:12
**marketed**  31:19
**markup**  36:18
**marshaling**  35:10
**martin**  1:24 74:11
**master**  67:20,22
**material**  77:5
**matt**  11:19 74:11
**matt's**  38:17
**matter**  35:5 72:25
73:6
**matters**  1:6 13:3
25:18 26:8 68:23
70:14
**matthew**  2:21 3:9
3:17 4:6,12,19
5:10,16 6:10,16
7:8 22:17 25:4
55:7
**maximize**  32:3
38:21

**maximizing**  28:7
37:6
**mean**  24:13 43:20
45:13 55:25 58:23
59:25 60:1 73:23
**means**  41:15
77:10
**meant**  18:13
**measured**  18:20
76:18
**meeting**  2:12
59:21 66:14 82:15
**mention**  15:8
16:11 58:19
**mentioned**  11:13
13:2 14:25 22:17
31:5,12 37:21
77:24
**met**  17:20 20:23
**mezz**  1:7 2:2,21
3:9,18 4:7,12,20
11:3 12:12 13:4
15:21,22 16:3,10
16:24 36:25 37:2
66:18 67:3 69:21
70:13
**mezzanine**  2:13
26:22 30:1 31:12
31:24 68:2,6,9,10
68:13,17 69:25
82:18
**mg**  1:4,4,4 2:2 5:1
6:1
**miamisburg**
10:13
**michael**  8:7 9:16
12:8,11 24:6
37:20 38:15 70:7
**milestone**  73:7,14
73:23 74:24
**milestones**  17:16
17:18 18:4,4,7
19:7 76:8

**million**  14:24
15:15,18,22 16:9
16:18 28:22,23
29:15,16,18,24
31:5,6
**mine**  33:22 60:15
**mineola**  83:13
**minimum**  57:15
**minor**  44:13
**minutes**  57:8
**misconduct**  39:22
44:8
**mishmeret**  8:2,12
24:7 38:15
**modify**  3:16 48:4
65:15
**moment**  14:25
18:1 64:22
**monday**  71:9,9
73:1,24 74:3
**money**  55:3 57:2
60:20
**monroe**  8:14
**month**  59:15
**monthly**  54:3
**months**  13:13
58:12
**morning**  11:2,8
11:11 12:22 20:11
21:5 22:13 25:4
28:16 37:18,19
43:5,15,17,25
47:13 55:11 56:8
58:9 59:9 65:19
67:13 69:14 73:4
**mortgage**  15:18
17:3 23:16,18
24:3 30:12
**motion**  2:5 3:1,12
4:1,9,15 5:4,13
6:4,13 14:4 17:11
17:23 19:10 21:6
25:8 26:16,20

27:2,11,16,19,21
27:24 28:1 38:13
38:23 42:24 45:20
46:5,16,19,20,21
46:22 47:1,8
49:15,17,23,25
50:9 52:14,18,23
52:24 53:9,16
57:14 60:2,6
61:21 62:2 64:23
65:17,22 66:2,3
66:24 67:19 68:7
71:3 72:1,12
76:14 80:9,10,18
80:21 81:5,10,20
82:5
**motions**  11:6
19:11,13,14 20:6
21:2 22:9,14
24:18,22 25:21
26:1 61:14,19,21
80:7
**move**  12:25 13:9
14:12 19:17 25:7
25:10,13 26:4
37:14 50:24 71:10
73:15
**moving**  37:5 39:8
76:8
**mref**  9:9,9

**n**

**n**  7:1 11:1 80:2,16
81:1,3 82:1,3 83:1
**n.a.**  9:2
**name**  25:12 56:7
56:16 59:2 65:21
74:10,11,12
**named**  55:15
**names**  48:15
**necessarily**  40:7
**necessary**  16:7
37:8 63:6

**need** 13:9 19:3
    23:23 30:22 31:1
    41:18 51:14,17
    63:12 73:11,14
    74:19,23 75:11,11
    75:14 78:10
**needed** 17:20,21
**negative** 30:24
**negligence** 39:21
    44:8
**negotiate** 13:14
    77:9
**negotiated** 17:16
**negotiations**
    20:16,21 29:7,20
    68:15
**nellwyn** 50:22
    51:8 80:11
**never** 34:16 35:3
    35:5 57:11
**nevertheless** 71:7
**new** 1:3,18,18 7:6
    7:21 8:5 9:3,4,11
    9:13 10:5 32:20
    37:23 42:21 47:20
    48:5,7,15,19 57:6
    79:7
**night** 12:21 28:13
    33:13 47:13
**non** 65:10 66:14
    66:15
**nondisclosure**
    31:21
**normal** 76:14
**nos** 1:4
**note** 67:23 72:3
**noted** 24:9
**noteholders** 12:9
    15:18 16:4,7 17:3
    31:15 67:8,21
**notes** 8:3,13 33:4
    35:25 36:15,15
    38:16

**notice** 2:10 34:4
    41:4 42:17 43:2
    44:15 47:3 48:23
    66:12,14 68:23
    70:9 72:2,4 82:13
**notices** 42:9,11
    51:17 72:8
**noticing** 2:19
    50:10,19 51:20
    52:2 81:17
**notified** 51:14,17
**november** 71:9,11
    71:18,21 72:17
**number** 25:19,23
    26:9,13,20 27:16
    27:17,20,25 28:8
    28:9,10 29:3,13
    39:23 46:19 50:10
    50:12 51:2,3,13
    51:18 52:23 58:24
    60:15 65:25 76:6
**numbers** 39:4,15
**nunc** 2:20 50:19
    51:9 80:13 81:17
**ny** 7:6,21 8:5 9:4
    9:13 10:5 53:24
    54:21 83:13

**o**

**o** 1:23 11:1 83:1
**oath** 57:16 58:2
    59:21
**objecting** 2:8 66:8
    82:9
**objection** 26:14
    27:3 49:10 52:1
    52:11 57:1 61:25
    66:10 71:17
**objections** 25:22
    26:11 49:23 51:4
**obligated** 48:18
**obligation** 20:24
**obligations** 4:18
    30:9 53:6,7 81:23

**observance** 73:1
**observant** 72:23
**observe** 79:6
**observing** 64:13
    78:15
**obtain** 3:13
**obviously** 20:4,6
    25:9 31:17 32:8
    40:9 46:3 63:18
    64:19 71:14
**occurred** 67:17
    76:20
**october** 18:19
    66:6,10 71:5,6
    74:24 75:6,13,20
**offer** 25:20 26:10
**office** 7:17,18
    32:17 42:19 72:21
**officer** 13:19,20
    13:25
**official** 14:6,6
**offline** 44:9
**oh** 10:13 33:19,19
    39:2 50:3
**okay** 12:1 16:11
    21:10 22:22 23:2
    27:9,14 32:8,24
    33:12 35:16,20
    36:14,17 38:12
    39:1 41:9,25
    43:13 44:1 45:15
    45:18 46:7,11
    50:15 52:22 54:18
    56:2 57:16 58:8
    58:18 59:25 60:24
    64:22 65:2 69:14
    74:2 75:7 76:21
    77:14 78:9,17
    79:5
**old** 83:11
**once** 55:12
**ongoing** 53:4

**online** 43:5,15,17
**open** 47:2 48:19
**opened** 44:19
    47:21 48:5,15
**operate** 30:24
    59:17
**operating** 4:17
    53:1 81:22
**operations** 28:3
    30:16 31:3 53:4
    53:18,22 54:8,23
    58:14 61:1
**opportunity**
    62:16
**opt** 62:16 64:5,6
**order** 2:6 3:3 4:10
    5:5,14 6:5,14 13:9
    18:18 21:10 23:21
    24:9,10,11,14
    26:25 28:23 29:24
    33:17 35:19,14,8
    36:12 39:20 41:7
    42:20 44:20 45:9
    47:4,14,15,18
    48:3,9,13,16,24
    49:3,11,14 50:10
    52:4,5,5,8,9,10,10
    52:16 57:17,25
    64:24 65:14 66:3
    66:7,19 72:7
    80:18 81:5,10,20
    81:24 82:5,20
**orderly** 29:20
    31:2
**orders** 4:2,16 21:4
    27:4 28:15 34:5
    52:25 78:18,23
**ordinary** 4:5 21:2
    47:3
**original** 12:13
**originally** 37:17
    76:12

outline 15:6,9
outlined 14:23
  16:19
outlines 23:8
outside 70:11
overnight 42:11
  44:15
overseen 53:19
overview 14:12
owed 15:22 17:2
owned 14:22
  53:20
owner 56:18 57:4
owns 15:14,23
  28:4

**p**

p 3:3 4:10 5:14
  6:14 7:1,1,8 11:1
pack 65:9
package 28:2
  30:10 31:17
page 23:7,7 36:18
  39:3,8,11,15,19
  39:23 41:1,10,16
  41:25 42:9,15,20
  53:17 80:17 81:4
  82:4
paid 58:18 60:9
  60:18
papers 20:25 21:1
parachuted 37:22
paragraph 39:13
  39:13,19 40:14
  42:20,21 44:5
  47:18,19 48:2,10
  48:11,21,22
parent 13:20
  25:16
part 23:24 24:9
  24:10 29:2 30:9
  58:24 62:11 76:9
partially 53:20

particular 19:15
  45:12
particularly
  12:21 61:14 65:9
  66:23 78:23
parties 13:14 18:5
  18:11 19:4,15
  21:7 28:12,17,18
  29:4,6,19 31:20
  31:20 32:2 34:20
  35:12 36:3 38:18
  38:21 39:20 45:12
  47:4 51:14,15
  58:22 62:13 77:1
  77:9
partner 56:18
  57:4 58:6
partners 11:19
partnership 74:14
parts 69:15
party 31:25 53:22
  68:13,14 69:5
pass 38:11
patience 13:13
  76:7,7,10,20
paul 2:21 3:9,17
  4:6,12,19 5:10,16
  6:10,16
pause 33:24 36:2
  47:24 75:5 76:2
pay 4:17 30:3
  53:1 54:3,6 67:7
  81:21
paying 55:3 59:4
payment 16:23
  29:12 56:22 59:14
  67:1
payments 57:11
  57:19,20,22 60:8
  60:17,18 61:24
pendency 30:14
people 40:15
  57:20 60:16 62:15

77:12 79:3
percent 16:16,17
  78:4
percentage 23:10
  77:17
percentages 16:20
perfected 31:16
perform 53:5
period 18:7 28:24
  31:6 33:14,21
  36:4 44:22 76:14
periods 36:8
permanence
  76:16
permission 50:9
permit 34:6,9,10
  47:10
permitted 31:16
permitting 64:14
person 59:3
personal 3:8 5:9
  6:9 49:21
petition 2:20 3:13
  26:16 30:12,23
  38:19 39:16 42:5
  42:7 50:20 51:9
  53:1 80:14 81:18
ph 79:16
phase 62:18
phone 19:15
  78:23
picked 22:5
piece 18:19
place 33:4 57:15
  66:6 73:16
places 23:6
plan 2:8,10 14:20
  15:5 16:22 17:8
  17:22 19:20 21:14
  23:8 62:13 63:6
  63:20 66:5,10,21
  66:25 67:20 68:5
  68:15 72:5 82:8

82:11
played 68:15
players 11:25
plaza 9:3
pleadings 12:22
  31:7
please 12:2 14:16
  38:8 45:2 47:25
  74:8
pockets 60:20
podium 19:8
  24:25 46:10
point 11:17 22:1,5
  23:15 33:5 60:14
  61:7 64:11,25
  69:10 78:5
points 45:8 78:6
position 51:25
positioned 17:8
possession 29:25
  45:19
possible 18:14
  37:6,10
possibly 22:12
post 3:13 26:16
  45:22
power 34:19,20
powerpoint 14:10
practice 26:6
pre 13:5 18:6 29:5
  30:12 38:19 42:5
  42:7 53:1 65:9,12
preexisting 15:20
prefer 74:3 75:16
preference 25:7
preliminary
  24:21
prepacks 65:10
prepare 29:20
present 19:14
  25:17 46:15 49:17
presentation
  14:11

**presented** 31:24
**president** 50:22
**presumptuous**
  71:14
**pretty** 43:18
  57:17
**previously** 15:21
  53:18 76:20
**price** 16:18
**primarily** 36:10
**priming** 32:1
**principal** 26:5
  28:18
**prior** 15:2 16:13
  20:13 30:23 59:2
  59:24 67:14,17
**priority** 60:19
**pro** 2:20 50:19
  51:9 80:13 81:18
**probably** 21:12
  22:20
**problem** 74:7
  76:15
**procedural** 26:23
**procedure** 63:2
**procedures** 2:8,9
  62:3,7 66:5,8,9
  81:7 82:9,11
**proceed** 24:23
**proceedings**
  79:17 83:4
**proceeds** 16:15,16
  18:12 23:19,21
  24:1,2 31:9 67:6
**process** 13:15
  15:6 17:14 18:10
  18:13 20:18 29:21
  32:3 37:9 70:4
  79:3
**processing** 41:5
**procter** 9:8 12:12
  37:1,20 45:22
  69:25 70:7

**professional** 30:6
  40:6,19
**professionals**
  39:10 42:7
**proffer** 56:9,21,25
**progress** 20:20
  78:20
**promise** 77:23
**proof** 78:7
**proper** 44:14 47:3
  59:9
**properly** 59:17
**properties** 14:21
  14:21 28:4
**property** 12:5,10
  15:14 58:13
**propose** 14:12,13
  19:10 71:15 78:24
**proposed** 7:3 14:6
  21:4 26:7 28:15
  33:17 34:25 37:2
  46:13 47:14,15,18
  48:2,8 49:2,3,11
  50:5 52:4,10
  64:21 66:6,10
  68:11,18 77:15
**protection** 3:16
  23:25 24:3 31:14
  71:24
**protections** 18:17
  18:18,23 19:5,22
  30:5 72:19 74:21
  76:3,12,18,22
  77:16
**protocol** 42:4 52:6
**provide** 3:14
  18:17,22 32:12
  37:8 46:23,24
  48:23 57:18 59:9
**provided** 16:10
  21:1 22:8 30:3
  39:12 42:3 48:13
  48:22 56:5,21

**providers** 57:7 70:25,25
**providers** 53:2
**provides** 16:23
  33:20 67:1
**providing** 13:11
  31:13 58:12
**provision** 35:9
  40:18 41:6 42:6
  44:5,11
**provisions** 36:20
  38:20 44:10
**purchase** 15:1
  17:18 18:17,21
  19:2 73:10
**purchaser** 12:16
  14:24 28:7 76:8
  76:10
**purposes** 2:13
  19:19 26:23 30:2
  82:17
**pursuant** 2:17 3:2
  4:10 5:14 6:14
  30:4 50:11
**put** 17:13 34:22
  40:22 56:9 58:2
  59:12 60:11,12
  61:10 78:7
**putting** 61:22

**q**

**question** 23:5
  32:19,25 40:5
  53:14 76:5,21
  77:5 78:17
**questions** 24:18
  26:24 28:21 32:7
  35:7 36:8,19
  37:10 49:5 68:22
**quick** 15:7 36:18
  79:1
**quickly** 18:9,13
  37:6,9 76:22
**quite** 22:11

**r**

**r** 1:23 3:2 4:10
  5:14 6:14 7:1 8:17
  11:1 80:16 81:3
  82:3 83:1
**raise** 24:19 43:14
  61:14 62:17
**raised** 35:11
  40:23 62:22
**ravid** 13:18 23:6
  25:11,15,23 26:1
  53:15,17 55:11
  56:8,10,10,16,21
  58:1,9 59:8,13,18
  60:1,25 61:3,4
  77:3,7,13 79:12
  80:6
**ravid's** 14:18 25:7
  57:13 59:18 66:22
**reached** 77:9
**read** 21:13,24
  22:10,12,12 40:14
  47:20 48:4,10,12
  57:12 60:3 62:10
  63:4 70:19 74:18
**reading** 40:18
**reads** 34:3
**ready** 19:13
**real** 23:17
**realize** 60:4
**really** 12:23 20:23
  21:20 32:20 53:24
  62:9 67:25 72:6
  73:17
**reappeared** 74:10
**reason** 22:1 28:25
  38:2,2 55:1 58:15
  59:23 62:17
**reasonable** 42:17
**reasonableness**
  40:11
**reasons** 37:25

**recano** 2:19 14:5
50:18 51:9 52:2
52:11 67:16 80:13
81:16
**receive** 33:1 47:12
51:17
**received** 26:2,16
49:2 51:10 52:6
67:20
**recitation** 49:9
**reciting** 43:18
**recognize** 18:24
19:1
**recognizes** 18:9
**record** 20:12 39:1
41:17,21 45:23
70:16 78:8 82:19
83:4
**recording** 79:16
**records** 16:24
42:17
**recoveries** 18:11
23:14
**recovery** 16:23
23:10 24:4
**red** 57:14 60:3
**redact** 3:7 5:9 6:9
49:21
**redline** 28:16,17
32:11,14 33:4
39:3,23 41:1 42:1
43:5,15,16,25
**refer** 11:16 44:14
53:15
**reference** 11:13
11:17 39:4,8
**referenced** 78:2
**references** 72:5
**referred** 43:11
**reflect** 15:24 46:5
54:2
**reflected** 38:20
43:14,17 66:21

**reflects** 70:24
**regarding** 17:11
19:4 35:9 41:16
42:2,4,16 44:21
52:4 59:22 68:15
**regular** 40:10
**reit** 9:9,9
**related** 2:14 3:17
4:6,11,18 5:15
6:15 58:16 80:19
**relating** 21:7
41:12
**relationship**
55:12 59:5
**relationships**
56:11
**relatively** 43:20
**release** 39:19
63:21,24 64:2,4
**released** 29:19
**releases** 62:12,16
64:18,21
**relevance** 17:25
**relevant** 67:25
77:25
**relief** 2:14 3:17
4:6,19 13:9 19:22
28:23 47:1 48:12
68:12 76:15 81:25
82:20
**reluctant** 77:18
**relying** 58:3
**remaining** 67:2
**remarks** 20:1
**reorganization**
17:22
**repaid** 29:9
**repayment** 30:8
**replacing** 37:25
**replenishment**
41:17
**reply** 71:17

**reports** 16:13
**represent** 12:12
**representations**
58:3
**representative**
14:1 25:16 59:19
**representatives**
13:22 14:5 72:23
**represented** 31:25
70:15
**representing** 12:5
23:22
**represents** 12:9
**request** 17:11
19:5,19 26:25
42:1 43:3 52:24
74:1
**requested** 34:11
45:24 47:19 48:3
48:11
**requesting** 24:10
41:4 50:17
**requests** 68:7
**required** 18:18
51:21 67:9
**requirement**
18:16
**requirements**
24:11
**requires** 18:22
42:22
**reserves** 60:7
**residential** 14:20
**resolution** 26:6
33:6 44:6
**resolve** 22:4
**resolved** 22:2
32:17
**respect** 20:22,25
21:18 27:2,11,19
29:4,22 30:15
31:10 35:18 36:10
36:24 38:13 39:9

39:12,19 40:6
41:19 42:5,7,9
45:19 52:14 53:8
55:5 56:10,24
62:22 65:21 66:24
66:25 67:4,25
69:18 70:12 71:3
**respectfully** 26:25
52:24
**respective** 28:3
**respectively** 14:23
**respond** 34:23
**response** 43:11
52:7
**responses** 32:22
**responsibilities**
48:12
**restructuring**
13:19,25 16:1
17:17 26:6 31:4
**result** 67:3,8
**results** 23:11
**retain** 2:18 51:9
80:13 81:16
**retention** 50:11
52:11
**retirement** 38:9
**retiring** 37:24
**reverse** 66:19
**reversed** 69:10
**review** 23:25
40:11 78:23
**reviewing** 12:22
20:5
**revise** 52:9
**revised** 21:4 39:12
44:22 47:14 48:8
48:11 49:3 52:10
57:17 72:7
**revising** 52:15
**revisions** 42:19
81:24

[right - signed]                                                                                    Page 18

**right** 11:11 12:6
14:17,18,20 15:14
15:17,18,19 17:1
20:3 21:8,9 23:2,4
24:20,23 25:25
26:11 27:14,18
28:11 38:12,24
42:16 44:1,3
45:18 46:1,3,7
47:25 49:22 50:13
51:1,4,24 52:18
52:20 58:2 60:7
60:13,22 64:18
69:21 70:5 71:4
71:22 72:11,13
75:10,18 77:7,14
77:19,21 79:6,13
79:15
**rights** 34:7 48:12
**road** 83:11
**robert** 7:11 11:19
58:6
**role** 68:15
**romano** 14:3 26:5
26:7,12,15 31:18
80:8
**romano's** 30:21
**routine** 72:3
**rsa** 17:15 21:13
31:5 63:4 68:14
**rule** 33:18,19,21
36:5 44:24,25
51:22 60:19
**ruled** 64:21
**rules** 40:10
**run** 14:13 19:6
55:14
**running** 19:23
**runs** 55:17
**ruocco** 7:12 11:20
46:10,12,13 47:23
48:2 49:16 50:1,3

**ruocco's** 49:9

**s**

**s** 7:1 10:15 11:1
80:4,16 81:3 82:3
**sad** 37:24
**safe** 78:14
**sale** 14:20,23
16:14,16,18 18:12
20:18,21 23:19,20
31:4 37:6,9 67:6
**sat** 63:1
**satisfy** 17:2 30:1
**saw** 43:15,17,25
69:13
**says** 59:23
**scenes** 63:4
**schedule** 3:16
17:11 64:20
**scheduled** 20:14
71:6
**schedules** 3:4,5
5:5,6 6:5,6 46:17
49:18,24 81:11,12
**scheduling** 2:6
19:18,21 65:7,9
65:18 66:3 68:23
82:6
**schwartz** 7:23
12:17 19:16 20:4
20:9,11,12 21:10
22:6,15,16,21,22
22:24 23:3 27:3,7
27:9,10,14 28:19
29:15 32:12,18,19
32:21,25 33:7,10
33:16 35:8,8 36:9
39:18,25 40:13
41:13,16,23 42:3
42:13 43:10,13,16
43:24 44:23 45:2
45:4,12,17,25
47:12,19 48:3,11
49:3,8,9 51:24

52:1 54:14,16,18
55:10,23,24,25
56:3 57:9 58:19
59:9,11 60:4,13
60:22 61:7,10,16
61:18 62:1,5,8
63:10,13,25 64:3
64:5,8,16,17 65:8
78:2
**second** 17:21
35:22 36:23 47:22
53:5 59:12 61:24
62:6 75:11,12,21
75:23
**section** 2:11 50:11
52:3,3 66:14
67:12 82:15
**secure** 30:8
**secured** 15:15,16
15:19 16:4 17:2
23:23 29:24 67:7
67:10,23 68:3
**security** 53:8
**see** 15:9 22:19
35:7,25 36:23
61:19 62:17 77:17
**seek** 21:19
**seeking** 26:21
28:2,23 30:11,17
46:16 49:17 81:10
82:20
**seeks** 46:20 66:3
**seen** 43:7
**segregated** 44:19
**selected** 73:4
**send** 41:3 43:2
44:9 78:21,25
**sending** 32:15
**senior** 30:8 67:7
**sense** 36:18
**sensitive** 64:19
**sent** 28:16 52:5
66:15

**sentence** 72:4
**separate** 15:12
75:14
**separately** 19:7
74:13
**separateness**
42:24
**september** 1:20
17:21,23 32:23
37:24 50:20 59:15
67:14 73:2,3,24
73:25 74:3 83:16
**seri** 60:10
**series** 8:2,12
30:19 31:14 38:15
67:8,10,21,21,23
**service** 47:9 53:2
**services** 58:12
**set** 14:18 25:19
26:9 30:21 31:17
47:4 74:25,25
78:3,15
**sets** 67:17
**seven** 31:21
**shaking** 41:20
**share** 60:22 61:1
67:6
**shareholder**
53:21 55:13
**sheet** 32:6 35:24
**sheets** 31:21
**shock** 43:21
**shop** 76:23 77:18
77:19
**short** 28:6 49:22
**shown** 33:9
**shows** 23:8 65:13
**shriver** 9:1
**sic** 35:2 41:14
**side** 16:3 17:1
74:7
**signed** 15:1,3
17:16 45:13 56:15

[signed - system]                                                                          Page 19

59:2 76:24 77:2
**significant**   51:13
**silent**   38:6
**similar**   41:6,12
    42:6 52:8
**simply**   59:6 60:11
    60:21
**singled**   40:19
**singularly**   37:5
**sit**   76:13 78:24
**sitting**   35:10
**situation**   34:16
    62:19 66:23
**situations**   38:19
**six**   47:7
**skimmed**   69:15
**skip**   17:25
**skipped**   18:15
**skorostensky**   9:17
**small**   24:8
**smaller**   65:11
**smart**   53:23 54:20
    55:17 56:7,12
    58:10 59:4,10
**smarter**   24:25
**smooth**   46:23
**smoothly**   71:7
    72:17
**sole**   24:4 53:21
    55:13
**solicit**   68:9,21
**solicitation**   2:9
    17:11,23 62:2,7
    62:12,19,21 63:9
    66:5,9 67:9,13,17
    82:10
**solicited**   18:6
    32:20,22 67:4
    68:5 69:5
**soliciting**   2:13
    82:17
**solution**   19:4

**solutions**   83:10
**somebody**   71:23
    75:21,22
**somewhat**   38:20
**soon**   60:5 66:16
    79:8
**sooner**   74:4
**sophisticated**
    68:16 70:10
**sorry**   28:10 29:14
    33:16,20 45:25
    47:25 53:13 55:8
    55:25 62:1 63:5
    63:17 71:25
**sort**   37:13 73:5
**sought**   19:22 47:1
**source**   24:4
**sources**   31:1
**southern**   1:3 48:7
**speak**   74:8
**speaking**   39:25
**specific**   24:18
    47:1
**specifically**   28:20
    29:7,22 51:14
**spent**   59:20
**spoke**   44:23 66:16
**spoken**   18:24
    21:17 44:21
**spokesperson**
    59:19
**squeezing**   75:17
**stage**   62:18
**standard**   43:20
    72:3
**standstill**   39:5
**start**   12:18 19:10
    37:14 46:18 66:19
**starting**   70:13
**starts**   23:7
**state**   45:23
**stated**   35:1

**statement**   2:7,9
    2:13 17:22 19:20
    21:20 22:11 49:19
    54:10 57:11 62:25
    64:10 66:4,9,17
    66:20 68:8,11,18
    68:20 69:1,6,14
    69:23 70:3,9,11
    70:18,20,24 82:7
    82:10,17
**statements**   3:6 5:7
    6:7 46:17 55:6
    81:14
**states**   1:2,16 7:17
    48:22
**status**   3:15 16:13
    66:14
**statute**   34:3,19
    44:14
**statutory**   44:23
**stay**   3:16 78:14
**steal**   17:7
**stephen**   8:17
**steve**   74:11
**stockholder**   67:3
**stop**   79:15
**street**   7:19 8:14
**structure**   15:7
**structures**   15:12
**study**   77:16
**subject**   23:25 30:6
    32:15 35:17 39:20
    40:10 71:8 72:1
    81:24 82:18
**submission**   14:24
    15:12
**submit**   47:14 48:9
    49:3 50:21,24
    51:20 72:6,7
**submitted**   31:21
    42:3 59:7 63:22
    67:15,20

**submitting**   21:5
**subsidiary**   2:20
    3:12 4:2,16 7:4
    11:15 26:21 27:24
    28:1 48:14 50:5
    50:17 51:13,14
    52:25 53:3,18
    54:3,6,9 67:15
    81:18,21
**sufficiency**   2:10
    82:13
**sufficient**   29:6
    67:7
**suggest**   24:13
    59:25 60:1
**suggested**   33:17
    56:9 59:11
**suite**   7:20 10:12
    83:12
**summary**   15:7
    72:5
**superpriority**
    3:15 29:25 30:7
**supplement**   48:18
**suppliers**   53:2
**support**   15:5,8,25
    16:1 17:17 25:20
    26:1,15 38:22
    50:21 51:8 59:18
    70:1 80:7,9,12
**supportive**   70:4
**sure**   20:11 23:13
    27:4 36:7 37:13
    38:3 40:2 44:18
    45:12 47:23,23
    56:5 61:22 62:11
    63:19 74:12 75:1
    75:24,24 77:10
**surprised**   78:4
**sweet**   79:7
**system**   4:3,5
    42:22,23 46:22
    47:8 81:7

**t**

**t** 80:4 83:1,1
**take** 18:16 19:21
  23:19 35:23 36:3
  45:10 56:4 60:9
  60:10 64:19 66:6
  70:9
**taken** 23:24
**talk** 17:9 18:20,23
  18:25 46:6 50:8
  71:4 78:25
**talked** 77:20
**task** 20:5
**team** 75:22 78:25
**technical** 73:6
**telephone** 56:17
**tell** 23:11 45:16
  54:12
**tenant** 4:18 53:8
  81:23
**tenants** 3:8 5:10
  6:10 53:6
**tend** 11:16
**term** 31:21 32:6
  35:24
**termination** 41:2
**terms** 19:7,23
  20:23 21:15,22
  39:24 40:17,21
  62:23 64:25 71:16
  71:22 72:5
**testified** 59:21
**testify** 25:18 26:8
  56:10 76:10
**testimony** 56:25
  60:11,11,12
**tetro** 8:17
**thank** 11:12 12:23
  13:6,12 22:6,15
  22:22 23:2,3
  24:14,17,24 25:14
  25:25 26:3,18
  27:22 33:22 35:2

35:23 37:12 38:10
  38:23,24 39:2
  40:24 41:19,24
  44:25 46:1,8,11
  46:12 49:7,12,15
  49:16 50:1 51:11
  52:13,19,22 58:8
  61:3,5 63:10,13
  63:13 64:17 65:4
  65:6 69:20 72:9
  72:14 78:13,16
  79:9,10,11,12,14
**thanking** 12:18
**theodore** 7:13
  11:20 50:4
**thereabout** 41:14
**thereof** 56:11
**thing** 16:11 22:16
  23:20 40:13 58:20
  62:9 75:10 77:21
**things** 16:20
  21:17 22:2 43:18
  65:12 68:13 72:17
**think** 14:10 15:11
  18:20 20:19,23
  21:3,11,16 22:2
  23:13 25:10 27:10
  28:17 29:2 33:4
  33:19 36:15 37:7
  38:18 41:6,13
  44:4,6,17 45:2,10
  55:5,9 56:20
  58:20 61:18 62:2
  62:8,25 63:3,5,18
  64:25 70:8,9
  71:22 78:12
**third** 53:22
**thompson** 10:1,9
  12:15
**thought** 60:16
  76:18
**three** 11:13 15:4,8
  66:21

**thunder** 17:8
**thursday** 73:3,25
  74:4
**tick** 47:13
**time** 3:4 5:5 6:5
  13:7 18:7 22:12
  22:13,25 23:24
  29:6 32:2,8 34:15
  35:16,23 46:9
  49:24 50:25 53:22
  55:12,15 57:6
  59:20 64:9,14
  65:23 69:7,14
  75:2,2,7 77:6
  81:11
**times** 9:11 72:24
  73:3
**timing** 20:23 79:1
**title** 52:3 65:22
**today** 11:18 12:25
  13:7,9,23 14:2
  19:23 22:19 24:12
  24:14 28:2 29:24
  30:18 35:12 37:4
  37:11 45:14,25
  49:4 50:8 56:24
  57:2 59:23 66:22
  70:14 78:11,22
**today's** 14:13
  16:21 19:7,9
  77:23
**told** 75:21
**top** 41:25
**total** 25:11
**totally** 75:14
**track** 33:18 44:22
  52:5,9
**transaction** 13:15
  14:18,19 16:12
  18:9 28:7 37:7
  67:6
**transactions** 31:4

**transcribed** 6:25
**transcript** 83:3
**transition** 46:23
**transitioned**
  53:23
**transom** 77:12
**tremendous** 12:20
  76:7
**tremendously**
  77:22
**tried** 73:13
**trigger** 44:15
**trip** 78:13
**true** 31:10 60:2
  83:3
**trust** 8:2,12 24:7
  38:15
**trustee** 7:17 8:3
  8:13 12:9,18,24
  19:16 20:4,12,24
  31:15 33:8 38:16
  38:22 39:11 40:5
  41:8 42:2,10
  43:12 44:12,13,16
  47:21 48:6 51:25
  67:21
**trustee's** 32:17
  42:19 46:5 52:16
**try** 18:13 38:21
  78:21 79:2
**trying** 21:24
**tunc** 2:20 50:20
  51:9 80:13 81:18
**turn** 17:14 19:8
  19:12 36:18 58:6
**turned** 60:17
**turning** 39:3
**turns** 58:17
**tweaks** 44:13
**two** 11:14 14:20
  20:13 22:24,25
  25:2,11 42:21
  58:12 72:7 73:23

74:12 75:3 76:4
**type**  63:2
**typical**  17:17
61:20

**u**

**u**  80:16 81:3 82:3
**u.s.**  1:25 7:16,18
12:17,24 19:16
20:4,12,24 32:17
39:11 40:5 41:8
42:1,10,18 43:12
44:13,16 46:5
47:21 48:5 51:25
52:16
**u.s.c**  2:17
**u.s.c.**  2:17 3:2
**uhh**  69:3
**ultimate**  13:20
**ultimately**  62:20
**umm**  69:2
**unaffiliated**  54:3
**unbilled**  42:5
**uncertain**  23:10
**unclear**  40:18
**understand**  21:19
46:4 57:23 58:21
60:3 76:22
**understanding**
55:5 57:3
**understands**  78:7
**understood**  56:13
60:25 61:2 65:3
73:14
**underwent**  15:2
**unencumbered**
30:8
**unexpired**  3:5 5:7
6:7 49:19 81:13
**unfortunately**
21:23 22:18,25
**unimpaired**  63:23
**united**  1:2,16 7:17

**unrestricted**
40:20
**unsecured**  17:5
23:9 24:4,5 60:21
67:11
**unusual**  18:19
28:24 38:20 62:24
69:3,4,4 74:22
**update**  20:15
61:11
**updated**  20:20
54:2 56:13 59:2
**updating**  20:20
**uploaded**  27:12
**use**  3:14 16:5,6
30:12,19 36:4
75:13,23 80:22
81:6,8
**utilities**  61:21

**v**

**v**  23:9 67:11,24
**vacation**  73:18
78:14
**valid**  31:15
**value**  23:19 28:6
37:6 38:21
**varick**  7:19
**various**  40:21
51:17
**vendor**  50:9 52:21
52:23 53:16 57:11
57:14,19,22 60:6
60:8,17,18
**vendors**  53:2
64:23
**verbal**  62:9
**veritext**  83:10
**version**  45:6
**versions**  22:10
27:5,8
**view**  51:18 65:14
**virtual**  19:8 24:25
46:9

**voice**  78:5
**voorhies**  50:22,24
51:8 52:7 80:11
**voracity**  59:23
**vote**  62:13,14,14
62:15 63:25 64:1
64:2,6 68:9,10,14
68:21
**votes**  17:9 63:6
67:3,9,13
**voting**  62:12 63:8
63:22 66:14,15
70:12 71:16

**w**

**wait**  24:18 59:12
**waiver**  34:1,13
**walk**  21:12 28:19
28:20 33:3 38:25
**walked**  32:14 36:9
**want**  12:23 13:6
15:6 17:7 24:21
27:1,4 32:25
36:23,24 37:21,25
38:12 43:14 45:11
49:8 54:25 57:15
57:15,17,18 58:4
58:4,19 60:7,14
60:20 61:14 62:16
62:19 63:19 64:23
69:16 71:20 73:17
73:18,20 75:1,24
78:4,12
**wanted**  13:12
17:13 36:7 38:2
45:23 55:8 62:11
71:5,10 72:3
76:23
**wants**  65:17 68:22
**warranted**  68:12
**washy**  54:10
57:17
**way**  19:20 21:24
23:21 34:2,7,14

34:18
**we've**  11:22 17:20
18:24,25 21:1,3
21:14,25 32:16
40:7 41:7,17
43:10 44:21 66:7
67:15 70:3,12
77:20 78:1,6
**weather**  22:18
**week**  71:23 72:20
72:20,24,24 73:15
**weeks**  12:20
**weil**  7:2 11:9,18
25:5 46:13 50:5
65:20 75:22
**weintraub**  37:17
37:21,22,23 38:1
38:8
**went**  21:5 32:13
63:18
**west**  8:14
**whatsoever**  54:23
55:17
**wholesale**  40:1
**willful**  39:21 44:8
**willing**  31:22,25
37:7,11 73:23
**wish**  27:18 45:18
46:2 49:12 52:13
64:12 69:22 71:2
78:14
**wishy**  54:10 57:17
**wolf**  33:25
**wonderful**  78:13
**wondering**  43:22
75:13
**wording**  47:19
**words**  64:3
**work**  12:23 19:3
23:17 36:12 61:11
63:3 78:20
**worked**  11:21
19:13 21:3 32:16

[worked - zoom]

38:18,21
**working**  28:13
   30:2 40:15 45:7
   58:13
**works**  23:21 34:8
   36:19 71:8 74:20
   75:6,21
**wrapped**  45:14
**writing**  75:25,25
**written**  34:14,19
   48:23
**wrong**  77:4

**x**

**x**  1:5,9,12,15
   14:22 15:14,16
   80:2,4 81:1 82:1

**y**

**y**  14:22 15:19 16:8
   17:4
**yeah**  12:3 24:16
   34:24 35:24 43:16
   62:5 75:12 78:21
**year**  13:20,25
   25:16 53:19,20,21
   55:13,14,16 56:6
   56:11,18 57:4
   58:24 59:3,6 61:1
   73:18 79:7
**years**  60:15
**yep**  41:22 61:9
**yesterday**  20:14
   22:7 32:22 36:21
**yoel**  53:20 55:3,13
**york**  1:3,18,18 7:6
   7:21 8:5 9:3,4,11
   9:13 10:5 48:7

**z**

**zoom**  2:5,16 3:1
   3:12 4:1,9,15 5:4
   5:13 6:4,13 7:14
   7:23 8:9,20 9:6,18
   10:7,15