WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for EGM and*
*Proposed Attorneys for the Subsidiary Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
:
In re                                                      :        **Chapter 11**
:
**EVERGREEN GARDENS MEZZ LLC,** *et al.*,        :        **Case No. 21-10335 (MG)**
:
**Debtors.**[1]                            :        **(Jointly Administered)**
:
------------------------------------------------------------X

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF**
**(I) APPROVAL OF (A) DISCLOSURE STATEMENT, (B) PROCEDURES**
**FOR THE SOLICITATION AND TABULATION OF VOTES, AND (C) FORMS**
**OF BALLOTS AND RELATED NOTICES, AND (II) CONFIRMATION OF**
**AMENDED JOINT CHAPTER 11 PLAN OF EVERGREEN GARDENS I LLC,**
**EVERGREEN GARDENS II LLC, AND EVERGREEN GARDENS MEZZ LLC**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Evergreen Gardens Mezz LLC (0416); Evergreen Gardens I LLC (2211); and Evergreen Gardens II LLC (6782). The Debtors' principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

## <u>TABLE OF CONTENTS</u>

                                                                                      Page

PRELIMINARY STATEMENT ................................................................................. 2

I.    FACTS ............................................................................................................ 5

II.   PLAN SOLICITATION .................................................................................. 6

III.  THE DEBTORS' SOLICITATION AND TABULATION PROCEDURES
      SHOULD BE APPROVED .............................................................................. 12

      A.    The Debtors' Prepetition Solicitation Complied with the Requirements of
            Bankruptcy Code Sections 1125(g) and 1126(b).................................... 13

            1.    Solicitation Complied with Applicable Securities Law........................... 13

            2.    The Disclosure Statement Contains Adequate Information Within
                  Meaning of Bankruptcy Code Section 1125(a)(1).................................... 15

      B.    Solicitation of Classes Presumed to Accept the Plan and Classes Deemed
            to Reject the Plan is Not Required ........................................................... 18

      C.    The Debtors' Solicitation Packages, Ballots, and Solicitation Procedures
            Complied with the Requirements of Bankruptcy Rules 3017(d) and
            3018(c) ...................................................................................................... 20

            1.    Solicitation Packages ............................................................................... 21

            2.    The Combined Notice and the Publication Notices................................. 22

            3.    Ballots ..................................................................................................... 22

      D.    The Solicitation Period Was Reasonable under Bankruptcy Rule 3018(b).......... 22

      E.    The Debtors' Solicitation Procedures Should Be Approved ..................... 25

      F.    The Debtors' Vote Tabulation Procedures Should Be Approved........................ 25

IV.   THE PLAN SATISFIES SECTION 1129 OF THE BANKRUPTCY CODE AND
      SHOULD BE APPROVED .............................................................................. 27

      A.    The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code. .......................... 28

      B.    The Plan's Classification of Claims and Interests Complies with Section
            1122 of the Bankruptcy Code. .................................................................. 28

      C.    The Plan Complies with Section 1123(a) of the Bankruptcy Code. ..................... 32

      D.    The Plan Complies with Section 1123(b) of the Bankruptcy Code...................... 33

            1.    Plan Permissive Provisions. ..................................................................... 33

            2.    The Plan Releases Should Be Approved. ................................................. 34

                  a.    The Estate Releases Are Appropriate and Should Be
                        Approved................................................................................. 35

|       | b.  | Third Party Releases Are Appropriate and Should Be Approved................................................................... 38 |
|-------|-----|---|
|       | c.  | The Exculpation Provision Is Appropriate and Should be Approved................................................................... 39 |
| E.    | The Plan Satisfies Section 1129(a)(2) of the Bankruptcy Code. .......................... 42 | |
| F.    | The Plan Has Been Proposed in Good Faith in Compliance with Section 1129(a)(3) of the Bankruptcy Code. .................................................... 43 | |
| G.    | The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code. ................ 44 | |
| H.    | The Debtors Have Complied With the Requirements of Section 1129(a)(5) of the Bankruptcy Code. .................................................... 45 | |
| I.    | The Plan is in Best Interests of All Creditors of, and Holders of Equity Interests in, Each Debtor.......................................................... 46 | |
| J.    | The Plan Has Been Accepted by or Is Presumed to Have Been Accepted by All Impaired Classes Entitled to Vote on the Plan, and as to Such Classes, Requirements of Section 1129(a)(8) of the Bankruptcy Code Have Been Satisfied. .......................................................... 47 | |
| K.    | The Plan Provides for Payment in Full of All Allowed Priority Claims. ............. 48 | |
| L.    | The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code. ........................ 49 | |
| M.    | The Plan Is Feasible. ......................................................................... 50 | |
| N.    | The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code. .............. 51 | |
| O.    | The Plan Satisfies the "Cram Down" Requirements under Section 1129(b) of the Bankruptcy Code for the Deemed to Reject Classes. ................................ 51 | |
|       | 1.  | The Plan Does Not Discriminate Unfairly.................................................. 52 |
|       | 2.  | The Plan Is Fair and Equitable.................................................. 53 |
| V.    | CAUSE EXISTS TO WAIVE STAY OF PROPOSED CONFIRMATION ORDER. .......................................................... 54 | |
| CONCLUSION.......................................................................... 55 | | |

WEIL:\98230972\1\12817.0004

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. Shugrue* (*In re Ionosphere Clubs*),
179 B.R. 24 (S.D.N.Y. 1995)..........................................................................16, 17

*In re Adelphia Bus. Sols., Inc.*,
341 B.R. 415 (Bankr. S.D.N.Y. 2003)....................................................................52

*In re Adelphia Commc'ns Corp.*,
352 B.R. 592 (Bankr. S.D.N.Y. 2006)....................................................................16

*In re Adelphia Commc'ns Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007)............................................................ *passim*

*In re Advance Watch Co., Ltd.*,
2016 Bankr. LEXIS 229 (Bankr. S.D.N.Y. Jan. 25, 2016)....................................51

*Aetna Cas. & Sur. Co. v. Clerk* (*In re Chateaugay Corp.*),
89 F.3d 942 (2d Cir. 1996).....................................................................................28

*In re Affiliated Foods, Inc.*,
249 B.R. 770 (Bankr. W.D. Mo. 2000)...................................................................47

*In re Almatis, B.V.*,
Case No. 10-12308 (MG), (Bankr. S.D.N.Y. Sept. 20, 2010) ................................41

*In re Ashley River Consulting, LLC*,
Case No. 14-13406, 2015 WL 6848113 (Bankr. S.D.N.Y. Nov. 6, 2015) .............17

*In re Avianca Holdings Sociedad Anónima*,
Case No. 20-11133, 2021 WL 4197721 (Bankr. S.D.N.Y. Sep. 15, 2021) ............17

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999)................................................................................................47

*In re BearingPoint, Inc.*,
453 B.R. 486 (Bankr. S.D.N.Y. 2011) ...................................................................40

*In re Best Prods. Co.*,
168 B.R. 35 (Bankr. S.D.N.Y. 1994) .....................................................................45

*In re BGI, Inc.*,
772 F.3d 102 (2d Cir. 2014), *reh'g denied* (Aug. 8, 2014), *cert. denied sub
nom. Beeman v. BGI Creditor's Liquidating Trust*, 136 S. Ct. 155 (2015)............16

iii

*In re Buttonwood Partners, Ltd.*,
    111 B.R. 57 (Bankr. S.D.N.Y. 1990) ...................................................................54

*Cadle Co. II, Inc. v. PC Liquidation Corp.* (*In re PC Liquidation Corp.*),
    383 B.R. 856 (E.D.N.Y. 2008) ..........................................................................16

*In re Charter Commc'ns*,
    419 B.R. 221 (Bankr. S.D.N.Y. 2009) ......................................................32, 37, 45

*In re Charter Commc'ns, Inc.*,
    Case No. 09-11435 (JMP), (Bankr. S.D.N.Y. Nov. 17, 2009) ................................41

*In re Chemtura Corp.*,
    439 B.R. 561 (Bankr. S.D.N.Y. 2010) ......................................................27, 40, 43

*In re China Fishery Group Limited (Cayman)*,
    Case No. 16-11895 (JLG) (Bankr. S.D.N.Y. April 23, 2021) ................................25

*In re Copy Crafters Quickprint, Inc.*,
    92 B.R. 973 (Bankr. N.D.N.Y. 1988) ..................................................................16

*Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber
    Network, Inc.*),
    416 F.3d 136 (2d Cir. 2005) ..............................................................................39

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) ..............................................................................42

*In re Drexel Burnham Lambert Grp., Inc.*,
    138 B.R. 714 (Bankr. S.D.N.Y. 1992), *aff'd sub nom. Lambert Brussels
    Assocs, L.P. v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham
    Lambert Grp., Inc.*), 140 B.R. 347 (S.D.N.Y. 1992) .................................................54

*In re Drexel Burnham Lambert Grp., Inc.*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992) .................................................28, 43, 48, 52

*In re Eastman Kodak Co.*,
    Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Aug. 23, 2013) ................................41

*In re Enron Corp.*,
    2004 Bankr. LEXIS 2549 (Bankr. S.D.N.Y. July 15, 2004) ..................................45

*In re Finlay Enters. Inc.*,
    Case No. 09-14873 (JMP), 2010 WL 6580628 (Bankr. S.D.N.Y. June 29,
    2010) ............................................................................................................55

*In re Fusion Connect, Inc.*,
    Case No. 19-11811 (SMB) (Bankr. S.D.N.Y. December 17, 2019).........................39

iv

*Genco Shipping & Trading Ltd.*,
   Case No. 14-11108 (SHL) (Bankr. S.D.N.Y. July 2, 2014) ....................................................41

*In re J. Reg. Co.*,
   407 B.R. 520 (Bankr. S.D.N.Y 2009), *appeal dismissed sub nom. Freemen v.*
   *J. Reg. Co.*, 452 B.R. 367 (S.D.N.Y. 2010) ............................................................................45

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987),
   *aff'd sub nom*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ........................54

*Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
   843 F.2d 636 (2d Cir. 1988)..........................................................................................28, 51

*KG Winddown, LLC, et al.*..........................................................................................................41
   Case No. 20-11723 (MG) (Bankr. S.D.N.Y. 2020)

*Koelbl v. Glessing* (*In re Koelbl*),
   751 F.2d 137 (2d Cir. 1984)...................................................................................................43

*In re Liddle & Robinson LLP*,
   Case No. 19-12346 (SHL) (Bankr. S.D.N.Y. Jan. 15, 2021)...................................................25

*MacArthur Co. v. John Manville Corp.* (*In re Johns-Manville Corp.*) (*Manville I*),
   837 F.2d 89 (2d Cir. 1988).....................................................................................................36

*In re Madison Hotel Assocs.*,
   749 F.2d 410 (7th Cir. 1984) .................................................................................................44

*Manati Sugar Co. v. Mock*,
   75 F.2d 284 (2d Cir. 1935)......................................................................................................43

*In re Master Mortg. Inv. Fund, Inc.*,
   168 B.R. 930 (Bankr. W.D. Mo. 1994)...................................................................................36

*In re The McClatchy Co.*,
   Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Aug, 21, 2020)...............................................25

*In re Motors Liquidation Co.*,
   447 B.R. 198 (Bankr. S.D.N.Y. 2011) ...................................................................................36

*In re Neff Corp.*,
   Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. Sept. 20, 2010).................................................41

*In re One Times Square Assocs. Ltd. P'ship*,
   159 B.R. 695 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y. 1994),
   *aff'd sub nom*. *In re One Times Square Assocs.*, 41 F.3d 1502 (2d Cir. 1994) ................31, 51

WEIL:\98230972\1\12817.0004

*In re Pond*,
  252 F.3d 122 (2d Cir. 2001)..................................................................................31

*In re Purdue Pharma L.P.*,
  2021 WL 4240974 (Bankr. S.D.N.Y. Sept. 17, 2021) ...........................................44

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000)..................................................................................43

*In re Residential Cap. LLC*,
  Case No. 12-12020 (MG) 2013 WL 12161584 (Bankr. S.D.N.Y. Dec. 11,
  2013) ...................................................................................................................40, 41

*In re Resorts Int'l, Inc.*,
  145 B.R. 412 (Bankr. D.N.J. 1990) .........................................................................45

*In re Sabine Oil & Gas Corp.*,
  555 B.R. 180 (Bankr. S.D.N.Y. 2016)......................................................................54

*In re Scioto Valley Mortgage Co.*,
  88 B.R. 168 (Bankr. S.D Ohio 1988).......................................................................17

*In re Texaco Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed sub nom. Trans World
  Airlines, Inc. v. Texaco, Inc. (In re Texaco Inc.)*, 92 B.R. 38 (S.D.N.Y. 1988) ....................45

*United States v. Energy Res. Co.*,
  495 U.S. 545 (1990)..............................................................................................51

*In re W.R. Grace & Co.*,
  475 B.R. 34 (D. Del. 2012), *aff'd*, 532 F. App'x 264, 729 F.3d 311, 729 F.3d
  332 (3d Cir. 2013).................................................................................................47

*In re WorldCom Inc.*,
  Case No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31,
  2003) ....................................................................................................................54

*In re Worldcom, Inc.*,
  Case No. M-47 HB, 2003 WL 21498904 (S.D.N.Y. June 30, 2003) .....................................16

*In re Young Broad. Inc.*,
  430 B.R. 99 (Bankr. S.D.N.Y. 2010).......................................................................27

**Statutes**

11 U.S.C. § 105...........................................................................................................1, 43

11 U.S.C. § 503..............................................................................................................50

WEIL:\98230972\1\12817.0004

11 U.S.C. § 506 ................................................................................................................31

11 U.S.C. § 507 .......................................................................................................... *passim*

11 U.S.C. § 511 ................................................................................................................51

11 U.S.C. § 541 ................................................................................................................36

11 U.S.C. § 1107 ................................................................................................................5

11 U.S.C. § 1108 ................................................................................................................5

11 U.S.C. § 1114 ..............................................................................................................28

11 U.S.C. § 1122 ........................................................................................................ *passim*

11 U.S.C. § 1123 ........................................................................................................ *passim*

11 U.S.C. § 1124 ..............................................................................................................33

11 U.S.C. § 1125 ........................................................................................................ *passim*

11 U.S.C. § 1126 ........................................................................................................ *passim*

11 U.S.C. § 1128 ..........................................................................................................1, 43

11 U.S.C. § 1129 ........................................................................................................ *passim*

15 U.S.C. § 77a ................................................................................................................15

31 U.S.C. § 3717 ..............................................................................................................53

Securities Act of 1933 ......................................................................................................15

**Other Authorities**

FED. R. BANKR. P. 1015 ......................................................................................................5

FED. R. BANKR. P. 2002 .............................................................................................. *passim*

FED. R. BANKR. P. 3017 .............................................................................................. *passim*

FED. R. BANKR. P. 3018 .............................................................................................. *passim*

FED. R. BANKR. P. 3020 ..........................................................................................1, 5, 56

FED. R. BANKR. P. 9006 ......................................................................................................1

H.R. Rep. No. 95-595 (1977) .....................................................................................28, 43

WEIL:\98230972\1\12817.0004

H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977) .............................................................16

Local Bankruptcy Rule 3017 ................................................................................................1, 12

Local Bankruptcy Rule 3018 ................................................................................................1, 12

Local Bankruptcy Rule 3020 ...................................................................................................1

S. Rep. No. 95-989 (1978) ........................................................................................................28

WEIL:\98230972\1\12817.0004

Evergreen Gardens Mezz LLC ("**EGM**" or the "**Initial Debtor**"), together with Evergreen

Gardens I LLC ("**EG I**") and Evergreen Gardens II LLC ("**EG II**" and, together with EG I, the

"**Subsidiary Debtors**" and, together with the Initial Debtor, the "**Debtors**")), as debtors and debtors

in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully

submit this memorandum of law and motion (the "**Memorandum**"), pursuant to sections 105,

1125, 1126, 1128, and 1129 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules

2002, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), Rules 3017-1, 3018-1, 3018-2, and 3020-1 of the Local Bankruptcy Rules

for the Southern District of New York (the "**Local Bankruptcy Rules**"), and the *Amended*

*Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court*

*for the Southern District of New York*, as amended, effective June 27, 2013 (as adopted by General

Order M-454) (the "**Guidelines**"), for entry of an order, substantially in the form filed

contemporaneously herewith (the "**Proposed Confirmation Order**"):

(i)     approving the *Disclosure Statement for Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated September 13, 2021 (ECF No. 71) (as may be amended, modified, or supplemented from time to time and together with all exhibits and schedules thereto, the "**Disclosure Statement**"), in accordance with sections 1125 and 1126 of the Bankruptcy Code;

(ii)    approving the Debtors' procedures for the solicitation and tabulation of votes to accept or reject the *Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated September 13, 2021 (ECF No. 70) (as modified and amended on October 28, 2021 (ECF No. 187), and as may be further amended, modified, or supplemented from time to time and together with all exhibits and schedules thereto, the "**Plan**"),[2] including, without limitation, the procedures utilized by the Subsidiary Debtors to commence the solicitation of votes on the Plan prior to the commencement of the Subsidiary Debtors' Chapter 11 Cases (collectively, the "**Solicitation Procedures**");

---

[2] Capitalized terms used but not herein defined have the meanings ascribed to them in the Plan or the Proposed Confirmation Order, as applicable.

     (iii)      approving the forms of ballots for voting to accept or reject the Plan, substantially in the forms annexed as Exhibit E to the Solicitation Procedures Motion[3] (the "**Ballots**");

     (iv)      confirming the Plan, including, without limitation, the proposed Sale (as defined below) to the Purchaser (as defined below) incorporated therein, the agreed allocation and distribution of the sale proceeds between EG I and EG II, and the agreements and documents that comprise the Plan Supplement, dated October 11, 2021 (ECF No. 141) and the Second Plan Supplement, dated October 18, 2021 (ECF No. 161) (collectively, as may be further amended, modified, restated, or supplemented, the "**Plan Supplement**"), in accordance with section 1129 of the Bankruptcy Code; and

     (v)      granting related relief.

## PRELIMINARY STATEMENT

1.      The Debtors commenced these Chapter 11 Cases to implement a sale (the "**Sale**") of substantially all of their assets — two adjacent parcels of real property in Brooklyn, New York, known as 123 Melrose Street (the "**Denizen X**") and 54 Noll Street (the "**Denizen Y**" and, together, with the Denizen X, the "**Denizen**") — to ACI VI Denizen, LLC (the "**Purchaser**"), an affiliate of Atlas Capital Group, LLC, pursuant to the terms of a signed purchase and sale agreement, dated August 2, 2021 (as amended by that certain first amendment, dated August 19, 2021, that certain second amendment, dated September 1, 2021, and as may be further modified, amended, or supplemented from time to time, and together with all schedules and exhibits thereto, the "**Purchase Agreement**"). The Sale provides for total cash consideration of $506 million, as well as the assumption of certain of the Subsidiary Debtors' liabilities and the retention of all employees without interruption, all as set forth in the Purchase Agreement.

---

[3] *See Motion of Debtors for Entry of an Order (a) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Debtors' Joint Chapter 11 Plan; (b) Establishing Procedures for Objecting to Disclosure Statement, Solicitation Procedures, and Chapter 11 Plan; (c) Approving Form, Manner, and Sufficiency of Notice of Combined Hearing, Commencement of Chapter 11 Cases, and Section 341(a) Meeting of Creditors; (d) Conditionally Approving the Disclosure Statement for Purposes of Soliciting the Mezzanine Lender; and (e) Granting Related Relief,* dated September 14, 2021 (ECF No. 76) (the "**Solicitation Procedures Motion**"), approved by order of the Court, dated September 15, 2021 (ECF No. 90) (the "**Scheduling Order**").

2.      The Sale is the cornerstone of, and is to be implemented pursuant to, the Plan and is supported by the Debtors' senior, secured noteholders (the "**Series E Noteholders**") and mezzanine lender (the "**Mezzanine Lender**") — two of the Debtors' key creditor constituencies — pursuant to an executed restructuring support agreement (as may be amended, modified, or supplemented from time to time, and together with any schedules or exhibits thereto, the "**RSA**"). Significantly, the Plan has been accepted by almost 100% of creditors voting on the Plan, including the class of General Unsecured Claims at EG II. A chart summarizing the vote on the Plan is set forth below:

| Voting Results | | | | | |
|---|---|---|---|---|---|
| | Accept | | Reject | | |
| | Amount (% of Amount Voted) | Number (% of Amount Voted) | Amount (% of Amount Voted) | Number (% of Amount Voted) | Status |
| EG I | No Unimpaired Classes | | | | Accept |
| EG II | | | | | |
| Class 2 (Series E Secured Claims) | $208,554,738.96 (97.24%) | 34 (89.47%) | $5,911,827.82 (2.76%) | 4 (10.53%) | Accept |
| Class 5 (General Unsecured Claims) | $ 20,069,167.51 (93.67%) | 36 (87.80%) | $1,357,005.25 (6.33%) | 5 (12.20%) | Accept |
| EGM | | | | | |
| Class 2 (Mezzanine Loan Claim) | $81,188,942.28 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) | Accept |

3.      As described in greater detail below, the robust and comprehensive prepetition marketing process for the sale of the Denizen was led by the Debtors, with the assistance of professionals at Meridian Investment Sales, a segment of Meridian Capital Group, LLC (collectively, "**Meridian**"). Meridian, on behalf of the Debtors, devoted months to marketing the sale of the Denizen and soliciting bids from over 2,000 prospective buyers, including, but not limited to, private investors, institutions, pension funds, family offices, and REITs. The culmination of this process resulted in the Debtors' selection of the Purchaser's bid, which

3

represented the only viable and actionable bid from a credible purchaser capable of consummating

an efficient and timely sale transaction for the Denizen at a purchase price that the Debtors believed

to be fair and reasonable. Accordingly, having adequately tested the market for a sale transaction

for the Denizen, the Debtors have determined, in the exercise of their sound business judgement,

that the best opportunity to consummate a value-maximizing transaction is to proceed with the

Sale to the Purchaser pursuant to the Purchase Agreement and the Plan.

4.      The Plan is the product of extensive good faith, arm's-length negotiations and

enjoys widespread creditor support.  None of the approximately 1,350 parties in interest who were

served with notice of the Confirmation Hearing filed objections to confirmation[4] and only two

reservations of rights were filed with respect to the Plan.[5]  As demonstrated below and in the

Supporting Declarations (as defined below), the Plan satisfies all of the requirements for

confirmation set forth in section 1129 of the Bankruptcy Code and, accordingly, should be

confirmed

5.      This Memorandum is divided into six sections. Section I sets forth the facts,

affidavits, declarations, evidence and other background information relevant for (i) approval of the

Disclosure Statement, the Solicitation Procedures, and the forms of Ballots, and (ii) confirmation

of the Plan.  Section II sets forth the steps the Debtors took to solicit votes to accept or reject the

Plan.  Section III addresses the Disclosure Statement and Solicitation Procedures and the Debtors'

---

[4] *See Affidavit of Service Regarding Service of Solicitation Packages with Respect to the Disclosure Statement for Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC And Evergreen Gardens Mezz LLC* (ECF No. 106); *See Affidavit of Service Re: Supplemental Affidavit of Service of the Notice of (I) Commencement of Subsidiary Debtors Chapter 11 Cases; (II) Summary of Debtors' Joint Chapter 11 Plan; (III) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Chapter 11 Plan; (IV) Scheduling of Section 341(a) Meeting of Creditors; and (V) Related Matters* (ECF No. 139).

[5] *See Smart Management NY, Inc.'s Reservation of Rights Regarding Debtors' Joint Chapter 11 Plan* (ECF No. 156) and *Melrose Noll Brooklyn MMC's Reservation of Rights Regarding Debtors' Joint Disclosure Statement and Chapter 11 Plan* (ECF No. 158).

satisfaction of the applicable provisions and requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Guidelines. Section IV addresses the requirements for confirmation of the Plan under the Bankruptcy Code, and demonstrates the Plan and the Debtors have satisfied each requirement and have achieved the objectives of chapter 11. Section V discusses why cause exists to waive the 14-day stay imposed by Bankruptcy Rule 3020(e). Finally, section VI concludes this Memorandum.

## I.    FACTS

6.    On February 22, 2021 (the "**Initial Debtor Petition Date**"), the Initial Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. On September 14, 2021 (the "**Subsidiary Debtor Petition Date**" and, together with the Initial Debtor Petition Date, the "**Petition Dates**"), the Subsidiary Debtors commenced their own voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

7.    The pertinent facts relevant for approval of the Disclosure Statement, the Solicitation Procedures and the forms of Ballots, and confirmation of the Plan are set forth in the following affidavits, certifications, and declarations (the "**Supporting Declarations**"):

> i.    the *Declaration of Asaf Ravid in Support of Confirmation of Amended Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated October 28, 2021, and filed contemporaneously herewith (ECF No. 192) (the "**Ravid Declaration**");
>
> ii.   the *Declaration of Asaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of Subsidiary Debtors' Chapter 11 Petitions and Related Relief*, dated September 14, 2021 (ECF No. 3 on EG I and EG II docket) (the "**First Day Declaration**");

5

     iii.    *the Declaration of Helen Hwang in Support of Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, and 503(b) and Fed. R. Bankr. P. 2002, 6003, 6004, and 9014 for Entry of Interim and Final Orders (i) Authorizing and Approving Bid Protections and (ii) Granting Related Relief*, dated September 14, 2021 and filed as Exhibit B to the Bid Protections Motion[6] (the "**Hwang Declaration**");

     iv.    the *Corrected Certification of Series E Notes Trustee Regarding Solicitation of Votes from Series E Noteholders on Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated September 14, 2021 (ECF No. 83) (the "**Series E Notes Trustee Certification**") and the *Certification of Gornitzky & Co., as Counsel to Series E Notes Trustee* annexed as Exhibit A thereto (the "**Series E Notes Trustee Counsel Certification**");

     v.    the *Declaration of John Burlacu Regarding Prepetition Solicitation of Votes on Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated September 14, 2021, and filed as Exhibit C to the Solicitation Procedures Motion (the "**Prepetition Solicitation Declaration**");

     vi.    the *Declaration of John Burlacu of Donlin, Recano & Company, Inc. Regarding the Solicitation and Tabulation of Votes Cast on Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated October 28, 2021 and filed contemporaneously herewith (the "**Voting Certification**"); and

     vii.    the *Affidavit of Service of Solicitation Materials* (ECF No. 106) (the "**Solicitation Affidavit**").

## II.    PLAN SOLICITATION

     8.    In connection with the Plan, the Debtors prepared the Disclosure Statement, describing, among other things, the Debtors' proposed Plan, which seeks to implement the proposed Sale to the Purchaser, and the Plan's proposed effects on holders of claims against, and interests in, the Debtors. The process by which the Debtors solicited votes to accept or reject the Plan from each of the impaired voting classes of claims is described below.

---

[6] *See Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(b) and Fed. R. Bankr. P. 2002, 6003, 6004, and 9014 for Entry of Interim and Final Order (i) Authorizing and Approving Bid Protections and (ii) Granting Related Relief*, dated September 14, 2021 (ECF No. 78) (the "**Bid Protections Motion**"), approved on a final basis by order of the Court, dated October 4, 2021 (ECF No. 129).

9.    **EG I:** All of the creditors and interest holders of EG I are unimpaired and the holders of allowed claims and interests will be paid in full under the Plan. Accordingly, each of the classes of creditors and interest holders of EG I is, pursuant to section 1126(f) of the Bankruptcy Code, presumed to accept the Plan and none of EG I's creditors or interest holders were solicited in connection with the Plan (collectively, the "**EG I Non-Voting Classes**").

10.    **EG II:** With respect to EG II, holders of claims in Class 2 (Series E Secured Claims) and Class 5 (General Unsecured Claims) are the only impaired voting classes of creditors under the Plan (the "**EG II Voting Classes**"). Holders of claims against EG II in Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), and Class 4 (Convenience Claims) are unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, these classes are presumed to have accepted the Plan and were not solicited. Nor were the Debtors required to solicit votes from the holders of Claims in Class 6 (Intercompany Claims) and Interests in Class 7 (Equity Interests), as such classes will not receive or retain any property under the Plan and, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan (EG II Class 1, Class 3, Class 4, Class 6, and Class 7, collectively, the "**EG II Non-Voting Classes**").

11.    As set forth in the Prepetition Solicitation Declaration, shortly after midnight on September 14, 2021, the Subsidiary Debtors, through their voting agent, Donlin Recano & Co (the "**Voting Agent**"), caused copies of the following materials in connection with voting on the Plan (the "**Solicitation Packages**") to be transmitted to (i) Mishmeret Trust Company Ltd., as trustee for the Series E Notes (the "**Series E Notes Trustee**"), on behalf of the Series E Noteholders on account of their Class 2 Series E Secured Claims and their Class 5 Series E Notes Deficiency Claims, and (ii) the General Unsecured Creditors of EG II, as the other holders of Class 5 General Unsecured Claims:

WEIL:\98230972\1\12817.0004

- the Disclosure Statement;

- the Plan;

- the exhibits to the Disclosure Statement, including:

  - the RSA;

  - the Purchase Agreement;

  - an organization structure chart; and

  - a liquidation analysis.

- the appropriate form of Ballot with voting instructions.

12.    The Debtors transmitted one Solicitation Package to the Series E Notes Trustee on account of the Series E Noteholders, the holders of the Class 2 Series E Secured Claims and the Class 5 Series E Notes Deficiency Claims.   Approximately 37 total Solicitation Packages were transmitted to the General Unsecured Creditors as holders of Class 5 General Unsecured Claims against EG II.

13.    The Solicitation Packages were transmitted to the holders of claims in the EG II Voting Classes by first class mail and electronic mail (to the extent the Debtors had email address information for such parties).[7]   The instructions on the Ballots advised parties in the EG II Voting Classes that, for a Ballot to be counted, the Ballot must be properly executed, completed, and delivered to the Voting Agent so that it was received by the Voting Agent no later than 5:00 p.m. (Eastern Standard Time) on October 18, 2021 (the "**Voting Deadline**"), unless such time was extended by the Debtors.

---

[7] Solicitation Packages sent by first class mail included a USB flash drive containing the Disclosure Statement and the Plan, and a physical copy of the applicable Ballot. Solicitation Packages transmitted by electronic mail containing digital copies of all relevant documents to the extent the Debtors had email addresses. Any creditor that received a Solicitation Package could request a paper copy of the Disclosure Statement (and all attachments thereto) and/or Plan by contacting the Voting Agent by email at eginfo@donlinrecano.com or by telephone at (800) 283-2519 (toll free).

WEIL:\98230972\1\12817.0004

14.     The Series E Notes Trustee, as part of its Solicitation Package, received a master ballot to aggregate the votes of the Series E Noteholders' Class 2 Series E Secured Claims and Class 5 Series E Notes Deficiency Claims.  The master ballot received by the Series E Notes Trustee specified that the Series E Notes Trustee was to submit the completed and executed ballot to the Voting Agent by electronic mail.  The holders of the other claims in Class 5 (General Unsecured Claims), were encouraged to submit a customized electronic Ballot via online transmission through the E-Ballot platform on the website maintained by the Voting Agent for these Chapter 11 Cases, https://www.donlinrecano.com/evergreen-vote.  However, the Ballots transmitted to the holders of General Unsecured Claims provided that paper ballots could be submitted to the Voting Agent via regular mail or overnight courier in the event that the creditor was unable to utilize the E-Ballot platform.

15.     As set forth above, the Plan was overwhelmingly accepted by the EG II Voting Classes.  Specifically, (i) 89.47% in number and 97.24% in amount of the Ballots cast by holders of Claims in Class 2 against EG II (Series E Secured Claims) voted to accept the Plan, and (ii) 87.80% in number and 93.67% in amount of the Ballots cast by holders of Claims in Class 5 against EG II (General Unsecured Claims) voted to accept the Plan.  *See* Voting Certification.

16.     **EGM:**  With respect to EGM, the Mezzanine Lender, as the holder of the Class 2 Mezzanine Lender Claim, is the only known creditor of EGM and the only party entitled to vote under the Plan (the "**EGM Voting Class**" and, together with the EG II Voting Classes, the "**Voting Classes**").  To the extent there are any Class 1 Priority Non-Tax Claims against EGM, those claims will be unimpaired and holders of allowed claims will be paid in full.  Holders of claims in Class 3 (Equity Interests) of EGM will not receive or retain any property under the Plan, are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and, as such, their votes on

the Plan were not solicited (together with Class 1 (Priority Non-Tax Claims), the "**EGM Non-Voting Classes**" and, together with the EG I Non-Voting Classes and the EG II Non-Voting Classes, the "**Non-Voting Classes**").

17.    Due to EGM's status as a debtor in possession, EGM was not able to avail itself of section 1125(g) of the Bankruptcy Code and commence solicitation of the Plan prior to the Court's approval of a disclosure statement in accordance with section 1125(b) of the Bankruptcy Code. Accordingly, on the Subsidiary Debtor Petition Date, in connection with the Solicitation Procedures Motion, the Debtors sought, among other things, conditional approval of the Disclosure Statement to allow the Debtors to solicit the vote of the Mezzanine Lender on the Plan. Conditional approval of the Disclosure Statement was granted by the Court pursuant to the Scheduling Order and, on September 15, 2021, the Voting Agent sent a Solicitation Package to the Mezzanine Lender by first class and electronic mail. *See* Solicitation Affidavit at ¶ 5. The Mezzanine Lender, as the only holder of the Mezzanine Loan Claims and the only creditor of EGM entitled to vote, has voted to accept the Plan. *See* Voting Certification.

18.    Pursuant to the Scheduling Order, on September 17, 2021, the Debtors served a notice (the "**Combined Notice**") of, among other things: (i) the commencement of the Debtors' Chapter 11 Cases; (ii) the date, time, and place of the Combined Hearing; (iii) a summary of the Plan; and (v) the deadline and procedures for objecting to the Disclosure Statement, the Solicitation Procedures, and confirmation of the Plan. The Combined Notice was served in compliance with the directives set forth in the Scheduling Order upon (a) all of the Debtors' known creditors, (b) counsel to the Series E Notes Trustee, (c) counsel to the Mezzanine Lender, (d) counsel to JPM, (e) the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"), (f) the Internal Revenue Service, (g) the United States Attorney's Office for the Southern District of New York,

and (h) all other entities required to be served under Bankruptcy Rules 2002 and 3017 (the "**Master Service List**"), and otherwise in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Guidelines. The Combined Notice was duly served in compliance with the directives set forth in the Scheduling Order.[8]

19.    In accordance with the Scheduling Order, the Debtors also caused a notice substantially similar to the Combined Notice (the "**Publication Notice**") to be published in *The New York Times* (National Edition) in English on September 24, 2021 – thirty eight (38) days prior to the Confirmation Hearing. The Debtors also caused the Publication Notice to be published in *Haaretz*, an Israeli newspaper, in Hebrew on September 30, 2021 – thirty two (32) days prior to the Confirmation Hearing.[9]

20.    On October 11, 2021 the Debtors filed the Plan Supplement (the "**First Plan Supplement**"), consisting of (i) the Plan Administration Agreements for the Post-Effective Debtors, (ii) the identification of the Plan Administrators for the Post-Effective Debtors, (iii) the organizational documents for Post-Effective Date EG II, (iv) the Wind-Down Budgets, (v) a schedule of executory contracts and tenant leases to be assumed and assigned to the Purchaser, (vi) a schedule of executory contracts and unexpired leases to be assumed by the Post-Effective Date Debtors, and (vii) a schedule of executory contracts and unexpired leases to be rejected by the Debtors. On October 18, 2021, the Debtors filed a subsequent plan supplement (the "**Second Plan Supplement**"), consisting of (i) the organizational documents for Post-Effective Date EGM, (ii) revised organizational documents for Post-Effective Date EG II, and (iii) the revised Wind

---

[8] *See* Affidavit of Service of Combined Notice (ECF No. 106).

[9] *See* Notice Affidavits (ECF Nos. 131 and 137).

Down Budget for Post-Effective Date EGM. The Debtors caused the Plan Supplements to be
served on the Master Service List and all holders of Claims in the Voting Classes.[10]

## III.    THE DEBTORS' SOLICITATION AND TABULATION PROCEDURES SHOULD BE APPROVED

21.    The Debtors solicited votes to accept or reject the Plan from creditors in the
Subsidiary Debtors' Voting Classes prior to the commencement of the Subsidiary Debtors'
Chapter 11 Cases. The Debtors solicited the vote of the Mezzanine Lender, as the sole voting
creditor of EGM, following conditional approval of the Disclosure Statement pursuant to the
Scheduling Order.

22.    To determine whether a prepetition solicitation of votes to accept or reject a plan
should be approved, this Court must determine whether the solicitation complied with sections
1125(g) and 1126(b) of the Bankruptcy Code, Bankruptcy Rules 3017(d) and (e), and 3018(b) and
(c), Local Bankruptcy Rules 3018-1, and 3018-2, and the Guidelines. Part II of the Guidelines
provides that "a 'prepackaged Chapter 11 case' is one in which the Debtor, substantially
contemporaneously with the filing of its Chapter 11 petition, files a Confirmation Hearing
Scheduling Motion for Prepackaged Plan in substantially the form annexed [to the Guidelines] as
Exhibit A and satisfying the criteria set forth in Part III.A. below ("Prepack Scheduling Motion"),
Prepackaged Plan, disclosure statement (or other solicitation document), and voting certification."
Pursuant to Part III.D(ii) of the Guidelines, the Court may, upon request of the debtor or other
party in interest in an appropriate case, apply some or all of the Guidelines to "'Partial Prepackaged
Chapter 11 Cases' -- i.e., cases in which acceptances of the debtor's plan were solicited prior to

---

[10] *See* Affidavit of Service of the Notice of Filing of Plan Supplement in Connection with Joint Chapter 11 Plan of
Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC (ECF No. 151); *Affidavit
of Service of Filing of Second Plan Supplement in Connection with Joint Chapter 11 Plan of Evergreen Gardens I
LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC* (ECF No. 165).

the commencement of the case." Here, the Debtors commenced the solicitation of votes from

creditors in the Voting Classes of EG II prior to commencement of the Subsidiary Debtors' Chapter

11 Cases and filed the Solicitation Procedures Motion on the Subsidiary Debtor Petition Date.

**A.    The Debtors' Prepetition Solicitation Complied with the Requirements of Bankruptcy Code Sections 1125(g) and 1126(b)**

**1.    Solicitation Complied with Applicable Securities Law**

23.    Sections 1125(g) and 1126(b) of the Bankruptcy Code govern the acceptance of a

plan of reorganization by a holder of a claim or interest prior to the commencement of a chapter

11 case.  Section 1125(g) provides:

> Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

11 U.S.C. 1125(g).

24.    Section 1126(b) of the Bankruptcy Code provides that a holder of a claim or interest

that has accepted or rejected the plan before the commencement of the chapter 11 case is deemed

to have accepted or rejected such plan if:

(1)    the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or

(2)    if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).  The Debtors have complied with these requirements.[11]

---

[11] Consistent with the Part III.C of the Guidelines, if a debtor commences a chapter 11 case after solicitation has commenced but before the expiration of the voting deadline, "the Debtor and other parties in interest shall be permitted to accept but not solicit ballots until the Voting Deadline; and after notice and a hearing the Court shall determine the effect of any and all such votes."

WEIL:\98230972\1\12817.0004

25.    <u>The Series E Notes Secured and Unsecured Claims</u>.  Pursuant to Section 33 of the Series E Deed of Trust, the Series E Deed of Trust and other documents governing the issuance, terms, conditions, and obligations of the Series E Notes (collectively, the "**Series E Note Documents**") are governed by Israeli law.  As set forth in the Series E Notes Trustee Certification, on August 19, 2021, pursuant to the Series E Deed of Trust, the Series E Notes Trustee published a communication to each of the Series E Noteholders scheduling a vote by the Series E Noteholders on certain actions requested by the Subsidiary Debtors (the "**Proposal**").  Specifically, the Proposal requested an affirmative vote by each of the Series E Noteholders to authorize the Series E Notes Trustee to pursue all actions needed to consummate the Sale, including entering into the RSA and the RSA Term Sheet, subject to certain conditions elaborated in the Proposal.

26.    As set forth in the Proposal, by voting in favor of the Proposal, each Series E Noteholder, among other things, (a) provided its consent to the Sale, (b) provided its consent for the Subsidiary Debtors to commence the Chapter 11 Cases, (c) authorized the Series E Notes Trustee to negotiate and sign all required documents in order to effectuate the authority granted to the Series E Noteholders' representative and the Series E Notes Trustee in accordance with the Proposal, and (d) authorized the Series E Notes Trustee to vote the secured and unsecured deficiency claims of the Series E Noteholders in favor of the Plan. The Proposal was accompanied by a summary prepared by the Series E Notes Trustee's financial advisor that, among other things, summarized the material economic terms of the RSA and the RSA Term Sheet.

27.    As set forth in the Series E Notes Trustee Counsel Certification, the solicitation of votes on the Proposal with respect to the votes of Class 2 (Series E Secured Claims at EG II) and Class 5 (Series E Notes Deficiency Claim at EG II) was made in accordance with the provisions of the Series E Note Documents, Israeli securities law, and otherwise applicable Israeli law. The

WEIL:\98230972\1\12817.0004

authorizations in the Proposal included, *inter alia*, the authorization of the Series E Notes Trustee

to vote the secured and unsecured deficiency claims of the Series E Noteholders in favor of the

Plan, subject to the Series E Notes Trustee's receipt of the Disclosure Statement.

28.    <u>General Unsecured Claims</u>.  The Debtors' prepetition solicitation did not constitute

an offer or sale of new securities and, therefore, the solicitation was not subject to the Securities

Act of 1933, 15 U.S.C. §§ 77a-77aa or state "Blue Sky" laws, or any similar rules, regulations, or

statutes.  The solicitation of votes from the holders of Class 5 General Unsecured Claims against

EG II, therefore, complied with all applicable nonbankruptcy laws, rules, and regulations

governing the adequacy of disclosure.  Accordingly, the Debtors have satisfied the requirements

of sections 1125(g) and 1126(b) of the Bankruptcy Code.

## 2.    The Disclosure Statement Contains Adequate Information Within Meaning of Bankruptcy Code Section 1125(a)(1)

29.    Under section 1125(b) of the Bankruptcy Code, the Disclosure Statement must

disclose "adequate information" prior to the solicitation of votes on a reorganization plan.  Section

1125(a)(1) of the Bankruptcy Code defines "adequate information" as follows:

> "[A]dequate information" means information of a kind, and in sufficient
> detail, as far as is reasonably practicable in light of the nature and history of
> the debtor and the condition of the debtor's books and records, including a
> discussion of the potential material Federal tax consequences of the plan to
> the debtor, any successor to the debtor, and a hypothetical investor typical
> of the holders of claims or interests in the case, that would enable such a
> hypothetical investor of the relevant class to make an informed judgment
> about the plan . . .

11 U.S.C. § 1125(a)(1).

30.    Thus, a disclosure statement must, as a whole, provide information that is

reasonably practicable to permit an informed judgment by impaired creditors or equity interest

holders entitled to vote on a plan of reorganization.  *See In re BGI, Inc.*, 772 F.3d 102, 105 (2d

Cir. 2014), *reh'g denied* (Aug. 8, 2014), *cert. denied sub nom. Beeman v. BGI Creditor's*

*Liquidating Trust*, 136 S. Ct. 155 (2015); *Cadle Co. II, Inc. v. PC Liquidation Corp.* (*In re PC Liquidation Corp.*), 383 B.R. 856, 866 (E.D.N.Y. 2008) (holding that a disclosure statement was adequate where it "enable[d] a reasonable creditor to make an informed judgment about the [p]lan"); *see also In re Adelphia Commc'ns Corp.,* 352 B.R. 592, 600 (Bankr. S.D.N.Y. 2006) (explaining that "an adequate disclosure determination requires a bankruptcy court to find not just that there is enough information, but also that what is said is not misleading"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties.").

31.     In examining the adequacy of the information contained in a disclosure statement, the Court has broad discretion. *See Abel v. Shugrue* (*In re Ionosphere Clubs*), 179 B.R. 24, 29 (S.D.N.Y. 1995) (the ability to determine what is considered adequate information is subjective and largely within the discretion of the bankruptcy court); *In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003) (same). This grant of discretion was intended to facilitate effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977) ("In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest."). Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Ionosphere Clubs*, 179 B.R. at 29 (explaining that the approval of a disclosure statement involves

a fact-specific inquiry into the particular plan, which is "subjective and made on a case by case basis.").

32.    In that regard, courts generally examine a number of factors when determining whether the disclosure statement contains adequate information, including but not limited to

> a complete description of the available assets and their value; ... the accounting and valuation methods used to produce the financial information in the disclosure statement; . . . information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor; . . . the collectibility of any accounts receivable; . . . any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan; . . . the actual or projected value that can be obtained from avoidable transfers.

*See id; see also In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (listing factors).  The factors are not meant to be comprehensive; nor must a debtor provide information on all factors.  Rather, the bankruptcy court must decide what is appropriate in each case.  *In re Ashley River Consulting, LLC,* Nos. 14-13406, 2015 WL 6848113, at *27 (Bankr. S.D.N.Y. Nov. 6, 2015) (noting that disclosure statements must be a source of factual information, but that debtors do not need to provide information on each factor); *In re Avianca Holdings Sociedad Anónima*, No. 20-11133, 2021 WL 4197721, at *8 (Bankr. S.D.N.Y. Sep. 15, 2021) ("[d]isclosure of all factors is not necessary in every case") (internal citations omitted).

33.    The Disclosure Statement contains adequate information necessary to enable all parties in interest to make an informed judgment with respect to the Plan as required by section 1125 of the Bankruptcy Code, including, but not limited to, a discussion of:

> (a)    An overview of the Debtors' operations (Disclosure Statement, Part II);
>
> (b)    Key events leading to the commencement of the Chapter 11 Cases (Disclosure Statement, Part III);

(c)    Anticipated events during the Chapter 11 Cases, including prepetition solicitation, first day motions, retention of professionals, and a timetable for the Chapter 11 Cases (Disclosure Statement, Part IV);

(d)    Information regarding pending litigation (Disclosure Statement, Part V);

(e)    A summary of the Plan (Disclosure Statement, Part VI);

(f)    Information regarding Claims and Interests addressed under the Plan (Disclosure Statement, Part VI);

(g)    Tax consequences of the Plan (Disclosure Statement, Part VII);

(h)    Certain risk factors to be considered in evaluating the Plan (Disclosure Statement, Part VIII);

(i)    Voting procedures and requirements related to the Plan (Disclosure Statement, Part IX);

(j)    Requirements for confirmation of the Plan (Disclosure Statement, Part X); and

(k)    Alternatives to confirmation and consummation of the Plan (Disclosure Statement, Part XI).

The Disclosure Statement also contains:

(a)    A copy of the Plan (Disclosure Statement, Ex. A);

(b)    A copy of the RSA (Disclosure Statement, Ex. B);

(c)    A copy of the Purchase Agreement (Disclosure Statement, Ex. C); and

(d)    A liquidation analysis (Disclosure Statement, Ex. D).

34.    Accordingly, the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code and should be approved.

**B.    Solicitation of Classes Presumed to Accept the Plan and Classes Deemed to Reject the Plan is Not Required**

35.    The holders of Claims or Interests in the following Classes are unimpaired, are conclusively presumed to have accepted the Plan, and are not entitled to vote to accept or reject the Plan (collectively, the "**Unimpaired Classes**"): (i) with respect to EG I: Class 1 (Priority Non-

18

Tax Claims), Class 2 (JPM Secured Claims), Class 3 (Other Secured Claims), Class 4 (General

Unsecured Claims), Class 5 (Intercompany Claims), and Class 6 (Equity Claims); (ii) with respect

to EG II: Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), and Class 4

(Convenience Claims); and (iii) with respect to EGM: Class 1 (Priority Non-Tax Claims).

36.      The Bankruptcy Code does not require the solicitation of votes from such holders.

Specifically, section 1126(f) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, a class that is not
> impaired under a plan, and each holder of a claim or interest of such class,
> are conclusively presumed to have accepted the plan, and solicitation of
> acceptances with respect to such class from the holders of claims or interests
> of such class is not required.

11 U.S.C. § 1126(f).  Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, the holders

of Claims or Interests in each of the Unimpaired Classes are conclusively presumed to accept the

Plan and have not been solicited.

37.      The holders of Claims or Interests in the following Classes are not entitled to any

distribution or to retain any property pursuant to the Plan and, as such, are presumed to have

rejected the Plan and are not entitled to vote to accept or reject the Plan (collectively, the "**Deemed

to Reject Classes**" and, together with the Voting Classes, the "**Impaired Classes**"): (i) with

respect to EG II: Class 6 (Intercompany Claims), and Class 7 (Equity Interests); and (ii) with

respect to EGM: Class 3 (Equity Interests).  The Bankruptcy Code does not require the solicitation

of votes from such holders.  Specifically, section 1126(g) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, a class is deemed not
> to have accepted a plan if such plan provides that the claims or interests of
> such class do not entitle the holders of such claims or interests to receive or
> retain any property under the plan on account of such claims or interests.

WEIL:\98230972\1\12817.0004

11 U.S.C. § 1126(g).   Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, the

holders of Claims or Interests in the Deemed to Reject Classes are conclusively deemed to reject

the Plan and have not been solicited.

38.    The Solicitation Procedures undertaken by the Debtors with respect to the specific

classes of claims against the Debtors that were presumed to accept or deemed to reject the Plan

comply with the Bankruptcy Code and should be approved.

### C.    The Debtors' Solicitation Packages, Ballots, and Solicitation Procedures Complied with the Requirements of Bankruptcy Rules 3017(d) and 3018(c)

39.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders

of claims and equity interests for the purpose of soliciting their votes and providing adequate notice

of the hearing on confirmation of a plan of reorganization:

> Upon approval of a disclosure statement, — except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders — the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> 1.    the plan or a court-approved summary of the plan;
>
> 2.    the disclosure statement approved by the court;
>
> 3.    notice of the time within which acceptances and rejections of the plan may be filed; and
>
> 4.    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

FED. R. BANKR. P. 3017(d).  Bankruptcy Rule 3017(d) also provides, in relevant part, as follows:

20

> If the court orders that the disclosure statement and the plan or a summary
> of the plan shall not be mailed to any unimpaired class, notice that the class
> is designated in the plan as unimpaired and notice of the name and address
> of the person from whom the plan or summary of the plan and disclosure
> statement may be obtained upon request and at the plan proponent's
> expense, shall be mailed to members of the unimpaired class together with
> the notice of the time fixed for filing objections to and the hearing on
> confirmation.

Fed. R. Bankr. P. 3017(d).

40.    Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." FED. R. BANKR. P. 3018(C).

41.    In addition, Bankruptcy Rule 2002(l) permits a court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." FED. R. BANKR. P. 2002(L).

### 1.    Solicitation Packages

42.    As set forth in the Solicitation Procedures Motion, the Debtors set August 19, 2021 as the record date ("**Voting Record Date**") for determining which holders of claims and equity interests were entitled to vote to accept or reject the Plan, and the Solicitation Packages clearly identified such date as the Voting Record Date.

43.    As required by Bankruptcy Rule 3017(d), the Solicitation Packages included the Disclosure Statement, as well as notice of the deadline to submit the Ballots to accept or reject the Plan, and the deadline for objecting to approval of the Disclosure Statement and Confirmation of the Plan.  As set forth in Section II, the Debtors satisfied Bankruptcy Rule 3017(d) by complying with the Scheduling Order and serving the Solicitation Packages on all holders of claims in the

Voting Classes. Moreover, the Plan Supplement also satisfied Bankruptcy Rule 3017(d) because it was served on all holders of claims in the Voting Classes and on the Master Service List.

### 2.    The Combined Notice and the Publication Notices

44.    As noted in more detail in Section II, the Debtors distributed the Combined Notice to, among others, all of the Debtors' known creditors and equity interest holders in compliance with the Scheduling Order, and published the Publication Notice in *The New York Times* (National Edition) in English and in *Haaretz*, an Israeli newspaper, in Hebrew.  The Combined Notice and the Publication Notice included all necessary information and were served and published, respectively, in compliance with the Scheduling Order, and therefore satisfy Bankruptcy Rule 3017(d) and the other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Guidelines.

### 3.    Ballots

45.    Bankruptcy Rules 3017(d) and 3018(c) require a form of ballot substantially conforming to Official Form No. 14.  The forms of the Ballot, which were annexed as Exhibit E to the Solicitation Procedures Motion, were based on Official Form No. 14, but were modified to address the particular circumstances of the Chapter 11 Cases and to include certain additional information that is relevant and appropriate for creditors entitled to vote to accept or reject the Plan.  The Ballots clearly stated that to be counted as votes to accept or reject the Plan, all Ballots had to be properly executed, completed and delivered to the Voting Agent so that they would be received no later than the Voting Deadline.  The Ballots conform substantially to Official Form No. 14 and, therefore, satisfy Bankruptcy Rules 3017(d) and 3018(c) and should be approved.

### D.    The Solicitation Period Was Reasonable under Bankruptcy Rule 3018(b)

46.    Bankruptcy Rule 3018(b) provides, in relevant part, that (i) the plan must have been transmitted to substantially all creditors and equity security holders of the same class, (ii) the period

WEIL:\98230972\1\12817.0004

of time prescribed for such creditors and equity security holders to accept or reject the plan must not have been unreasonably short and (iii) the solicitation must have been in compliance with section 1126(b) of the Bankruptcy Code. FED. R. BANKR. P. 3018(b). The Debtors' solicitation satisfied the standards set forth in Bankruptcy Rule 3018(b) and section 1126(b) of the Bankruptcy Code.

47.    On September 14, 2021, the Debtors caused the Voting Agent to distribute Solicitation Packages to holders of Claims in the Subsidiary Debtors' Voting Classes and, following conditional approval of the Disclosure Statement pursuant to the Scheduling Order, to the Mezzanine Lender as the sole holder of claims in EGM's Voting Class. The Debtors established 5:00 p.m. (Prevailing Eastern Time) on October 18, 2021 as the Voting Deadline. Pursuant to the instructions contained in the Ballot, Holders of Claims in the Voting Classes were encouraged to return the completed Ballots by electronic submission through the Voting Agent's E-Balloting platform. The Ballots stated in clear and conspicuous language that all Ballots must be properly executed, completed, and delivered and/or transmitted to the Voting Agent by the Voting Deadline.

48.    The solicitation period of thirty-four (34) days, which extended from September 14, 2021 to October 18, 2021 at 5:00 p.m. (Eastern Standard Time), gave holders of claims in the Voting Classes sufficient time to review the Disclosure Statement and the Plan and more time than is required by the Bankruptcy Rule 2002(b). *See* Fed. R. Bankr. P. 2002(b). Accordingly, given the circumstances of the cases and the solicitation process, the solicitation period is not "unreasonably short." Further, the Debtors filed the First Plan Supplement one week prior to the Voting Deadline to ensure that all voting parties had sufficient time to review additional materials relating to the Plan that may bear on the manner in which they cast their votes.

WEIL:\98230972\1\12817.0004

49.     A substantial percentage of the Series E Noteholder claims against EG II are held by sophisticated institutional creditors, many with substantial knowledge of the Debtors' properties and operations.  As such, before the commencement of the Solicitation Process, the Debtors, the Series E Notes Trustee and/or representatives of the Series E Noteholders, and the Mezzanine Lender, spent a substantial amount of time negotiating the terms of the Sale with the Purchaser and the terms of a chapter 11 plan to implement the Sale as embodied in the Plan and the RSA. Accordingly, the holders of claims in these classes were well informed regarding all material terms of the Plan well before solicitation commenced and had sufficient time to make a well-informed voting decision.

50.     Additionally, Part VII.A.1 of the Guidelines provides that "under ordinary circumstances" a court will approve as reasonable a "twenty-one (21) day voting period, measured from the date of commencement of mailing" with respect to the solicitation of votes of holders of "securities listed or admitted to trading on the New York Stock Exchange or American Stock Exchange or any international exchanges quoted on NASDAQ, and for securities publicly traded on any other national securities exchange ('Publicly Traded Securities')," which is applicable here because the Series E Notes are publicly traded on the Tel Aviv Stock Exchange.  Part II.A.3 of the Guidelines provides that a twenty-one (21) day voting period is reasonable "for all other claims and interests."

51.     This Court has previously approved solicitation procedures with a voting period of fewer than thirty-four days.  *See In re China Fishery Group Limited (Cayman)*, No. 16-11895 (JLG) (Bankr. S.D.N.Y. April 23, 2021) (ECF No. 2441) (approving twenty-eight-day solicitation period); *In re Liddle & Robinson LLP*, No. 19-12346 (SHL) (Bankr. S.D.N.Y. Jan. 15, 2021) (ECF No. 410) (approving twenty-nine-day solicitation period); *In re The McClatchy Co.*, No. 20-10418

(MEW) (Bankr. S.D.N.Y. Aug, 21, 2020) (ECF No. 782) (approving twenty-four-day solicitation period).

52.      In light of the foregoing, the solicitation period in this case, which exceeds the 21-day voting period set forth in the Guidelines, complied with applicable nonbankruptcy law and was not unreasonably short, thereby complying with section 1125(g) of the Bankruptcy Code and Bankruptcy Rule 3018, respectively.

### E.      The Debtors' Solicitation Procedures Should Be Approved

53.      Bankruptcy Rule 3017(e) requires that this Court "consider the procedures for transmitting the documents and information required by subdivision (d) of this rule to the beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of [such] procedures, and enter any orders the court deems appropriate."  FED. R. BANKR. P. 3017(e).  The Debtors caused the Solicitation Packages, including the Disclosure Statement, to be distributed to all holders of Claims in the Voting Classes as described in the Voting Certification.

54.      Accordingly, the Solicitation Packages and Solicitation Procedures should be approved by this Court, as they satisfy the requirements of sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rules 3017(d) and (e) and 3018(b) and (c).

### F.      The Debtors' Vote Tabulation Procedures Should Be Approved

55.      Pursuant to section 1126(a) of the Bankruptcy Code, the holder of an "allowed" claim may accept or reject a chapter 11 plan. A class of claims accepts a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one half in number of the allowed claims of such class held by creditors that voted. 11 U.S.C. §1126(c). Bankruptcy Rule 3018(a) provides that the court may temporarily allow a claim in an amount that the bankruptcy court deems appropriate for the purpose of such claim holder accepting or rejecting a plan.

WEIL:\98230972\1\12817.0004

56.    The Debtors solicited creditors in the Voting Classes, including Class 5 General Unsecured Creditors of EG II, based on the information available in their books and records, and proposed that all claims be temporarily allowed in the amount set forth in their books and records for voting purposes only, subject to certain exceptions as set forth in the Solicitation Procedures Motion, including, among other things, that any wholly contingent, unliquidated, or disputed Claim be accorded one vote and be valued at one dollar ($1.00) for voting purposes only.  Pursuant to the Scheduling Order, any creditor that sought to challenge the allowance of its claim for voting purposes, was required to file a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting by October 11, 2021.  No such motions have been filed.

57.    To determine whether a class of claims accepted or rejected the Plan, the Voting Agent did not count or consider the following Ballots: (a) any Ballot received after the Voting Deadline, (b) any Ballot that was illegible or contained insufficient information to permit the identification of the claimant, (c) any Ballot cast by a person or entity that did not hold a claim in the applicable Voting Class, (d) any unsigned or nonoriginal Ballot, (e) any form of ballot other than the official form of Ballot sent by the Voting Agent, or (f) any Ballot transmitted to the Voting Agent by telecopy, facsimile, or other electronic means (other than the Series E Notes Trustee's master ballot, the Mezzanine Lender's ballot, and any submissions through the Voting Agent's E-Ballot Platform).  Furthermore, any Ballot that was otherwise completed, executed and timely returned to the Voting Agent but did not indicate an acceptance or rejection of the Plan – or that included an acceptance and rejection of the Plan – was not counted in determining acceptance or rejection of the Plan.[12]  Such tabulation procedures provide for a fair and equitable voting process and should be approved.

---

[12] The Voting Agent did not receive any non-conforming Ballots.

WEIL:\98230972\1\12817.0004

58.     The Debtors submit that the Disclosure Statement, the Solicitation Procedures and the Ballots all complied with the Bankruptcy Code and with otherwise applicable law, and accordingly, should be approved.

## IV.     THE PLAN SATISFIES SECTION 1129 OF THE BANKRUPTCY CODE AND SHOULD BE APPROVED

59.     To achieve confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies section 1129(a) of the Bankruptcy Code by a preponderance of the evidence.  As the United States Court of Appeals for the Fifth Circuit stated in *Heartland Fed. Sav. & Loan Ass'n. v. Briscoe Enters., Ltd. II* (*In re Briscoe Enters., Ltd. II*):  "The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown."  994 F.2d 1160, 1165 (5th Cir. 1993); *see also In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010); *In re Young Broad. Inc.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010).  The Debtors will demonstrate, by a preponderance of the evidence, that all of the subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.[13]

---

[13] Sections 1129(a)(6) and 1129(a)(13) through 1129(a)(16) of the Bankruptcy Code are inapplicable to the Debtors. Section 1129(a)(6) concerns the need for government approval of rate changes subject to government regulatory jurisdiction.  *See* 11 U.S.C. § 1129(a)(6).  The Plan does not provide for any rate changes by the Debtors, and, therefore, section 1129(a)(6) is inapplicable.  Section 1129(a)(13) of the Bankruptcy Code requires chapter 11 plans to continue all "retiree benefits" (as defined in section 1114 of the Bankruptcy Code). 11 U.S.C. § 1129(a)(13).  The Debtors are not subject to any retiree benefit obligations (as defined in section 1114 of the Bankruptcy Code) and, as such, section 1129(a)(13) is inapplicable to these Chapter 11 Cases.  Section 1129(a)(14) relates to the payment of domestic support obligations.  *See* 11 U.S.C. § 1129(a)(14).  The Debtors are not subject to any domestic support obligations and, as such, this section of the Bankruptcy Code is inapplicable.  Section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code). *See* 11 U.S.C. § 1129(a)(15).  None of the Debtors is an "individual," and, accordingly, section 1129(a)(15) is inapplicable.  Finally, section 1129(a)(16) of the Bankruptcy Code provides that property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust must be made in accordance with any applicable provisions of nonbankruptcy law.  *See* 11 U.S.C. § 1129(a)(16).  Each Debtor is a moneyed, business, or commercial corporation and, accordingly, section 1129(a)(16) is inapplicable.

WEIL:\98230972\1\12817.0004

A.      **The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code.**

60.     Under section 1129(a)(1) of the Bankruptcy Code, a plan must comply with the applicable provisions of the Bankruptcy Code. The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of the plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 648-49 (2d Cir. 1988); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992). As demonstrated below, the Plan fully complies with the requirements of the Bankruptcy Code.

B.      **The Plan's Classification of Claims and Interests Complies with Section 1122 of the Bankruptcy Code.**

61.     Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Under this section, a plan may provide for multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to the other claims or interests in that class. In addition, substantially similar claims may not be classified separately when it is done for an illegitimate reason. *See Aetna Cas. & Sur. Co. v. Clerk* (*In re Chateaugay Corp.*), 89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason."); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 246-47 (Bankr. S.D.N.Y. 2007) (explaining law on classification of claims as interpreted within the Second Circuit); *appeal dismissed sub nom. Official Comm. Of Equity Sec. Holders v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 371 B.R. 660

28

(S.D.N.Y. 2007), *aff'd sub nom. Official Comm. Of Equity Sec. Holders v. Official Comm. Of Unsecured Creditors (In re Adelphia Commc'ns Corp.)*, 544 F.3d 420 (2d Cir. 2008).

      62.     In total, the Plan designates sixteen (16) Classes of Claims and Interests in the Debtors as follows:[14]

**EG I:**

i.     <u>Class 1 (Priority Non-Tax Claims)</u>: Claims against EG I entitled to priority in payments under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims and Priority Tax Claims.

ii.     <u>Class 2 (JPM Secured Claims)</u>: Claims arising under or relating to the EG I Mortgage Loan Agreement.

iii.     <u>Class 3 (Other Secured Claims)</u>: Any Secured Claim against EG I other than a DIP Claim, a Priority Tax Claim, a JPM Secured Claim, the Mezzanine Loan Claim, or a Series E Secured Claim.

iv.     <u>Class 4 (General Unsecured Claims)</u>: Claims against EG I which include trade payables and other general unsecured obligations, other than mechanics' and materialmen's claims.

v.     <u>Class 5 (Intercompany Claims)</u>: Claims against EG I for amounts owed to other Debtor and non-Debtor affiliates.

vi.     <u>Class 6 (Equity Interests)</u>: Any Interests in EG I.

**EG II:**

vii.     <u>Class 1 (Priority Non-Tax Claims)</u>: Claims against EG II entitled to priority in payments under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims and Priority Tax Claims.

viii.     <u>Class 2 (Series E Secured Claims)</u>: Claims against EG II pursuant to the Series E Deed of Trust.

ix.     <u>Class 3 (Other Secured Claims)</u>: Any Secured Claim against EG II other than a DIP Claim, a Priority Tax Claim, a JPM Secured Claim, the Mezzanine Loan Claim, or a Series E Secured Claim.

---

[14] In accordance with section 1123(a)(1), Administrative Expense Claims, Fee Claims, DIP Claims, and Priority Tax Claims have not been classified.

WEIL:\98230972\1\12817.0004

x.  Class 4 (Convenience Claims): Claims against EG II, which are otherwise General Unsecured Claims and that are less than $10,000 or have been reduced to $10,000 by the holders of such claims.

xi.  Class 5 (General Unsecured Claims):  Claims against EG II which include trade payables, mechanics' and materialmen's claims, as well as the unsecured deficiency claims of the Series E Noteholders.

xii.  Class 6 (Intercompany Claims): Claims against EG II for amounts owed to other Debtor and non-Debtor affiliates.

xiii.  Class 7 (Equity Interests): Equity Interests in EG II.

**EGM:**

xiv.  Class 1 (Priority Non-Tax Claims): Claims against EGM entitled to priority in payments under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims and Priority Tax Claims.

xv.  Class 2 (Mezzanine Loan Claim): Any Claim against EGM of the Mezzanine Lender arising under or relating to the Mezzanine Loan.

xvi.  Class 3 (Equity Interests): Equity Interests in EGM.

63.     The classification scheme of the Plan is rational and complies with the Bankruptcy Code.  The Plan incorporates a classification and distribution scheme that strictly follows the statutory priorities prescribed by the Bankruptcy Code.  All Claims and Interests within a Class have the same or similar rights against each respective Debtor.  The Plan provides for the separate classification of Claims against and Interests in each Debtor based upon the differences in legal nature and/or priority of such Claims and Interests.  Each of the Claims or Interests in each particular Class is substantially similar to the other Claims or Interests in such Class.

64.     As required by section 506(a) of the Bankruptcy Code, the Plan bifurcates the claims of the Series E Noteholders into the Series E Secured Claims and the Series E Notes Deficiency Claims. The Series E Secured Claims represent the share of the proceeds of the Sale Transaction that is attributable to the Denizen Y. The Series E Notes Deficiency Claims represent the Series E Claims less the amount of the Series E Secured Claim Distribution provided under the

Plan. Given that there will be insufficient funds to pay the Series E Noteholders Claims in full, and they are senior in priority to the claims of any mechanic's and materialmen's lienholders asserted against EG II, such mechanic's and materialmen's claims are unsecured. *See* 11 USC § 506(a); *see also In re Pond*, 252 F.3d 122, 126-27 (2d Cir. 2001) (explaining that "subsection (a) of section 506 provides that a claim is secured only to the extent of the *value of the property* on which the lien is fixed . . . accordingly, to determine whether a lien is 'secured' under section 506(a), a court must examine the value of the collateral underlying a lien, not the value of the lien itself.") (emphasis in original). Under the Plan, holders of the Series E Notes Deficiency Claims will have the same rights to the proceeds of Avoidance Actions and other Causes of Action as holders of General Unsecured Claims at EG II, which serves as a proper basis for classifying their claims together. *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 703 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y. 1994), *aff'd sub nom. In re One Times Square Assocs.*, 41 F.3d 1502 (2d Cir. 1994) (explaining that "generally, unsecured creditors are claimants of equal rank, entitled to share, pro rata, in the values remaining after the payment of secured and priority claims" and that "unsecured creditors will ordinarily comprise one class, whether trade, tort, publicly held debt or a deficiency of a secured creditor.").

65.    The classification of Claims and Interests in the Plan, therefore, complies with section 1122 of the Bankruptcy Code. *See In re Charter Commc'ns*, 419 B.R. at 265 n.35 (explaining that debtors "enjoy considerable discretion when classifying similar claims in different classes").

31

**C.    The Plan Complies with Section 1123(a) of the Bankruptcy Code.**

66.    Section 1123(a) of the Bankruptcy Code sets forth five (5) applicable requirements

that the proponent of a chapter 11 plan must satisfy.[15]  *See* 11 U.S.C. § 1123(a).  The Plan fully

complies with each such requirement:

i.    <u>Section 1123(a)(1) (Designation of Classes of Interests)</u>:    The Plan designates sixteen (16) Classes of Claims and Classes of Interests as required by section 1123(a)(1).  *See* Plan, Section 3.3.

ii.    <u>Section 1123(a)(2) and 1123(a)(3) (Specify Unimpaired and Impaired)</u>: The Plan specifies whether each Class of Claims or Interests is Impaired or Unimpaired under the Plan and the treatment of each such Class, as required by sections 1123(a)(2) and 1123(a)(3), respectively.  *See* Plan, Section 3.3.

iii.    <u>Section 1123 (a)(4) (Same Treatment Within Classes)</u>: Except as otherwise agreed to by a holder of a particular Claim or Interest, the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such Class, as required by section 1123(a)(4). With respect to Class 4 (Convenience Claims at EG II), the holders of such Claims have Claims worth less than $10,000, or have elected to have their claims reduced to $10,000. Class 4 (Convenience Claims at EG II) are to be paid in full to allow for claims of smaller value to be efficiently paid and distributed for the purpose of administrative convenience.

iv.    <u>Section 1123(a)(5) (Adequate Means for Plan Implementation)</u>: The Plan provides adequate means for its implementation as required by section 1123(a)(5) through, among other things: (a) the Sale to the Purchaser pursuant to the Purchase Agreement, (b) the provisions governing distributions under the Plan, including without limitation, the Sale Transaction Allocation Proportion, (c) the wind down and dissolution of the Debtors in accordance with Section 7.5 of the Plan, (d) the issuance of equity in Post-Effective Date EGM and EG II to the applicable Plan Administrators, (e) the appointment of the Plan Administrators, and (f) authorization for all actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case, in accordance with and subject to the terms of the Plan

v.    <u>Section 1123(a)(6) (Provide for the Inclusion in the Charter of the Debtor of a Provision Prohibiting Issuance of Nonvoting Equity Securities)</u>: The Second Plan Supplement contains the organizational documents for Post-

---

[15] The requirements set forth in section 1123(a)(8) of the Bankruptcy Code do not apply.  Section 1123(a)(8) only applies in a case in which the debtor is an individual and, thus, is inapplicable.

Effective Date EGM and Post-Effective Date EG II, each of which prohibits the issuance of nonvoting equity securities.

vi. <u>Section 1123(a)(7) (Selection of Officers and Trustees in a Manner Consistent with the Interests of Creditors and Equity Security Holders)</u>: Pursuant to Section 7.5 of the Plan, the Plan Administrator for EGM was selected by the Mezzanine Lender and the Plan Administrator for EG II was selected by the Series E Notes Trustee, each of the creditors with the greatest interests in the proceeds of the Avoidance Actions and other Causes of Action for the respective Post-Effective Debtors.

**D.    The Plan Complies with Section 1123(b) of the Bankruptcy Code.**

**1.    Plan Permissive Provisions.**

67.    Section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan.  Each provision of the Plan is consistent with section 1123(b):

i. <u>Section 1123(b)(1) (Impair or Leave Unimpaired any Class of Claims or Interests)</u>: As contemplated by section 1123(b)(1) of the Bankruptcy Code and pursuant to section 1124 of the Bankruptcy Code, Article IV of the Plan describes the treatment for each of the Unimpaired Classes and the Impaired Classes for each of the Debtors.

ii. <u>Section 1123(b)(2) (Treatment of Executory Contracts or Unexpired Leases)</u>: With respect to the Subsidiary Debtors' executory contracts and unexpired leases, Section 10.1 of the Plan provides that, all executory contracts and unexpired leases to which either of the Subsidiary Debtors is a party shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Subsidiary Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Subsidiary Debtors on or before the Confirmation Date; (iv) is identified in Section 10.4 of the Plan; or (v) is a Tenant Lease identified on the Assumption Schedule included in the Plan Supplement.

iii. <u>Section 1123(b)(3)(A) and (B) (Retention of Claims and Interests)</u>: As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, the Plan provides for the retention of Avoidance Actions and other Causes of Action by the Post-Effective Date Debtors. The Avoidance Actions and other Causes of Action will be pursued by the applicable Plan Administrator for the benefit of the creditors of Post-Effective Date EG II or Post-Effective Date EGM, as applicable. Pursuant to Section 7.3 of the Plan, the Plan

33

incorporates the 2020 PSA Settlement Agreement among EG I, EG II, and the 2020 PSA Claimant.

iv.   Section 1123(b)(4) (Provide for the Sale of Estate Property): As permitted by section 1123(b)(4) of the Bankruptcy Code, the Plan provides for the sale of substantially all of the property of the Subsidiary Debtors' estates to the Purchaser, and provides for the allocation and distribution of EG I Sale Proceeds and EG II Sale Proceeds in accordance with the Plan and the RSA.

v.   Section 1123(b)(5) (Modify or Leave Unaffected Rights of Holders of Secured and Unsecured Claims): As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of holders of Claims in each of the Voting Classes and the Deemed to Reject Classes and leaves unaffected the rights of holders of Claims and Interests in each the Unimpaired Classes for each of the Debtors.

vi.   Section 1123(b)(6) (Appropriate Provisions Not Inconsistent with the Bankruptcy Code): As permitted by section 1123(b)(6) of the Bankruptcy Code, a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan (a) contains certain release and exculpation provisions consistent with the applicable provisions of the Bankruptcy Code and Second Circuit law, as described in greater detail herein, and (b) provides that the Court will retain jurisdiction over all matters arising in and related to these Chapter 11 Cases.

## 2.   The Plan Releases Should Be Approved.

68.   The Plan provides for releases of Claims and Causes of Action held by: (i) the Debtors and their Estates, and the Post-Effective Debtors, on behalf of themselves and their respective successors, assigns, and representatives (the "**Estate Releases**"), *see* Plan, § 12.6(a), and (ii) the holders of Claims who vote to accept the Plan, the Series E Notes Trustee, the Mezzanine Lender, the DIP Lender, each of the other Released Parties,[16] and, with respect to the

---

[16] Section 1.103 of the Plan defines "Released Parties" as collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Post-Effective Debtors; (c) JPM and its representatives and advisors; (d) the Series E Notes Trustee and its representatives and advisors; (e) the Series E Noteholders and their representatives and advisors; (f) the Mezzanine Lender and its representatives and advisors; (g) the DIP Lender and its representatives and advisors; (h) the Purchaser and its representatives and advisors; (i) any current or former Chief Restructuring Officer or Associate Restructuring Officer of the Debtors and the BVI Parent; (j) any independent directors appointed to the board of the BVI Parent on or after January 1, 2021; and (k) any advisors retained by the Debtors or the BVI Parent

foregoing entities, their respective predecessors, successors, and assigns, subsidiaries and affiliates, and all Persons entitled to assert Claims on their behalf with respect to the matters to which the releases pertain; provided, however, that claims against the BVI Parent and its Related Entities (other than the Debtors), including, without limitation, the Goldman Guaranty Claims, shall not be released (the "**Third Party Releases**" and, together with the Estate Releases, the "**Plan Releases**"), *see* Plan, § 12.6(b). The Plan Releases (i) are integral components of the Plan, (ii) are appropriate and necessary under the circumstances, (iii) being provided in exchange for fair consideration, (iv) are consistent with the Bankruptcy Code, and (v) comply with applicable law.

69.    The overwhelming support for the Plan by voting holders of Claims in the Voting Classes is compelling evidence that the Plan Releases should be approved. All potentially affected creditors received notice of the Plan Releases and their right to object to confirmation of the Plan and no objections to the releases have been filed. This is a significant endorsement of the Plan Releases that the Court should not overlook. In particular, it reinforces and affirms the Debtors' determination that the Plan Releases are in the best interests of the Debtors' estates. *See In re Master Mortg. Inv. Fund, Inc*., 168 B.R. 930, 938 (Bankr. W.D. Mo. 1994) (stating that creditor approval of a release is "the single most important factor" to determine whether a release is appropriate). Accordingly, for these reasons and for the reasons set forth below, the Plan Releases should be approved.

        a.      **The Estate Releases Are Appropriate and Should Be Approved.**

70.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, Section 12.6(a) of the Plan contains a release of certain claims or Causes of Action of the Debtors and their

---

in connection with these Chapter 11 Cases on or after December 29, 2020 (but not including Dov Tratner or Tratner and Associates PLLC).

successors against the Released Parties (other than the Post-Effective Debtors). The Estate

Releases do not (i) release any claims or Causes of Action arising after the Effective Date against

any party or (ii) affect the rights of the Debtors or their successors under the Plan to enforce the

terms of the Plan or the Definitive Documents, or the ability of the Plan Administrators to pursue

EG I and EGM Retained Causes of Action or EG II Retained Causes of Action. The Estate

Releases should be approved as they represent an appropriate exercise of the Debtors' business

judgment and are in the best interests of the Debtors' estates.

71.    Claims held by a debtor against third parties are property of the estate and may be

released in exchange for settlement. *See* 11 U.S.C. § 541(a)(1); *see also MacArthur Co. v. John

Manville Corp. (In re Johns-Manville Corp.) (Manville I)*, 837 F.2d 89, 91-92 (2d Cir. 1988).

When considering releases by a debtor of non-debtor third parties pursuant to section

1123(b)(3)(A) of the Bankruptcy Code, the appropriate standard is whether the release is a valid

exercise of the debtor's business judgment and is fair, reasonable, and in the best interests of the

estate. *See In re Motors Liquidation Co.*, 447 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Releases

by estates involve a give-up of potential rights that are owned by the estate, and are perfectly

permissible in a plan, either as parts of plan settlements or otherwise, though the court must satisfy

itself (at least if anyone raises the issue) that the give-up is an appropriate exercise of business

judgment, and, possibly, in the best interests of the estate."); *In re DBSD N. Am., Inc.*, 419 B.R.

179, 217 (Bankr. S.D.N.Y. 2009) (approving plan provision that released and discharged claims

and causes of action by debtors on the basis that such releases and discharges "represent a valid

exercise of the [d]ebtors' business judgment, and are fair, reasonable and in the best interests of

the estate."), *aff'd sub nom. Sprint Nextel Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*,

Case No. 90-13061 (REG), 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *aff'd in part, rev'd in*

*part sub nom. DISH Network Corp. v. DBSD N. Am. Inc. (In re DBSD N. Am.)*, 634 F.3d 79 (2d Cir. 2011); *In re Charter Commc'ns*, 419 B.R. at 257-60 ("When reviewing releases in a debtor's plan, courts consider whether such releases are in the best interest of the estate."). Debtors have considerable leeway in issuing releases of their own claims, and such releases are considered "uncontroversial." *See In re Adelphia Commc'ns*, 368 B.R. at 263 n.289.

72.    The Debtors are not aware of any claims or causes of action against the Released Parties. Nevertheless, each of the Released Parties (other than the Post-Effective Debtors) has insisted upon an Estate Release. The Estate Releases constitute a sound exercise of the Debtors' business judgment.  Without the support and cooperation of each of the Released Parties, the Debtors may not have been able to secure a bid for the Denizen in an amount as high as the $506 million submitted by the Purchaser, which inures to the benefit of all creditors.  Further, absent the Released Parties' cooperation and willingness to negotiate to reach a consensual deal for the Chapter 11 Cases, the Debtors may have spent considerable time and money engaged in costly, lengthy and uncertain litigation which would have extended the duration of the Chapter 11 Cases, thereby substantially reducing creditor recoveries.  *See* Ravid Declaration, ¶ 23.  As additional consideration for the Estate Releases, the Debtors and the Post-Effective Debtors will receive reciprocal releases from any Causes of Action.

73.    Moreover, the Plan Administrators will have authority to pursue all Avoidance Actions and other Causes of Action, including without limitation the Goldman Guaranty Claims, for the benefit of the respective estates. Such Avoidance Actions and Causes of Action can be pursued against the BVI Parent and its Related Parties, including but not limited to, the BVI Parent's predecessors, subsidiaries, and successors and assigns (other than the Debtors), because these parties do not fall into the definition of Released Parties.  The Plan Administrator for EGM

37

WEIL:\98230972\1\12817.0004

was appointed by the Mezzanine Lender and the Plan Administrator for EG II was appointed by

the Series E Notes Trustee, creditors with the greatest interests in the proceeds of the Avoidance

Actions and other Causes of Action.  Accordingly, there is ample justification for providing the

Estate Releases, and the Estate Releases should be approved by the Court.

### b.    Third Party Releases Are Appropriate and Should Be Approved.

74.    Section 12.6(b) of the Plan contains consensual releases by the following parties

(collectively, the "**Releasing Parties**") against the Released Parties (other than the Post-Effective

Debtors) for liability relating to the Debtors and the Chapter 11 Cases:

> i.    the holders of Claims who vote to accept the Plan,
>
> ii.    the Series E Notes Trustee;
>
> iii.    the Mezzanine Lender;
>
> iv.    the DIP Lender;
>
> v.    each of the other Released Parties; and
>
> vi.    with respect to any Entity in the foregoing clauses (i) through (v), such Entity's (x) predecessors, successors, and assigns (y) subsidiaries, affiliates, managed accounts or funds, managed or controlled by such Entity and (z) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing entities are providing releases.

75.    The Third Party Releases do ***not*** apply to, nor will there be any attempt to impose

them on, any creditors who vote to reject the Plan.  Importantly, creditors or interest holders in the

Non-Voting Classes and claimants that abstain or refrain from voting to accept or reject the Plan

also will not be granting any Third-Party Releases.  As such, the Third Party Releases are limited

in scope and only affect the stakeholders that have expressed their support for the Plan.

76.    Courts may approve third party releases where the releasing party consents to such

release.  *See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber*

*Network, Inc.),* 416 F.3d 136, 142 (2d Cir. 2005); *In re Fusion Connect, Inc.*, Case No. 19-11811

(SMB) (Bankr. S.D.N.Y. December 17, 2019) (ECF No. 680) (confirming plan with consensual

third party releases where they were binding on parties who affirmatively voted to accept the plan).

Here, the Third Party Releases are consensual.  It is well-established that a vote to accept a plan

that provides for third party releases constitutes consent to such third party releases.  *See, e.g., In

re Adelphia Commc'ns,* 368 B.R. at 268 ("if, as here, the proposed release is appropriately

disclosed, that consent can be established by a vote in support of a plan.").

77.      The Third Party Releases were conspicuously disclosed in boldface type in the Plan,

the Disclosure Statement, and the Ballots. Moreover, the Ballots plainly indicated that a vote to

accept the Plan constituted automatic consent to the Third Party Releases.  Accordingly, the Third

Party Releases are consensual and should be approved.

### c.    The Exculpation Provision Is Appropriate and Should be Approved.

78.      In addition to the releases discussed above, Section 12.7 of the Plan also contains a

customary exculpation for certain Exculpated Parties[17] for claims arising out of conduct occurring

after the Subsidiary Debtor Petition Date. The exculpation provision carves out acts or omissions

that are determined by a Final Order to have constituted gross negligence, fraud, or willful

misconduct.

79.      Exculpation provisions are permissible when they are important to a debtor's plan

or where the exculpated party has provided substantial consideration to a debtor's reorganization.

*See In re Chemtura*, 439 B.R. at 610-11 (citing *In re DBSD*, 419 B.R. at 218); *see also In re*

---

[17] Section 1.68 of the Plan defines "Exculpated Parties" as collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Plan Administrator; (c) the Post-Effective Debtors; (d) JPM; (e) the Series E Notes Trustee; (f) the Mezzanine Lender; (g) the DIP Lender; (h) the Purchaser; and (i) with respect to each of the foregoing Entities in clauses (a) through (h), all Related Parties who acted on their behalf in connection with the matters as to which exculpation is provided herein.

WEIL:\98230972\1\12817.0004

*Residential Cap. LLC*, Case No. 12-12020 (MG) 2013 WL 12161584, at *13 (Bankr. S.D.N.Y. Dec. 11, 2013) (order confirming plan that contained exculpations for parties that were "instrumental to the successful prosecution of the Chapter 11 Cases or their resolution pursuant to the Plan, and/or provided a substantial contribution to the Debtors.").  In determining whether to approve exculpation provisions, courts also consider whether the beneficiaries of the exculpation have participated in good faith in negotiating the plan and bringing it to fruition, and whether the provision is integral to the plan.  *See In re BearingPoint, Inc.*, 453 B.R. 486, 494 (Bankr. S.D.N.Y. 2011) ("Exculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures to get the recoveries they desire; seek vengeance against other parties, or simply wish to second guess the decisionmakers[.]"); *In re DBSD N. Am.*, 419 B.R. at 217 (same).

80.    Courts have specified certain parties that generally are appropriate candidates for exculpation, including parties to a consensual plan or parties to unique transactions who "contribute[] substantial consideration to the reorganization."  *See, e.g., In re Residential Capital, LLC*, Case No. 12-12020 (MG), at ¶ 291 (Bankr. S.D.N.Y. Dec. 11, 2013) (ECF No. 6066) (approving exculpation of certain prepetition lenders who "played a meaningful role. . . in the mediation process, and through the negotiation and implementation of the Global Settlement and Plan"); *Adelphia*, 368 B.R. at 268.

81.    Courts in this and other districts have approved exculpation provisions similar in scope and application for estate fiduciaries and non-estate fiduciaries.  *See, e.g., KG Winddown, LLC, et al.* Case No. 20-11723 (MG) (Bankr. S.D.N.Y. 2020) (ECF No. 494) (permitting exculpation of purchaser as non-estate fiduciary); *Genco Shipping & Trading Ltd.*, Case No. 14-11108 (SHL), ¶ 24(d), (Bankr. S.D.N.Y. July 2, 2014) (ECF No. 322) (approving exculpation

provision in plan providing exculpation for non-estate fiduciaries); *In re Eastman Kodak Co.*, Case

No. 12-10202 (ALG), at Ex. A ¶ 12.7 (Bankr. S.D.N.Y. Aug. 23, 2013) (ECF No. 4966)

(confirmation order overruling U.S. Trustee objection to exculpation of both estate fiduciaries and

non-estate fiduciaries from liability for "any Prepetition or Postpetition act taken or omitted to be

taken in connection with, or arising from or relating in any way to, the Chapter 11 Cases"); *In re

Neff Corp.*, Case No. 10-12610 (SCC), at 42 (Bankr. S.D.N.Y. Sept. 20, 2010) (ECF No. 443)

(chapter 11 plan providing that estate and non-estate fiduciaries "shall neither have, nor incur any

liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in

connection with, or related to formulating, negotiating . . . the Plan"); *In re Charter Commc'ns,

Inc.*, Case No. 09-11435 (JMP), at 44 (Bankr. S.D.N.Y. Nov. 17, 2009) (ECF No. 921) (approving

exculpation of estate fiduciaries and non-fiduciaries for "any pre-petition or post-petition act taken

or omitted to be taken in connection with, or related to . . . the restructuring of the Company"); *In

re Almatis, B.V.*, Case No. 10-12308 (MG), at 7 (Bankr. S.D.N.Y. Sept. 20, 2010) (ECF No. 444)

(approving exculpation of debtors' prepetition lenders and holders of senior secured notes for both

pre- and post-petition conduct).

82.     The record of these Chapter 11 Cases is clear and incontrovertible.  The Exculpated

Parties played a critical role in achieving a consensual plan on an expedited basis and the support

of the Exculpated Parties was essential to the successful negotiation of the Plan, the RSA, and the

Purchase Agreement, all of which were the product of good faith and arm's length negotiations.

The exculpation provision was necessary to achieve, among other things, the consensus and

settlements embodied in the Plan by and among the Debtors and the Series E Notes Trustee, JPM,

the Mezzanine Lender, the Purchaser, and, in each case, all Related Parties who worked on their

behalf. The protection it provides promoted and fostered the good faith negotiations that

WEIL:\98230972\1\12817.0004

culminated in the overwhelming support that the Plan enjoys among all economic parties in interest.[18]   Accordingly, for the reasons stated herein, the Debtors submit that the exculpation provision set forth in the Plan is reasonable, appropriate, and entirely consistent with applicable law and should be approved.

83.    Based upon the foregoing, the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

### E.    The Plan Satisfies Section 1129(a)(2) of the Bankruptcy Code.

84.    Section 1129(a)(2) of the Bankruptcy Code requires that plan proponents comply with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(2).  The legislative history to section 1129(a)(2) indicates that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code.  *See* H.R. Rep. No. 95-595, at 412 (1977) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *see also In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000);  *In re Drexel Burnham Lambert*, 138 B.R. at 759.  The Debtors have complied with the applicable provisions of title 11, including the provisions of sections 1125 and 1126 regarding Solicitation and the Disclosure Statement

85.    The Debtors have also complied with all of the requirements of the Scheduling Order including, without limitation, with respect to service of the Combined Notice upon the Master Service List, publication of the Publication Notice in *The New York Times* and in *Haaretz*,

---

[18] *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992) (protection against legal exposure may be critical to settlement negotiations involving complex issues and multiple parties).

WEIL:\98230972\1\12817.0004

solicitation of votes to accept or reject the Plan from creditors in the Subsidiary Debtors' Voting

Classes prior to the commencement of the Subsidiary Debtors' Chapter 11 Cases, and solicitation

of the vote of the Mezzanine Lender following conditional approval of the Disclosure Statement.

      **F.**     **The Plan Has Been Proposed in Good Faith in Compliance with Section 1129(a)(3) of the Bankruptcy Code.**

     86.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in

good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Second Circuit

has defined the good faith standard as "requiring a showing that the plan was proposed with

'honesty and good intentions' and with 'a basis for expecting that a reorganization can be

effected.'" *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984) (quoting *Manati

Sugar Co. v. Mock*, 75 F.2d 284, 285 (2d Cir. 1935). "Good faith is 'generally interpreted to mean

that there exists *a reasonable likelihood that the plan will achieve a result consistent with the

objectives and purposes of the Bankruptcy Code*.'" *In re Chemtura*, 439 B.R. at 608 (quoting *In

re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)) (emphasis added). "Whether a

[chapter 11] plan has been proposed in good faith must be viewed in the totality of the

circumstances, and the requirement of [s]ection 1129(a)(3) speaks more to the process of plan

development than to the content of the plan." *Id.* (internal quotation marks omitted).

     87.     As set forth in the Hwang Declaration, prior to the Subsidiary Debtor Petition Date,

the Debtors engaged in a robust and comprehensive marketing and sale process for the Denizen.

*See supra*, ¶ 3. Accordingly, having adequately tested the market for a sale transaction for the

Denizen, the Debtors determined, in the exercise of their sound business judgement, that the best

opportunity to consummate a value-maximizing transaction was to proceed with the Sale to the

Purchaser pursuant to the Purchase Agreement and the Plan.

WEIL:\98230972\1\12817.0004

88.    The Debtors, the Series E Noteholders, and the Mezzanine Lender engaged in extensive good faith negotiations that ultimately culminated in the execution of the RSA and the Purchase Agreement, the commencement of the Chapter 11 Cases, and the agreement of various constituencies on the terms of the Plan pursuant to which the Sale will be consummated.  These negotiations spanned approximately five months and included many hours of review and due diligence conducted by sophisticated counsel and professionals. These good faith negotiations are evidence of the Debtors' satisfaction of section 1129(a)(3). *See In re Purdue Pharma L.P.*, 2021 WL 4240974, at *16 (Bankr. S.D.N.Y. Sept. 17, 2021) (finding that section 1129(a)(3) was satisfied where allocation of trust was derived from good faith, arms' length negotiations); *JPMorgan Chase Bank, N.A. v. Charter Commc'ns. Operating, LLC* (*In re Charter Commc'ns.*), 419 B.R. 221, 260 (Bankr. S.D.N.Y. 2009) (arms' length negotiations are indicative of good faith finding in plan considerations);  *In re Enron Corp.*, 2004 Bankr. LEXIS 2549 at *80 (Bankr. S.D.N.Y. July 15, 2004) (confirming plan and finding good faith requirement satisfied in part because plan resulted from "extensive arm's-length discussions."); *In re Best Prods. Co.*, 168 B.R. 35, 72 (Bankr. S.D.N.Y. 1994) (court found that the plan was proposed in good faith where the plan was the product of extensive negotiation and the proposed settlement was the product of arms' length bargaining).

89.    Accordingly, the Plan was proposed in good faith as required by section 1129(a)(3).

**G.    The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code.**

90.    Section 1129(a)(4) of the Bankruptcy Code requires that "[a]ny payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."  11 U.S.C. § 1129(a)(4).  Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be

subject to review and approval as to their reasonableness by the court.  *See In re J. Reg. Co.*, 407 B.R. 520, 537 (Bankr. S.D.N.Y 2009), *appeal dismissed sub nom. Freemen v. J. Reg. Co.*, 452 B.R. 367 (S.D.N.Y. 2010); *In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Texaco Inc.*, 84 B.R. 893, 907-08 (Bankr. S.D.N.Y. 1988), *appeal dismissed sub nom. Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco Inc.)*, 92 B.R. 38 (S.D.N.Y. 1988).

91.      All payments for services provided to the Debtors during the Chapter 11 Cases must be approved by the Court as reasonable in accordance with section 1129(a)(4) of the Bankruptcy Code.  Section 2.2 of the Plan provides that all final requests for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date must be filed no later than forty-five (45) days after the Effective Date. Section 2.2 of the Plan further provides that all Fee Claims must be approved by the Bankruptcy Court. Moreover, Section 13.1 of the Plan provides that the Court shall retain jurisdiction to hear and determine all Fee Claims.   The Plan, therefore complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**H.      The Debtors Have Complied With the Requirements of Section 1129(a)(5) of the Bankruptcy Code.**

92.      Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a successor to a debtor under the plan and that such appointment be consistent with the interests of creditors and equity security holders and with public policy.  In addition, to the extent there are any insiders that will be retained or employed by the reorganized debtors, section 1129(a)(5)(B) requires that the plan proponent disclose the identity and nature of any compensation of any such insiders.  *See* 11 U.S.C. § 1129(a)(5).  In the First Plan Supplement, the Debtors disclosed the identity of the Plan Administrators, provided a short biography of each Plan

Administrator, and included a substantially final draft of each proposed Plan Administration Agreement. No insiders will be retained or employed by Post-Effective Date EGM or Post-Effective Date EG II. Accordingly, the Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.

**I.     The Plan is in Best Interests of All Creditors of, and Holders of Equity Interests in, Each Debtor.**

93.     Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and equity interest holders in the Debtors – commonly referred to as the "best interests" test. The best interests test focuses on potential individual dissenting creditors rather than classes of claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 441 n.13 (1999). It requires that each holder of a claim or equity interest in an impaired class either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

94.     Under the best interests test, "the court must measure what is to be received by rejecting creditors . . . under the plan against what would be received by them in the event of liquidation under chapter 7. In doing so, the court must take into consideration the applicable rules of distribution of the estate under chapter 7, as well as the probable costs incident to such liquidation." *In re Adelphia Commc'ns,* 368 B.R. at 252. The Court must evaluate the liquidation analysis cognizant of the fact that "[t]he hypothetical liquidation entails a considerable degree of speculation about a situation that will not occur unless the case is actually converted to chapter 7." *In re Affiliated Foods, Inc.*, 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000); *In re W.R. Grace & Co.*, 475 B.R. 34, 142 (D. Del. 2012) ("[T]he court need only make a well-reasoned estimate of the liquidation value that is supported by the evidence on the record. It is not necessary to itemize or

specifically determine precise values during this estimation procedure. Requiring such precision would be entirely unrealistic because exact values could only be found if the debtor actually underwent Chapter 7 liquidation"), *aff'd*, 532 F. App'x 264, 729 F.3d 311, 729 F.3d 332 (3d Cir. 2013). As section 1129(a)(7) makes clear, the liquidation analysis applies only to non-accepting holders of impaired claims or equity interests. *See In re Drexel Burnham Lambert*, 138 B.R. at 761 ("[T]he liquidation analysis applies only to non-accepting impaired claims or interests.").

95.     As set forth in the Liquidation Analysis that was included as Exhibit D of the Disclosure Statement, the best interests test is satisfied as to <u>every single holder</u> of a Claim or Interest in each of the Impaired Classes, including the Deemed to Reject Classes, since these classes will at least as much under the Plan than they would receive if these Chapter 11 Cases were converted to a chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**J.      The Plan Has Been Accepted by or Is Presumed to Have Been Accepted by All Impaired Classes Entitled to Vote on the Plan, and as to Such Classes, Requirements of Section 1129(a)(8) of the Bankruptcy Code Have Been Satisfied.**

96.     Section 1129(a)(8) of the Bankruptcy Code requires as follows: "With respect to each class of claims or interests – (A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).

97.     Section 1126(c) of the Bankruptcy Code specifies the requirements for acceptance of a plan by impaired classes of claims entitled to vote to accept or reject a plan of reorganization:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

98.    As evidenced by the Voting Certification, as to each Debtor, as applicable, the Plan has been overwhelmingly accepted by creditors in each of the Voting Classes. Thus, as to such Classes, the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied.

99.    Holders of Claims and Interests in the Deemed to Reject Classes are deemed to have rejected the plan pursuant to section 1126(g) of the Bankruptcy Code.  As to these Classes, the Plan may be confirmed over their dissent under the "cram down" provisions of section 1129(b) of the Bankruptcy Code. *See* Section U *infra* at pp. 52-55.

**K.    The Plan Provides for Payment in Full of All Allowed Priority Claims.**

100.    Section 1129(a)(9) of the Bankruptcy Code requires that, unless the holder of a particular claim agrees to a different treatment with respect to such claim, holders of allowed claims entitled to priority under section 507(a) must receive cash payments on the effective date under the plan.

101.    The Plan provides that, unless a holder agrees to less favorable treatment, holders of Allowed Administrative Expense Claims under section 503(b) of the Bankruptcy Code will be paid in full, in Cash, on the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.  *See* Plan, § 2.1.

102.    Moreover, the Plan provides that, unless a holder agrees to less favorable treatment, holders of Allowed Priority Non-Tax Claims under section 507(a) of the Bankruptcy Code (excluding Priority Tax Claims under section 507(a)(8), as described herein) will (i) be paid in full, in Cash, on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable; or (ii) such holder shall receive such other treatment

48

so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired. *See* Plan, §§ 4.1, 5.1, 6.1.

103.    The Plan also satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code with respect to the treatment of Priority Tax Claims under section 507(a)(8).  Pursuant to Section 2.3 of the Plan, unless a holder agrees to less favorable treatment, holders of Allowed Priority Tax Claims (i) will be paid Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is Allowed on the Effective Date, (b) the first business day after the date that is thirty (30) calendar days after the date such Claim becomes Allowed, and (c) the date such Claim is due and payable in the ordinary course as such obligation becomes due; or (ii) will receive equal annual Cash payments in an aggregate amount equal to the amount of such Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Petition Date. *See* Plan, § 2.3.  Accordingly, the Plan satisfies the requirements of section 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

**L.    The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code.**

104.    Section 1129(a)(10) of the Bankruptcy Code requires, if a class of claims is impaired, the affirmative acceptance of the Plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).  Here, each of the Impaired Classes in EGM and EG II entitled to vote on the Plan has voted to accept the Plan, without including the acceptance of the Plan by any insiders in such Class.  EG I does not have any impaired classes of claims.  Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**M.**    **The Plan Is Feasible.**

105.    Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation.    Specifically, it requires that confirmation is not likely to be followed by liquidation of the debtor, unless such liquidation is proposed in the plan. 11 U.S.C. § 1129(a)(11).    The feasibility test set forth in section 1129(a)(11) requires the Court to determine whether the Plan may be implemented and has a reasonable likelihood of success.    *See In re Advance Watch Co., Ltd.*, 2016 Bankr. LEXIS 229 (Bankr. S.D.N.Y. Jan. 25, 2016); *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 649 (2d Cir. 1988).

106.    The key element of feasibility is whether there is a reasonable probability that the provisions of a chapter 11 plan can be performed.    The purpose of the feasibility test is to protect against visionary or speculative plans.    *See In re One Times Square Assocs. Ltd.*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("The purpose of the feasibility test has been described as protection against visionary or speculative plans."); *In re Drexel Burnham Lambert Grp.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) (same).    The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.    *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 421 (Bankr. S.D.N.Y. 2003).

107.    The Plan is premised upon the closing of the Sale Transaction. The proceeds of the Sale Transaction will be used to pay the DIP Claims in full and to make the distributions to holders of Allowed Claims and Interests as provided in the Plan.    As established in the Ravid Declaration, the Plan embodies a rational plan for the Sale through the Purchase Agreement and the delivery of distributions to holders of Allowed Claims following the Effective Date through the allocation of the proceeds of the Sale in accordance with the Plan and the RSA.    Specifically, the Plan sets forth certain Cash payments that the Debtors and/or the Plan Administrators will make on or after the

50

Effective Date.    Such payments include, among others, payments to holders of Allowed

Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax

Claims.  The Plan also provides for the establishment of the EG I Disputed Claims Reserve for the

benefit of holders of Disputed Claims against EG I.  *See* Ravid Declaration, ¶ 39.

108.    Based upon the closing of the Sale Transaction, the Debtors believe they will have

more than sufficient funds to make all payments required under the Plan, including payment of

Administrative Expense Claims.  *See* Ravid Declaration, ¶ 36.  Accordingly, the Plan satisfies the

feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

**N.    The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code.**

109.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees

payable under section 1930 of title 28, as determined by the court at the hearing on confirmation

of the plan[.]"  11 U.S.C. § 1129(a)(12).  Section 507 of the Bankruptcy Code provides that "any

fees and charges assessed against the estate under [section 1930] of title 28" are afforded priority

as administrative expenses.   11 U.S.C. § 507(a)(2).   In accordance with sections 507 and

1129(a)(12) of the Bankruptcy Code, Section 14.1 of the Plan provides for the payment of such

statutory fees, together with interest (if any) pursuant to section 3717 of title 31 of the United

States Code on the Effective Date and thereafter as may be required.  The Wind Down Budgets

for Post-Effective Date EGM and Post-Effective Date EG II included in the Plan Supplement

reflect that the Debtors have made adequate provision for payment of the fees of the U.S. Trustee.

**O.    The Plan Satisfies the "Cram Down" Requirements under Section 1129(b) of
the Bankruptcy Code for the Deemed to Reject Classes.**

110.    Section 1129(b) of the Bankruptcy Code provides a mechanism (known

colloquially as "cram down") for confirmation of a chapter 11 plan in circumstances where the

plan is not accepted by all impaired classes of claims and equity interests.  Under section 1129(b),

the court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting class or classes.

111.    As each of the Voting Classes has voted to accept the Plan, "cram down" is only relevant here with respect to the Deemed to Reject Classes (*i.e.*, Class 6 (Intercompany Claims at EG II), Class 7 (Equity Interests at EG II), and Class 3 (Equity Interests at EGM)).  The Plan may be confirmed as to each of these Classes pursuant to the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

### 1.    The Plan Does Not Discriminate Unfairly.

112.    Section 1129(b)(1) does not prohibit discrimination between classes.  Rather, it prohibits discrimination that is unfair.  Under section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment.  *See In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 310–11 (Bankr. S.D.N.Y. 2016) ("Courts generally will approve placement of similar claims in different classes provided there is a 'rational' or 'reasonable' basis for doing so" and "satisfies the flexible requirements of section 1122 because a valid business, factual, and/or legal reason exists for separately classifying the various classes of claims and interests created under the Plan. . . [W]here claims or interests of the same priority are separately classified, such claims or interests are either dissimilar or another good business reason exists for such classification."); *In re WorldCom Inc.*, Case No. 02-13533 (AJG) 2003 WL 23861928, at \*59 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *In re Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom, Kane v. Johns-Manville Corp.,* 843 F.2d 636 (2d Cir. 1988)).  As between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are

comprised of dissimilar claims or interests, *see, e.g.*, *In re Johns-Manville Corp.*, 68 B.R. at 636, or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, *see, e.g., In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 714, 715 (Bankr. S.D.N.Y. 1992) (separate classification and treatment was rational where members of each class "possess[ed] different legal rights"), *aff'd sub nom. Lambert Brussels Assocs, L.P. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 140 B.R. 347 (S.D.N.Y. 1992).

113.    The Plan does not discriminate unfairly (or at all) with respect to holders of Class 6 (Intercompany Claims at EG II), Class 7 (Equity Interests at EG II), and Class 3 (Equity Interests at EGM) because the Claims and Interests in each such Class are legally distinct in their respective legal nature from Claims and Interests in all other Classes.  All similarly situated Claims and Interests will receive substantially similar treatment under the Plan.

### 2.    The Plan Is Fair and Equitable.

114.    To be "fair and equitable" as to holders of unsecured claims, section 1129(b)(2)(B) of the Bankruptcy Code requires a plan to provide either (i) that each holder of the nonaccepting class will receive or retain on account of such claim property of a value equal to the allowed amount of such claim, or (ii) that a holder of a claim or interest that is junior to the claims of the nonaccepting class will not receive or retain any property under the plan.  *See* 11 U.S.C. § 1129(b)(2)(B).

115.    To be "fair and equitable" as to holders of interests, section 1129(b)(2)(C) of the Bankruptcy Code requires a plan to provide either (i) that each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest, or (ii) that a holder of an interest that is junior to the

nonaccepting class will not receive or retain any property under the plan. *See* 11 U.S.C. § 1129(b)(2)(C).

116.     The "fair and equitable" rule is satisfied as to the holders of Claims and Interests in Class 6 (Intercompany Claims at EG II), Class 7 (Equity Interests at EG II), and Class 3 (Equity Interests at EGM) as no holder of claims or interests junior to any of such classes will receive or retain any property under the Plan on account of such junior claims or interests. *See In re Finlay Enters. Inc.*, No. 09-14873 (JMP), 2010 WL 6580628, at *7 (Bankr. S.D.N.Y. June 29, 2010) (holding that the fair and equitable test was satisfied where no interest junior to the interests of the rejecting class received any property under the plan).  Moreover, no senior creditor will receive more than a 100 percent recovery under the Plan.  As such, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code as to each of the Deemed to Reject Classes and may be confirmed despite the deemed rejection by such Classes.

## V.     CAUSE EXISTS TO WAIVE STAY OF PROPOSED CONFIRMATION ORDER.

117.     The Debtors respectfully request that the Court direct that the Proposed Confirmation Order shall be effective immediately upon its entry, notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e).  Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e).  As such, and as the Advisory Committee Notes to Bankruptcy Rule 3020(e) state, "the court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately." Fed. R. Bankr. P. 3020(e), advisory committee's note to 1999 amendment.

118.     Under the circumstances, it is appropriate for the Court to exercise its discretion to order that Bankruptcy Rule 3020(e) is not applicable and permit the Debtors to consummate the Plan and commence its implementation without delay following entry of the Proposed

WEIL:\98230972\1\12817.0004

Confirmation Order.  The Debtors' prompt emergence from chapter 11 will enable the Sale to close sooner, thereby providing parties in interest with their respective recoveries expeditiously. Furthermore, each day that the Debtors remain in chapter 11 they incur additional administrative and professional costs.  Moreover, given that no objections to confirmation of the Plan have been filed, waiver of the stay is particularly appropriate.  Based on the foregoing, the requested waiver of the 14-day stay is in the best interests of the Debtors' estates and their creditors and will not prejudice any parties in interest.

## CONCLUSION

119.    For the reasons set forth above, the Debtors request that the Court (i) approve the Disclosure Statement in accordance with sections 1125 and 1126 of the Bankruptcy Code, (ii) approve the Solicitation Procedures, (iii) approve the forms of Ballots, (iv) confirm the Plan in accordance with section 1129 of the Bankruptcy Code, and (v) grant the Debtors such other relief as is just and proper.

Dated:  New York, New York
       October 28, 2021

                        */s/  Matthew P. Goren*
                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:  (212) 310-8000
                        Facsimile:  (212) 310-8007
                        Gary Holtzer
                        Jacqueline Marcus
                        Matthew P. Goren

                        *Attorneys for EGM*
                        *and Proposed Attorneys for the Subsidiary Debtors*

WEIL:\98230972\1\12817.0004