**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                             :

In re                       :     **Chapter 11**
                             :

**EVERGREEN GARDENS MEZZ LLC,** *et al.*, :     **Case No. 21-10335 (MG)**
                             :

         **Debtors.**[1]      :     **(Jointly Administered)**
                             :
-------------------------------------------------------------X

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND**
**ORDER (I) APPROVING DEBTORS' (A) DISCLOSURE STATEMENT,**
**(B) PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES,**
**AND (C) FORMS OF BALLOTS AND RELATED NOTICES, AND (II) CONFIRMING**
**AMENDED JOINT CHAPTER 11 PLAN OF EVERGREEN GARDENS I LLC,**
**EVERGREEN GARDENS II LLC, AND EVERGREEN GARDENS MEZZ LLC**

Evergreen Gardens Mezz LLC ("**EGM**" or the "**Initial Debtor**"), together with

Evergreen Gardens I LLC ("**EG I**") and Evergreen Gardens II LLC ("**EG II**" and, together with

EG I, the "**Subsidiary Debtors**" and, together with the Initial Debtor, the "**Debtors**"), as debtors

and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), and

as "proponents of the plan" within the meaning of section 1129 of title 11 of the United States

Code (the "**Bankruptcy Code**"), having proposed and filed:

    i.    the *Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated September 13, 2021 [ECF No. 70] (as modified and amended on October 28, 2021 [ECF No. 187], and as may be further modified, amended, or supplemented from time to time in accordance with the terms thereof, and together with all exhibits and schedules thereto, the "**Plan**"),[2] a copy of which is annexed hereto as **Exhibit A**;

    ii.   that certain supplement to the Plan, dated and filed with this Court on

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Evergreen Gardens Mezz LLC (0416); Evergreen Gardens I LLC (2211); and Evergreen Gardens II LLC (6782). The Debtors' principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2]   Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Plan or the Confirmation Brief, as applicable.

October 11, 2021 [ECF No. 141] (as the documents contained therein may be further amended, modified, restated, or supplemented, the "**First Plan Supplement**"), and the subsequent plan supplement filed on October 18, 2021 [ECF No. 161] (as the documents contained therein may be further amended, modified, restated, or supplemented, the "**Second Plan Supplement**" and, together with the First Plan Supplement, the "**Plan Supplements**"); and

iii.    the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC,* dated September 13, 2021 [ECF No. 71] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**");

and the Debtors having filed that certain *Motion of Debtors for Entry of an Order (a) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Debtors' Joint Chapter 11 Plan; (b) Establishing Procedures for Objecting to Disclosure Statement, Solicitation Procedures, and Chapter 11 Plan; (c) Approving Form, Manner, and Sufficiency of Notice of Combined Hearing, Commencement of Chapter 11 Cases, and Section 341(a) Meeting of Creditors; (d) Conditionally Approving the Disclosure Statement for Purposes of Soliciting the Mezzanine Lender; and (e) Granting Related Relief*, dated September 14, 2021 [ECF No. 76] (the "**Solicitation Procedures Motion**"), pursuant to which the Court, by order dated September 15, 2021 [ECF No. 90] (the "**Scheduling Order**"), among other things (i) scheduled the combined hearing for November 1, 2021 (the "**Combined Hearing**") to consider (a) the adequacy of the Disclosure Statement, (b) the adequacy of the Debtors' procedures for the solicitation and tabulation of votes to accept or reject the Plan, including, without limitation, the procedures utilized by the Subsidiary Debtors to commence the solicitation of votes on the Plan prior to the commencement of the Subsidiary Debtors' Chapter 11 Cases (collectively, the "**Solicitation Procedures**"), and (c) confirmation of the Plan; (ii) established procedures for objecting to the Disclosure Statement, the Solicitation Procedures, and the Plan; (iii) approved the form, manner, and sufficiency of notice of the Combined Hearing, commencement of the Subsidiary Debtors'

Chapter 11 Cases, and the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code

(the "**Section 341(a) Meeting**"); and (iv) with respect to the Initial Debtor only, conditionally

approved the Disclosure Statement as having "adequate information" under section 1125 of the

Bankruptcy Code to allow the Initial Debtor to commence solicitation of votes on the Plan from

the Mezzanine Lender; and the Court having considered the Debtors' memorandum of law in

support of (i) approval of the Disclosure Statement, the Solicitation Procedures, and the forms of

the Ballot, and (ii) confirmation of the Plan, dated October 28, 2021 [ECF No. 193]

(the "**Confirmation Brief**"); and the Court having considered the following affidavits,

certifications, and declarations (the "**Supporting Declarations**"):

    i.    the *Declaration of Asaf Ravid in Support of Confirmation of Amended Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated October 28, 2021 [ECF No. 192] (the "**Ravid Declaration**");

    ii.    the *Declaration of Asaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of Subsidiary Debtors' Chapter 11 Petitions and Related Relief*, dated September 14, 2021 [ECF No. 3 on EG I and EG II dockets] (the "**First Day Declaration**");

    iii.    the *Declaration of Helen Hwang in Support of Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, and 503(b) and Fed. R. Bankr. P. 2002, 6003, 6004, and 9014 for Entry of Interim and Final Orders (i) Authorizing and Approving Bid Protections and (ii) Granting Related Relief*, dated September 14, 2021 and filed as Exhibit B to the Bid Protections Motion[3] (the "**Hwang Declaration**");

    iv.    the *Corrected Certification of Series E Notes Trustee Regarding Solicitation of Votes from Series E Noteholders on Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated September 14, 2021 [ECF No. 83] (the "**Initial Series E Notes Trustee Certification**") and the *Certification of Gornitzky & Co., as Counsel to Series*

---

[3]    *See Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(b) and Fed. R. Bankr. P. 2002, 6003, 6004, and 9014 for Entry of Interim and Final Orders (i) Authorizing and Approving Bid Protections and (ii) Granting Related Relief*, dated September 14, 2021 [ECF No. 78] (the "**Bid Protections Motion**"), approved on a final basis by order of the Court, dated October 4, 2021 [ECF No. 129] (the "**Final Bid Protections Order**").

*E Notes Trustee* annexed as Exhibit A thereto (the "**Series E Notes Trustee Counsel Certification**")[4];

v.    the *Supplemental Certification of Series E Notes Trustee Regarding Results of Solicitation of Votes from Series E Noteholders on Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated October 29, 2021 [ECF No. 196] (the "**Supplemental Series E Notes Trustee Certification**" and, together with the Initial Series E Notes Trustee Certification and the Series E Notes Trustee Counsel Certification, the "**Series E Notes Certifications**");

vi.    the *Declaration of John Burlacu Regarding Prepetition Solicitation of Votes on Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated September 14, 2021 [ECF No. 75] and filed as Exhibit C to the Solicitation Procedures Motion (the "**Prepetition Solicitation Declaration**" and, together with the Solicitation Affidavit, the "**Solicitation Declarations**");

vii.    the *Declaration of John Burlacu of Donlin, Recano & Company, Inc. Regarding the Solicitation and Tabulation of Votes Cast On  Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated October 28, 2021 [ECF No. 194] (the "**Initial Voting Certification**");

viii.    the *Supplemental Declaration of John Burlacu of Donlin, Recano & Company, Inc. Regarding the Solicitation and Tabulation of Votes Cast on Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated October 29, 2021 [ECF No. 198] (the "**Supplemental Voting Certification**" and, together with the Initial Voting Certification, the "**Voting Certifications**");

ix.    the *Affidavit of Service of Solicitation Packages*, dated September 21, 2021 [ECF No. 106] (the "**Solicitation Affidavit**"); and

x.    the Notice Affidavits, as defined below[5];

---

[4]    The Initial Series E Notes Trustee Certification corrected an error in the table summarizing the final vote of the Series E Noteholders included in the prior version of the certification that was filed at ECF No. 74, but was identical to the prior version of the certification in all other respects.

[5]    The following affidavits reflect service of the notice of the Combined Hearing provided by the Debtors: (1) the Solicitation Affidavit, (2) the *Affidavit of Service of the Scheduling Order*, dated September 27, 2021 [ECF No. 112], (3) the *Affidavit of Publication of the Combined Notice in the New York Times (National Edition)*, dated September 30, 2021 [ECF No. 131], (4) the *Affidavit of Publication of the Combined Notice in Haaretz Daily Newspaper*, dated October 5, 2021 [ECF No. 137], (5) the *Supplemental Affidavit of Service of the Scheduling Order*, dated October 7, 2021 [ECF No. 139], and (6) the *Supplemental Affidavit of Service of the Combined Notice*, dated October 13, 2021 [ECF No. 148] (collectively, the "**Notice Affidavits**").

and the Court being familiar with the Disclosure Statement and the Plan and other relevant factors affecting the Chapter 11 Cases; and the Court being fully familiar with, and having taken judicial notice of, the entire record of the Chapter 11 Cases; and upon the arguments of counsel and the evidence proffered and adduced at the Combined Hearing; and the Court having found and determined that the Disclosure Statement and the Solicitation Procedures should be approved and the Plan should be confirmed as reflected in the Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor; the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Approval of the Disclosure Statement, the Solicitation Procedures, the forms of the Ballot, and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Chapter 11 Petitions</u>.  On February 22, 2021 (the "**Initial Debtor Petition Date**"), the Initial Debtor commenced with this Court a voluntary case under chapter 11 of the

Bankruptcy Code.  On September 14, 2021 (the "**Subsidiary Debtor Petition Date**" and, together with the Initial Debtor Petition Date, the "**Petition Dates**"), the Subsidiary Debtors commenced their own voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

D.    <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court.

E.    <u>Adequacy of the Disclosure Statement</u>.    The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable non-bankruptcy law, including, without limitation, applicable Israeli securities law, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, the Sale, and the other transactions contemplated therein, and (c) is approved in all respects.

F.    <u>Adequacy of the Solicitation Procedures</u>.

(a)    Prior to the filing of the Subsidiary Debtors' Chapter 11 Cases, the Debtors, through their voting agent, Donlin Recano & Company, Inc. (the "**Voting Agent**"), caused the Disclosure Statement (which included as exhibits thereto, the RSA, the Purchase Agreement, an organization structure chart, and a liquidation analysis), the Plan, and the appropriate form of the Ballot (collectively, the "**Solicitation Packages**"), to be transmitted to (i) the Series E Notes

Trustee, on behalf of the Series E Noteholders on account of their Class 2 Series E Secured Claims against EG II and their Class 5 Series E Notes Deficiency Claims against EG II, and (ii) the General Unsecured Creditors, as the other holders of Class 5 General Unsecured Claims against EG II (collectively, the "**EG II Voting Classes**").  The Solicitation Packages were transmitted to the Series E Notes Trustee, on behalf of the Series E Noteholders, and the other holders of Claims in the EG II Voting Classes by first class mail and electronic mail (to the extent the Debtors had email address information for such parties).  Upon entry of the Scheduling Order, which, among other things, conditionally approved the Disclosure Statement for the sole purpose of soliciting the Mezzanine Lender, the Debtors caused a Solicitation Package to be transmitted to the Mezzanine Lender, as the only creditor of EGM in Class 2 (Mezzanine Loan Claim) (the "**EGM Voting Class**" and, together with the EG II Voting Classes, the "**Voting Classes**"), by first class mail and electronic mail.  As set forth in the Solicitation Declarations, the Solicitation Packages were transmitted to the Series E Notes Trustee, on behalf of the Series E Noteholders, and the other holders of Claims in the EG II Voting Classes shortly after midnight on September 14, 2021 and to the Mezzanine Lender on September 15, 2021.  Such solicitation of the Voting Classes, including the prepetition solicitation of the EG II Voting Classes, complied with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Local Bankruptcy Rules, the Guidelines, the Scheduling Order, all other applicable provisions of the Bankruptcy Code and all other rules, laws, and regulations applicable to such solicitation, including, without limitation, the Series E Note Documents (as defined in the Series E Notes Trustee Counsel Certification) and otherwise applicable Israeli securities law.

(b)    The instructions on the Ballots advised parties in the Voting Classes that, for a Ballot to be counted, the Ballot must be properly executed, completed, and delivered to the

Voting Agent so that it is received by the Voting Agent no later than 5:00 p.m. (Eastern Standard Time) on October 18, 2021 (the "**Voting Deadline**"), unless such time was extended by the Debtors.  The solicitation period gave holders of Claims in the Voting Classes sufficient time to review the Disclosure Statement and Plan and make an informed decision to accept or reject the Plan.  Further, the Debtors filed the First Plan Supplement a week prior to the Voting Deadline to ensure that all voting parties had sufficient time to review additional materials relating to the Plan that may bear on the manner in which they cast their votes.

(c)     The Debtors were not required to solicit votes from the holders of Claims or Interests in (i) with respect to EG I: Class 1 (Priority Non-Tax Claims), Class 2 (JPM Secured Claim), Class 3 (Other Secured Claims), Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 6 (Equity Interests); (ii) with respect to EG II: Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), Class 4 (Convenience Claims), Class 6 (Intercompany Claims), and Class 7 (Equity Interests), and (iii) with respect to EGM: Class 1 (Priority Non-Tax Claims) and Class 3 (Equity Interests), as such Classes are either (a) unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan, or (b) will not receive or retain any property under the Plan and, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan.  As described in and as evidenced by the Supporting Declarations, the transmittal and service of the Plan, the Disclosure Statement, and the Ballots (all of the foregoing, the "**Solicitation**") were timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation of votes to accept or reject the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, the Scheduling Order, and any other applicable rules, laws, and regulations, including without limitation, the Series E Note Documents and otherwise applicable Israeli securities law.  The Debtors and, to the extent applicable, their respective directors, affiliates, agents, financial advisors, professionals, and attorneys are entitled to the protection of section 1125(e) of the Bankruptcy Code.

G.    Adequacy of the Ballots.  The forms of the Ballot, which were annexed as Exhibit E to the Solicitation Procedures Motion, were based on Official Form No. 14, but were modified to address the particular circumstances of the Chapter 11 Cases and customized to include certain additional information that was relevant and appropriate for the specific voting creditor to which the Ballot was provided.  Specifically, one Master Ballot was distributed to the Series E Notes Trustee to solicit and record the votes of Series E Noteholders.  The Ballots clearly stated that to be counted as votes to accept or reject the Plan, all Ballots had to be properly executed, completed and delivered to the Voting Agent so that they would be received no later than the Voting Deadline.  The Ballots conform substantially to Official Form No. 14 and satisfy the requirements under Bankruptcy Rules 3017(d) and 3018(c).

H.    Mailing and Publication of Combined Notice.  On September 17, 2021, the Debtors caused to be mailed the *Notice of (I) Commencement of Subsidiary Debtors' Chapter 11 Cases; (II) Summary of Debtors' Joint Chapter 11 Plan; (III) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Chapter 11 Plan; (IV) Scheduling of Section 341(a) Meeting of Creditors; and (V) Related Matters*, substantially in the form approved by the Court and annexed as Exhibit A to the Scheduling Order (the "**Combined Notice**") to the Master Service List and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, and the Scheduling Order and the

9

Solicitation Procedures, and published a notice substantially similar to the Combined Notice in *The New York Times* (National Edition) in English on September 24, 2021 and in *Haaretz*, an Israeli newspaper, in Hebrew on September 30, 2021 as reflected in the Notice Affidavits [ECF Nos. 131 and 137]. Proper, adequate, and sufficient notice of the commencement of the Subsidiary Debtors' Chapter 11 Cases, the Combined Hearing, the Disclosure Statement, the Plan, and the deadlines for filing objections to approval of the Disclosure Statement and confirmation of the Plan has been given to all known holders of Claims or Interests and all parties on the Master Service List, substantially in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Scheduling Order, and the Guidelines. No other or further notice was or shall be required.

       I.      <u>Adequacy of the Tabulation Procedures</u>. As set forth in the Voting Certifications, the Debtors have solicited impaired creditors in the Voting Classes, including the Series E Noteholders through the Series E Notes Trustee and the other holders of Class 5 General Unsecured Claims against EG II, based on the information available in their books and records, and temporarily allowed all Claims in the amount set forth in their books and records for voting purposes only, subject to the exceptions set forth in the Scheduling Order. The tabulation procedures set forth in the Solicitation Procedures Motion and utilized by the Debtors provided for a fair and equitable voting process and were in compliance with section 1126(c) of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, the Scheduling Order, and any other applicable rules, laws, and regulations.

       J.      <u>Tabulation Results</u>. As set forth in the Voting Certifications, (i) 89.47% in number and 97.24% in amount of the Ballots cast by holders of Claims in Class 2 against EG II (Series E Secured Claims) voted to accept the Plan, (ii) 87.80% in number and 93.67% in amount

of the Ballots cast by holders of Claims in Class 5 against EG II (General Unsecured Claims) voted to accept the Plan, and (iii) 100% in number and 100% in amount of the Ballots cast by the holder of the Claims in Class 2 against EGM (Mezzanine Loan Claim) voted to accept the Plan in advance of the Voting Deadline. Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, each of the Voting Classes has accepted the Plan.

K.    Joint Chapter 11 Plan. The Plan is a joint chapter 11 plan for all of the Debtors, with the Plan for each Debtor being nonseverable and mutually dependent on the Plan for each other Debtor.

L.    Plan Supplement. On October 11, 2021, the Debtors filed the First Plan Supplement, consisting of (i) the Plan Administration Agreements, (ii) the identification of the Plan Administrators, (iii) the organizational documents for Post-Effective Date EG II, (iv) the Wind-Down Budgets, (v) the Assumption Schedules, and (vi) a schedule of executory contracts and unexpired leases to be rejected by the Debtors. The Second Plan Supplement was filed on October 18, 2021, consisting of (i) the organizational documents for Post-Effective Date EGM, (ii) revised organizational documents for Post-Effective Date EG II, and (iii) a revised Wind-Down Budget for Post-Effective Date EGM. The Debtors caused the Plan Supplements to be served on the Master Service List and all holders of Claims in the Voting Classes as evidenced by the *Affidavit of Service of First Plan Supplement* [ECF No. 151] and the *Affidavit of Service of Second Plan Supplement* [ECF No. 165]. All such materials comply with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, the Scheduling Order and all other applicable rules, laws, and regulations, and no other or further notice is or shall be required.

M.    <u>Modifications of the Plan</u>.  Pursuant to the *Amended Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated October 28, 2021 [ECF No. 187], the Debtors made certain amendments and modifications to the Plan that do not materially adversely affect or change the treatment of any Claims.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the amendments and modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes to accept or reject the Plan under section 1126 of the Bankruptcy Code.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as amended and modified.  The Plan as amended and modified shall constitute the Plan submitted for confirmation.

N.    <u>Bankruptcy Rule 3016(a)</u>.  In accordance with Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents of the Plan.

O.    <u>Burden of Proof</u>.  Each Debtor has satisfied its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

## Compliance with Requirements of Section 1129 of Bankruptcy Code

P.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and thereby satisfies section 1129(a)(1) of the Bankruptcy Code.

(i)    <u>Designation of Classes or Interests (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Expense Claims (Section 2.1 of the Plan), Fee Claims (Section 2.2 of the Plan), Priority Tax Claims (Section 2.3 of the Plan), DIP Claims (Section 2.4 of the Plan), and Cash Collateral/Adequate Protection Claims (Section 2.5 of the Plan), which need not be

12

classified, Article III of the Plan classifies sixteen Classes of Claims against or Interests in the Debtors.  The Claims or Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in each such Class, including without limitation, the classification of the Series E Notes Deficiency Claims and claims of parties asserting mechanic's, materialman's and other liens against EG II together with the other General Unsecured Claims in Class 5 against EG II.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims or Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Articles III and IV of the Plan specify that holders of Claims against, or Interests in, the following Classes are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code (collectively, the "**Unimpaired Classes**"): (i) with respect to EG I: Class 1 (Priority Non-Tax Claims), Class 2 (JPM Secured Claims), Class 3 (Other Secured Claims), Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 6 (Equity Claims); (ii) with respect to EG II: Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), and Class 4 (Convenience Claims); and (iii) with respect to EGM: Class 1 (Priority Non-Tax Claims).  The Plan, therefore, satisfies section 1123(a)(2) of the Bankruptcy Code.

(iii)    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Articles III and IV of the Plan designate holders of Claims or Interests in the following classes as impaired within the meaning of section 1124 of the Bankruptcy Code (collectively, the "**Impaired Classes**"): (i) with respect to EG II: Class 2 (Series E Secured Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), and Class 7 (Equity Interests); and (ii) with respect to

EGM: Class 2 (Mezzanine Loan Claim) and Class 3 (Equity Interests). The Plan, therefore, satisfied the requirements of section 1123(a)(3) of the Bankruptcy Code.

(iv)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)    <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan, including the various documents and agreements set forth in the Plan Supplements, provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, through, among other things, (a) the Sale of the Denizen to the Purchaser pursuant to the Purchase Agreement, (b) the provisions governing distributions under the Plan, including without limitation, the Sale Transaction Allocation Proportion, (c) the wind down and dissolution of the Post-Effective Debtors in accordance with Section 7.5 of the Plan, (d) the issuance of equity in Post-Effective Date EGM and Post-Effective Date EG II to the applicable Plan Administrators, (e) the appointment of the Plan Administrators, (f) authorization for all actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case, in accordance with and subject to the terms of the Plan.

(vi)    <u>Charter Provision Prohibiting Issuance of Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. The organizational documents for Post-Effective Date EGM and Post-Effective Date EG II contained in the Second Plan Supplement provide that the Post-Effective Debtors shall not issue any non-voting equity interests, unless and solely to the extent permitted by section 1123(a)(6) of the Bankruptcy Code.

(vii)    Selection of Officers and Trustees (11 U.S.C. § 1123(a)(7)). Pursuant to Section 7.5 of the Plan, the Plan Administrators for Post-Effective Date EGM and Post-Effective Date EG II were selected by the Mezzanine Lender and the Series E Notes Trustee, respectively. Such creditors hold the greatest interests in the residual assets of the respective Post-Effective Debtors, and, therefore, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

(viii)   Impairment/Unimpairment of Classes of Claims or Interests (11 U.S.C. § 1123(b)(1)). As contemplated by section 1123(b)(1) of the Bankruptcy Code, and pursuant to section 1124 of the Bankruptcy Code, Articles III and IV of the Plan classify and describe the treatment for each of the Unimpaired Classes and Impaired Classes for each of the Debtors.

(ix)    Treatment of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). In accordance with sections 365(b) and 1123(b)(2) of the Bankruptcy Code, Section 10.1 of the Plan provides that all executory contracts and unexpired leases to which either of the Subsidiary Debtors is a party shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Subsidiary Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Subsidiary Debtors on or before the date of this Confirmation Order; (iv) is identified in Section 10.4 of the Plan; or (v) is a Tenant Lease identified on the Assumption Schedule included in the Plan Supplement.

(x)    Retention of Causes and Actions/Reservation of Rights (11 U.S.C. § 1123(b)(3)). Pursuant to Section 12.8 of the Plan and in compliance with section 1123(b)(3)(B) of the Bankruptcy Code, except as otherwise set forth in the Plan or this Confirmation Order, the

15

Plan provides for the retention of Avoidance Actions and other Causes of Action by the Post-Effective Debtors to be pursued by the applicable Plan Administrator for the benefit of the creditors of Post-Effective Date EG II or Post-Effective Date EGM, as applicable.

(xi)    <u>Sale of Estate Property (11 U.S.C. § 1123(b)(4))</u>.    In accordance with section 1123(b)(4) of the Bankruptcy Code, the Plan provides for the sale of substantially all of the Subsidiary Debtors' assets to the Purchaser, and provides for the allocation and distribution of the EG I Sale Proceeds and the EG II Sale Proceeds in accordance with the Plan and the RSA.

(xii)    <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>.    In accordance and in compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan (i) properly modifies the rights of holders of Claims or Interests in the Impaired Classes and (ii) leaves unaffected the rights of holders of Claims against or Interests in the Unimpaired Classes.

(xiii)    <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.    The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and applicable law, including the release, discharge, injunction and exculpation provisions set forth in Article XI of the Plan, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xiv)    <u>Debtors Are Not Individuals (11 U.S.C. § 1123(c))</u>.    The Debtors are not individuals and, accordingly, section 1123(c) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

Q.    <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.    The Debtors have complied with the applicable provisions of the Bankruptcy Code.

R.    Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code.

S.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, the Scheduling Order, applicable non-bankruptcy law and all other applicable laws, rules, and regulations in transmitting the Plan (including, without limitation, the Series E Note Documents and otherwise applicable Israeli securities law), the Plan Supplements, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

T.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Supporting Declarations, the Combined Hearing, and the other proceedings held in these Chapter 11 Cases.  The Plan, which seeks to implement a sale of substantially all of the Subsidiary Debtors' assets to the Purchaser pursuant to the Purchase Agreement, was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of all parties in interest.  The Plan (including all documents necessary to effectuate the Plan) and the Definitive Documents were negotiated in good faith and at arms' length among the Debtors, the Purchaser, the Series E Notes Trustee, on behalf of the Series E Noteholders, and the Mezzanine Lender.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the success of the Chapter 11 Cases.

U.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with their Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, is subject to the approval of this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

V.      Identity of the Plan Administrator (11 U.S.C. § 1129(a)(5)). The Debtors disclosed the identity of the Plan Administrators in the First Plan Supplement. The Debtors have, therefore, complied with section 1129(a)(5) of the Bankruptcy Code.

W.      No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for rate changes by any of the Debtors or Post-Effective Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

X.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis included in the Disclosure Statement (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the applicable Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

Y.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Holders of Claims or Interests in the Unimpaired Classes are to be paid in full under the Plan and, therefore, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. As set forth in the Voting Certifications, each of the Voting Classes has voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code.

Z.      <u>Treatment of Administrative Expense Claims, Priority Tax Claims, DIP Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>.   The treatment of Allowed Administrative Expense Claims (including, without limitation, Allowed Fee Claims, Allowed EG I DIP Claims, and Allowed EG II Cash Collateral Claims) pursuant to Section 2.1 of the Plan, satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.   The treatment of Priority Non-Tax Claims, pursuant to Section 4.1 of the Plan, satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.   The treatment of Priority Tax Claims, pursuant to Section 2.3 of the Plan, satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

AA.      <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.   There are no impaired classes of Claims or Interests in EG I under the Plan.   For EG II and EGM, each of the Voting Classes is impaired and has voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

BB.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.   The information in the Disclosure Statement and the Supporting Declarations (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a more than reasonable prospect that the Debtors will be able to meet their financial obligations under the Plan, including the payment of Allowed Administrative Expenses, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

CC.      <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>.   Notwithstanding anything to the contrary set forth in the Plan, all fees payable under section 1930 of title 28, United States Code, together with interest, if any, under section 3717 of title 31, have been or will be paid

on or before the Effective Date pursuant to Section 14.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

DD.    <u>No Employee Compensation Plans (11 U.S.C. § 1129(a)(13))</u>.  The Debtors do not have any employees and, therefore, do not maintain any employee compensation or benefit plans.  Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

EE.    <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

FF.    <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

GG.    <u>No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.  Each Debtor is a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

HH.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.  Holders of Claims or Interests in the following Classes will not receive or retain any property on account of their Interests or Claims and, as such, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (collectively, the "**Deemed to Reject Classes**"): (i) with respect to EG II, Class 6 (Intercompany Claims) and Class 7 (Equity Interests), and (ii) with respect to EGM, Class 3 (Equity Interests).  Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that such holders are impaired and are deemed to have

rejected the Plan because the Claims and Interests in the Deemed to Reject Classes are legally distinct in their respective legal nature from Claims and Interests in all other Classes and no holders of Claims or Interests junior to such classes are receiving any distributions under the Plan. Based upon the evidence proffered, adduced, and presented by the Debtors at the Combined Hearing and the Ravid Declaration, the Plan does not discriminate unfairly against and is fair and equitable with respect to the Deemed to Reject Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

II.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

JJ.    <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act and no governmental entity has objected to the confirmation of the Plan on any such grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

KK.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the Combined Hearing and in the Supporting Declarations, the Debtors and the other Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of

acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code.

LL. <u>Solicitation Complied with Applicable Nonbankruptcy Law</u>. The Debtors' Solicitation satisfied the requirements under 1125(g) and 1126(b) of the Bankruptcy Code. As evidenced by the Series E Notes Certifications, the solicitation of votes on the Series E Notes Trustee's Proposal with respect to the votes of the Class 2 Series E Secured Claims and Class 5 Series E Notes Deficiency Claims against EG II was made in accordance with the provisions of the Series E Note Documents, Israeli securities law, and otherwise applicable Israeli law. With respect to the other Class 5 General Unsecured Claims against EG II, the Debtors' prepetition solicitation did not constitute an offer or sale of new securities and, therefore, the solicitation was not subject to the Securities Act or state "Blue Sky" laws, or any similar rules, regulations, or statutes. The solicitation of votes from the holders of Class 5 General Unsecured Claims against EG II complied with all applicable nonbankruptcy laws, rules, and regulations governing the adequacy of disclosure. Accordingly, the Debtors have satisfied the requirements of sections 1125(g) and 1126(b) of the Bankruptcy Code.

MM. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

NN. <u>Implementation</u>. All documents necessary to implement the Plan, including the RSA, the Purchase Agreement, the documents contained in the Plan Supplements, the Definitive Documents, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

OO.    <u>Executory Contracts and Unexpired Leases</u>.  The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject executory contracts and unexpired leases pursuant to Section 10.1 of the Plan and the First Plan Supplement.  Each assumption by the Post-Effective Debtors or assumption and assignment to the Purchaser of a Tenant Lease or other executory contract or unexpired lease pursuant to Section 10.1 of the Plan and the First Plan Supplement shall be legal, valid, and binding upon the Debtors or the Post-Effective Debtors and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contracts or unexpired leases, all to the same extent as if such assumption had been effectuated pursuant to an order of this Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.  Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Post-Effective Debtors or their successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Post-Effective Debtors or assumed and assigned to the Purchaser pursuant to the Plan.

PP.    <u>Notices of Assumption and Rejection.</u>  On October 12, 2021, the Debtors served notices on parties to executory contracts or unexpired leases (i) to be assumed or assumed and assigned (such notices, the "**Assumption Notices**"), and (ii) to be rejected (such notices, the "**Rejection Notices**"), reflecting the Subsidiary Debtors' intention to potentially assume, assume and assign to the Purchaser, or reject the applicable contract or lease and, where applicable, setting forth the proposed Cure Amount (if any).  On October 27, 2021, the Debtors filed the *First Omnibus Motion of Debtors for Entry of Order Authorizing the Assumption and Assignment of Certain Unexpired Leases and Executory Contracts* [ECF No. 185] (the "**Motion to Assume and Assign**"), whereby the Subsidiary Debtors requested authority to assume and assign to the

Purchaser certain executory contracts and other unexpired leases that did not constitute Tenant

Leases in accordance with section 10.1(b) of the Plan.  The Assumption Notices concerning the

Tenant Leases and the Rejection Notices set October 25, 2021, at 5:00 p.m. (Prevailing Eastern

Time) as the deadline for each counterparty to an executory contract or unexpired lease to object

to the proposed assumption, assumption and assignment, or related Cure Amount, providing such

counterparties more than ten (10) days from the service of an assumption notice to object to

proposed assumption and assignment.  The deadline for parties to file objections to the relief

requested in the Motion to Assume and Assign was November 10, 2021 at 4:00 p.m. (Prevailing

Eastern Time).

QQ.    <u>Injunction, Exculpation, and Releases</u>.  This Court has jurisdiction under

sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of

the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the

Plan, releases, and exculpation, all as set forth in the Plan, including in Sections 12.5, 12.6, and

12.7 of the Plan, respectively.  As has been established based upon the record in the Chapter 11

Cases and the evidence presented at the Combined Hearing, such provisions (i) were given in

exchange for good and valuable consideration; (ii) were integral to the agreements among the

various parties in interest and are essential to the formulation and implementation of the Plan, as

provided in section 1123 of the Bankruptcy Code; (iii) confer substantial benefits on the Debtors'

Estates; (iv) are fair, equitable, and reasonable; and (v) are in the best interests of the Debtors, their

Estates, and parties in interest.  Moreover, failure to implement the injunctions, exculpation, and

releases would impair the Debtors' ability to confirm and implement the Plan.  Pursuant to

section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the injunctions,

releases, and exculpation set forth in the Plan and implemented by this Confirmation Order are

24

fair, equitable, reasonable, and in the best interests of the Debtors, the Post-Effective Debtors and their Estates, creditors, and other interested parties.  The releases of non-Debtors under the Plan are fair to holders of Claims, are necessary for the success of these Chapter 11 Cases, and/or are given in exchange for, and are supported by, fair, sufficient, and adequate consideration provided by each and all of the parties receiving such releases.  The exculpations granted under the Plan are reasonable in scope as the exculpation provision does not relieve any party of liability for an act or omission to the extent such act or omission is the result of willful misconduct or gross negligence.  The record of the Combined Hearing and these Chapter 11 Cases is sufficient to support the injunctions, releases, and exculpation provided for in the Plan, including Sections 12.5, 12.6, and 12.7 of the Plan.  Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Combined Hearing, the injunctions, exculpation, and releases set forth in Article XII of the Plan are consistent with the Bankruptcy Code and applicable law.  The third-party releases provided in Section 12.6(b) of the Plan shall be granted only by (i) the holders of Claims who vote to accept the Plan; (ii) the Series E Notes Trustee; (iii) the Mezzanine Lender; (iv) the DIP Lender; (v) each of the other Released Parties; and (vi) with respect to any Entity in the foregoing clauses (i) through (v), such Entity's (x) predecessors, successors, and assigns, (y) subsidiaries, affiliates, managed accounts or funds, managed or controlled by such Entity, and (z) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing Entities are providing releases.

RR.    <u>Good Faith</u>.  The Debtors and the Released Parties will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby, including, among other things, the Sale to the Purchaser pursuant

to the terms of the Purchase Agreement, and (ii) take the actions authorized by this Confirmation

Order and under the Plan.

SS.    Conditions Precedent to Confirmation and Effective Date.    Each of the

conditions precedent to confirmation of the Plan and the Effective Date, set forth in Sections 11.1

and 11.2 of the Plan, respectively, other than those set forth in Section 11.1(a) and Section 11.2(a),

may be waived in writing with the consent of all of the Debtors, the Mezzanine Lender, the Series

E Notes Trustee, the Purchaser, and the DIP Lender; *provided*, *however*, the requirement that the

Confirmation Order become a Final Order set forth in Section 11.2(a) may be waived in writing

by the Debtors with the consent of the Purchaser.

TT.    Retention of Jurisdiction.    This Court may properly and, upon the Effective

Date, shall, retain exclusive jurisdiction over all matters arising out of, and related to, the

Chapter 11 Cases, including the matters set forth in Article XIII of the Plan and section 1142 of

the Bankruptcy Code.

**ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND

DETERMINED THAT:

1.    Findings of Fact and Conclusions of Law.    The above-referenced findings

of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein

and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052,

made applicable herein by Bankruptcy Rule 9014.    To the extent that any finding of fact shall be

determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    Combined Notice.    The Combined Notice, and the service and publication

thereof, complied with the terms of the Scheduling Order, was appropriate and satisfactory based

upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, and applicable non-bankruptcy law.

3.      Approval of the Disclosure Statement.  The Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, the Sale to the Purchaser and the other transactions contemplated therein, and is approved in all respects.

4.      Approval of Solicitation and Tabulation Procedures.   The Solicitation Procedures were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, and applicable non-bankruptcy law, including, without limitation, the Series E Note Documents and applicable Israeli securities law.

5.      Approval of Ballots.  The forms of the Ballot for voting to accept or reject the Plan, which were included in the Solicitation Packages transmitted to the holders of Claims in the Voting Classes, are adequate and appropriate, are in compliance with Bankruptcy Rule 3017(d) and 3018(c) and the Guidelines, substantially conform to Official Form No. 14, and are approved in all respects.

6.      Confirmation of Plan.  The Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan and the Plan Supplements, including, without limitation, the Purchase Agreement and all other documents in connection with the Sale, are authorized and approved in all respects.  The terms of the Plan, all exhibits thereto, and the Plan Supplements are incorporated by reference into and are an integral part of this Confirmation Order.

7.      Objections and Reservations of Rights.

(a)      All objections to approval of the Disclosure Statement, the Solicitation Procedures, and the Ballots and to confirmation of the Plan that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits for the reasons stated on the record of the Combined Hearing and as provided in paragraph 7 of this Confirmation Order.

(b)      The objection [ECF No. 200] (the "**Objection**") to the Plan that was filed on October 29, 2021 by creditors, United Panel Technologies Corp., Global Quality Contractors, Gilchrest Metal Fabricating Co. Inc., and Pool Docs of NJ (collectively, the "**Objecting Creditors**") is overruled because it was untimely.  As set forth in the Scheduling Order, the deadline to file any objections to approval of the Disclosure Statement and the confirmation of the Plan was on October 18, 2021, at 5 p.m. (Eastern Standard Time).  The Debtors agreed to extend the deadline for objecting to the approval of the Disclosure Statement and confirmation of the Plan for the U.S. Trustee to October 25, 2021.  The U.S Trustee was the only party as to which the deadline to object was extended.  The Objecting Creditors failed to provide acceptable reasons for filing the Objection after the deadline to object.

(c)      Even assuming the Objection was timely filed, which it was not, the Objection is overruled on the merits.  The Objecting Creditors assert in paragraph 2 of the Objection that they comprise various tradesmen and suppliers in connection with the improvement of 54 Noll Street, Brooklyn, New York ("**Denizen Y**").  In paragraphs 3 and 4 of the Objection, the Objecting Creditors state that, "except for GILCHREST METAL FABRICATING CO. INC.," they are each holders of secured mechanic's liens against EG II, as the owner of Denizen Y, totaling the collective sum of $920,749.50 (without including the claim of Gilchrest Metal

Fabricating Co. Inc.).  In paragraphs 8 through 13 of the Objection, the Objecting Creditors argue

that the Plan provides full recovery for creditors holding secured mechanic's liens against 123

Melrose Street, Brooklyn, New York ("**Denizen X**,") and that because they have the same type of

secured mechanic's lien claims as those creditors of Denizen X, the Plan unfairly discriminates

against them.  The Objecting Creditors are incorrect.  The Plan does not unfairly discriminate

against them because, as provided in Section 3.1 of the Plan, the Plan constitutes separate plans

for each Debtor: EGM, EG I, and EG II.  Creditors holding secured mechanic's liens against

Denizen X are creditors of EG I, and their claims are placed in Other Secured Claims (Class 3)

against EG I.  The Objecting Creditors are not similarly situated to those creditors of EG I because

the Objecting Creditors are holders of mechanic's liens against Denizen Y, and their claims are

placed in General Unsecured Creditors (Class 5) against EG II.  The Objecting Creditors do not

argue in the Objection that they are being unfairly discriminated compared to other similarly

situated creditors of EG II.  Additionally, the Debtors explained in the Ravid Declaration, First

Day Declaration, and the Disclosure Statement their basis for placing holders of mechanic's lien

claims against EG II with the other General Unsecured Claims in Class 5 against EG II.  The

Objecting Creditors also do not dispute that their mechanic's liens are junior to the Series E

Secured Claims.

    8. <u>Binding Effect</u>.  As of the Effective Date, the Plan shall bind all holders of

Claims against and Interests in the Debtors and their respective successors and assigns,

notwithstanding whether any such holders are (a) Impaired or Unimpaired under the Plan;

(b) presumed to accept or deemed to reject the Plan; (c) failed to vote to accept or reject the Plan;

(d) voted to reject the Plan; or (e) will receive any distribution under the Plan; *provided, however*,

that the third-party releases set forth in Section 12.6(b) of the Plan shall only be binding on the parties set forth therein and in paragraph QQ of this Confirmation Order.

      9.    <u>Implementation of Plan</u>.

      (a)    Upon the Effective Date, all actions contemplated by the Plan (whether to occur before, on, or after the Effective Date) shall be deemed authorized and approved in all respects, in each case, in accordance with and subject to the terms hereof.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors and the Post-Effective Debtors, and any corporate or limited liability company action required by the Debtors or the Post-Effective Debtors, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors, managers, or officers of the Debtors or the Post-Effective Debtors.  On or (as applicable) before the Effective Date, the authorized officers of the Debtors or the Post-Effective Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Post-Effective Debtors, including, but not limited to any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by Section 7.6 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

      (b)    On the Effective Date, EG I shall be dissolved and all of its assets not conveyed or to be conveyed to Purchaser shall be distributed to EGM.  On the Effective Date, all existing Equity Interests in EGM shall be cancelled and the EGM Plan Administrator shall be deemed to hold one limited liability company interest in Post-Effective Date EGM solely for the benefit of the Mezzanine Lender.  On the Effective Date, EG II shall merge into a corporation,

30

with such corporation surviving as Post-Effective Date EG II, and all existing Equity Interests in EG II shall be cancelled. On the Effective Date, the EG II Plan Administrator shall be deemed to hold a single share of common stock of Post-Effective Date EG II.

10.    Cancellation of Existing Securities and Agreements. On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Debtors or assumed and assigned to the Purchaser on the Effective Date, all agreements, instruments, and other documents evidencing or issued pursuant to the EG I Mortgage Loan Agreement, the Mezzanine Loan, and the Series E Notes, or any indebtedness or other obligations thereunder, and any Interests, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged, and of no force or effect, and the obligations of the Debtors thereunder shall be deemed released and discharged. Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed by the Debtors or assumed by the Debtors and assigned to the Purchaser pursuant to a Final Order of this Court or hereunder. Notwithstanding anything to the contrary herein, (i) the Claims of the Series E Noteholders under the Series E Notes and the Series E Deed of Trust against the BVI Parent, and (ii) the Claims of the Mezzanine Lender (A) against

the BVI Parent and (B) related to the Goldman Guaranty Claims, shall survive and not be impaired by the foregoing or by the Plan.

11.      Cancellation of Liens.   Except as otherwise specifically provided in the Plan, upon the payment in full in Cash of a Secured Claim, any Lien securing such Claim, shall be deemed released, and the holder of such Other Secured Claim shall be directed to release any collateral or other property of the Debtors (including any cash collateral) held by such holder and to take such actions as may be requested by the Debtors, the Purchaser, or the Plan Administrator, as applicable, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors, the Purchaser, or Plan Administrator, as applicable.

12.      Distributions.  The Disbursing Agents shall make all distributions under the Plan to the appropriate holders of Allowed Claims on or after the Effective Date in accordance with the terms of the Plan.  The procedures set forth in the Plan regarding the distributions to be made under the Plan and the appointment and powers of the Disbursing Agent, including, without limitation, the procedures set forth in Article VIII of the Plan, are approved in their entirety.

13.      Procedures for Disputed Claims.    The procedures governing the reconciliation of Disputed Claims, including, without limitation, those set forth in the provisions regarding the allowance, disallowance, estimation, settlement, and objections to Disputed Claims in Article IX of the Plan, are approved in their entirety.

14.      Assumption of Tenant Leases and Other Executory Contracts.  Pursuant to Section 10.1(a) of the Plan, on the Effective Date, all Tenant Leases shall be assumed by the Subsidiary Debtors and assigned to the Purchaser in accordance with the Purchase Agreement.  On the Effective Date or as soon as practicable thereafter, the Subsidiary Debtors shall convey any

and all security deposits held on account of the residents of the Properties to the Purchaser and the Purchaser shall hold such deposits as custodian pursuant to the Tenant Leases and applicable nonbankruptcy law.  Pursuant to Section 10.1(b) of the Plan, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which either of the Subsidiary Debtors is a party shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Subsidiary Debtors pursuant to an order of this Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Subsidiary Debtors on or before the date of this Confirmation Order; (iv) is identified in Section 10.4 of the Plan; or (v) is a Tenant Lease identified on the Assumption Schedule included in the Plan Supplement.  This Confirmation Order constitutes approval of the assumption, assumption and assignment, or rejection provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by this Court that the Post-Effective Debtors have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Post-Effective Debtors or the Purchaser, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

15.    _Notices of Assumption_.  Any counterparty that did not object to the notice of proposed assumption or  assumption and assignment, as applicable, by the deadline set forth on the Assumption Notices, is deemed to have consented to assumption of the applicable executory contract or unexpired lease, notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify,

or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Subsidiary Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Subsidiary Debtor or any Post-Effective Debtor under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Subsidiary Debtor, or Post-Effective Debtors, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that failed to object to the proposed assumption in accordance with the terms set forth in Section 10.2(b) of the Plan, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the Plan or the Bankruptcy Code on account of transactions contemplated by the Plan.

16. <u>Assumption Releases</u>.  Assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Subsidiary Debtor or defaults by any Subsidiary Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Subsidiary Debtors assume or assume and assign such executory contract or unexpired lease.  In accordance with section 365(k) of the Bankruptcy Code, assumption and assignment of any executory contract or unexpired lease, including without limitation, Tenant Leases, releases the Debtors and the Post-

Effective Debtors from any liability for breach of such executory contract or unexpired lease occurring after the Effective Date.  Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

17.    <u>Rejection Damages Claims</u>.  Any counterparty that did not object to the notice of proposed rejection by the applicable deadline set forth on the Rejection Notice is deemed to have consented to rejection of the applicable executory contract or unexpired lease.  In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated as a General Unsecured Claim against the applicable Subsidiary Debtor.  Such Claim shall be forever barred and shall not be enforceable against the Subsidiary Debtors, the Post-Effective Debtors, or their respective Estates, unless a proof of Claim is filed with this Court and served upon counsel for the Post-Effective Debtors by the later of (i) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (ii) thirty (30) days after entry of an order from this Court rejecting such executory contract or unexpired lease if such executory contract or unexpired lease is the subject of a pending Assumption Dispute.

18.    <u>Assignment</u>.  To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease assumed and assigned to the Purchaser hereunder shall remain in full force and effect for the benefit of the Purchaser in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or

other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer

of any such executory contract or unexpired lease or that terminates or modifies such executory

contract or unexpired lease or allows the counterparty to such executory contract or unexpired

lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or

modify any term or condition upon any such transfer and assignment, constitutes an unenforceable

anti-assignment provision and is void and of no force or effect with respect to any assumption and

assignment effected pursuant to the Plan.

19.    <u>Professional Compensation</u>.

(a)    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall

file and serve on counsel to the Debtors, the U.S. Trustee, counsel to the Mezzanine Lender, and

counsel to the Series E Notes Trustee, on or before the date that is forty-five (45) days after the

Effective Date, their respective final applications for allowance of compensation for services

rendered and reimbursement of expenses incurred from the Petition Date through the Effective

Date.  Objections to any Fee Claims must be filed and served on counsel to the Debtors, the U.S.

Trustee, counsel to the Mezzanine Lender, counsel to the Series E Notes Trustee, and the

requesting party no later than twenty-one (21) calendar days after the filing of the final applications

for compensation or reimbursement of expenses (unless otherwise agreed by the Debtors and the

party requesting compensation of a Fee Claim, or as approved by this Court).

(b)    Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are

Allowed by this Court (i) on the date upon which an order relating to any such Allowed Fee Claim

is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be

mutually agreed upon between the holder of such an Allowed Fee Claim and the applicable Debtor

or the Plan Administrator.  Notwithstanding the foregoing, any Fee Claims that are authorized to

be paid pursuant to any administrative orders entered by this Court may be paid at the times and in the amounts authorized pursuant to such orders.

(c)    No later than 10 days prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services prior to the Effective Date to the Debtors or Plan Administrator, as applicable, the Mezzanine Lender, and the Series E Notes Trustee and the applicable Debtor (or Plan Administrator if applicable) shall, subject to the Plan, separately escrow from funds of such Debtor such estimated amounts in a Professional Fees Escrow Account for each Debtor for the benefit of the holders of the Fee Claims against such Debtor until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtors or the Plan Administrator, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim, and provide notice thereof to the Mezzanine Lender and the Series E Notes Trustee; *provided, however*, that any such estimate shall be consistent with the fees previously disclosed to the DIP Lender in the Professional Fee Accrual Schedules (as defined in the DIP Motion).  Each Professional Fees Escrow Account shall be treated as a trust account for the benefit of holders of Fee Claims against the applicable Debtor and otherwise subject to the terms of the Plan.  When all such Allowed Fee Claims have been paid in full, any remaining amount in a Professional Fees Escrow Account shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the applicable Post-Effective Debtor for distribution in accordance with the terms of the Plan without any further action or order of this Court.

(d)    The applicable Plan Administrator is authorized to pay compensation for professional fees, disbursements, expenses, or related support services incurred after the Effective

Date in accordance with the Wind Down Budget or with the consent of the Mezzanine Lender or the Series E Notes Trustee, as applicable, without application to the Court.

20.    <u>Vesting of Assets</u>.  On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (i) the Properties acquired by the Purchaser pursuant to the Purchase Agreement shall be transferred to the Purchaser free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to the Plan and this Confirmation Order, (ii) all remaining property of the Debtors' Estates shall remain in, or vest in, as applicable, the Post-Effective Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan and this Confirmation Order, subject to compliance with the terms of the Plan and this Confirmation Order.  On and after the Effective Date, subject to the terms of the applicable Plan Administration Agreement, the Post-Effective Debtors and the Plan Administrators may take any action free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein and in the Plan.

21.    <u>Discharge</u>.  Notwithstanding anything to the contrary set forth in the Plan, the Debtors shall not receive a discharge pursuant to section 1141 of the Bankruptcy Code; *provided, however*, that nothing contained herein shall modify, impact or otherwise impair the terms or provisions of the *Order Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto and Approving Form and Manner of Notice Thereof* [ECF No. 133].

22.    <u>Retention of Causes of Action/Reservation of Rights</u>.  Except as otherwise provided in Sections 12.5, 12.6, and 12.7 of the Plan or this Confirmation Order, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable

defenses that the Debtors had immediately prior to the Effective Date on behalf of their Estates in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtors.  Except as otherwise provided in the Plan, the Post-Effective Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the date hereof and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

23.     <u>Terms of Injunctions or Stay</u>.  Unless otherwise provided in the Plan or in a Final Order of this Court, all injunctions, including the injunction set forth in section 12.5(b) of the Plan, or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, are hereby approved and confirmed and shall remain in full force and effect until the closing of all the Chapter 11 Cases.

24.     <u>Injunction Against Interference with Plan</u>.  Upon entry of this Confirmation Order, all holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan; *provided, however*, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.

25.     <u>Injunction, Releases, and Exculpation</u>.  For the avoidance of doubt, the injunctions, releases, and exculpation provisions embodied in the Plan, including (a) the Injunction

Provision (Section 12.5), (b) the Estate Releases (Section 12.6(a)), (c) the Third Party Releases

(Section 12.6(b)), and (d) the Exculpation Provision (Section 12.7), are hereby approved and shall

be effective immediately on the Effective Date, without further order or action by the Court, any

of the parties to such releases, or any other Entity. The third-party releases provided in Section

12.6(b) of the Plan shall be granted only by (i) the holders of Claims who vote to accept the Plan;

(ii) the Series E Notes Trustee; (iii) the Mezzanine Lender; (iv) the DIP Lender; (v) each of the

other Released Parties; and (vi) with respect to any Entity in the foregoing clauses (i) through (v),

such Entity's (x) predecessors, successors, and assigns, (y) subsidiaries, affiliates, managed

accounts or funds, managed or controlled by such Entity, and (z) all Persons entitled to assert

Claims through or on behalf of such Entities with respect to the matters for which the releasing

Entities are providing releases.

   26. <u>Payment of Statutory Fees</u>. The Post-Effective Debtors shall pay all fees

incurred on the Effective Date or thereafter pursuant to sections 1911 through 1930 of chapter 123

of title 28 of the United States Code, together with interest, if any, pursuant to section 3717 of title

31 of the United States Code for each of the Chapter 11 Cases, until such time as a final decree is

entered closing the applicable Chapter 11 Case, a Final Order converting the applicable Chapter

11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing

the applicable Chapter 11 Case is entered.

   27. <u>Post-Confirmation Reports</u>. The Plan Administrators for EGM and EG II

shall be responsible for filing the post-confirmation quarterly reports required under the U.S.

Trustee Operating Guidelines for Region 2 and the closing reports required by Local Bankruptcy

Rule 3022 for EGM and EG II, respectively.

28.    <u>Exemption from Transfer Taxes</u>.    Pursuant to section 1146 of the Bankruptcy Code, (a) the transfer of the Properties to the Purchaser, or its designee, and the making or delivery of any instrument of transfer in connection with or furtherance of the Plan, and any financing by the Purchaser, (b) the issuance, transfer or exchange of any securities, instruments or documents pursuant to, in implementation of or as contemplated in the Plan and the Purchase Agreement, (c) the creation of any Lien, mortgage, deed of trust, or other security interest, (d) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with the Sale Transaction, and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, this Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent provided by law, including, but not limited to: (i) mortgage recording taxes imposed under Article 11 of the tax law of the State of New York, (ii) the New York Real Estate transfer tax imposed under Article 31 of the Tax Law of the State of New York, (iii) the New York City Real Property transfer tax imposed by title 11, chapter 21 of the New York City Administrative Code and, (iv) any similar tax on the recording of deeds, transfers or property or ownership interests in property, recording of mortgages or other security instruments imposed by the State of New York, or any political subdivision thereof. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or

governmental unit in which any instrument hereunder is to be recorded (including without limitation, the Register of the City of New York) shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax, as well as cancel and discharge of record all liens, judgments, encumbrances, claims, and other adverse interests in or against the Properties.  All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Properties, any taxes from which the transactions effectuated pursuant to the Plan and this Confirmation Order are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code and to the greatest extent provided by law, including but not limited to, New York State Real Estate Transfer Taxes, and any mortgage recording tax, and any penalties, interest, or additions to any tax related thereto.  The New York City Register's Office is hereby authorized and directed to record any deed, mortgage of the Property and any modification, restatement, amendment or assignment of any mortgages and any other similar conveyance, indenture or other documents contemplated under the Plan without the payment of any of the aforementioned exempt taxes or any other stamp tax, transfer tax or similar tax, and without the presentation of affidavits, instruments or returns otherwise required for recording or filing pursuant to the provisions of section 1146(a) of the Bankruptcy Code.  Subject to the consent rights (if any) of the applicable mortgagee(s), the mortgages encumbering the Properties shall be assigned to Purchaser's lender(s) in accordance with the Purchase Agreement and such assignment(s) are hereby authorized and approved.

29.    <u>Documents, Mortgages, and Instruments</u>.    Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any

and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement

or consummate the transactions contemplated by the Plan and this Confirmation Order.

30.    Reversal/Stay/Modification/Vacatur of Confirmation Order.    Except as

otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation

Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or

any other court, such reversal, stay, modification or vacatur shall not affect the validity or

enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken

by the Debtors or the Post-Effective Debtors, as applicable, prior to the effective date of such

reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or

vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to,

or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay,

modification, or vacatur shall be governed in all respects by the provisions of this Confirmation

Order and the Plan or any amendments or modifications thereto.

31.    Retention of Jurisdiction.    On and after the Effective Date, pursuant to

sections 105 and 1142 of the Bankruptcy Code, this Court shall retain non-exclusive jurisdiction

over all matters arising in, arising under, and related to the Chapter 11 Cases, including, but not

limited to, jurisdiction over the matters set forth in Article XIII of the Plan.

32.    Modifications and Amendments.    Subject to the terms of the DIP

Documents, the Cash Collateral Orders, and all consent rights of the DIP Lender and the Series E

Notes Trustee, respectively, contained therein, the Debtors may, in accordance with the

Bankruptcy Code and the Bankruptcy Rules, amend, modify, or supplement the Plan after entry of

this Confirmation Order, in the manner provided for by section 1127 of the Bankruptcy Code or

as otherwise permitted by law.  After the date of this Confirmation Order, so long as such action

does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan and subject to the reasonable consent of the DIP Lender, Mezzanine Lender and the Series E Notes Trustee, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the RSA and the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.  Subject to the terms of the DIP Documents and the Cash Collateral Orders, before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplements, after consulting with the Mezzanine Lender and the Series E Notes Trustee, without further order or approval of this Court.

33.    _Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent_.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

34.    _Governing Law_.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplements or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof; _provided, however_, that corporate or entity governance matters relating to any Debtor or the Post-Effective Debtors, shall be governed by the laws of the state of incorporation or organization of the applicable Debtors or Post-Effective Debtors.

35.    <u>Applicable Nonbankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable, notwithstanding any otherwise applicable nonbankruptcy law.

36.    <u>Waiver of Filings</u>.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with this Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the date of this Confirmation Order.

37.    <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

38.    <u>Notice of Entry of Confirmation Order and Occurrence of Effective Date</u>. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Debtors shall cause to be served a combined notice of entry of this Confirmation Order and the occurrence of the Effective Date (the "**Notice of Effective Date**") on all known creditors and interest holders, the U.S. Trustee, and other parties in interest by first-class mail, postage prepaid, as soon as practicable after the occurrence of the Effective Date.  The Post-Effective Debtors shall cause the Notice of Effective Date to be published in *The New York Times* (National Edition) in English and in *Haaretz*, an Israeli newspaper, in Hebrew, with reasonable adjustments and modifications to account for

publication limitation, as soon as practicable after the occurrence of the Effective Date. The Post-Effective Debtors shall also post the Notice of Confirmation on the website maintained by the Voting Agent, at https://www.donlinrecano.com/eg (the "**Case Website**"). The notice described herein is adequate under the circumstances, and no other or further notice is necessary.

39.    Substantial Consummation.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

40.    Final Order.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

41.    Inconsistency.    To the extent there is any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

42.    Stay of Confirmation.    Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order shall be effective and enforceable immediately upon its entry.

43.    No Waiver.    The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.


**IT IS SO ORDERED.**

Dated:  November 5, 2021
        New York, New York


                                    ___**/s/ Martin Glenn**___
                                    MARTIN GLENN
                                    United States Bankruptcy Judge

## Exhibit A

**The Plan**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                   :

In re                                :      **Chapter 11**
                                   :

**EVERGREEN GARDENS MEZZ LLC, *et al.*,**  :      **Case No. 21-10335 (MG)**
                                   :

             **Debtors.**[1]        :      **(Jointly Administered)**
                                   :

------------------------------------------------------------x

### AMENDED JOINT CHAPTER 11 PLAN OF EVERGREEN GARDENS I LLC, EVERGREEN GARDENS II LLC, AND EVERGREEN GARDENS MEZZ LLC

**WEIL, GOTSHAL & MANGES LLP**
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Initial Debtor and*
*Proposed Attorneys for the Subsidiary Debtors*

Dated:  October 28, 2021
         New York, New York

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Evergreen Gardens Mezz LLC (0416); Evergreen Gardens I LLC (2211); and Evergreen Gardens II LLC (6782). The Debtors' principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

## Table of Contents

Page

ARTICLE I    DEFINITIONS AND INTERPRETATION. ....................................................... 6
    A.    Definitions. ..................................................................................................... 6
    B.    Interpretation; Application of Definitions and Rules of Construction. ......................... 16
    C.    Reference to Monetary Figures. ......................................................................... 17
    D.    Controlling Document. ..................................................................................... 17
    E.    Certain Consent Rights..................................................................................... 17
ARTICLE II    ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS AND DIP CLAIMS ............. 17
    2.1.    Administrative Expense Claims. ....................................................................... 17
    2.2.    Fee Claims. ................................................................................................... 18
    2.3.    Priority Tax Claims. ....................................................................................... 19
    2.4.    DIP Claims. ................................................................................................... 19
    2.5.    Cash Collateral/Adequate Protection Claims. ...................................................... 19
ARTICLE III    CLASSIFICATION OF CLAIMS AND INTERESTS. ..................................... 19
    3.1.    Separate Plans................................................................................................ 19
    3.2.    Classification in General. ................................................................................. 20
    3.3.    Summary of Classification. .............................................................................. 20
    3.4.    Special Provision Governing Unimpaired Claims.................................................. 21
    3.5.    Elimination of Vacant Classes........................................................................... 21
    3.6.    Voting Classes; Presumed Acceptance by Non-Voting Classes. ................................ 22
    3.7.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
        Code................................................................................................................ 22
ARTICLE IV    TREATMENT OF CLAIMS AND INTERESTS FOR EG I. .......................... 22
    4.1.    Priority Non-Tax Claims (Class 1)..................................................................... 22
    4.2.    JPM Secured Claims (Class 2). ......................................................................... 22
    4.3.    Other Secured Claims (Class 3)......................................................................... 23
    4.4.    General Unsecured Claims (Class 4)................................................................... 23
    4.5.    Intercompany Claims (Class 5). ........................................................................ 23

i

4.6.       Equity Interests (Class 6)....................................................................................24

ARTICLE V      TREATMENT OF CLAIMS AND INTERESTS FOR EG II. ...........................24

5.1.       Priority Non-Tax Claims (Class 1)...................................................................24

5.2.       Series E Secured Claims (Class 2) ...................................................................25

5.3.       Other Secured Claims (Class 3).......................................................................25

5.4.       Convenience Claims (Class 4)..........................................................................26

5.5.       General Unsecured Claims (Class 5).................................................................26

5.6.       Intercompany Claims (Class 6). .......................................................................26

5.7.       Equity Interests (Class 7).................................................................................27

ARTICLE VI     TREATMENT OF CLAIMS AND INTERESTS FOR EGM. ...........................27

6.1.       Priority Non-Tax Claims (Class 1)...................................................................27

6.2.       Mezzanine Loan Claim (Class 2). ....................................................................27

6.3.       Equity Interests (Class 3).................................................................................28

ARTICLE VII   MEANS FOR IMPLEMENTATION. .............................................................28

7.1.       No Substantive Consolidation. ........................................................................28

7.2.       The Sale Transaction, Allocation of Sale Proceeds, and Repayment of Certain
           Obligations .....................................................................................................28

7.3.       Settlement of 2020 PSA Claim........................................................................29

7.4.       Issuance of Equity in the Post-Effective Debtors .............................................29

7.5.       Wind Down and Dissolution of the Debtors.....................................................29

7.6.       Effectuating Documents; Further Transactions. ...............................................32

7.7.       Cancellation of Existing Securities and Agreements.........................................33

7.8.       Cancellation of Liens.......................................................................................34

7.9.       Subordination Agreements. ..............................................................................34

7.10.      Closing of the Chapter 11 Cases.......................................................................34

7.11.      Notice of Effective Date. .................................................................................34

ARTICLE VIII  DISTRIBUTIONS. .......................................................................................34

8.1.       Distributions Generally....................................................................................34

ii

8.2.    Distribution Record Date. ..................................................................... 35

8.3.    Date of Distributions. ......................................................................... 35

8.4.    Disbursing Agent. ............................................................................. 35

8.5.    Rights and Powers of Disbursing Agent. ................................................. 36

8.6.    Expenses of Disbursing Agent. ............................................................. 36

8.7.    Postpetition Interest on Claims. ............................................................ 36

8.8.    Delivery of Distributions. ................................................................... 37

8.9.    Distributions after Effective Date. ......................................................... 37

8.10.   Unclaimed Property. .......................................................................... 37

8.11.   Time Bar to Cash Payments. ................................................................ 38

8.12.   Manner of Payment under Plan. ............................................................ 38

8.13.   Satisfaction of Claims. ....................................................................... 38

8.14.   Minimum Cash Distributions. .............................................................. 38

8.15.   Setoff and Recoupment. ..................................................................... 38

8.16.   Allocation of Distributions between Principal and Interest. ........................... 39

8.17.   No Distribution in Excess of Amount of Allowed Claim. .............................. 39

8.18.   Distributions Free and Clear. ............................................................... 39

8.19.   Withholding and Reporting Requirements. ............................................... 39

ARTICLE IX    PROCEDURES FOR DISPUTED CLAIMS. ...................................... 40

9.1.    Priming Claims and Liens ................................................................... 40

9.2.    Objections to Claims. ........................................................................ 40

9.3.    Resolution of Disputed Administrative Expenses and Disputed Claims. ............ 40

9.4.    Payments and Distributions with Respect to Disputed Claims. ....................... 40

9.5.    Distributions after Allowance. .............................................................. 40

9.6.    Estimation of Claims. ........................................................................ 41

9.7.    No Distributions Pending Allowance. ..................................................... 41

9.8.    Claim Resolution Procedures Cumulative. ............................................... 41

iii

| | | |
|---|---|---|
| 9.9. | Interest. | 41 |
| 9.10. | Insured Claims. | 41 |
| 9.11. | Tax Treatment of EG I Disputed Claims Reserve. | 41 |
| ARTICLE X | EXECUTORY CONTRACTS AND UNEXPIRED LEASES. | 42 |
| 10.1. | General Treatment. | 42 |
| 10.2. | Determination of Assumption Disputes and Deemed Consent. | 42 |
| 10.3. | Rejection Damages Claims. | 44 |
| 10.4. | Insurance Policies. | 44 |
| 10.5. | Intellectual Property Licenses and Agreements. | 44 |
| 10.6. | Assignment. | 44 |
| 10.7. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 45 |
| 10.8. | Reservation of Rights. | 45 |
| ARTICLE XI | CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE. | 46 |
| 11.1. | Conditions Precedent to Confirmation of Plan. | 46 |
| 11.2. | Conditions Precedent to Effective Date. | 46 |
| 11.3. | Waiver of Conditions Precedent. | 47 |
| 11.4. | Effect of Failure of a Condition. | 47 |
| ARTICLE XII | EFFECT OF CONFIRMATION OF PLAN. | 47 |
| 12.1. | Vesting of Assets. | 47 |
| 12.2. | Binding Effect. | 48 |
| 12.3. | Discharge of Claims and Termination of Interests. | 48 |
| 12.4. | Term of Injunctions or Stays. | 48 |
| 12.5. | Injunction. | 48 |
| 12.6. | Releases. | 49 |
| 12.7. | Exculpation. | 51 |
| 12.8. | Retention of Causes of Action/Reservation of Rights. | 51 |

ARTICLE XIII RETENTION OF JURISDICTION. ............................................................... 52

    13.1.    Retention of Jurisdiction................................................................................... 52

    13.2.    Courts of Competent Jurisdiction. ................................................................... 53

ARTICLE XIV MISCELLANEOUS PROVISIONS................................................................ 54

    14.1.    Payment of Statutory Fees. .............................................................................. 54

    14.2.    Substantial Consummation of the Plan............................................................ 54

    14.3.    Plan Supplement. ............................................................................................. 54

    14.4.    Request for Expedited Determination of Taxes................................................ 54

    14.5.    Exemption from Certain Transfer Taxes. ........................................................ 54

    14.6.    Amendments. ................................................................................................... 55

    14.7.    Effectuating Documents and Further Transactions. ........................................ 55

    14.8.    Revocation or Withdrawal of Plan. ................................................................. 56

    14.9.    Severability of Plan Provisions........................................................................ 56

    14.10.    Governing Law. ............................................................................................... 56

    14.11.    Time.................................................................................................................. 56

    14.12.    Dates of Actions to Implement the Plan. ........................................................ 57

    14.13.    Immediate Binding Effect. .............................................................................. 57

    14.14.    Deemed Acts.................................................................................................... 57

    14.15.    Successor and Assigns. .................................................................................... 57

    14.16.    Entire Agreement............................................................................................. 57

    14.17.    Exhibits to Plan............................................................................................... 57

    14.18.    Notices............................................................................................................. 57

Each of Evergreen Gardens I LLC ("**EG I**"), Evergreen Gardens II LLC ("**EG II**" and, together with EG I, each a "**Subsidiary Debtor**" and, collectively, the "**Subsidiary Debtors**"), and Evergreen Gardens Mezz LLC ("**EGM**" and, together with the Subsidiary Debtors, each a "**Debtor**" and, collectively, the "**Debtors**") propose the following joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A.

## ARTICLE I    DEFINITIONS AND INTERPRETATION.

A.    **Definitions.** The following terms shall have the respective meanings specified below:

1.1      "**2020 PSA**" means that certain Contract of Sale dated January 15, 2020, including that certain Memorandum of Contract dated as of the same, as amended by that certain Amendment to Contract of Sale dated as of January 17, 2020, among EG I, EG II and the 2020 PSA Claimant.

1.2      "**2020 PSA Claim**" means the 2020 PSA Claimant's Claim arising from the 2020 PSA, which shall be an Allowed General Unsecured Claim against each of EG I and EG II in the amount of $6.0 million in accordance with the 2020 PSA Settlement Agreement and allocated between EG I and EG II as set forth in the RSA.

1.3      "**2020 PSA Claimant**" means Melrose Noll Brooklyn LLC.

1.4      "**2020 PSA Reimbursement Amount**" means the amount required to be paid by the Series E Notes Trustee, on behalf of the Series E Noteholders, to the Mezzanine Lender, on account of the 2020 PSA Claim in the agreed upon amount of no greater than $2,364,000, as provided under the RSA.

1.5      "**2020 PSA Settlement Agreement**" means that certain settlement agreement among EG I, EG II, and the 2020 PSA Claimant, dated August 31, 2021, that sets forth the terms for settlement of the 2020 PSA Claim.

1.6      "**Accepting Class**" means a Class that votes to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

1.7      "**Administrative Expense Claim**" means, with respect to each Debtor, any right to payment against such Debtor constituting a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving each respective Estate and operating the businesses of each of the Debtors; (b) Fee Claims; (c) with respect to EG I, the DIP Claims; (d) with respect to EG I, any other such claims expressly provided under the DIP Order; and (e) with respect to EG II, any other such claims expressly provided under the Cash Collateral Orders.

1.8      "**Affiliates**" means "Affiliates" as such term is defined in section 101(2) of the Bankruptcy Code.

1.9      "**Allowed**" means, with reference to any Claim or Interest, a Claim or Interest (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection has been determined in favor of the holder of the Claim or Interest by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the

Debtors or Plan Administrator, as applicable; (c) as to which the liability of the Debtors or the Post-Effective Debtors, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder; provided, however, that notwithstanding the foregoing, (x) unless expressly waived in the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable, and (y) each Post-Effective Debtor shall retain all claims and defenses with respect to Allowed Claims against such Post-Effective Debtor that are Unimpaired pursuant to the Plan.

1.10    "*Asset*" means all of the right, title, and interest of each of the Debtors in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

1.11    "*Assumption Dispute*" means a pending objection relating to assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.12    "*Assumption Schedule*" means the schedule of executory contracts and unexpired leases to be assumed by the Debtors or assumed and assigned to the Purchaser pursuant to the Plan, which was included in the Plan Supplement.

1.13    "*Avoidance Actions*" means any and all actual or potential Causes of Action of the Debtors arising under chapter 5 of the Bankruptcy Code (other than section 542 or section 549 of the Bankruptcy Code) or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance action claims, rights, and causes of action, and commercial tort law, to the extent not previously transferred, sold, assigned, or waived under any prior order of the Bankruptcy Court in these Chapter 11 Cases.

1.14    "*Ballot*" means the form(s) distributed to holders of Impaired Claims entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

1.15    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.16    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of New York.

1.17    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.18    "*Business Day*" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.19    "*BVI Intercompany Claims*" means the Intercompany Claims against EG I asserted by the BVI Parent in the aggregate amount of $2.2 million.

1.20      "*BVI Parent*" means All Year Holdings Limited, a private company limited by shares incorporated in the British Virgin Islands.

1.21      "*Cash*" means legal tender of the United States of America.

1.22      "*Cash Collateral Claims*" means the Claims of JPM against EG I and the Series E Noteholders against EG II arising out of the Subsidiary Debtors' use of cash collateral in accordance with the Cash Collateral Orders.

1.23      "*Cash Collateral Obligations*" means any obligations outstanding under the Cash Collateral Orders.

1.24      "*Cash Collateral Orders*" means the orders of the Bankruptcy Court authorizing each of EG I and EG II to use its own cash collateral (ECF Nos. 94, 95, 127, and 128).

1.25      "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, belonging to each Debtor, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes:  (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.26      "*Chapter 11 Cases*" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the applicable Petition Date in the Bankruptcy Court.

1.27      "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against each Debtor.

1.28      "*Claims Dispute Effective Date*" means the earlier to occur of (i) the Effective Date; or (ii) solely in the event the Debtors or a third party files a motion, pleading, or request to have a Claim estimated, liquidated or allowed prior to the Effective Date, the date such motion, pleading, or request is filed, unless otherwise agreed to or allowed pursuant to the terms of the RSA.

1.29      "*Class*" means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.30      "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.31      "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.32      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.33     "***Convenience Claim***" means any Claim against EG II that would otherwise be a General Unsecured Claim and that is (i) less than $10,000 or (ii) at the election of the holder of the Claim has been reduced to $10,000, as evidenced on the Ballot submitted by such holder; provided, however, that no holder of a General Unsecured Claim against EG II may subdivide its Claim into multiple Claims of $10,000 or less for purposes of receiving treatment as a Convenience Claim.

1.34     "***Cure Amount***" means the Cash or other property to be paid or distributed by the Debtors (as the parties may agree or the Bankruptcy Court may order), necessary pursuant to section 365(b)(1)(A) of the Bankruptcy Code to permit the Debtors to assume such executory contract or unexpired lease and assign it to the Purchaser.

1.35     "***D&O Liability Insurance Policies***" means, collectively, all insurance policies (including any "tail policy") of any of the Debtors for current or former directors', members', managers', and officers' liability.

1.36     "***Debtor***" or "***Debtors***" has the meaning set forth in the introductory paragraph of the Plan.

1.37     "***Debtors in Possession***" means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.38     "***Definitive Documents***" means the documents (including any related orders, agreements, instruments, schedules or exhibits) that are necessary or desirable to implement, or otherwise relate to the Plan, including, but not limited to: (a) the Disclosure Statement; (b) any motion seeking approval of the adequacy of the Disclosure Statement and solicitation of the Plan, (c) the Disclosure Statement Order; (d) the DIP Order; (e) the Cash Collateral Orders; (f) each of the documents comprising the Plan Supplement; (g) the Confirmation Order; and (h) the Purchase Agreement, each in form and substance reasonably acceptable to the Mezzanine Lender and the Series E Notes Trustee.

1.39     "***Denizen X***" means that certain property located at 123 Melrose Street, Brooklyn, New York and owned by EG I.

1.40     "***Denizen Y***" means that certain property located at 54 Noll Street, Brooklyn, New York and owned by EG II.

1.41     "***DIP Budget***" means the "Budget" as defined in the DIP Order.

1.42     "***DIP Claims***" means all Claims held by the DIP Lender against EG I on account of, arising under or relating to the DIP Documents or the DIP Order, which for the avoidance of doubt, shall include all DIP Obligations.

1.43     "***DIP Documents***" means "DIP Documents" as defined in the DIP Order.

1.44     "***DIP Facility***" means "DIP Facility" as defined in the DIP Order.

1.45     "***DIP Lender***" means "DIP Lender" as defined in the DIP Order.

1.46     "***DIP Motion***" means the *Motion of Subsidiary Debtors for (I) Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Liens and Provide Superpriority Administrative Expense Status, (D) Grant Adequate Protection, (E) Modify the Automatic Stay; and (F) Schedule a Final Hearing; and (II) Related Relief*, dated September 15, 2021 (ECF No. 85).

9

1.47      "*DIP Obligations*" means "DIP Obligations" as defined in the DIP Order.

1.48      "*DIP Order*" means the Final Order approving the DIP Motion (ECF No. 128).

1.49      "*DIP Standstill Agreement*" means that certain Subordination and Standstill Agreement between JPM, as senior lender, and the DIP Lender, dated on or about September 14, 2021, as may be amended, modified, or supplemented from time to time in accordance with the terms thereof.

1.50      "*Disallowed*" means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.51      "*Disbursing Agent*" means, for each Debtor, the applicable  Plan Administrator, or any Entity designated by the Plan Administrator in accordance with Section 7.5.

1.52      "*Disclosure Statement*" means the disclosure statement, dated September 13, 2021, filed by the Debtors in support of the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code (as may be amended, supplemented, or modified from time to time) (ECF No. 71).

1.53      "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court (a) finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code and (b) finding that the solicitation of the Plan that commenced prior to the Petition Date satisfies the requirements of section 1125(g) of the Bankruptcy Code, which order may be the Confirmation Order.

1.54      "*Disputed*" means a Claim or Interest, including an Administrative Expense Claim, (a) that is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code or Bankruptcy Rule 3003(b)(1); or (b) as to which the Debtors or any parties in interest have interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  If the Debtors dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors do not dispute, and Disputed as to the balance of such Claim.

1.55      "*Distribution Record Date*" means the Effective Date, or with respect to the Series E Notes, such other date as agreed upon among EG II and the Series E Notes Trustee.

1.56      "*Effective Date*" means the date on which all conditions to the effectiveness of the Plan set forth in Article XI hereof have been satisfied or waived in accordance with the terms of the Plan.

1.57      "*EG I Affiliate Intercompany Claim*" means the Intercompany Claim against EG I held by EG II in the amount of $1,173,406.12.

1.58      "*EG I Disputed Claims Reserve*" means a reserve established by EG I prior to the date that any distributions are made pursuant to the Plan to the Mezzanine Lender from any EG I Sale Proceeds (other than to pay the DIP Obligations and the EG I Allowed Administrative Expense Claims), which shall be maintained by the EGM Plan Administrator in an interest-bearing account in the amount equal to the aggregate amount of all liquidated Disputed Claims against EG I and the amount estimated for distribution purposes of all unliquidated Claims filed against EG I; provided, however, that the EG I Disputed Claims Reserve shall not be funded in an amount in excess of $15,000,000 without the express written consent of the Mezzanine Lender, or an order of the Bankruptcy Court.

1.59    "***EG I Mortgage Loan Agreement***" means that certain Loan and Security Agreement between EG I, as borrower, and JPM, as lender, dated as of June 10, 2019 (as amended, modified, renewed, or supplemented from time to time).

1.60    "***EG I Operating Expense Claim***" means the Intercompany Claim against EG I held by EG II in the amount of $1,297,537.88 arising from that certain Amended and Restated Promissory Note, dated August 25, 2021, plus applicable interest thereon.

1.61    "***EG I and EGM Retained Causes of Action***" means collectively: (i) all Avoidance Actions and other Causes of Action that EGM and EG I may assert under applicable law against the BVI Parent and its Related Parties (other than the Debtors); and (ii) any other Avoidance Actions and Causes of Action of EG I and EGM that are not expressly released under the Plan.

1.62    "***EG II Retained Causes of Action***" means collectively: (i) all Avoidance Actions and other Causes of Action that EG II may assert under applicable law against the BVI Parent and its Related Parties (other than the Debtors); and (ii) any other Avoidance Action and Causes of Action of EG II that are not expressly released under the Plan.

1.63    "***EG I Sale Proceeds***" means 50.75% of the proceeds of the Sale Transaction, net of applicable broker's fees, closing costs, and transaction expenses in accordance with the terms of the RSA.

1.64    "***EG II Sale Proceeds***" means 49.25% of the proceeds of the Sale Transaction, net of applicable broker's fees, closing costs, and transaction expenses in accordance with the terms of the RSA.

1.65    "***Entity***" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.66    "***Estate***" or "***Estates***" means, individually or collectively, as the context requires, the estate of a Debtor or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.67    "***Excess EGM Cash***" means Cash as of the Effective Date in the amount equal to the EG I Sale Proceeds, less (a) the amount necessary to pay in full all Allowed Claims against EG I, (b) the amount necessary to fund the EG I Disputed Claims Reserve, and (c) the amount necessary to pay all the Administrative Expenses of EG I and EGM; and (d) the amount necessary to fund the EGM Wind-Down Budget.

1.68    "***Exculpated Parties***" means collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Plan Administrator; (c) the Post-Effective Debtors; (d) JPM; (e) the Series E Notes Trustee; (f) the Mezzanine Lender; (g) the DIP Lender; (h) the Purchaser; and (i) with respect to each of the foregoing Entities in clauses (a) through (h), all Related Parties who acted on their behalf in connection with the matters as to which exculpation is provided herein.

1.69    "***Fee Claim***" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Cases.

1.70    "***Final Order***" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or

stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.71    "*General Unsecured Claim*" means any Claim against a Debtor, that is not (a) an Administrative Expense Claim; (b) a Priority Tax Claim; (c) a Priority Non-Tax Claim; (d) the JPM Secured Claims; (e) the Series E Secured Claim; (f) an Other Secured Claim; (g) an Intercompany Claim; (h) a Convenience Claim; or (i) the Mezzanine Loan Claim, but shall include any (x) Series E Notes Deficiency Claims against EG II, (y) any mechanics' lien claims against EG II, and (z) any mechanics' lien claims against EG I that are not Other Secured Claims.

1.72    "*Goldman Guaranty Claims*" means all claims and causes of action of the Mezzanine Lender arising in connection with or related to that certain (i) Mezzanine Guaranty of Recourse Carveouts, dated as of February 12, 2019, between Mezzanine Lender and Yoel Goldman (as Guarantor), (ii) Ratification and Confirmation of Guaranties and Indemnity, dated as of June 10, 2019, between EGM, Yoel Goldman (as Guarantor) and Mezzanine Lender, and (iii) Mezzanine Guaranty of Completion, dated as of February 12, 2019, between Mezzanine Lender and Yoel Goldman (as Guarantor).

1.73    "*Impaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.74    "*Insured Claims*" means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

1.75    "*Intercompany Claim*" means any pre- or postpetition Claim against a Debtor held by another Debtor or its affiliate.

1.76    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all ordinary shares, common stock, preferred stock, membership interest, partnership interest or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any share, option, warrant, or other right, contractual or otherwise, to acquire any such interest in a Debtor, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of either Debtor, to acquire any such interests in a Debtor that existed immediately before the Effective Date.

1.77    "*IRS*" means the Internal Revenue Service of the United States.

1.78    "*JPM*" means JPMorgan Chase Bank, N.A., the lender under the EG I Mortgage Loan Agreement.

1.79    "*JPM Secured Claims*" means any Claims against EG I arising under or relating to the EG I Mortgage Loan Agreement.

1.80     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.81     "*Mezzanine Lender*" means MREF REIT Lender 9 LLC, a Delaware limited liability company, in its capacity as lender under the Mezzanine Loan.

1.82     "*Mezzanine Loan*" means that certain Mezzanine Loan and Security Agreement, between the Mezzanine Lender and EGM, dated February 12, 2019.

1.83     "*Mezzanine Loan Claim*" means any Claim of the Mezzanine Lender against EGM arising under or relating to the Mezzanine Loan.

1.84     "*Other Secured Claim*" means any Secured Claim other than a DIP Claim, a Priority Tax Claim, a JPM Secured Claim, the Mezzanine Loan Claim, or a Series E Secured Claim.

1.85     "*Person*" means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

1.86     "*Petition Date*" means (i) February 22, 2021 for EGM, and (ii) September 14, 2021 for each of the Subsidiary Debtors.

1.87     "*Plan*" means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the terms hereof and the Bankruptcy Code.

1.88     "*Plan Administration Agreement*" means, as applicable, the agreement providing for the appointment of the Plan Administrator for EGM, which shall be in form and substance acceptable to the Mezzanine Lender in its sole and absolute discretion, or the Plan Administrator for EG II, which shall be in form and substance acceptable to the Series E Notes Trustee in its sole and absolute discretion.

1.89     "*Plan Administrator*" means as applicable, the EGM Plan Administrator or the EG II Plan Administrator selected to serve as plan administrator for EGM and EG II, respectively, to administer and implement the Plan, wind-down Post-Effective Date EGM and Post-Effective Date EG II, respectively, in accordance with, and pursuant to such powers and authorities with respect to the Post-Effective Debtors, as set forth in Section 7.5 of the Plan.

1.90     "*Plan Supplement*" means the supplemental appendices to the Plan filed with the Court (ECF Nos. 141 and 161) containing, among other things, forms or term sheets of applicable documents, schedules, and exhibits to the Plan, including, but not limited to, the Wind Down Budget, the Plan Administration Agreements,  and the Assumption Schedule; provided, that through the Effective Date, the Debtors shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan.  The Debtors shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date in accordance with Article XI of the Plan.

1.91     "*Post-Effective Date EG II*" means EG II (or any successor entity, including by merger) on or after the Effective Date.

1.92     "*Post-Effective Date EGM*" means EGM (or any successor entity, including by merger) on or after the Effective Date.

1.93    "***Post-Effective Debtors***" means Post-Effective Date EG II and Post-Effective Date EGM.

1.94    "***Priority Non-Tax Claim***" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.95    "***Priority Tax Claim***" means any Secured Claim or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.96    "***Pro Rata Share***" means the proportion that an Allowed Claim in a particular Class bears relative to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.97    "***Professional Fees Escrow Account***" means the escrow accounts to be established and funded on or before the Effective Date pursuant to Section 2.2 of the Plan.

1.98    "***Properties***" means, individually or collectively, as the context requires, the Denizen X and the Denizen Y.

1.99    "***Purchase Agreement***" means that certain Agreement for Purchase and Sale, dated as of August 2, 2021, between the Subsidiary Debtors and the Purchaser, including any exhibits or supplements thereto, and as may be amended, modified, or supplemented from time to time in accordance with the terms thereof.

1.100    "***Purchase Price***" means $506 million.

1.101    "***Purchaser***" means ACI VI Denizen LLC.

1.102    "***Related Parties***" means with respect to any Entity, such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, all of their respective current officers, directors, principals, stockholders (and any fund managers, fiduciaries or other agents of stockholders with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

1.103    "***Released Parties***" means collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Post-Effective Debtors; (c) JPM and its representatives and advisors; (d) the Series E Notes Trustee and its representatives and advisors; (e) the Series E Noteholders and their representatives and advisors; (f) the Mezzanine Lender and its representatives and advisors; (g) the DIP Lender and its representatives and advisors; (h) the Purchaser and its representatives and advisors; (i) any current or former Chief Restructuring Officer or Associate Restructuring Officer of the Debtors and the BVI Parent; (j) any independent directors appointed to the board of the BVI Parent on or after January 1, 2021; and (k) any advisors retained by the Debtors or the BVI Parent in connection with these chapter 11 cases on or after December 29,2020 (but not including Dov Tratner or Tratner and Associates PLLC).

14

1.104     "***RSA***" means that certain Restructuring Support Agreement, dated as of August 31, 2021, by and among the Debtors, the Mezzanine Lender, and the Series E Notes Trustee (as may be further amended, supplemented, or modified from time to time in accordance with the terms thereof).

1.105     "***Sale Documents***" means the documentation effectuating the Sale Transaction.

1.106     "***Sale Transaction***" means the sale of the Properties to the Purchaser pursuant to the terms of the Purchase Agreement.

1.107     "***Sale Transaction Allocation Proportion***" means, with regard to EG I, 50.75%, and with regard to EG II, 49.25%.

1.108     "***Secured Claim***" means any Claim (a) secured by a Lien on collateral to the extent of the value of such collateral (after taking into account any senior Liens thereon) as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.109     "***Series E Claims***" means the Claims against EG II arising from the Series E Notes issued under the Series E Deed of Trust which shall be allowed in the amount of not less than $271,788,150, on account of the total amount of principal, accrued and unpaid interest, and any other fees outstanding under the Series E Deed of Trust as of the Petition Date.

1.110     "***Series E Collateral Value***" means the sum of (i) the EG II Sale Proceeds, (ii) cash distributed to EG II in respect of the EG I Operating Expense Claim pursuant to Section 7.2 of the Plan, (iii) any cash remaining on EG II's balance sheet following the closing of the Sale Transaction, and (iv) any Causes of Action of EG II, in each case, solely to the extent such cash or claims (or the proceeds thereof) constitute collateral over which the Series E Notes Trustee has a valid and perfected lien under the Series E Deed of Trust and subject to the treatment and satisfaction of any claims or liens against EG II granted as adequate protection in connection with EG II's use of cash collateral .

1.111     "***Series E Deed of Trust***" means that certain Deed of Trust by and between the BVI Parent and the Series E Notes Trustee, dated as of February 4, 2018.

1.112     "***Series E Noteholders***" means holders of Series E Notes.

1.113     "***Series E Notes***" means notes issued under the Series E Deed of Trust.

1.114     "***Series E Notes Deficiency Claims***" means the deficiency Claims of the Series E Noteholders against EG II under section 506(a) of the Bankruptcy Code, which shall be Allowed and calculated by deducting the Series E Secured Claim Distribution from the Series E Claims.

1.115     "***Series E Notes Trustee***" means Mishmeret Trust Company Ltd., as trustee under the Series E Deed of Trust.

1.116     "***Series E Secured Claim Distribution***" means the Series E Collateral Value, minus the Cash necessary to pay the following claims or liabilities of EG II: (A) Administrative Expenses, (B) Priority Tax Claims, (C) Priority Non-Tax Claims, (D) Convenience Claims, and (E) Wind Down expenses of EG II.

1.117    "**_Series E Secured Claims_**" means the Claims against EG II arising from the Series E Notes issued under the Series E Deed of Trust.

1.118    "**_Single Share_**" means the single share of common stock of Post-Effective Date EG II.

1.119    "**_Subsidiary Debtor_**" or "**_Subsidiary Debtors_**" has the meaning set forth in the introductory paragraph of the Plan.

1.120    "**_Tax Code_**" means the Internal Revenue Code of 1986, as amended from time to time.

1.121    "**_Tenant Leases_**" means all real property leases and master leases, as applicable, to which either of EG I or EG II is a party, as lessor, that are in existence as of the Effective Date, and which shall be assigned to the Purchaser pursuant to the Plan and the Purchase Agreement.

1.122    "**_U.S. Trustee_**" means the United States Trustee for the Southern District of New York.

1.123    "**_Unimpaired_**" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.124    "**_Voting Deadline_**" means the date by which all persons or Entities entitled to vote on the Plan must vote to accept or reject the Plan.

1.125    "**_Wind Down_**" means the wind down, dissolution, and liquidation of the Post-Effective Debtors and distribution of any remaining assets in accordance with the Plan, including without limitation the reconciliation of all Claims against the Debtors.

1.126    "**_Wind Down Budget_**" means a budget for Post-Effective Date EGM and the budget for Post-Effective Date EG II, to be agreed among the Debtors, the Mezzanine Lender, and the Series E Notes Trustee, for the purpose of effectuating the Wind Down of EGM and EG II, respectively, as may be modified from time to time by agreement of such parties.  The Wind Down expenses that are shared as between Post-Effective Date EGM and Post-Effective Date EG II shall be allocated pursuant the Sale Transaction Allocation Proportion, _provided_, _that_, any Wind Down expenses solely related to EGM or EG I, on the one hand, and EG II, on the other hand, shall be borne by Post-Effective Date EGM and Post-Effective Date EG II, respectively, in their entirety.

B.    **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time as provided for in the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as otherwise required by the Plan; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code

or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Nothing in this Plan shall alter, modify, supersede, or limit the consent provided or approval rights granted under the DIP Order or the Cash Collateral Orders, all of which remain in full force and effect. Notwithstanding anything to the contrary herein, the power and authority of the Plan Administrators shall be defined by, and subject in all respects to, the terms and conditions of the Plan Administrator Agreement.

C.   **Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

D.   **Controlling Document.**

In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan or any order (other than the Confirmation Order, the DIP Order, or the Cash Collateral Orders) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; <u>provided</u>, that in the event of a conflict between Confirmation Order, on the one hand, and any of the Plan, the Plan Supplement, or the Definitive Documents, the Confirmation Order shall govern and control in all respects., and in all respects the DIP Order shall control in the event of a conflict between the DIP Order and the Plan, the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan or any order (other than the DIP Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), and in all respects the Cash Collateral Orders shall control in the event of a conflict between the Cash Collateral Orders and the Plan, the Disclosure Statement, the Plan Supplement, any other instrument or document, created or executed pursuant to the Plan or any order (other than the Cash Collateral Orders) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing).

E.   **Certain Consent Rights.**

Notwithstanding anything in the Plan to the contrary, any and all consent rights of the DIP Lender and the Series E Notes Trustee as set forth in the DIP Documents and the Cash Collateral Orders, respectively, with respect to the form and substance of the Plan, the Plan Supplement, and any Definitive Document, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein until such time as the DIP Documents or the Cash Collateral Orders are terminated in accordance with their terms.

## ARTICLE II   ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS AND DIP CLAIMS

2.1.   ***Administrative Expense Claims.***

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim), shall receive, in full and final satisfaction, settlement, and release of such Claim against the applicable Debtor, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, and (b) the first Business Day after

the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor, as Debtor in Possession, shall be paid by the applicable Debtor or the Plan Administrator for such Debtor, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of the Plan and any course of dealing or agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2.    ***Fee Claims.***

(a)    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Debtors, the U.S. Trustee, counsel to the Mezzanine Lender, and counsel to the Series E Notes Trustee, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date.  Objections to any Fee Claims must be filed and served on counsel to the Debtors, the U.S. Trustee, counsel to the Mezzanine Lender, counsel to the Series E Notes Trustee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors and the party requesting compensation of a Fee Claim, or as approved by the Court).

(b)    Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the applicable Debtor or the Plan Administrator.  Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court may be paid at the times and in the amounts authorized pursuant to such orders.

(c)    No later than 10 days prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services prior to the Effective Date to the Debtors or Plan Administrator, as applicable, the Mezzanine Lender, and the Series E Notes Trustee and the applicable Debtor (or Plan Administrator if applicable) shall, subject to the Plan, separately escrow from funds of such Debtor such estimated amounts in a Professional Fees Escrow Account for each Debtor for the benefit of the holders of the Fee Claims against such Debtor until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtors or the Plan Administrator, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim, and provide notice thereof to the Mezzanine Lender and the Series E Notes Trustee.  Each Professional Fees Escrow Account shall be treated as a trust account for the benefit of holders of Fee Claims against the applicable Debtor and otherwise subject to the terms of the Plan.  When all such Allowed Fee Claims have been paid in full, any remaining amount in a Professional Fees Escrow Account shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the applicable Post-Effective Debtor for distribution in accordance with the terms hereof without any further action or order of the Bankruptcy Court.

(d)    The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

18

2.3.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim against a Debtor shall receive, in full and final satisfaction, settlement, and release of such Allowed Priority Tax Claim, at the sole option of the applicable Debtor or the Plan Administrator, (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Petition Date; provided, that, in each case, the applicable Debtor or Plan Administrator, reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

2.4.    *DIP Claims.*

On the Effective Date, in full and final satisfaction of the Allowed DIP Claims, to the extent any DIP Obligations remain unpaid, the commitments of the DIP Lender under the DIP Documents shall be terminated and the DIP Claims shall be paid in full in Cash. The contingent or unliquidated expense reimbursement and indemnity obligations of EG I under the DIP Documents, and the Liens securing the same, to the extent not paid in full in Cash on the Effective Date or otherwise satisfied by EG I in a manner reasonably acceptable to the DIP Lender, shall survive the Effective Date and shall not be released or discharged pursuant to the Plan or the Confirmation Order, but shall attach to the EG I Sale Proceeds, notwithstanding any provision hereof or thereof to the contrary.

2.5.    *Cash Collateral/Adequate Protection Claims.*

On the Effective Date, to the extent any Cash Collateral Obligations remain unpaid, the commitments under the Cash Collateral Orders of JPM and the Series E Notes Trustee, as applicable, shall terminate and all Allowed Cash Collateral Claims shall be paid in full in Cash. Any contingent or unliquidated expense reimbursement and indemnity obligations of the Subsidiary Debtors arising under the Cash Collateral Orders, and the Liens securing the same, to the extent not paid in full in Cash on the Effective Date or otherwise satisfied in a manner acceptable to JPM and the Series E Notes Trustee, as applicable, shall survive the Effective Date and shall not be released or discharged pursuant to the Plan or the Confirmation Order, and shall attach to the EG I Sale Proceeds or the EG II Sale Proceeds, as applicable, notwithstanding any provision hereof to the contrary.

## ARTICLE III  CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1.    *Separate Plans*

This Plan constitutes a separate chapter 11 plan for each Debtor. Votes to accept or reject the Plan shall be solicited by each Debtor. If this Plan is approved for each of the Debtors, all classes of Claims against the Debtors shall be treated as provided for in this Plan. The Plan shall not be confirmed for any Debtor unless it is confirmed for each of the Debtors. All Claims and Interests are to be treated on a Debtor by Debtor basis with the assets of each Debtor's estate only being distributed on account of Allowed Claims and Allowed Interests of such Debtor. Claims against each Debtor, other than Administrative Expense Claims, Fee Claims, and Priority Tax Claims (which are not classified but are treated under the

19

Plan on a Debtor by Debtor basis) are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan.

### 3.2. *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.3. *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

**Claims Against and Interests in EG I**

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | JPM Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 4 | General Unsecured Claims | Unimpaired | No (Presumed to accept) |
| 5 | Intercompany Claims | Unimpaired | No (Presumed to accept) |
| 6 | Equity Interests | Unimpaired | No (Presumed to accept) |

**Claims Against and Interests in EG II**

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Series E Secured Claims | Impaired | Yes |
| 3 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 4 | Convenience Claims | Unimpaired | No (Presumed to accept) |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No (Deemed to reject) |
| 7 | Equity Interests | Impaired | No (Deemed to reject) |

**Claims Against and Interests in EGM**

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Mezzanine Loan Claim | Impaired | Yes |
| 3 | Equity Interests | Impaired | No (Deemed to reject) |

3.4.    ***Special Provision Governing Unimpaired Claims.***

Except as otherwise provided in the Plan, nothing in the Plan shall affect the rights of the Debtors or the Plan Administrator, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5.    ***Elimination of Vacant Classes.***

Any Class of Claims against in the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.6.    ***Voting Classes; Presumed Acceptance by Non-Voting Classes.***

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request that the Bankruptcy Court at the Confirmation Hearing deem the Plan accepted by the holders of such Claims in such Class.

3.7.    ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.***

The Debtors shall seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Class of Claims or Interests that rejects or is deemed to reject the Plan. The Debtors reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV  TREATMENT OF CLAIMS AND INTERESTS FOR EG I.

4.1.    ***Priority Non-Tax Claims (Class 1).***

(a)    *Classification*: Class 1 consists of Priority Non-Tax Claims against EG I.

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against EG I agrees to a less favorable treatment, in full and final satisfaction, settlement and release of such Allowed Priority Non-Tax Claim, at the sole option of the Plan Administrator: (i) each such holder shall receive payment in full in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable; or (ii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims against EG I are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Priority Non-Tax Claims against EG I, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.2.    ***JPM Secured Claims (Class 2).***

(a)    *Classification*: Class 2 consists of the JPM Secured Claims against EG I.

(b)    *Allowance*.  The JPM Secured Claims against EG I shall be Allowed in the amount of $170,000,000, plus any and all accrued and unpaid interest (including default interest), including premiums, fees and reasonable and documented expenses thereon, and shall not be subject to any avoidance, reductions, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or other challenges under any applicable law or regulation by any Person.

(c)    *Treatment*: Except to the extent that the holder of the JPM Secured Claims agrees to a less favorable treatment and in accordance with the DIP Standstill Agreement, in full and final satisfaction, settlement and release of such Allowed JPM Secured Claims against EG I, on or as soon as practicable after the Effective Date, the holder of the Allowed JPM Secured Claims shall receive Cash in an amount equal to such holder's Allowed JPM Secured Claims.

(d)      *Voting*:  Class 2 is Unimpaired, and the holder of the JPM Secured Claims against EG I is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The holder of the JPM Secured Claims, therefore, is not entitled to vote to accept or reject the Plan, and the vote of such holder will not be solicited with respect to such JPM Secured Claim.

### 4.3.     *Other Secured Claims (Class 3).*

(a)      *Classification*:  Class 3 consists of the Other Secured Claims against EG I.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 3 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim against EG I agrees to different treatment, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim against EG I will receive, on account and in full satisfaction of such Allowed Claim, at the sole option of the Plan Administrator:  (i) Cash in an amount equal to the Allowed amount of such Claim; (ii) return of the applicable collateral or the proceeds thereof in satisfaction of the Allowed amount of such Other Secured Claim; or (iii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired.

(c)      *Voting*:  Class 3 is Unimpaired, and holders of Other Secured Claims against EG I are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Other Secured Claims against EG I, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

### 4.4.     *General Unsecured Claims (Class 4).*

(a)      *Classification*:  Class 4 consists of General Unsecured Claims against EG I.

(b)      *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim against EG I agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement and release of such Allowed General Unsecured Claim, at the sole option of the Plan Administrator:  (i) each such holder shall receive payment in full in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon thereafter as is reasonably practicable; or (ii) such holder shall receive such other treatment so as to render such holder's Allowed General Unsecured Claim Unimpaired.

(c)      *Voting*:  Class 4 is Unimpaired, and holders of General Unsecured Claims against EG I are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of General Unsecured Claims against EG I, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such General Unsecured Claim.

### 4.5.     *Intercompany Claims (Class 5).*

(a)      *Classification*:  Class 5 consists of the Intercompany Claims against EG I.

(b)    *Treatment and Allowance*: Except to the extent that EG II, the Mezzanine Lender, and the Series E Notes Trustee agree to less favorable treatment of such Claim, in full and final satisfaction, settlement and release of such Class 5 Allowed Intercompany Claims:

(i)    EG II shall not receive any distribution on the Effective Date on account of the EG I Affiliate Intercompany Claim.  Instead, the distribution that would otherwise be payable to EG II on account of the EG I Affiliate Intercompany Claim shall be retained by EG I and utilized by EG I to partially pay the 2020 PSA Claim, as provided under the RSA, and any remaining amounts owed to EG II on account of the EG I Affiliate Intercompany Claims shall be waived and deemed satisfied, settled and released in full by EG II and its Estate;

(ii)    The BVI Intercompany Claim shall be treated by the parties in accordance the RSA and shall not be Allowed or paid by EG I or the Plan Administrator, until the earlier to occur of (A) the written consent by the Mezzanine Lender; or (B) the entry of a Final Order requiring such payment; and

(iii)    The EG I Operating Expense Claim shall have been paid in full by EG I to EG II, without setoff, recoupment, or deduction, or reduction in anyway, from the proceeds of the DIP Loan, in accordance with the DIP Budget, and such amounts shall constitute Allowed DIP Claims of the DIP Lender.

(c)    *Voting*: Class 5 is Unimpaired, and the holders of Intercompany Claims against EG I are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Intercompany Claims against EG I, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

4.6.    ***Equity Interests (Class 6).***

(a)    *Classification*: Class 6 consists of Equity Interests in EG I, 100% of which are owned by EGM.

(b)    *Treatment*:  On or as soon as reasonably practicable after the Effective Date, following the payment of all Allowed Claims against EG I, all of the Assets of EG I, including all Cash, Avoidance Actions, and other Causes of Action of EG I, shall be transferred to EGM, in full and final satisfaction, compromise, settlement, release, and discharge of the Allowed Equity Interests, and all Equity Interests in EG I shall be cancelled and extinguished and EG I shall be deemed dissolved under applicable non-bankruptcy law; provided, however, that Post-Effective Date EGM shall continue to maintain the EG I Disputed Claims Reserve for the benefit of holders of Disputed Claims against EG I.

(c)    *Voting*: Class 6 is Unimpaired, and EGM, as the holder of the Equity Interests in EG I is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  EGM, therefore, is not entitled to vote to accept or reject the Plan, and its vote will not be solicited with respect to such Equity Interests.

**ARTICLE V    TREATMENT OF CLAIMS AND INTERESTS FOR EG II.**

5.1.    ***Priority Non-Tax Claims (Class 1).***

(a)    *Classification*:  Class 1 consists of Priority Non-Tax Claims against EG II.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against EG II agrees to a less favorable treatment, in full and final satisfaction, settlement and release of such Allowed Priority Non-Tax Claim, at the sole option of the Plan Administrator: (i) each such holder shall receive payment in full in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable; or (ii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired.

(c)      *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims against EG II are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Priority Non-Tax Claims against EG II are, therefore, not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

5.2.     ***Series E Secured Claims (Class 2).***

(a)      *Classification*:  Class 2 consists of the Series E Secured Claims against EG II.

(b)      *Allowance*.  The Series E Secured Claims against EG II shall be Allowed Secured Claims in the aggregate amount equal to the Series E Collateral Value.  The Allowed Series E Secured Claims shall not be subject to any avoidance, reductions, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or other challenges under any applicable law or regulation by any Person.

(c)      *Treatment*: Except to the extent that a holder of an Allowed Series E Secured Claim against EG II agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement and release of such Allowed Series E Secured Claim (but not the Series E Notes Deficiency Claims), on or as soon as practicable after the Effective Date, each holder of an Allowed Series E Secured Claim shall receive its Pro Rata Share of the Series E Secured Claim Distribution.

(d)      Voting:  Class 2 is Impaired, and the holders of Series E Secured Claims against EG II are entitled to vote to accept or reject the Plan.

5.3.     ***Other Secured Claims (Class 3).***

(a)      *Classification*:  Class 3 consists of the Other Secured Claims against EG II.  To the extent that Other Secured Claims against EG II are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 4 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim against EG II agrees to different treatment, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim will receive, on account and in full satisfaction of such Allowed Claim, at the sole option of the Plan Administrator:  (i) Cash in an amount equal to the Allowed amount of such Claim; (ii) return of the applicable collateral or the proceeds thereof in satisfaction of the Allowed amount of such Other Secured Claim; or (iii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired.

(c)     *Voting*:  Class 3 is Unimpaired, and holders of Other Secured Claims against EG II are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Other Secured Claims against EG II, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

5.4.     ***Convenience Claims (Class 4)***

(a)     *Classification*:  Class 4 consists of Convenience Claims against EG II.

(b)     *Treatment*: Except to the extent that a holder of an Allowed Convenience Class Claim against EG II agrees in writing to less favorable treatment, on the Effective Date, each holder of an Allowed Convenience Claim shall receive payment in Cash in the amount of its Allowed Convenience Claim, in full and final satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Convenience Class Claim.

(c)     *Voting*: Class 4 is Unimpaired, and holders of Convenience Claims against EG II are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Convenience Claims against EG II, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Convenience Claims.

5.5.     ***General Unsecured Claims (Class 5).***

(a)     *Classification*:  Class 5 consists of General Unsecured Claims against EG II, including the Series E Notes Deficiency Claim and the Claims of holders of mechanics' liens against EG II.

(b)     *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim against EG II agrees to less favorable treatment, in full and final satisfaction and release of, and in exchange for the General Unsecured Claims of EG II (but not any Series E Noteholders' claims against the BVI Parent), each holder thereof shall receive its Pro Rata Share of the amounts recovered by the Plan Administrator, if any, from the prosecution of Avoidance Actions and other Causes of Action of Post-Effective Date EG II, to the extent such Avoidance Actions and Causes of Action do not constitute collateral of the Series E Noteholders under the Series E Indenture or the Cash Collateral Orders, net of fees and expenses associated with prosecuting such action. The Plan Administrator shall make distributions to the holders of General Unsecured Claims against EG II from such proceeds as and when the Plan Administrator deems appropriate, after consultation with the Series E Notes Trustee. The rights to such proceeds shall be nontransferable except by will, intestate succession, or operation of law.

(c)     *Voting*: Class 5 is Impaired, and holders of General Unsecured Claims against EG II are entitled to vote to accept or reject the Plan.

5.6.     ***Intercompany Claims (Class 6).***

(a)     *Classification*: Class 6 consists of Intercompany Claims against EG II.

(b)     *Treatment*: The holders of Allowed Intercompany Claims against EG II shall not receive or retain any property under the Plan on account of such Claims.

(c)     *Voting*: Class 6 is Impaired and holders of Intercompany Claims against EG II are not entitled to receive or retain any property under the Plan. Under section 1126(g) of the Bankruptcy Code, such holders are deemed to have rejected the Plan, and the votes of such holders shall not be solicited.

5.7.    *Equity Interests (Class 7).*

(a)    *Classification*:  Class 7 consists of Equity Interests in EG II.

(b)    *Treatment*: On or after the Effective Date, all Equity Interests in EG II shall be cancelled.  The existing holder of the Equity Interests in EG II shall neither receive nor retain any property of EG II or direct interest in property of EG II on account of such Equity Interest.

(c)    *Voting*: Class 7 is Impaired and the holder of the Equity Interest in EG II is not entitled to receive or retain any property under the Plan. Under section 1126(g) of the Bankruptcy Code, such holder is deemed to have rejected the Plan, and the votes of such holders shall not be solicited.

## ARTICLE VI  TREATMENT OF CLAIMS AND INTERESTS FOR EGM.

6.1.    *Priority Non-Tax Claims (Class 1).*

(a)    *Classification*:  Class 1 consists of Priority Non-Tax Claims against EGM.

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against EGM agrees to a less favorable treatment, in full and final satisfaction, settlement and release of such Allowed Priority Non-Tax Claim, at the sole option of the Plan Administrator:  (i) each such holder shall receive payment in full in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable; or (ii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims against EGM are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Priority Non-Tax Claims against EG I are, therefore, not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

6.2.    *Mezzanine Loan Claim (Class 2).*

(a)    *Classification*:  Class 2 consists of the Mezzanine Loan Claim.

(b)    *Allowance*.  The Mezzanine Loan Claim shall be Allowed in the amount equal to the principal amount outstanding under the of the Mezzanine Loan plus any and all accrued and unpaid interest, including default interest, premiums, fees and expenses as of the Petition Date of EGM in the amount of not less than $81,188,942.28, and shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or other challenges under any applicable law or regulation by any Person.

(c)    *Treatment*: Except to the extent that the holder of the Mezzanine Loan Claim agrees to a less favorable treatment, in final settlement of such Mezzanine Loan Claim as against EGM, on or as soon as practicable after the Effective Date, the holder of the Allowed Mezzanine Loan Claims shall receive:

(i)    the Excess EGM Cash;

27

(ii)     its Pro Rata Share of the amounts recovered by the Plan Administrator of EGM, if any, from the prosecution of Avoidance Actions or other Causes of Action of EG I and EGM, net of fees and expenses associated with prosecuting such action.  The Plan Administrator shall make distributions to the holder of the Mezzanine Loan Claim from such proceeds as and when the Plan Administrator deems appropriate, after consultation with the Mezzanine Lender.  The rights to such proceeds shall be nontransferable except to an affiliate, or by will, intestate succession, or operation of law; and

(iii)     the remainder of the Disputed Claims Reserve after all Disputed Claims against EG I has been liquidated and paid, if applicable, in accordance with the terms hereof.

(d)     *Voting*:  Class 2 is Impaired, and the holder of the Mezzanine Loan Claim against EGM is entitled to vote to accept or reject the Plan.

(e)     *Other*:  Nothing in this Section 6.2 or otherwise under the Plan shall impair, modify, amend, limit, or otherwise affect the rights of the Mezzanine Lender to assert any direct claims it may be entitled to assert under applicable law against the BVI Parent and its Related Entities (other than the Debtors) including, but without limitation, the Goldman Guaranty Claims.

6.3.     ***Equity Interests (Class 3).***

(a)     *Classification*:  Class 3 consists of Equity Interests in EGM.

(b)     *Treatment*:  On or after the Effective Date, the Equity Interests in EGM shall be cancelled.  The existing holder of the Equity Interests in EGM shall neither receive nor retain any property of EGM or direct interest in property of EGM on account of such Equity Interest.

(c)     *Voting:*  Class 3 is Impaired and the holder of Equity Interests of EGM is not entitled to receive or retain any property under the Plan. Under Section 1126(g) of the Bankruptcy Code, such holders are deemed to have rejected the Plan, and the votes of such holders shall not be solicited.

## ARTICLE VII MEANS FOR IMPLEMENTATION.

7.1.     ***No Substantive Consolidation.***

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan. The Assets of each Debtor's Estate shall be separately maintained and accounted for, and used exclusively for distribution on account of Claims and Interests of such Estate. Nothing under this Plan shall make any Debtor liable for the Claims or Interests against any other Debtor.

7.2.     ***The Sale Transaction, Allocation of Sale Proceeds, and Repayment of Certain Obligations***

On the Effective Date, in accordance with the Plan, the RSA, and the Purchase Agreement, subject to the satisfaction or waiver of all applicable conditions under the terms thereof:

(a)     EG I and EG II shall sell the Properties to the Purchaser pursuant to the terms of the Purchase Agreement in exchange for the Purchase Price.

(b)     EG I shall receive the EG I Sale Proceeds (on account of the Denizen X), which shall be used to make the payments provided in the Plan for the following Allowed Claims against EG I: Administrative Expenses, Fee Claims, Priority Tax Claims, DIP Claims, Priority Non-Tax Claims, the JPM Secured Claims, Other Secured Claims, General Unsecured Claims, and Intercompany Claims.  The Disputed Claims Reserve will be established for payment of Disputed Claims against EG I.  On the Effective Date, all Cash, Avoidance Actions and other Causes of Action of EG I shall be distributed to EGM on account of its ownership of all of the equity interests in EG I and shall be property of Post-Effective Date EGM.

(c)     EG II shall receive the EG II Sale Proceeds (on account of the Denizen Y), which shall, together with all other Cash on the balance sheet of EG II, be used to pay the following claims against EG II: Administrative Expenses, Fee Claims, Priority Tax Claims, Other Secured Claims, Series E Secured Claims, Convenience Claims, and General Unsecured Claims, as well as the portion of the Wind-Down Budget attributable to EG II.

(d)     Promptly upon receipt of any funds or distribution on account of the Series E Secured Claims, the Series E Notes Trustee shall pay the 2020 PSA Reimbursement Amount to EG I prior to making any distributions on account of the Series E Secured Claims to the Series E Noteholders.

7.3.     *Settlement of 2020 PSA Claim*

The 2020 PSA Claim shall be Allowed as a General Unsecured Claim against each of EG I and EG II, but payable only once, without duplication, and shall be paid by EG I and EG II in accordance with, and pursuant to, the 2020 PSA Settlement Agreement, the Plan, and the RSA.

7.4.     *Issuance of Equity in the Post-Effective Debtors*

(a)     On the Effective Date, after the closing of the Sale Transaction and the Effective Date distributions under the Plan, EG II shall merge into a corporation, with such corporation surviving as Post-Effective Date EG II.  A Single Share of Post-Effective Date EG II shall be issued to the Plan Administrator. Following the conclusion of the Plan Administrator's prosecution of any Avoidance Actions or other Causes of Action on behalf of holders of General Unsecured Claims against EG II, Post-Effective Date EG II shall be dissolved and the Single Share of Post-Effective Date EG II shall be deemed cancelled and of no further force and effect. The Plan Administrator shall have no right to any distribution of property or value from Post-Effective Date EG II by reason of its ownership of the Single Share.

(b)     On the Effective Date, after the closing of the Sale Transaction and the Effective Date distributions under the Plan, a single unit of Post-Effective Date EGM shall be issued to the Plan Administrator of EGM representing a non-economic 100% ownership interest in Post-Effective Date EGM (it being understood that the Plan Administrator shall have no right to any distribution of property or value from  Post-Effective Date EGM by reason of its ownership of the single unit). Following the conclusion of the Plan Administrator's prosecution of any Avoidance Actions and  other Causes of Action on behalf of the holder of the Mezzanine Loan Claim, and the distribution of any proceeds thereof to the Mezzanine Lender, Post-Effective Date EGM shall be dissolved and the single unit shall be deemed cancelled and of no further force and effect.

7.5.     *Wind Down and Dissolution of the Debtors.*

(a)     On the Effective Date, the Mezzanine Lender shall appoint the Plan Administrator for EGM and the Series E Notes Trustee shall appoint the Plan Administrator for EG II for the purpose of conducting the Wind Down of Post-Effective Date EGM, and Post-Effective Date EG II, respectively, on

29

terms and conditions set forth in the respective Plan Administration Agreements.  The retention of the respective Plan Administrator shall in each case shall be pursuant to an agreement approved by the Mezzanine Lender and the Series E Notes Trustee, as applicable, and filed as part of the Plan Supplement. The Post-Effective Debtors shall each be deemed a Reorganized Debtor (as defined in the RSA) for purposes of the Plan, with all obligations thereunder applying with full force and effect upon Post-Effective Date EGM, as successor to EG I under the RSA, and Post-Effective Date EG II, as successor to EG II under the RSA, to the same effect as upon the original parties thereto.  Upon the conclusion of the Wind Down for a Post-Effective Debtor, such Post-Effective Debtor shall be dissolved by the respective Plan Administrator. The applicable Plan Administrator shall act for the applicable Post-Effective Debtor in the same capacity and shall have the same rights and powers as are applicable to a manager, managing member, board of managers, board of directors or equivalent governing body, as applicable, and to officers, subject to the provisions hereof (and all certificates of formation and limited liability company agreements and certificates of incorporation or by-laws, or equivalent governing documents and all other related documents (including membership agreements, stockholders agreements, or similar instruments), as applicable, are deemed amended pursuant to the Plan to permit and authorize the same) and the Plan Administrators will be representatives of respective the Post-Effective Debtors for purposes of section 1123(b)(3) of the Bankruptcy Code.  From and after the Effective Date, the applicable Plan Administrator shall be the sole representative of and shall act for the applicable Post-Effective Debtor, respectively, with the authority set forth in this Section 7.5 and the Plan Administration Agreements.  The Plan Administrator shall be compensated and reimbursed for reasonable costs and expenses as set forth in the Plan Administration Agreements included in the Plan Supplement.

(b)       Each Plan Administrator shall have the authority and right on behalf of each of the Post-Effective Debtors, subject to the express terms of the Plan Administration Agreements but without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to: (i) implement the Wind Down as expeditiously as reasonably possible and administer the liquidation, dissolution, sale and/or abandonment or similar action of the Debtors and their Estates and any Assets held by the Post-Effective Debtors after the Effective Date in accordance with the Wind Down Budget; (ii) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise, settle, and consent to derivative standing to the Mezzanine Lender or the Series E Notes Trustee in connection with, any and all Disputed Claims against the Debtors, each subject to the consent rights provided for herein and the Plan Administration Agreements; (iii) make distributions to holders of Allowed Claims in accordance with the Plan; (iv) prosecute the Avoidance Actions and all other Causes of Action on behalf of Post-Effective Debtors (including, for the avoidance of doubt, such Avoidance Actions and all other Causes of Action of EG I distributed to Post-Effective Date EGM pursuant to the Plan), elect not to pursue any Avoidance Actions and Causes of Action, consent to derivative standing to the Mezzanine Lender or the Series E Notes Trustee in connection with, any and all Avoidance Actions and all other Causes of Action and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Avoidance Actions and Causes of Action, as the applicable Plan Administrator may determine is in the best interests of each of the Post-Effective Debtors; (v) create and fund, as necessary, any reserves required under the Plan, including for Disputed Claims and other such reserves as the Plan Administrator deems necessary and appropriate to carry out the provisions of the Plan; (vi) retain and compensate professionals to assist in performing its duties under the Plan; (vii) maintain the books, records, and accounts of the Debtors; (viii) complete and file, as necessary, all final or otherwise required federal, state, and local tax returns and other tax reports for the Debtors or the Post-Effective Debtors; (ix) represent the interests of the applicable Debtors, their Estates, or the Post-Effective Debtors before any taxing authority in all matters including, without limitations, any action, suit, proceeding, appeal or audit; and (x) appoint and compensate an agent to effectuate distributions under the Plan with the consent of the Mezzanine Lender and the Series E Notes Trustee, as applicable; and (xi) perform other duties and functions that are consistent with the implementation of the Plan or required by the Bankruptcy Code.

30

(c)    The Plan Supplement shall include the Wind Down Budget and, on the Effective Date, the applicable Plan Administrator shall segregate the funds from the applicable Post-Effective Debtor to be used to make the payments contemplated in the Wind Down Budget.

(d)    The Post-Effective Date EGM and the Post-Effective Date EG II shall indemnify and hold harmless the applicable Plan Administrator solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence, willful misconduct, or criminal conduct.

(e)    The Plan Administrator shall effectuate the Wind Down in accordance with the Wind Down Budget.  The Plan Administrator shall pay any and all reasonable and documented costs and expenses incurred in connection with the Wind Down, including the reasonable fees and expenses of its professionals, without further order of the Bankruptcy Court, provided that such amounts are consistent with the Wind Down Budget.

(f)    Subject to Sections 6.2 and 8.3 of the Plan, the Debtors shall make an initial distribution on the Effective Date and thereafter, the Plan Administrator shall, in an expeditious but orderly manner, make timely distributions pursuant to the Plan and the Confirmation Order.

(g)    All matters provided for herein involving the corporate structure of the Debtors, or the Post-Effective Debtors, to the extent applicable, or any corporate or related action required by the Debtors or the Post-Effective Debtors in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors or the Post-Effective Debtors, and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or Post-Effective Debtors.  The Plan Administrator shall be authorized to file on behalf of the Debtors, certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or board of directors or similar governing body of the Debtors.

(h)    All directors and officers of the Debtors shall be deemed to have resigned as of the Effective Date.

(i)    To the extent that any action or inaction of the Plan Administrator is subject to approval of the Mezzanine Lender and the Series E Notes Trustee, such actions or inactions are subject to the approval of the Mezzanine Lender, with respect to Post-Effective EGM, and the Series E Notes Trustee, with respect to Post-Effective EG II.

(j)    All of the privileges and work product of the Debtors and the Post-Effective Debtors, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral), related to Avoidance Actions and the Causes of Action, shall be vested in and maintained by the respective Plan Administrators of the Post-Effective Debtors.  Subject to the Plan Administration Agreements, the respective Plan Administrators of the Post-Effective Debtors, in their sole discretion, will have exclusive authority to waive or not waive such privileges of the Debtors and the Post-Effective Debtors.  Each Plan Administrator will seek to preserve and protect all applicable privileges and work product vested in the respective Post-Effective Debtors pursuant to the Plan and the Confirmation Order.  The respective Plan Administrator's receipt of such information shall not waive any privileges and such privileges are fully preserved.  The Plan Administrator (on behalf of the Post-Effective Debtors, including EGM and EG I and their Estates) and the individual directors, officers or members/managers of the Post-Effective Debtors shall remain in control of all of their

31

respective privileges (subject to the provisions of the Plan and the Confirmation Order), and the respective Plan Administrator (on behalf of the Post-Effective Debtors), and the individual directors, officers or members/managers of the Post-Effective Debtors shall retain the right to waive their own privileges prospectively. Nothing herein shall preclude the Mezzanine Lender or the Series E Notes Trustee from obtaining information from the respective Plan Administrators in connection with the exercise of its rights set forth in Article III hereof, or otherwise, and any such information exchanged between the applicable Plan Administrators and the Mezzanine Lender or the Series Notes Trustee, as applicable, shall be deemed to have been exchanged in connection with such parties' common legal interest and protected by and subject in all respects to the common interest privilege. For the avoidance of doubt, the receipt of privileged information by either the Mezzanine Lender or the Series E Notes Trustee from the applicable Plan Administrator shall not be deemed to waive any privilege otherwise applicable and belonging to such Plan Administrator, and all such privileges are expressly preserved and reserved.

7.6.    ***Effectuating Documents; Further Transactions.***

(a)    Upon the Effective Date, all actions contemplated by the Plan (whether to occur before, on, or after the Effective Date) shall be deemed authorized and approved in all respects, in each case, in accordance with and subject to the terms hereof. All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors and the Post-Effective Debtors, and any corporate or limited liability company action required by the Debtors or the Post-Effective Debtors, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors, managers, or officers of the Debtors or the Post-Effective Debtors. On or (as applicable) before the Effective Date, the authorized officers of the Debtors or the Post-Effective Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Post-Effective Debtors, including, but not limited to any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 7.6 shall be effective notwithstanding any requirements under non-bankruptcy law.

(b)    On or as soon as practicable after the Effective Date, the Plan Administrator may take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, subject in all respects to the provisions of the Plan, and the rights vested in the Mezzanine Lender and the Series E Notes Trustee, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or to reincorporate in another jurisdiction.

(c)    Immediately following the conversion of Post-Effective Date EG II into a corporation pursuant to Section 7.4(a) hereof, the Plan Administrator shall adopt a "plan of liquidation" in furtherance of its duties and responsibilities under the plan to monetize all of the remaining assets of Post-Effective Date EG II (including any Avoidance Actions or other Causes of Action) and distribute the proceeds thereof in accordance with the Plan, and shall timely file IRS Form 966 in connection therewith.

(d)     Certain Tax Matters.  For U.S. federal income tax purposes, and comparable state and local tax purposes (as applicable):

(i)     The Debtors (other than EG II) shall implement the Plan in a manner such that such Debtors shall continue to be treated as disregarded entities through the implementation of the Plan on the Effective Date and shall not take any action that would cause any such Debtors, or Post-Effective Date EGM, to be treated as an association taxable as a corporation at any time (prior to, on or following the Effective Date).  .

(ii)     Following the Effective Date, Post-Effective Date EGM shall be treated as a disregarded entity of which the Mezzanine Lender is regarded as the tax owner, so long as the Mezzanine Lender is a single owner of the Mezzanine Loan Claim, and in the event there are two or more owners, as a partnership (unless applicable Law requires otherwise).

(iii)     Any items of income, deduction, gain, loss or credit attributable to the Debtors and/or Post-Effective Date EGM, as applicable, shall be allocated between the period ending with and including the implementation of the Plan on the Effective Date (the "Pre-Closing Period")  and the period thereafter (the "Post-Closing Period") and, in accordance therewith, to the applicable tax regarded owner for each period.  In furtherance of the foregoing and for the avoidance of doubt, it is understood and agreed that any items of income, deduction, gain, loss or credit attributable to the Debtors as a result of the transactions contemplated in connection with the implementation of the Plan, including without limitation any such items attributable to the Sale Transaction and any cancellation of debt consequences on the Effective Date, shall be allocated to the Pre-Closing Period, which items shall be reported to the tax owner of the Debtors for the Pre-Closing Period and not treated as attributable to the Post-Closing Period or Post-Effective Date EGM.

(iv)     The Debtors, the BVI Parent, the Chief Restructuring Officer, the Associate Restructuring Officer, the holders of the Equity Interests in EGM and EG II, and all holders of Claims shall report consistent with this Section 7.6(d) for all income tax purposes, and shall (X) use commercially reasonable efforts to cause consistent reporting therewith by others, or (Y) not join in, encourage, and/or support inconsistent reporting therewith by others.

(v)     The Debtors shall be authorized to implement the Plan in the manner most tax efficient to the Post-Effective Debtors, the Mezzanine Lender (as to Post-Effective Date EGM, EGM and EG I) and the Series E Notes (as to EG II), as determined by the mutual agreement of the Debtors, the Mezzanine Lender and the Series E Notes Trustee (as applicable) in their reasonable discretion given the totality of the circumstances.

7.7.     *Cancellation of Existing Securities and Agreements.*

(a)     On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Debtors or assumed and assigned to the Purchaser on the Effective Date, all agreements, instruments, and other documents evidencing or issued pursuant to the EG I Mortgage Loan Agreement, the Mezzanine Loan, and the Series E Notes, or any indebtedness or other obligations thereunder, and any Interests, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged, and of no force or effect, and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.  Notwithstanding the foregoing, (i) the claims of the Series

33

E Noteholders under the Series E Notes and the Series E Deed of Trust against the BVI Parent, and (ii) the claims of the Mezzanine Lender (A) against the BVI Parent and (B) related to the Goldman Guaranty Claims, shall survive and not be impaired by the foregoing or by the Plan.

(b)    Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed by the Debtors and assigned to the Purchaser pursuant to a Final Order of the Bankruptcy Court or hereunder.

7.8.    *Cancellation of Liens.*

Except as otherwise specifically provided herein, upon the payment in full in Cash of a Secured Claim, any Lien securing such Claim, shall be deemed released, and the holder of such Other Secured Claim shall be directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Debtors or the Plan Administrator, as applicable, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors or Plan Administrator, as applicable.

7.9.    *Subordination Agreements.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

7.10.    *Closing of the Chapter 11 Cases.*

After an Estate has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and the Bankruptcy Rules.

7.11.    *Notice of Effective Date.*

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

## ARTICLE VIII        DISTRIBUTIONS.

8.1.    *Distributions Generally.*

The Disbursing Agents shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

8.2.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims. The Debtors or the Plan Administrator, as applicable, shall have no obligation to recognize any transfer or designation of such Claims occurring after the close of business on the Distribution Record Date. In addition, with respect to payment of any Cure Amount or Assumption Disputes, neither the Debtors, nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim or Cure Amount.

8.3.    *Date of Distributions.*

(a)    Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date, as and when Claims are Allowed in the sole discretion of the Plan Administrator, or as otherwise determined in accordance with the Plan, including, without limitation, the treatment provisions of Article IV, Article V, and Article VI of the Plan, or as soon as practicable thereafter; provided, that the Plan Administrator shall from time to time announce subsequent distribution dates to the extent they determine them to be appropriate 7.5

(b)    The Plan Administrator of EGM shall manage the EG I Disputed Claims Reserve for the treatment of Disputed Claims against EG I. The EG I Disputed Claims Reserve shall be held in trust by the Plan Administrator for the benefit of holders of such Disputed Claims against EG I pending a determination of such claimants' entitlement thereto pursuant to the terms of the Plan. For the avoidance of doubt, as Disputed Claims are resolved and satisfied in accordance with the provisions of the Plan, excess funds shall be released from the EG I Disputed Claims Reserve and may be distributed to the Mezzanine Lender at the discretion of the Plan Administrator for EGM.

(c)    With respect to EG II and EGM, the applicable Plan Administrator shall reserve an amount sufficient to pay holders of Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Non-Priority Tax Claims, Disputed Other Secured Claims, and Disputed General Unsecured Claims, the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. As Disputed Claims are resolved, excess funds shall be released from the applicable reserve and distributed in accordance with the Plan.

8.4.    *Disbursing Agent.*

All distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. The Plan Administrator shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Plan Administrator) with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the applicable Debtor's books and records. The Plan Administrator shall cooperate in good faith with the applicable Disbursing Agent (if other than the Plan Administrator) to comply with the reporting and withholding requirements outlined in Section 8.19 of the Plan.

35

8.5.    ***Rights and Powers of Disbursing Agent.***

(a)    From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against and Interests in the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.  No holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.

(b)    The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

8.6.    ***Expenses of Disbursing Agent.***

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash, subject to the Plan Administration Agreements.

8.7.    ***Postpetition Interest on Claims.***

(a)    Interest on Claims against EG II and EGM: Except as otherwise provided in the Plan, the Confirmation Order, the DIP Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims against EG II and EGM on or after the Petition Date; provided, that if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

(b)    Interest on Secured Claims against EG I: Except as otherwise provided in the Plan, the Confirmation Order, the DIP Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with the applicable provisions of the Bankruptcy Code), interest shall accrue and be paid on JPM Secured Claims at the default rate in accordance with the EG I Mortgage Loan Agreement and shall accrue and be paid on Other Secured Claims against EG I pursuant to the terms of any contracts that give rise to such Other Secured Claim against EG I, or otherwise pursuant to applicable non-bankruptcy law.

(c)    Interest on Unsecured Claims against EG I: Except as otherwise provided in the Plan, the Confirmation Order, the DIP Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with the applicable provisions of the Bankruptcy Code), interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid

through the date of payment; provided, however, that no such postpetition interest shall accrue or be payable on account of any Intercompany Claim against EG I, other than the EG I Operating Expense Claim.

8.8.   *Delivery of Distributions.*

(a)   Subject to Bankruptcy Rule 9010, all distributions to any holder or permitted designee, as applicable, of an Allowed Claim or Interest shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims or Interests on behalf of the Debtors.  In the event that any distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until the Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Disbursing Agent to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, assist such holders or permitted designees, as applicable, in complying with Section 8.14 of the Plan.

(b)   Notwithstanding the foregoing, the following shall apply to holders of the JPM Secured Claims, Series E Secured Claims, and DIP Claims, respectively:

(i)   all distributions of Cash on account of the JPM Secured Claims shall be deposited with JPM for distribution to any other holders of the JPM Secured Claims in accordance with the terms of the EG I Mortgage Loan Agreement.  To the extent JPM effectuates, or is requested to effectuate, any distributions hereunder, JPM shall be deemed a "Disbursing Agent" for purposes of the Plan.

(ii)   all distributions of Cash on account of Series E Secured Claim, shall be deposited with the Series E Notes Trustee for distribution to the Series E Noteholders in accordance with the terms of the Series E Deed of Trust.  To the extent the Series E Notes Trustee effectuates, or is requested to effectuate, any distributions hereunder, the Series E Notes Trustee shall be deemed a "Disbursing Agent" for purposes of the Plan.

(iii)   all distributions of Cash on account of the DIP Claims shall be paid to the DIP Lender in accordance with the DIP Documents.  All distributions to holders of DIP Claims shall be governed by the DIP Documents and the DIP Order and shall be made to each holder of an Allowed DIP Claim or such holder's authorized designee for purposes of distributions to be made hereunder.  All reasonable and documented fees and expenses of the DIP Lender incurred after the Effective Date pursuant to this Section 8.8 shall be paid by the Plan Administrator for EGM from the Wind Down Budget.

8.9.   *Distributions after Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

8.10.   *Unclaimed Property.*

Undeliverable distributions shall remain in the possession of the Post-Effective Debtors, until such time as a distribution becomes deliverable or a holder accepts distribution, or such distribution reverts back to the Post-Effective Debtors and shall not be supplemented with any interest, dividends, or

other accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of one hundred and twenty (120) days from the applicable date of distribution and the holder of the Claim entitled to such distribution shall be discharged and forever barred.  After such date, all unclaimed property or interest in property of the Post-Effective Debtors shall revert to and vest in the Post-Effective Debtors and shall be thereafter disbursed to the Mezzanine Lender and the Series E Notes Trustee, as applicable, and all unclaimed property or interest in property shall be discharged and forever barred.

8.11.    ***Time Bar to Cash Payments.***

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall immediately and irrevocably revert to the applicable Post-Effective Debtor, and any Claim on account of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check prior to the expiration of the one hundred and twenty (120) day period from the date of issuance shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

8.12.    ***Manner of Payment under Plan.***

Except as otherwise specifically provided in the Plan, at the option of the Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors; provided, however, all Cash payments to holders of DIP Claims and holders of the Mezzanine Loan Claims shall be made by wire transfer.

8.13.    ***Satisfaction of Claims.***

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction and discharge of and exchange for the applicable Debtor's obligation on account of such Allowed Claims.

8.14.    ***Minimum Cash Distributions.***

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim other than an Allowed Convenience Claim; provided, that if any distribution is not made pursuant to this Section 8.14, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

8.15.    ***Setoff and Recoupment.***

The Post-Effective Debtors, or their designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Post-Effective Debtors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law (other than the released Causes of Action in favor of the Released Parties); provided, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or a Post-Effective Debtor or its successor, of any claims, rights, or Causes of Action that a Debtor or a Post-Effective Debtor, or its successor or assign may possess against the holder of such Claim (other than the released Causes of Action in favor of the Released Parties).

38

8.16.    *Allocation of Distributions between Principal and Interest.*

Except as otherwise required by law (as reasonably determined by the Plan Administrator, as applicable), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the portion of such Allowed Claim (if any) that reflects reimbursable expenses, and then to the accrued and unpaid interest on such Allowed Claim.

8.17.    *No Distribution in Excess of Amount of Allowed Claim.*

Except as provided in Section 8.7 of the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

8.18.    *Distributions Free and Clear.*

Except as provided herein, any distributions under the Plan shall be free and clear of and Liens, Claims, and encumbrances, and no other Entity, including the Debtors or the Plan Administrator, shall have any interest, legal, beneficial, or otherwise, in any amounts transferred pursuant to the Plan.

8.19.    *Withholding and Reporting Requirements.*

(a)    *Withholding Rights.*  In connection with the Plan, the Plan Administrators shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  JPM, the Series E Notes Trustee, the Plan Administrators, the DIP Lender, the Disbursing Agent, the Post-Effective Debtors, or such other Entity designated thereby, as applicable, shall be authorized to take any actions that they determine, in their reasonable discretion, to be necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate (including, in the event of a non-cash distribution, the claimant providing sufficient monies to satisfy the withholding). Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms.*  Any party entitled to receive any property as a distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by the Plan Administrator (which Entity shall subsequently deliver to the Disbursing Agent any applicable Internal Revenue Service Form W-8 or Form W-9 or other tax information received), an appropriate Internal Revenue Service Form W-9 or (if the payee is a foreign Entity) Form W-8, and any other reasonably requested tax information.  If such request is made by the Plan Administrator or the Disbursing Agent, or such other Entity designated by the Plan Administrator or the Disbursing Agent and the holder fails to comply before the earlier of (i) the date that is one hundred and eighty (180) days after the request is made, and (ii) the date that is one hundred and eighty (180) days after the date of distribution, the amount of any such distribution shall irrevocably revert to the Post-Effective Debtors, and any Claim on account of such distribution shall be discharged and forever barred from assertion against the Post-Effective Debtors, or their respective property.

## ARTICLE IX  PROCEDURES FOR DISPUTED CLAIMS.

9.1.    *Priming Claims and Liens*

The Debtors shall consult with (i) the Mezzanine Lender with respect to any Disputed Claim against EG I, or (ii) the Series E Notes Trustee with respect to any Disputed Claim against EG II that is, or purports to be, pari passu or senior to the Series E Secured Claims, in each case, in connection with the estimation, settlement of, and/or prosecution of objections to any such Disputed Claims, and shall obtain the prior written consent from the Mezzanine Lender or the Series E Notes Trustee, as applicable, prior to estimating or settling any such Disputed Claims (with such consent not to be unreasonably withheld). Notwithstanding anything to the contrary, as of the Claims Dispute Effective Date, upon request by the Mezzanine Lender or the Series E Notes Trustee, as the case may be, to be heard in connection with, intervene in, or be granted standing to prosecute, any estimation, objection, or challenge to such Disputed Claims, including, without limitation, the right to prosecute any objections, challenges, or commence any litigation relating to such Disputed Claim, the Debtors and the Mezzanine Lender or the Series E Notes Trustee, as applicable, shall consent to, and agree not to oppose or dispute, the rights of the Mezzanine Lender or Series E Notes Trustee to be heard in connection with, intervene in, or be granted standing to prosecuted, any estimation or objection to such Disputed Claims.

9.2.    *Objections to Claims.*

Subject to the rights provided to the Mezzanine Lender and the Series E Notes Trustee hereunder and in the Plan Administration Agreements, the Plan Administrator shall exclusively be entitled to object to Claims as of the Effective Date.  As of the Effective Date, the applicable Plan Administrator shall have and retain any and all rights and defenses that the applicable Debtor had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed pursuant to the Plan.  Any objections to proofs of Claim shall be served and filed on or before the later of (a) one hundred and twenty (120) days after the Effective Date, and (b) on such other date as ordered by the Bankruptcy Court for cause.

9.3.    *Resolution of Disputed Administrative Expenses and Disputed Claims.*

Subject to the rights provided to the Mezzanine Lender and the Series E Notes Trustee hereunder and in the Plan Administration Agreements, the Plan Administrator shall have the exclusive authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without further approval of the Bankruptcy Court, other than with respect to Fee Claims.

9.4.    *Payments and Distributions with Respect to Disputed Claims.*

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, the Debtors shall not be required to make any payment or distribution provided hereunder on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

9.5.    *Distributions after Allowance.*

After such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in this Plan, with or without interest, as provided in Section 9.9 of the Plan.  Such distributions shall be made in accordance with Article VIII of the Plan.  Distributions from a Disputed Claims Reserve shall include earnings on any monies held in such Disputed Claims Reserve, less expenses (including the payments of taxes) of administering such Disputed Claims Reserve.

9.6.   ***Estimation of Claims.***

The Plan Administrator may (a) determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court and (b) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors and the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim; <u>provided</u>, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

9.7.   ***No Distributions Pending Allowance.***

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

9.8.   ***Claim Resolution Procedures Cumulative.***

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

9.9.   ***Interest.***

Except as otherwise set forth herein, to the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall be entitled to interest that accrued thereon from and after the Effective Date to the extent such interest is payable pursuant to Section 8.7 of the Plan.

9.10.   ***Insured Claims.***

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies.  To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

9.11.   ***Tax Treatment of EG I Disputed Claims Reserve.***

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination by the IRS, the Debtors, the Plan Administrator or the Disbursing Agent, as applicable, shall treat the EG I Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently

with the foregoing for state and local income tax purposes. All parties (including the Debtors, the Post-Effective Debtors, the Plan Administrator, the Disbursing Agent, and the holders of Disputed Claims) shall be required to report for tax purposes consistently with the foregoing. The EG I Disputed Claims Reserve shall be responsible for payment, out of the assets of such reserve, of any taxes imposed on the EG I Disputed Claims Reserve or its assets. The Plan Administrator or the Disbursing Agent, as applicable, may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the EG I Disputed Claims Reserve for all taxable periods through the date on which final distributions are made.

## ARTICLE X   EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 10.1.   *General Treatment.*

(a)    <u>Tenant Leases</u>.  On the Effective Date, all Tenant Leases shall be assumed by the Subsidiary Debtors and assigned to the Purchaser in accordance with the Purchase Agreement. Any and all security deposits held on account of the residents of the Properties shall be fully funded on or as soon as practicable after the Effective Date and shall be held by the Purchaser as the custodian for such security deposits.

(b)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which either of the Subsidiary Debtors is a party shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Subsidiary Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Subsidiary Debtors on or before the Confirmation Date; (iv) is identified in Section 10.4 of the Plan; or (v) is a Tenant Lease identified on the Assumption Schedule included in the Plan Supplement.

(c)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption, assumption and assignment, or rejection provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Post-Effective Debtors have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Post-Effective Debtors or the Purchaser, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

### 10.2.   *Determination of Assumption Disputes and Deemed Consent.*

(a)    Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Subsidiary Debtors may otherwise agree.  The Plan Administrators shall satisfy all Cure Amounts from the proceeds of the Sale Transaction allocated to them.

(b)    The Subsidiary Debtors shall file, as part of the Plan Supplement, the Assumption Schedule.  At least seven (7) days before the deadline to object to confirmation of the Plan, the Subsidiary Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Subsidiary Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed**

42

**assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Subsidiary Debtors within fourteen (14) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.** Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease, notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Subsidiary Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Subsidiary Debtor or any Post-Effective Debtor under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Subsidiary Debtor, or Post-Effective Debtors, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 10.2(b), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; provided, that the Debtors or the Plan Administrator, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, the Subsidiary Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Assumption Dispute; provided, that the Debtors or the Plan Administrator reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the counterparty to such executory contract or unexpired lease (or such lesser amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such counterparty and the applicable Plan Administrator).

(e)     Assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Subsidiary Debtor or defaults by any Subsidiary Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Subsidiary Debtors assume or assume and assign such executory contract or unexpired lease. In accordance with section 365(k) of the Bankruptcy Code, assumption and assignment of any executory contract or unexpired lease, including without limitation, Tenant Leases, releases the Debtors and the Post-Effective Debtors form any liability for breach of such contract of lease occurring after the Effective Date. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

10.3.   *Rejection Damages Claims.*

In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated as a General Unsecured Claim against the applicable Subsidiary Debtor. Such Claim shall be forever barred and shall not be enforceable against the Subsidiary Debtors, the Post-Effective Debtors, or their respective Estates, properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Post-Effective Debtors by the later of (i) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (ii) thirty (30) days after entry of an order from the Bankruptcy Court rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.

10.4.   *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice, or claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court: on the Effective Date (i) all insurance policies issued or providing coverage to the Debtors shall (subject to the applicable insurer's right to object to such a designation) be assumed in their entirety by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code, and the Debtors shall remain severally liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of such Debtor under such insurance policies, without the need or requirement for an insurer to file a proof of Claim, Administrative Expense Claim or objection to any Cure Amount; (ii) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (iii) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (a) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable nonbankruptcy law to proceed with their claims; (b) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (I) workers' compensation claims, (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; and (c) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies.

10.5.   *Intellectual Property Licenses and Agreements.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Subsidiary Debtors and assigned to the Purchaser in accordance with the Purchase Agreement.

10.6.   *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease assumed and assigned to the Purchaser hereunder shall remain in full force and effect for the benefit of the Purchaser in accordance with its terms, notwithstanding any provision in such

executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assumption and assignment effected pursuant to the Plan.

10.7.    ***Modifications, Amendments, Supplements, Restatements, or Other Agreements.***

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

10.8.    ***Reservation of Rights.***

(a)    The Subsidiary Debtors may amend the Assumption Schedule and any cure notice until the Business Day immediately prior to the commencement of the Confirmation Hearing in order to (i) add, delete, or reclassify any executory contract or unexpired lease or amend a proposed assumption or assumption and assignment and/or (ii) amend the proposed Cure Amount; provided, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, the Subsidiary Debtors' right to amend such schedules and notices shall be extended to the Business Day immediately prior to the adjourned date of the Confirmation Hearing, with such extension applying in the case of any and all subsequent adjournments of the Confirmation Hearing.  The Subsidiary Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)    Neither the exclusion nor inclusion of any contract or lease by the Subsidiary Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Subsidiary Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Subsidiary Debtors, or the Post-Effective Debtors, or their respective affiliates have any liability thereunder.

(c)    Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and the Post-Effective Debtors, under any executory or non-executory contract or any unexpired or expired lease.

(d)    Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Post-Effective Debtors, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

## ARTICLE XI  CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.

11.1. ***Conditions Precedent to Confirmation of Plan.***

The following are conditions precedent to confirmation of the Plan:

(a)    the Disclosure Statement Order shall have been entered;

(b)    the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed and be in conformity with the Plan and the RSA;

(c)    the Purchase Agreement shall not have been terminated and shall be in full force and effect;

(d)    the RSA shall not have been terminated and shall be in full force and effect;

(e)    to the extent the DIP Obligations have not been fully satisfied prior to the Confirmation Date, the DIP Order and the DIP Documents shall be in full force and effect in accordance with the terms thereof, and no event of default shall be continuing thereunder or occur as a result of entry of the Confirmation Order;

(f)    to the extent the Cash Collateral Obligations have not been fully satisfied prior to the Confirmation Date, the Cash Collateral Orders shall be in full force and effect in accordance with the terms thereof, and no default shall be continuing thereunder or occur as a result of entry of the Confirmation Order; and

(g)    the provisions of Section 7.6(d) of the Plan shall be true and correct in all respects.

11.2. ***Conditions Precedent to Effective Date.***

The following are conditions precedent to the Effective Date of the Plan:

(a)    the Confirmation Order shall have been entered as to each Debtor and have become Final Order and shall be in full force and effect;

(b)    to the extent the DIP Obligations have not been fully satisfied prior to the Confirmation Date, the DIP Order and the DIP Documents shall be in full force and effect in accordance with the terms thereof, and no event of default shall be continuing thereunder and an acceleration of the obligations or termination of the DIP Lender's commitments under the DIP Facility shall not have occurred;

(c)    to the extent the Cash Collateral Obligations have not been fully satisfied prior to the Confirmation Date, the Cash Collateral Orders shall be in full force and effect in accordance with the terms thereof, and no default shall be continuing thereunder;

(d)    all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(e)    all governmental approvals and consents, including Bankruptcy Court approval, necessary in connection with the Sale Transaction shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any

action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the Sale Transaction;

        (f)      the Purchase Agreement shall have been consummated;

        (g)      the RSA shall not have been terminated and shall be in full force and effect;

        (h)      the Professional Fees Escrow Account shall be established and fully funded;

        (i)      the provisions of Section 7.6(d) of the Plan shall be true and correct in all respects; and

        (j)      the execution and delivery of the Plan Administration Agreements.

Notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, satisfaction of such conditions precedent shall be deemed to have occurred simultaneously on the Effective Date and no such action shall be deemed to have occurred prior to the taking of any other such action; provided that, to the extent a condition precedent (a "**Prerequisite Condition**") may be required to occur prior to another condition precedent (a "**Subsequent Condition**") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to a Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

    11.3.    ***Waiver of Conditions Precedent.***

        (a)      Each of the conditions precedent in Section 11.1 and Section 11.2 of the Plan, other than those set forth in Section 11.1(a) and Section 11.2(a), may be waived in writing with the consent of all of the Debtors, the Mezzanine Lender, the Series E Notes Trustee, the Purchaser, and the DIP Lender; *provided*, *however*, the requirement that the Confirmation Order become a Final Order set forth in Section 11.2(a) may be waived in writing by the Debtors with the consent of the Purchaser.

        (b)      The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

    11.4.    ***Effect of Failure of a Condition.***

If the conditions listed in Section 11.2 of the Plan are not satisfied or waived in accordance with Section 11.3 of the Plan on or before the Extended Outside Date (as defined in the Purchase Agreement), the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Entity (including the rights of the DIP Lender to enforce any default or event of default under the DIP Documents), or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, JPM, the Mezzanine Lender, the Series E Notes Trustee, the DIP Lender, or any other Entity.

## ARTICLE XII EFFECT OF CONFIRMATION OF PLAN.

    12.1.    ***Vesting of Assets.***

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (i) the Properties acquired by the Purchaser pursuant to the Purchase Agreement shall be transferred to the

Purchaser free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to the Plan and the Confirmation Order, (ii) all remaining property of the Debtors' Estates shall remain in, or vest in, as applicable, the Post-Effective Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan and the Confirmation Order, subject to compliance with the terms of the Plan and the Confirmation Order. On and after the Effective Date, the Post-Effective Debtors and the Plan Administrator may take any action, including, without limitation, the operation of their businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Post-Effective Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services in accordance with the Wind Down Budget or with the consent of the Mezzanine Lender or the Series E Notes Trustee, as applicable, without application to the Bankruptcy Court.

12.2.    ***Binding Effect.***

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders are (a) Impaired or Unimpaired under the Plan; (b) presumed to accept or deemed to reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) will receive any distribution under the Plan.

12.3.    ***Discharge of Claims and Termination of Interests.***

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interest, rights, and liabilities of the Debtors that arose prior to the Effective Date. Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting against the Debtors any such discharged Claim against or terminated Interest in the Debtors.

12.4.    ***Term of Injunctions or Stays.***

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all the Chapter 11 Cases.

12.5.    ***Injunction.***

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan, provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.**

(b)    Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Plan Administrator and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action against the Debtors that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtors or the Post-Effective Debtors, or the property of any of the Debtors or the Post-Effective Debtors; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Post-Effective Debtors, or the property of any of the Debtors or the Post-Effective Debtors; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Post-Effective Debtors, or the property of any of the Debtors or the Post-Effective Debtors; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Post-Effective Debtors, or against property or interests in property of any of the Debtors or the Post-Effective Debtors, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)    By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 12.5.

(d)    The injunctions in this Section 12.5 shall extend to any successors of the Debtors (including the Post-Effective Debtors), and their respective property and interests in property.

12.6.    *Releases.*

(a)    <u>Estate Releases</u>.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce (i) the Plan, (ii) the Definitive Documents, (iii) the EG I and EGM Retained Causes of Action, and (iv) the EG II Retained Causes of Action, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the services rendered by the Released Parties to facilitate the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties (other than the Post-Effective Debtors) shall be deemed released and discharged, to the maximum extent permitted by law, by the Debtors and their Estates, and the Post-Effective Debtors, in each case, on behalf of themselves and their respective successors, assigns, and representatives, and any and all other persons that may purport to assert any Cause of Action derivatively, by, through or on behalf of the foregoing Persons or Entities, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, whether liquidated or unliquidated,

fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtors, the Sale Transaction, the Purchase Agreement, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the RSA, the Plan (including the Plan Supplement), the Sale Documents, the Mezzanine Loan, the EG I Mortgage Loan Agreement and related documents, the Series E Deed of Trust, the Series E Notes, and the DIP Documents, or any related agreements, instruments, and other documents (including the Definitive Documents), the DIP Order, the Cash Collateral Orders, and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, provided, that nothing in this Section 12.6(a) shall be construed to release the Released Parties from gross negligence, willful misconduct, or fraud as determined by a Final Order. The Debtors, their Estates, and the Post-Effective Debtors, shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 12.6(a) against each of the Released Parties.

(b)    **Third-Party Releases**.

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date; (ii) defend against any objections to Claims that may be asserted under the Plan; or (iii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions made by the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties (other than the Post-Effective Debtors) shall be deemed released and discharged by:

(i)    the holders of Claims who vote to accept the Plan;

(ii)    the Series E Notes Trustee;

(iii)    the Mezzanine Lender;

(iv)    the DIP Lender;

(v)    each of the other Released Parties; and

(vi)    with respect to any Entity in the foregoing clauses (i) through (v), such Entity's (x) predecessors, successors, and assigns, (y) subsidiaries, affiliates, managed accounts or funds, managed or controlled by such Entity, and (z) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing Entities are providing releases.

in each case, from any and all Claims, Interests, or Causes of Action whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or

unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, the Debtors, the restructuring, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the Purchase Agreement, the Sale Transaction, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the RSA, the Definitive Documents, the Sale Documents, the Mezzanine Loan, the EG I Secured First Lien Loan and related documents, the Series E Deed of Trust, the Series E Notes, the DIP Order, the DIP Documents, the Cash Collateral Orders, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; **provided**, that nothing in this Section 12.6(b) shall be construed to release the Released Parties from any gross negligence, willful misconduct, or fraud as determined by a Final Order. The Persons and Entities in (i) through (vi) of this Section 12.6(b) shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 12.6(b) against each of the Released Parties.

(c)    Notwithstanding anything to the contrary herein, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

12.7.    *Exculpation.*

**To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date in connection with or arising out of the filing and administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtors; the negotiation and pursuit of the DIP Facility, the Cash Collateral Orders, the Disclosure Statement, the RSA, the Purchase Agreement, the Sale Transaction, including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Documents; the Cash Collateral Orders; the administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

12.8.    *Retention of Causes of Action/Reservation of Rights.*

Except as otherwise provided in Sections 12.5, 12.6, and 12.7 of the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of their Estates in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtors. Except as other provided in the Plan, the Post-Effective Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable

defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

## ARTICLE XIII          RETENTION OF JURISDICTION.

13.1.   *Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)     to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and the Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(d)     to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)     to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     to issue injunctions, enter, and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     to hear and determine all Fee Claims;

(i)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Purchase Agreement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     to hear and determine disputes arising in connection with the Sale Transaction, or any agreement, instrument, or other document governing or relating to any of the foregoing;

     (k)     to hear and determine disputes arising in connection with the RSA, or any agreement, instrument, or other document governing or relating to the RSA;

     (l)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

     (m)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

     (n)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any Disputed Claims for taxes or requests for expedited determinations under section 505(b) of the Bankruptcy Code);

     (o)     to hear, adjudicate, decide, or resolve any and all matters related to Article XII of the Plan, including, without limitation, the releases, exculpations, and injunctions issued thereunder;

     (p)     to resolve disputes concerning Disputed Claims or the administration thereof;

     (q)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

     (r)     to enter one or more final decrees closing the Chapter 11 Cases;

     (s)     to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

     (t)     to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, or any bar date established in the Chapter 11 Cases, or any deadline for responding or objection to a Cure Amount, in each case, for any purpose;

     (u)     hear and determine matters or disputes arising from, or in connection with, the appointment of a successor Plan Administrator in the event of the Plan Administrator's death, disability, dissolution, or removal;

     (v)     hear and determine all disputes involving the Wind Down Budget;

     (w)     to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory, including, without limitation, Avoidance Actions; and

     (x)     to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code.

13.2.    ***Courts of Competent Jurisdiction.***

     If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV          MISCELLANEOUS PROVISIONS.

### 14.1.  *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Post-Effective Debtors shall pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtors' cases, until such time as a final decree is entered closing the Debtors' cases, a Final Order converting the Debtors' cases to cases under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Debtors' cases is entered.

### 14.2.  *Substantial Consummation of the Plan.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 14.3.  *Plan Supplement.*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Documents included in the Plan Supplement will be posted on the website of the Debtors' notice, claims, and solicitation agent.

### 14.4.  *Request for Expedited Determination of Taxes.*

The Debtors and the Post-Effective Debtors, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date and through dissolution of the Post-Effective Debtors.

### 14.5.  *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146 of the Bankruptcy Code, (a) the transfer of the Properties to the Purchaser, or its designee, and the making or delivery of any instrument of transfer in connection or furtherance of the Plan, and any financing by the Purchaser, (b) the issuance, transfer or exchange of any securities, instruments or documents pursuant to, in implementation of or as contemplated in the Plan and the Purchase Agreement, (c) the creation of any Lien, mortgage, deed of trust, or other security interest, (d) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with the Sale Transaction, and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent provided by law, including, but not limited to: (i) mortgage recording taxes imposed under Article 11 of the tax law of the State of New York, (ii) the New York Real Estate transfer tax imposed under Article 31 of the Tax Law of the State of New York, (iii) the New York City Real Property transfer tax imposed by title 11, chapter 21 of the New York City Administrative Code and, (iv) any similar tax on the recording of deeds, transfers or property or ownership interests in property, recording of mortgages or other security instruments imposed by the State

54

of New York, or any political subdivision thereof.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded (including without limitation, the Register of the City of New York) shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax, as well as cancel and discharge of record all liens, judgments, encumbrances, claims, and other adverse interests in or against the Properties.  All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Properties, any taxes from which the transactions effectuated pursuant to the Plan and Confirmation Order are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code and to the greatest extent provided by law, including but not limited to, New York State Real Estate Transfer Taxes, and any mortgage recording tax, and any penalties, interest, or additions to any tax related thereto.  The New York County Register's Office is hereby authorized and directed to record any deed, mortgage of the Property and any modification, restatement, amendment or assignment of any mortgages and any other similar conveyance, indenture or other documents contemplated under the Plan without the payment of any of the aforementioned exempt taxes or any other stamp tax, transfer tax or similar tax, and without the presentation of affidavits, instruments or returns otherwise required for recording or filing pursuant to the provisions of section 1146(a) of the Bankruptcy Code.

   14.6.    ***Amendments.***

      (a)    *Plan Modifications*.  Subject to the terms of the DIP Documents, the Cash Collateral Orders, and all consent rights of the DIP Lender and the Series E Notes Trustee, respectively, contained therein, (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, or supplement the Plan (i) prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan and subject to the reasonable consent of the DIP Lender, Mezzanine Lender and the Series E Notes Trustee, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the RSA and the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

      (b)    *Other Amendments*.  Subject to the terms of the DIP Documents and the Cash Collateral Orders, before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement, after consulting with the Mezzanine Lender and the Series E Notes Trustee without further order or approval of the Bankruptcy Court.

   14.7.    ***Effectuating Documents and Further Transactions.***

      The Plan Administrator, on behalf of the Post-Effective Debtors, is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.8.    *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtors or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission of any sort by the Debtors, the Series E Notes Trustee, the Mezzanine Lender, the DIP Lender or any other Entity.  This provision shall have no adverse impact on the rights of the Series E Notes Trustee, the Mezzanine Lender, or the Debtors, as set forth in the RSA, in respect of any such revocation or withdrawal.  This provision shall have no adverse impact on the rights of the DIP Lender under the DIP Documents in respect of any such revocation or withdrawal.

14.9.    *Severability of Plan Provisions.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors with the reasonable consent of the Mezzanine Lender and the Series E Notes Trustee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Post-Effective Debtors, the Mezzanine Lender, and the Series E Notes Trustee (as applicable), and (c) nonseverable and mutually dependent.

14.10.    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof; provided, however, that corporate or entity governance matters relating to any Debtor or the Post-Effective Debtors, shall be governed by the laws of the state of incorporation or organization of the applicable Debtors or Post-Effective Debtors.

14.11.    *Time.*

In computing any period of time prescribed or permitted by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 14.12.   *Dates of Actions to Implement the Plan.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 14.13.   *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Post-Effective Debtors.

### 14.14.   *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

### 14.15.   *Successor and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

### 14.16.   *Entire Agreement.*

On the Effective Date, the Plan, the Plan Supplement, the Purchase Agreement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 14.17.   *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

### 14.18.   *Notices.*

All notices, requests, and demands to or upon the Debtors, the Post-Effective Debtors, the Mezzanine Lender, the DIP Lender, the Series E Notes Trustee, or the Plan Administrators, as applicable, to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)    If to the Debtors:

c/o All Year Holdings Limited
199 Lee Avenue, #693,
Brooklyn, NY 11211
Attn: Mr. Asaf Ravid and Mr. Ephraim Diamond
Email: ravidasaf@gmail.com and ephraim@arbelcapital.com.

-and-

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:    Gary T. Holtzer, Esq.
         Jacqueline Marcus, Esq.
         Matthew P. Goren, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Gary.Holtzer@weil.com
         Jacqueline.Marcus@weil.com
         Matthew.Goren@weil.com

(b)      If to the Post-Effective Debtors or the Plan Administrators, as to be provided under the Plan Administration Agreements.

(c)      If to the Series E Notes Trustee:

Mishmeret Trust Company Ltd.
48 Menachem Begin Road
Tel Aviv 6618001
Israel


-and-

Chapman and Cutler LLP
1270 Avenue of the Americas
New York, NY 10020
Attention: Michael Friedman, Esq.
Email: friedman@chapman.com

-and-

Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603
Attention: Stephen Tetro, Esq.
Email: stetro@chapman.com

(d)      If to JPM:

JPMorgan Chase Bank, N.A.
383 Madison Avenue, 31st Floor

New York, New York 10179
Attention: Thomas Nicholas Cassino
-and-

SPG Middle Office/CIB
4 Chase Metrotech Center, 4th floor
Brooklyn, NY 11245-0001
Attention: Nancy Alto
Facsimile (917) 546-2564

-and-

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Tel: +1.212.859.8000
Fax: +1.212.859.4000
Attn:    Gary L. Kaplan, Esq.,
Email:  gary.kaplan@friedfrank.com

(e)    If to the Mezzanine Lender:

MREF REIT Lender 9 LLC
c/o Mack Real Estate Group
60 Columbus Circle, 20th Floor
New York, New York 10023
Attention: Kevin Cullinan

-and-

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333
Attn:    Diana Brummer, Esq.,
         Kizzy Jarashow, Esq.,
         Michael Goldstein, Esq.
Email:  DBrummer@goodwinlaw.com
         KJarashow@goodwinlaw.com
         MGoldstein@goodwinlaw.com

(f) If to the DIP Lender:

MREF REIT Lender 15 LLC
c/o Mack Real Estate Group
60 Columbus Circle, 20th Floor
New York, New York 10023
Attention: Kevin Cullinan

-and-

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333
Attn:    Diana Brummer, Esq.,
         Kizzy Jarashow, Esq.,
         Michael Goldstein, Esq.
Email:  DBrummer@goodwinlaw.com
         KJarashow@goodwinlaw.com
         MGoldstein@goodwinlaw.com

After the Effective Date, the Debtors and the Post-Effective Debtors, as applicable, have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors and Post-Effective Debtors, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:   October 28, 2021

**EVERGREEN GARDENS I LLC, as Debtor**

By: /s/ Asaf Ravid
Name: Asaf Ravid
Title: Authorized Signatory

**EVERGREEN GARDENS II LLC, as Debtor**

By: /s/ Asaf Ravid
Name: Asaf Ravid
Title: Authorized Signatory

**EVERGREEN GARDENS MEZZ LLC, as Debtor**

By: /s/ Asaf Ravid
Name: Asaf Ravid
Title: Authorized Signatory